UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) |
| | ) Case No. 1:21-mj-195 (Sealed) |
| ETHAN NORDEAN, | ) |
| | ) **Chief Judge Beryl A. Howell** |
| Defendant. | ) |
| | ) |

**DEFENDANT NORDEAN'S MOTION TO LIFT STAY ON RELEASE ORDER**

David B. Smith (D.C. Bar No. 403068)
DAVID B SMITH PLLC
108 N. Alfred St.
Alexandria, VA 22314
Phone:(703)548-8911
Fax:(703)548-8935
dbs@davidbsmithpllc.com

Nicholas D. Smith (Va. Bar. No. 79745)
7 East 20th Street
Suite 4R
New York, NY 10003
Phone: (917) 902-3869
nds@davidbsmithpllc.com

*Counsel to Ethan Nordean*

**TABLE OF CONTENTS**

FACTUAL BACKGROUND…………………………………………………….…………..2

THE MAGISTRATE JUDGE'S DECISION TO RELEASE NORDEAN…………......……….4

ARGUMENT……………………………………………...………………………..…… 5

I.   There is no basis for detention under 18 U.S.C. § 3142(f)(1)(A)……………...............…..5

     A.   The property destruction charge is unsupported by probable cause……..……….5

     B.   The § 1361 charge does not satisfy 18 U.S.C. § 3142(f)(1)(A)
          for various reasons…………………………………………………………....………7

II.  No, the property destruction charge is not a "Federal crime of terrorism"…………..……..10

III. The government's argument under 18 U.S.C. § 3142(f)(2)(A) is frivolous…………......11

IV.  The Section 3142(g) factors do not come close to supporting detention …...………....13

     A.   Nature and circumstances of the offense…....…………………………….…....13

     B.   The weight of the evidence…....…………………………………………….…....14

     C.   History and characteristics of the defendant…....….……………………..……...14

V.   Nordean's release follows from the Court's decision in *Griffin*…....……………..…....14

CONCLUSION…………………………………………………………………...………15

Defendant Ethan Nordean, by his attorneys, respectfully requests that the Court lift the order it entered on February 8, 2021 staying the pretrial release order entered the same day by Chief Magistrate Judge Brian A. Tsuchida of the Western District of Washington. He also requests that the Court revoke the order to transport him to this district, so that Nordean can participate in a hearing by videoconference from Washington.

On February 3, Nordean was arrested in his home state of Washington on a criminal complaint charging him with one or two felonies (aiding and abetting property depredation[1] and obstruction of justice) and two misdemeanors (trespass and uttering abusive language near the Capitol) in connection with the events at the Capitol Building on January 6. That morning, his wife was awoken by flash bangs thrown into Nordean's home by a large FBI SWAT team. They pointed assault rifles at her. Handcuffed, she was detained for approximately five hours and questioned without being Mirandized. Nordean, 30, has no criminal history.

The government moved for Nordean's pretrial detention on the basis that one of the felonies—aiding and abetting the depredation of property, 18 U.S.C. § 1361—constitutes a "crime of violence" under 18 U.S.C. § 3142(f)(1)(A). Charges filed in a criminal complaint must be based on probable cause. The evidence pleaded in support of the aiding and abetting charge consists of a photograph depicting Nordean having a "brief exchange" with a man near the Capitol. The complaint does not plead the content of the "exchange." This man, it is alleged, was "among the first to enter the Capitol through a window." Gov't Mot. for Emerg. Stay, p. 9. The window had been broken by a second man—not by the individual who had a "brief exchange" with Nordean. *Id*.

---

[1] The property depredation offense is a felony only if the "damage" exceeds $1,000. 18 U.S.C. § 1361. The complaint does plead whether that threshold amount was breached by Nordean.

That is the factual basis for the government's property depredation charge against Nordean. This evidence does not satisfy the probable cause standard. It is not close. Were the context anything other than the Capitol incident, these facts almost certainly would have been deemed insufficient to file such a charge before further investigation. In any case, a § 1361 offense does not constitute a "crime of violence" under § 3142(f)(1)(A), under the "categorical approach" applied by the courts. And even if it did, plainly there are conditions to assure Nordean's appearance as required.

That is why, after fully reviewing the government's argument, Chief Magistrate Judge Tsuchida correctly rejected it, ordering Nordean's release on standard conditions. That decision should be sustained. Although the Court ordered Nordean transported to this district on February 8, he has yet to be moved from a prison facility in Seattle, where he has been in pretrial detention for nearly a month. It is currently experiencing an outbreak of Covid-19.

**FACTUAL BACKGROUND**

The criminal complaint alleges that Nordean is a member of the Proud Boys group.[2] It alleges that, on January 6, 2021, a large crowd gathered near the pedestrian entrance to the Capitol grounds on First Street, secured by police standing behind a waist-height metal barrier. Compl., p. 7. "[T]wo men advanced toward [the] metal gate. The crowd followed, and within minutes, the crowd overwhelmed the U.S. Capitol Police officers [there.]" *Id.*

---

[2] The complaint dwells at length on the defendant's controversial political stances before January 6, though their function in establishing trespass and property destruction offenses is not made clear.

For example, a section examining the philosophical underpinnings of the political group to which Nordean apparently belongs—and displaying color photographs of the group's paraphernalia— occupies more charging space than the complaint's description of factual evidence supporting its (possible) felony counts. *Compare* Compl., pp. 2-6, *with id.*, p. 8.

2

Nordean "was not one of the two men who initially advanced toward officers, but was present in the crowd[.]" Compl., p. 7. The complaint alleges that thousands of people then gathered in front of the Capitol on its west side. "Among the first to reach the police line in the west plaza of the Capitol was [Nordean.]" *Id.*, p. 8. Nordean "then appeared to engage in a brief exchange with . . . Robert Gieswein. . ." *Id.* In turn, Gieswein "was among the first to enter the Capitol through a window that was broken. . ." *Id.* But it is not Gieswein, the man with whom Nordean "appeared to engage in a brief exchange," who is alleged to have broken the window. That was accomplished by another individual named Dominic Pezzola. Compl., p. 8. In a footnote, the complaint adds that it,

> Does not herein assert or intend to otherwise suggest that NORDEAN was present in the immediate vicinity when the [window-breaking] took place.

Compl., p. 9 n. 3.

The complaint alleges that Nordean ultimately entered the Capitol Building, displaying photographic evidence of the same. Compl., pp. 4-5.

It then alleges that Nordean's "[social media] posts prior to January 6, 2021, indicate that he and other Proud Boys were planning in advance to organize a group that would attempt to overwhelm police barricades and enter the United States Capitol Building." Compl., p. 5. However, the complaint does not cite examples of posts showing such an intent or plan. Instead, it cites public social media posts in which the defendant appears to seek out "protective gear" and "communications," not to "overwhelm police barricades," but because "things have gotten more dangerous for us this past year." *Id.* Other evidence cited by the complaint includes vague, nonviolent statements such as "People don't understand the price that comes with being a Patriot these days." Compl., p. 7.

Citing the "foregoing," the complaint then charges Nordean with:

3

(1) "corruptly obstructing, influencing, or impeding . . . the proceeding to certify the vote results of the Electoral college," 18 U.S.C. § 1512(c)(2)[3];

(2) aiding or abetting the willful depredation against any property of the United States, "here, the barricades surrounding the U.S. Capitol and the windows and doors on the west side of the Capitol where Nordean and other rioters broke into the Capitol," 18 U.S.C. § 1361;

(3) knowingly entering or remaining in any restricted building or grounds without lawful authority to do so, and knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engaging in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions; or attempts or conspires to do so, 18 U.S.C. § 1752(a); and

(4) willfully and knowingly uttering loud, threatening, or abusive language,[4] or engaging in disorderly or disruptive conduct, at any place in the Grounds or in any of the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, 40 U.S.C. § 5104(e)(2)(D) and (G).  Compl., pp. 11-12.

**THE MAGISTRATE JUDGE'S DECISION TO RELEASE NORDEAN**

The government moved for pretrial detention on three bases: (1) Felony destruction of government property is a "crime of violence," under 18 U.S.C. § 3142(f)(1)(A), and is

---

[3] The obstruction-of-justice charge, although not pleaded clearly, appears to be legally deficient for a number of reasons, ranging from the statute's plain text to its legislative history, *see*, *e.g.*, *United States v. Poindexter*, 951 F.2d 369 (D.C. Cir. 1991) (obstruction-of-justice adverb "corruptly" is transitive ("A corrupts B, i.e., A causes B to act corruptly"), not intransitive), but these need not be addressed at length here, as the government does not rely on this nonviolent charge in support of its detention motion.

[4] The complaint does not allege what "loud, threatening or abusive language" Nordean allegedly "uttered."

4

punishable by ten years or more in prison; (2) Nordean's alleged aiding and abetting the destruction of police barricades and a Capitol window was a "Federal crime of terrorism" under 18 U.S.C. § 3142(e)(3)(C) and 18 U.S.C. § 2332b(g)(5)(B); and (3) Nordean is a "serious risk of flight" pursuant to 18 U.S.C. § 3142(f)(2)(A).  Gov't Mot. for Emerg. Stay, pp. 19-23.

For all of the reasons set forth below, on February 8 Chief Magistrate Judge Tsuchida correctly denied the government's detention motion.  *U.S. v. Nordean*, 21-mj-67, ECF No. 9 (W.D. Wash., Feb. 8, 2021).  Several hours later, the government filed a motion to stay Judge Tsuchida's order.  The government's stay motion was granted.  In a separate order, the Court directed that Nordean be transported to this district.  The defendant has yet to be transported and remains incarcerated in a prison in Seattle, Washington, now experiencing an outbreak of Covid-19.

## ARGUMENT

The Court reviews the magistrate judge's detention decision *de novo*.  *United States v. Sheffield*, 799 F. Supp. 2d 18, 20 (D.D.C. 2011).  "The Court is free to use in its analysis any evidence or reasons relied on by the magistrate judge, but it may also hear additional evidence and rely on its own reasons." *Id.* (internal quotation marks omitted).

Nordean's detention is contrary to the Bail Reform Act (BRA) and the Fifth Amendment's due process clause.

**I.     There is no basis for detention under 18 U.S.C. § 3142(f)(1)(A)**

**A.     The property destruction charge is unsupported by probable cause**

The government's argument for pretrial detention under § 3142(f)(1)(A) wholly depends on one of the complaint's four charges: aiding and abetting the depredation of government

5

property, pursuant to 18 U.S.C. § 1361 & § 2. Its argument fails because the evidence relied on by the complaint for this charge does not even satisfy the probable cause standard.

To establish an aiding and abetting offense under § 2, the government must charge and prove four elements: (1) the specific intent to facilitate the commission of a crime by another; (2) guilty knowledge on the part of the accused; (3) that an offense was being committed by someone; and (4) that the accused facilitated the commission of the offense. *See*, *e.g.*, *United States v. Salamanca*, 990 F.2d 629, 638 (D.C. Cir. 1993).

As the Supreme Court has more recently made clear, "[t]o aid and abet a crime, a defendant must not just in some [sense] associate himself with the venture but also participate in it as in something that he wishes to bring about and seek *by his action* to make it succeed." *Rosemond v. United States*, 572 U.S. 65, 76 (2014) (internal quotation marks omitted) (emphasis added). That is why mere "knowledge that a crime is being committed, *even when coupled with presence at the scene*, is generally not enough to constitute aiding and abetting." *United States v. Garguilo*, 310 F.2d 249, 253 (2d Cir. 1962); *see also United States v. Centeno*, 793 F.3d 378, 387 (3d Cir. 2015) ("Neither mere presence at the scene of the crime nor mere knowledge of the crime is sufficient to support a [aiding and abetting] conviction."); *United States v. Rosalez*, 711 F.3d 1194, 1205 (10th Cir. 2013) ("Mere presence at a crime scene or knowledge alone that a crime is being committed is insufficient.").

Here, the complaint does not allege a single *Rosemond* "action" taken by Nordean to facilitate the depredation of government property that is beyond "mere presence." The complaint states that Nordean "appeared to engage in a brief exchange with . . . Robert Gieswein," who later entered the Capitol Building through a window. Compl., p. 8. But it does not allege that Nordean encouraged Gieswein to commit a crime. In any case, the complaint does not even

6

allege that *Gieswein* destroyed any property or attempted to do so. To the contrary, it alleges that one Dominic Pezzola destroyed the window through which Gieswein later clambered. *Id.* And the complaint does not allege that Nordean took any *action* to facilitate this. Indeed, the complaint concedes that it "[d]oes not herein assert or intend to otherwise suggest that NORDEAN was present in the immediate vicinity when the [window-breaking] took place." Compl., p. 9 n. 3.

The complaint cites no other evidence whatsoever to establish that Nordean aided or abetted "any depredation against any property of the United States." 18 U.S.C. § 1361. As the Court knows, probable cause "is an objective standard to be met by applying a totality-of-the-circumstances analysis." *Johnson v. United States*, 927 F.3d 539, 547 (D.C. Cir. 2019). It is "less than a preponderance of the evidence" but "it is [also] more than bare suspicion." *Id.*

Citing to a picture showing the defendant appearing to speak into the ear of Mr. Y, who later climbs through a window broken by Mr. X, is not probable cause that the defendant aided and abetted Mr. X in destroying property. It is hardly "bare suspicion." This is a charge that was precipitously brought before full investigation, possibly with the intent of pleading a charge that would provide the government with a "crime of violence" predicate for pretrial detention.

    **B.**    **The § 1361 charge does not satisfy 18 U.S.C. § 3142(f)(1)(A) for various reasons**

Even if the complaint were predicated on a probable cause showing Nordean committed an aiding and abetting offense under § 1361, the government's detention argument under 18 U.S.C. § 3142(f)(1)(A) would still fail, for several reasons.

First, § 1361 is not a "crime of violence" under § 3142(f)(1)(A). "Crime of violence" means "(A) an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another; (B) any other offense that is a

7

felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense; or (C) any felony under chapter 77, 109A, 110, or 117. . ." 18 U.S.C. § 3156(a)(4).

Courts interpreting "crime of violence" in § 3142(f)(1)(A) use the so-called "categorical approach" in deciding whether a given criminal statute fits. *See*, *e.g.*, *United States v. Watkins*, 940 F.3d 152, 163 (2d Cir. 2019) (applying categorical approach to § 3142(f)(1)(A) (citing *United States v. Davis*, 139 S. Ct. 2319, 2327 (2019)). Under this interpretive method, courts "look only to the statutory definitions—i.e., the elements—of a defendant's [offense] and not to the particular facts underlying [the offense]" in determining whether the offense qualifies as a "crime of violence." *Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013) (citations omitted). If the "most innocent" conduct covered by the criminal statute does not meet the definition of "crime of violence," the charged offense does not satisfy § 3142(f)(1)(A). *United States v. Diaz-Ibarra*, 522 F.3d 343, 348 (4th Cir. 2008).

Here, the "most innocent" conduct covered by § 1361 does not necessarily have "as an element of the offense the use, attempted use, or threatened use of *physical force* against the person or property of another." 18 U.S.C. § 3156(a)(4) (emphasis added). *See Johnson v. United States*, 559 U.S. 133, 139 (2010) (interpreting "violent felony" in the Armed Career Criminal Act, defined to require the use of "physical force," and finding that "physical force" means "*violent* force—that is, *force capable of causing physical pain or injury* to another person"). Section 1361 states as follows:

> Whoever willfully injures or commits any depredation against any property of the United States, or of any department or agency thereof, or any property which has been or is being manufactured or constructed for the United States, or any department or agency thereof, or attempts to commit any of the foregoing offenses, shall be punished as follows. . .

8

"Depredation" is the noun form of the verb "depredate" which means to "lay waste, plunder, ravage." "Depredate." Merriam-Webster Online Dictionary, 2021 (Feb. 23, 2021). *See also United States v. Jenkins*, 554 F.2d 783, 785 (6th Cir. 1977) (depredation in § 1361 means robbing, plundering, pillaging, or laying waste). Plainly, "depredation against any property" can be committed without the use of "physical force," construed in *Johnson* to mean violent force. Take the act of "tagging" (spray painting) public property. Such conduct may constitute a Section 1361 offense. *See*, *e.g.*, *United States v. Carlson*, 2011 WL 13141452, at *1 (D. Idaho Sept. 15, 2011) (three defendants charged under 18 U.S.C. § 1361 for spray painting the rock face at the Red Elk Rock Shelter on land belonging to the United States). Or take the act of digging into the grounds of Native American ruins. Such conduct is also covered by § 1361 but does not involve the use of violent force. *United States v. Jones*, 607 F.2d 269, 270–71 (9th Cir. 1979).

*United States v. Khatallah*, 316 F. Supp. 3d 207, 216 (D.D.C. 2018), cited by the government (Gov't Mot. for Emerg. Stay, p. 20), is inapposite. There, the court determined that a different crime, under 18 U.S.C. § 1363, was categorically a "crime of violence." But § 1363 makes it a crime to "willfully and maliciously *destroy*[] or injure[] any structure, conveyance, or other real or person property. . ." 18 U.S.C. § 1363 (emphasis added). By contrast § 1361 criminalizes "any depredation against any property. . ." 18 U.S.C. § 1361. If "depredate" is to mean something distinct from "destroy," clearly the former contemplates some injuries *involving* property shy of those necessarily involving the use of "physical force." *See*, *e.g.*, *United States v. Frankel*, 739 F. Supp. 629, 630 (D.D.C. 1990) (protester charged under § 1361 for throwing blood on the Capitol); *United States v. Allen*, 2020 U.S. App. LEXIS 39683,*5 (10th Cir. Dec. 17, 2020) (man charged under § 1361 for mining in a protected area); *United States v. Platte*, 401 F.3d 1176, 1178 (10th Cir. 2005) (protester charged under § 1361 for pouring blood on nuclear

missile site); *United States v. Rebich*, 1996 U.S. App. LEXIS 12130, *4 (9th Cir. 1996) (man charged under § 1361 for purloining a severed deer head); *United States v. Wilcox*, 50 F.3d 600, 601 (8th Cir. 1995) (man charged under § 1361 for removing timber from public lands); *United States v. Campbell*, 42 F.3d 1199, 1202 (9th Cir. 1994) (§ 1361 conviction affirmed where defendant appropriated federal timber stock); *United States v. Cassidy*, 616 F.2d 101, 102 (4th Cir. 1979) (protestor charged under § 1361 for pouring blood and ashes in Pentagon). None of these cases involved "physical force."

Accordingly, under the categorical test, § 1361 is not a "crime of violence" under § 3142(f)(1)(A) and the government has offered no statutory basis for pretrial detention.

Second, even if § 1361 were a "crime of violence," it must also be punishable by ten years or more in prison to satisfy 18 U.S.C. § 3142(f)(1)(A). Yet, as explained above, § 1361 contains both a misdemeanor offense permitting no more than one year in prison and a felony offense with at most ten years' imprisonment. The crime becomes a felony if the damage "exceeds the sum of $1,000." 18 U.S.C. § 1361. Here, the complaint does not charge that the "damage" for which Nordean specifically is allegedly responsible exceeds $1,000. (The complaint is not even clear what the "damage," *attributable to Nordean*, consists of.) That is another reason why the government has not established an offense for which pretrial detention is appropriate.

**II.  No, the property destruction charge is not a "Federal crime of terrorism"**

The government also seeks detention pursuant to 18 U.S.C. § 3142(e)(3)(C), which creates a rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community," claiming that its § 1361 property damage charge constitutes "an offense listed in section 2332b(g)(5)(B) of

10

title 18," *i.e.*, a "Federal crime of terrorism." Gov't Mot. for Emerg. Stay, p. 20. Notice, however, that although the government cites the terrorism statute, it is for some reason unwilling to use the word "terrorism" in connection with Nordean's case.

The government's argument that vaguely alleged damage to barricades and/or a window, unattributed to the defendant, is a crime of terrorism is contained within one conclusory sentence: "The Complaint and Statement of Facts establishes the probable cause to believe that Defendant committed this offense." Gov't Mot. for Emerg. Stay, p. 20.

No, the complaint does not allege Nordean committed a crime of terrorism. First, as shown above, it does not even allege probable cause that Nordean took any action to aid and abet a property depredation offense under § 1361. Second, the complaint does not allege that Nordean committed these unalleged, nonspecific actions "to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." 18 U.S.C. § 2332b(g)(5)(A). Instead, it alleges Nordean had "an exchange" with a man who, later, climbed through a window of Congress. There appears to be a good deal of distance between that allegation and a terrorism case. Piquant photographs of Proud Boys do not bridge the gap.

**III.    The government's argument under 18 U.S.C. § 3142(f)(2)(A) is frivolous**

The government asserts that it also seeks detention pursuant to § 3142(f)(2)(A) "because defendant poses a serious risk of flight." Gov't Mot. for Emerg. Stay, p. 21. That is frivolous.

A defendant "may be detained only if the record supports a finding that he presents a serious risk of flight." *United States v. Himler*, 797 F.2d 156, 160 (3d Cir. 1986); *see also United States v. Robinson*, 710 F. Supp. 2d 1065, 1088 (D. Neb. 2010) (criticizing the government for failing to present evidence of "serious risk" of flight at the initial appearance and saying "no information was offered to support [the] allegation"). The BRA's legislative history makes clear

11

that detention based on serious risk of flight is only appropriate under "extreme and unusual circumstances."[5]  For example, the case relied on in the legislative history as extreme and unusual enough to justify detention on the grounds of serious risk of flight involved a defendant who was a fugitive and serial impersonator, had failed to appear in the past, and had recently transferred over a million dollars to Bermuda. *See Abrahams*, 575 F.2d at 4. The government must demonstrate that the risk of flight in a particular case rises to that level of extreme or unusual.

Here, by contrast, the government offers one fact in support of its claim: that in a single social media post—at some undated time—the defendant indicated a desire to "start a new life" . . . someplace.  Gov't Mot. for Emerg. Stay, p. 23.  The government offers no authority to support the claim that such a post establishes a "serious risk of flight" and there is none.  But even if there were, the solution—plainly—would be for Nordean to surrender his passport, not to hold him in a facility during the pandemic for months, possibly a year, until such time as he may exercise his right to a trial on what appears to be mostly a misdemeanor case.

The government represents that Nordean had "possession of a valid, U.S. Passport issued to someone else whose likeness resembles Defendant's." Gov't Mot. for Emerg. Stay, p. 23.  The

---

[5] *See Bail Reform Act of 1983: Rep. of the Comm. on the Judiciary*, 98th Cong. 48 (1983) ("Under subsection f(2), a pretrial Detention Hearing may be held upon motion of the attorney for the government or upon the judicial officer's own motion in three types of cases….T]hose [types] involving…a serious risk that the defendant will flee…*reflect the scope of current case law that recognizes the appropriateness of denial of release in such cases*.") (emphasis added) (citing *United States v. Abrahams*, 575 F.2d 3, 8 (1st Cir. 1978)—which held that only a "*rare case of extreme and unusual circumstances*…justifies pretrial detention"—as representing the "current case law"); *see also Gavino v. McMahon*, 499 F.2d 1191, 1995 (2d Cir. 1974) (holding that in a noncapital case the defendant is guaranteed the right to pretrial release except in "extreme and unusual circumstances"); *United States v. Kirk*, 534 F.2d 1262, 1281 (8th Cir. 1976) (holding that bail can only be denied "in the exceptional case").

12

government knows, or should know, that this is grossly inaccurate information. The defendant's wife—not Nordean—continued to keep some of the personal effects of her ex-boyfriend, which included the latter's passport, with his knowledge. The FBI has demanded that the defendant's wife mail the passport to a Bureau office and she has complied. Nordean does not hold multiple passports. This is a nonissue designed to manufacture a detention argument.

### IV.     The Section 3142(g) factors do not come close to supporting detention

"[I]n determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community," the Court considers (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. 18 U.S.C. § 3142(g). These factors do not come close to supporting Nordean's pretrial detention.

#### A.     Nature and circumstances of the offense

The Court will notice that the government scarcely discusses the offenses themselves in connection with 18 U.S.C. § 3142(g). Gov't Mot. for Emerg. Stay, p. 21. Indeed, the government strangely states that the defendant's offenses resist all verbal description—which would seem to pose logistical and philosophical problems for any modern system of justice. *Id.* ("Words alone may never communicate the true nature of the crimes that were carried out on January 6.").

In any case, given that accused murderers, violent sex offenders, Ponzi schemers, and other serious offenders are released on bail every day in this country, it is not clear why a defendant accused of inspiring the breaking of a window through whispering in a man's ear

13

would resist the standard conditions of release proposed by Pretrial Services.  Certainly, the government itself offers no explanation for what Chief Magistrate Tsuchida missed.

### B. The weight of the evidence

The government writes that "Dozens of videos and photographs exist to prove Defendant's participation in the Capitol riot on January 6, 2021." Gov't Mot. for Emerg. Stay, p. 22.  If the government's burden were merely to prove Nordean was present at the Capitol riot, videos and photographs would be significant evidence.  But that is not its burden.  As discussed above, its burden is to prove that Nordean took some "action" to make property destruction—apparently limited in this case to the breaking of a single window—succeed.  *Rosemond*, 572 U.S. at 76.  As seen above, the government has proffered or pleaded no such evidence, much less weighty evidence.

### C. History and characteristics of the defendant

Nordean, 30, has no criminal history.  He has been gainfully employed in the Seattle area since his graduation from high school, where he has long and strong ties. The government's argument here is merely that Nordean belongs to the Proud Boys group and should therefore be detained.  Gov't Mot. for Emerg. Stay, p. 22.  As the Court knows, this argument, while perhaps emotionally or politically gratifying, is both frivolous and unconstitutional.  *See United States v. Lemon*, 723 F.2d 922, 938 (D.C. Cir. 1983) ("Appellate courts have seriously limited the extent to which protected political speech and association may be the basis for revoking or denying bail.") (citing *Williamson v. United States*, 184 F.2d 280 (2d Cir. 1950) (Jackson, J., Circuit Judge)).

**V.      Nordean's release follows from the Court's decision in *Griffin***

In *United States v. Couy Griffin*, 21-mj-92 (D.D.C. 2021), the government moved for detention on the basis that the defendant had made the following statements leading up to, and following, the January 6 incident, of which the defendant was a part: (1) every good Democrat is a dead Democrat (the defendant added he meant this politically, not literally); (2) if a Second Amendment rally were held at the Capitol, blood would be running from the walls; and (3) the defendant stated he would bring his .357 Big Boy rifle and his .357 single action revolver to Washington, D.C. with him during the inauguration (he did not ultimately follow through). Despite these alleged statements, the Court determined, correctly, that the defendant should not remain incarcerated during the pandemic for months—possibly a length of time longer than the statutory maximum sentence—as he awaited trial.

Here, the government has cited no inflammatory statements that even approach those alleged in *Griffin*. The government claims Nordean is a member of the Proud Boys, which are, it says, "Western Chauvinists." Gov't Mot. for Emerg. Stay, p. 4.  It does not allege Nordean has ever committed, planned to commit, or intended an act of violence—before, during or after January 6.  Like Griffin, Nordean has no criminal history and has been consistently gainfully employed.  And, of course, unlike in *Griffin*, the magistrate judge here ordered Nordean's release.  As for the two felony offenses with which Nordean but not Griffin has been charged, the criminal complaint provides virtually no evidence in support of either offense.

## CONCLUSION

For all of the foregoing reasons, Mr. Nordean respectfully requests that the Court lift the stay on Chief Magistrate Judge Tsuchida's release order, which was correctly entered.

Dated: February 23, 2021                                   Respectfully submitted.

/s/ David B. Smith
David B. Smith (D.C. Bar No. 403068)
108 N. Alfred St.
Alexandria, VA 22314
Phone:(703)548-8911
Fax:(703)548-8935
dbs@davidbsmithpllc.com

Nicholas D. Smith (Va. Bar No. 79745)
7 East 20th Street
New York, NY 10003
Phone: (917) 902-3869

### Certificate of Service

I hereby certify that on the 23rd day of February, 2021, I filed the foregoing motion with the Clerk of Court using the CM/ECF system and the Case Administrator Brittany Bryant, which will send a notification of such filing (NEF) to the following CM/ECF user(s):

Jim Nelson
Assistant United States Attorney
555 4th Street, N.W., Room 4408
Washington, D.C. 20530
(202) 252-6986

And I hereby certify that I have mailed the document by United States mail, first class postage prepaid, to the following non-CM/ECF participant(s), addressed as follows: [none].

/s/ David B. Smith
David B. Smith, D.C. Bar No. 403068
David B. Smith, PLLC
108 North Alfred Street, 1st FL
Alexandria, Virginia 22314
(703) 548-8911 / Fax (703) 548-8935
dbs@davidbsmithpllc.com
*Counsel to Ethan Nordean*

16