UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) ) | |
| v. | ) ) | Case No. 1:21-cr-195 |
| ETHAN NORDEAN, et al., | ) ) | **Judge Timothy J. Kelly** |
| Defendants. | ) ) ) | |

**DEFENDANT NORDEAN'S NOTICE OF NEW EVIDENCE RELEVANT TO THE GOVERNMENT'S MOTION TO REVOKE RELEASE ORDER**

Defendant Ethan Nordean, through his counsel, files this notice to inform the Court that, subsequent to the filing of the government's third motion to detain Nordean pretrial, ECF No. 30, the government produced evidence to Nordean's counsel that is relevant to the government's motion. In addition, two witnesses have come forward with evidence inconsistent with the government's allegation that the defendants conspired to commit crimes on January 6.

  A.  **1,500 pages of Proud Boys Telegram chats produced March 25**

On March 25, the government produced 1,500 pages of Telegram chats among members of the Proud Boys. These encompass the group's communications in Washington, D.C., between January 5 and 6, 2021. It is the evidence upon which the superseding indictment bases its allegation that the defendants conspired before January 6 to commit violations of 18 U.S.C. §§ 1512(c)(2) and 231(a)(3) during the protests at the Capitol Building on that day. First Superseding Indictment, ¶¶ 42-68.

The Telegram chats are significant in a number of ways. The timing of the government's production of them is also significant.

First, although they span 1,500 pages of text, and the days before and after January 6, the chats do not contain a single reference to the commission of crimes. The superseding indictment creates an impression that cherry-picked references to a "plan" within the Telegram chats referred to a plan to commit federal crimes. Taken together, the chats show that is plainly not the case, as the examples cited below demonstrate. To the contrary, the chats show that, not only was there no "plan" to commit federal crimes among the group, members of the group frequently noted there was no plan, or coherent organization, whatsoever.

Second, the 1,500 pages of chats contain a total of six messages by Nordean. The Court will recall that, in its second attempt to detain him pretrial, the government represented to the Chief Judge that, on January 6:

> Defendant—dressed all in black, wearing a tactical vest—*led the Proud Boys through the use of encrypted communications* and military-style equipment, and *he led them with the specific plans to: split up into groups, attempt to break into the Capitol building from as many different points as possible* . . . .

ECF No. 17, pp. 10-11 (emphasis added).

In fact, when the government made that representation, it knew that Nordean's mobile phone was without power during the events of the Capitol intrusion. The absence of any communications from Nordean in the Telegram chats during the relevant time period is a further proof of this. None of the six Nordean messages concerns his agreement to do anything, much less commit a crime.

Third, the Court will also recall that on March 3 the government represented that Nordean should be detained pretrial because he was a "risk of flight" on account of a "fake passport" found in his bedroom. Nordean's opposition to the government's third detention motion showed why that claim, which the government has abandoned, was false. But the new Telegram messages show that, even as the government represented in Court that Nordean was

planning to flee the country, it possessed his chats showing that, as of three days before his arrest, he had plans to relocate to North Carolina:



Fourth, although the 1,500 pages of Telegram chats contain virtually no commentary from Nordean, they are littered with messages from other members of the group showing there was no plan or organization at all on January 6, much less a plan to commit the two federal offenses specified in the superseding indictment. All these chats are omitted from the indictment. The chats quoted in the indictment are selective and substantially misleading.

On January 5, for example, one member laments, "This is so unorganized! Where is our order?" To which another replies, "it's not a [Proud Boys] event. Why would there be orders?"



3

Consider when another member complained, on January 5, that the group has "No fuckin' plan either":



Or consider when yet another member inquired, late on January 5: "Ok you queers, what is the fucking plan?":



Similarly, another member of the chat lamented the lack of any "plan":

4



Or consider when a different member, on the morning of January 6 itself, said, "Lol. This is a mirror of the 12th. Exact same plan.":



The "12th" is a reference to a rally attended by members of the group in Washington, D.C., on December 12, 2020, which did not entail a "plan" to infiltrate Congress and commit crimes.  *Proud Boys, anti-Trump protestors tangle in DC as daytime rallies end*, New York Post, Dec. 12, 2020, available at: https://nypost.com/2020/12/12/proud-boys-anti-trump-protesters-tangle-in-dc-as-daytime-rallies-end/.

After the Capitol Building had been breached on January 6, members of the Telegram chats upon which the superseding indictment rests expressed surprise at the turn of events, plainly stating it was contrary to their expectation.  For example, one member posted an article in the Telegram chats reporting that the president had ordered the deployment of the National Guard.  Commenting on the article, the member said, "Ummm I don't think the plan was to attack[], damage, and attempt to control government building." He added, "I believe Trump is

5

saying FAFO." "FAFO" is an acronym for "Fuck around and find out."[1] In other words, this member of the group was opining that the president, for whom the group was present on January 6, was advising protestors that if they tried to damage the Capitol they would be crushed:



That member's surprise at the January 6 events was echoed by others, one of whom said it "was NOT what I expected to happen today . . All from us showing up and starting some chants and getting the normies all riled up":



---

[1] "FAFO" is roughly equivalent to Doc Holliday's line, "You're a daisy if you do," i.e., you're dead if you try it.

Another theme throughout the Telegram chats, which is carefully omitted from the superseding indictment, is that the members viewed their role on January 6 as a group that would thwart attacks on supporters of the president, not infiltrate the Capitol Building to commit crimes. Whether the group was in fact needed for that function is immaterial for purposes of weighing the indictment's claim of conspiracy. The key point is that this was how they viewed their purpose on January 6:



On March 22, CBS News aired and published an interview with the former acting U.S. Attorney of this district, Michael Sherwin, who led the investigation into the events at the Capitol on January 6. *See* Inside the Prosecution of the Capitol Rioters, CBS News, Mar. 22, 2021, available at: https://www.cbsnews.com/news/capitol-riot-investigation-sedition-charges-60-minutes-2021-03-21/. In the "60 Minutes" interview, Sherwin made several important disclosures concerning the superseding indictment's claim that the defendants in this case conspired long before January 6 to commit crimes inside the Capitol Building that day.

7

Among other questions, the former acting U.S. Attorney was asked, "Was there a premeditated plan to breach the Capitol?" The question was asked after the superseding indictment was filed in this case.  Former acting U.S. Attorney Sherwin replied, "That's what we're trying to determine right now." https://www.cbsnews.com/news/capitol-riot-investigation-sedition-charges-60-minutes-2021-03-21/. Of the Proud Boys, Sherwin admitted, "We don't know what the[ir] full plan [was]. . ." *Id.*

Evidence like the above-cited Telegram chats shows that the former acting U.S. Attorney, who personally participated in the protests as an observer, was telling the truth.  The government has charged a conspiracy without "know[ing] what the full plan [was]."  And that is quite similar to what Judge Mehta has repeatedly found in the government's other January 6 conspiracy cases involving the "Oath Keepers," cases with claims far more serious than those presented here.  *See U.S. v. Caldwell*, 21-cr-28, Mar. 12, 2021 (D.D.C. 2021) (releasing Oath Keepers' leader on strict conditions); *U.S. v. Crowl*, 21-cr-28, Mar. 26, 2021 (D.D.C. 2021) (releasing Oath Keepers' member); *U.S. v. Meggs*, 21-cr-28, Mar. 26, 2021 (D.D.C. 2021) (same).

### B. Two witnesses offer evidence inconsistent with the government's conspiracy theory

Attached to this notice are two sworn declarations.

**Michale Graves.**  The first is by Michale Graves, a singer-songwriter who formerly led the Misfits, a punk-rock band.  Decl. of Michale Graves, Exh. 1.  On January 5, Graves came to Washington, D.C., to perform music at a rally held by Latinos for Trump.  That day, Graves had conversations with Nordean in D.C.  Exh. 1, ¶ 3.  Nordean proposed that Graves perform for him and the fellow members of his group at a residence in D.C., which the Proud Boys rented through Airbnb.  Exh. 1, ¶ 4.

8

Nordean's original proposal was that Graves perform at the Airbnb residence on the evening of January 5. However, that proposal did not end up panning out. Nordean then proposed that Graves perform at the D.C. residence on the afternoon of January 6. Exh. 1, ¶ 4.

Given the timing of Grave's performance for Latinos for Trump, Nordean's proposal that the singer perform at the Proud Boys' Airbnb residence on January 6 would imply that Graves likely would have arrived there at approximately 3-4 p.m., had the events of January 6 at the Capitol not transpired. Exh. 1, ¶ 5.

**Arturo Santaella**. The second declaration is by Arturo Santaella. Santaella is the manager for Michale Graves. Declaration of Arturo Santaella, Exh. 2. He independently corroborates the sworn statement of Graves concerning Nordean's proposal that the singer perform at the Proud Boys' Airbnb in the afternoon of January 6. Exh. 2, ¶¶ 4-5.

The import of these witness statements is clear. The superseding indictment charges that, no later than two days following the 2020 presidential election, the defendants conspired to commit violations of 18 U.S.C. §§ 1512(c)(2) and 231(a)(3) during the protests at the Capitol Building the following year, on January 6, 2021. First Superseding Indictment, ¶¶ 42-68. The indictment alleges that the defendants breached the Capitol at approximately 2:13 p.m. *Id.*, ¶ 20. The government charges that the defendants planned to breach the Capitol at that time and to assume control of Congress. *Id.*, ¶ 27.

By contrast, these witnesses swear that, on January 5 and January 6 itself, Nordean proposed a plan to listen to music at an Airbnb residence in the early afternoon on January 6. Exhs. 1, 2. Unless it is claimed that the defendants had a plan to topple the world's most powerful government in approximately one hour or less (without any weapons), immediately

leave the scene without any law enforcement concern, and then throw a carefree music party blocks from the scene of the world-historical crime, both of these contentions cannot be true.

  **C.**  **Nordean's Probation Officer confirms he remains in compliance with his strict conditions of release**

In his opposition to the government's third detention motion, Nordean attached a statement from Ben Beetham, the U.S. Probation Officer supervising his pretrial release on strict conditions. ECF No. 32-1. Attached to this notice is an updated statement from Probation Officer Beetham, which confirms that Nordean remains in compliance with the strict conditions of his release, as of the date of the filing of this notice. Exh. 3.

Dated: March 29, 2021        Respectfully submitted.

                 */s/ David B. Smith*
                 David B. Smith (D.C. Bar No. 403068)
                 108 N. Alfred St.
                 Alexandria, VA 22314
                 Phone:(703)548-8911
                 Fax:(703)548-8935
                 dbs@davidbsmithpllc.com

                 Nicholas D. Smith (D.C. Bar No. 1029802)
                 7 East 20th Street
                 New York, NY 10003
                 Phone: (917) 902-3869

**Certificate of Service**

I hereby certify that on the 29th day of March, 2021, I filed the foregoing notice with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following CM/ECF user(s):

  Jim Nelson
  Assistant United States Attorney
  555 4th Street, N.W., Room 4408
  Washington, D.C. 20530
  (202) 252-7846

And I hereby certify that I have mailed the document by United States mail, first class postage prepaid, to the following non-CM/ECF participant(s), addressed as follows: [none].

*/s/ David B. Smith*
David B. Smith, D.C. Bar No. 403068
David B. Smith, PLLC
108 North Alfred Street, 1st FL
Alexandria, Virginia 22314
(703) 548-8911 / Fax (703) 548-8935
dbs@davidbsmithpllc.com
*Appointed by the Court*
