## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 21-CR-175 (TJK) |
| | : | |
| ETHAN NORDEAN, | : | |
| JOSEPH BIGGS, | : | |
| ZACHARY REHL, and | : | |
| CHARLES DONOHOE, | : | |
| | : | |
| | : | |
| Defendants. | : | |

## UNITED STATES' REPLY TO THE DEFENDANTS' RESPONSES TO THE UNITED STATES' SUPPLEMENTAL BRIEF ON 18 U.S.C. § 1512(c)(2)

**ARGUMENT**

I.  **How to define the term "corruptly" in 18 U.S.C. § 1512(c)(2) is a question for jury instructions.**

One of the statutes with which Defendants are charged, 18 U.S.C. § 1512(c)(2), applies to an individual who "corruptly . . . obstructs, impedes, or influences any official proceeding."  The Court's docket order requesting supplemental briefing principally directed the parties to address how best to define the term "corruptly" for purposes of Section 1512(c)(2).  *See* Minute Order (Nov. 3, 2021) (asking whether "corruptly" should be interpreted to mean acting "with the intent to secure an unlawful advantage or benefit for one's self or for another," and if the term "corruptly" includes acting "wrongfully," how to interpret "wrongfully").  Determining the most appropriate interpretation of "corruptly" in Defendants' case is not necessary or appropriate to dispose of the Defendants' motions to dismiss.  Instead, it is a question properly resolved in the jury instructions.

Postponing the interpretive questions posed by the Court until jury instructions is consistent with how courts have addressed similar definitional issues.  How best to interpret "willfully" can pose a "hard interpretive conundrum."  *United States v. Smukler*, 991 F.3d 472, 483 (3d Cir. 2021) (quoting *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019)).  Like the term "corruptly," *see* ECF 224, at 6-7 & 7 n.2, the term "willfully" is a "word of many meanings" whose definition is "dependent on the context in which it appears."  *Bryan v. United States*, 524 U.S. 184, 191, (1998).  It can distinguish "deliberate" from "unwitting conduct," *id.*, but in some contexts (such as tax prosecutions) the jury "must find that the defendant was aware of the specific provision of the [statute] that he was charged with violating."  *Id.* at 194 (citing *Cheek v. United States*, 498 U.S. 192, 201 (1991)).  In *Smukler*, the Third Circuit surveyed potential definitions when considering whether the district court had properly instructed the jury in a case involving false statements in documents submitted to the Federal Election Commission.  *See* 991 F.3d at 485-87; *see Arthur*

*Andersen LLP v. United States*, 544 U.S. 696, 707-08 (2005) (considering the intepretation of "knowingly corruptly" in 18 U.S.C. § 1512(b) as defined in the jury instructions).

The same approach is appropriate here.  To determine whether Defendants obstructed the Certification of the Electoral College vote ("Certification proceeding") with the necessary *mens rea* requires assessing not bare allegations in an indictment, but the full panoply of Defendants' actions leading up to and on January 6.  While "it may be difficult in some cases to determine whether these clear requirements have been met," "'courts and juries every day pass upon knowledge, belief and intent—the state of men's minds—having before them no more than evidence of their words and conduct, from which, in ordinary human experience, mental condition may be inferred.'"  *United States v. Williams*, 553 U.S. 285, 306 (2008) (quoting *American Communications Ass'n, CIO v. Douds*, 339 U.S. 382, 411 (1950)).  To be sure, pretrial clarity on how the Court intends to instruct the jury on "corruptly" could focus the parties' trial presentation.[1]  But any disagreement over the precise contours of "corruptly" as used in Section 1512(c)(2) provides no basis for dismissing the indictment.

Defendants' arguments to the contrary lack merit.  Defendant Nordean's argument (Br. 2)—that dismissal at this juncture would "avoid" a "long" and "expensive" trial that will conclude with a "defective verdict"—rests on the faulty premise that the "charges" against Defendants "plainly" do not satisfy the "corruptly" definition.  As just noted, the operative question is not whether the "charges" establish that Defendants acted with corrupt intent, but whether the trial evidence does.  Additionally, his contention (Br. 20) that the government "cannot, or will not, try its case without" its proposed interpretation is incorrect.  Although the improper-advantage theory

---

[1] To that end, Section IV, *infra*, supplies a proposed instruction defining the term "corruptly" as used in Section 1512(c)(2).

that Defendants advocate is inconsistent with case law interpreting "corruptly" as used in Section 1512(c)(2) and how the term is defined in 18 U.S.C. § 1505, which covers some types of congressional obstruction, *see* ECF 224, at 5-10, the government stands ready to proceed to trial if the Court nonetheless provides the improper-advantage theory to the jury.

Defendant Nordean is mistaken when he invokes (Br. 18-19) the possibility of a constructive amendment. A constructive amendment occurs when the admission of evidence or the jury instructions have the effect of modifying the essential elements of the indicted offense, so that a jury may convict on a crime other than that charged in the indictment. *See* 3 Charles Alan Wright & Sarah N. Welling, *Federal Practice and Procedure* § 516, at 48-49 (4th ed. 2011) ("[A] constructive amendment involves a difference between the pleading and proof so great that it essentially changes the charge."); *United States v. Lee*, 833 F.3d 56, 70 (2d Cir. 2016) ("[A] constructive amendment occurs where the government introduces proof of a complex of facts distinctly different from that charged by the grand jury.") (cleaned up).  Disagreement over how to define "corruptly" simply does not implicate the type of change to a factual theory of proof at issue in *Stirone v. United States*, 361 U.S. 212, 217-18 (1960), and its progeny.  And, in any event, nothing precludes Defendants from raising such a claim post-trial.

Defendant Rehl (Br. 12-14, 16-17) argues that dismissal is appropriate as to his case because his alleged conduct is different from others or shielded from prosecution under First Amendment law.  Those arguments fail on their own terms.  Because he is charged in a conspiracy, Defendant Rehl is responsible for the reasonably foreseeable conduct of his coconspirators.  *See Pinkerton v. United States*, 328 U.S. 640, 647 (1946).  And the First Amendment "does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent." *Wisconsin v. Mitchell*, 508 U.S. 476, 489 (1993).  Indeed, "[e]vidence of a defendant's previous

declarations or statements is commonly admitted in criminal trials subject to evidentiary rules dealing with relevancy, reliability, and the like." *Id.*  But the arguments suffer a larger flaw, namely, that the charging language and factual allegations in the First Superseding Indictment sufficiently "apprise the defendants of the essential elements of the offense with which they are charged." *United States v. Haldeman*, 559 F.2d 31, 124 (D.C. Cir. 1976) (en banc) (per curiam). No more is needed at this stage in the litigation.[2]

## II.   Defendants provide no compelling reason to deviate from the standard definition for "corruptly" as used in Section 1512(c)(2).

Courts interpreting the term "corruptly" as used in Section 1512(c) have consistently understood it to require proof beyond a reasonable doubt that the defendant acted (1) with intent to obstruct, impede, or influence; and (2) wrongfully, *i.e.*, with consciousness of wrongdoing.  *See* ECF 224, at 5.  Defendants identify no case involving Section 1512(c) or congressional obstruction prosecuted under another statute that applies the improper-advantage theory they advocate.  Nor do they offer any compelling reason to deviate from that consistent definition in this case.

Defendant Nordean (Br. 4-5) argues that Section 1512(c) cases interpreting "corruptly" should be ignored because they involve a judicial, not a congressional, proceeding.[3]  That argument conflates the statute's *mens rea* and *actus reus* requirements.  Section 1512(c)(2)'s *actus reus* is conduct that obstructs, impedes, or influences a congressionally defined official proceeding.

---

[2] Defendant Nordean purports to argue (Br. 17-21) that the allegations in the indictment as to him are insufficient to state an offense, but in fact ultimately argues that the government's proposed interpretation is "unconstitutionally vague." *Id.* at 21.  That argument fails for the reasons given *infra*, at XX-XX.

[3] Defendant Nordean also suggests (Br. 6) that focusing on cases interpreting "corruptly" as used in Section 1512(c) "[a]rbitrarily limits the field of vision."  But the Court asked about the "appropriate definition of 'corruptly' *as the word is used in Section 1512(c)*."  Minute Order (emphasis added).  There is nothing arbitrary about focusing on how cases have interpreted the term "corruptly" in the very statute with which Defendants are charged.

*See* 18 U.S.C. § 1512(c)(2); 18 U.S.C. § 1515(a)(1).  Defendant Nordean identifies no case holding that the proper interpretation of "corruptly" for purposes of Section 1512(c) turns on whether the obstructed official proceeding is, for example, a grand jury investigation, *United States v. Martinez*, 862 F.3d 223, 238 (2d Cir. 2017), a forfeiture proceeding, *United States v. Friske*, 640 F.3d 1288, 1291 (11th Cir. 2011), or (as here) a congressional proceeding.  Because Section 1512(c)(2)'s "corruptly" *mens rea* takes account of the defendant's state of mind—his "knowledge, belief and intent," *Williams*, 553 U.S. at 306—it does not matter what sort of proceeding the defendant's conduct targets.  Just as one court substituted the term "forfeiture proceeding" for "administration of justice" without altering the standard interpretation of "corruptly," *see Friske*, 640 F.3d at 1292, so too here should the Court use the term "Certification proceeding" or "congressional proceeding" without deviating from the standard "corruptly" interpretation.

Relatedly, Defendant Nordean repeatedly suggests (Br. 3, 5-6, 8) that because obstructing a judicial proceeding or an investigation is "corrupt per se" (Br. 8), the definition of "corruptly" as acting wrongfully with the intent to obstruct would be appropriate in that context alone.  But lawyers regularly act with intent to obstruct or impede by, for example, urging their clients not to disclose documents to investigators or in response to a grand jury subpoena.  *See Arthur Andersen*, 544 U.S. at 704.  That conduct, far from "corrupt per se," does not violate Section 1512(c)(2) unless the lawyer acts corruptly, namely in a manner "normally associated with wrongful, immoral, depraved, or evil."[4]  *Id.* at 705.  The same is true with individuals—such as Defendants— who seek to obstruct or impede a congressional proceeding.

---

[4] Defendant Nordean claims (Br. 5 n.2) that the Supreme Court in *Andersen* did not define the term "corruptly."  That is incorrect.  In construing the phrase "knowingly corruptly" in 18 U.S.C. § 1512(b), the Supreme Court interpreted "corruptly" by reference to legal and nonlegal

To argue that "corruptly" when used in a prosecution involving congressional obstruction should be interpreted as requiring an improper advantage, Defendant Nordean relies entirely (Br. 6-9) on *United States v. Reeves*, 752 F.2d 995 (5th Cir. 1985), a tax obstruction case under 26 U.S.C. § 7212(a).  As explained in the government's supplemental brief, courts have applied the improper-advantage interpretation in Section 7212(a) cases consistent with the more demanding *mens rea* requirements in the criminal tax context.  *See* ECF 224, at 6-7.  And the *Reeves* court acknowledged that its interpretive task was to discern "what 'corruptly' means in this context," namely, "obstructing the tax laws."   752 F.2d at 998; *see id.* at 998-99 (questioning whether interpreting "corruptly" to mean "'with improper motive or bad or evil purpose' is an accurate interpretation of the meaning of the word *as it is used in section 7212(a)*") (emphasis added).  The Fifth Circuit's post-*Reeves* case law has not applied *Reeves*'s reasoning to Section 1512(c), opting instead for the standard definition of "corruptly" described above.  *See United States v. Delgado*, 984 F.3d 435, 452 (5th Cir. 2021) (interpreting Section 1512(c)(2)); *United States v. Bedoy*, 827 F.3d 495, 510 (5th Cir. 2016) (interpreting Section 1512(c)(1)).  Moreover, the concerns the Fifth Circuit in *Reeves* articulated about potential constitutional vagueness in Section 1503, *see Reeves*, 752 F.2d at 999, predated the Supreme Court's decision in *United States v. Aguilar*, 515 U.S. 593 (1995), which "exercised restraint in assessing the reach" of Section 1503, *id.* at 600, by imposing a nexus requirement, *id.* at 599.  A nexus requirement similarly limits Section 1512(c)(2)'s reach. *See United States v. Young*, 916 F.3d 368, 386 (4th Cir. 2019); *United States v. Ring*, 628 F. Supp. 2d 195, 223 (D.D.C. 2009).

---

dictionaries.  *See* 544 U.S. at 705.  This Court should rely on that definition in instructing the jury here.

Defendants thus offer no case or other compelling reason to deviate from the interpretation of "corruptly" consistently used in Section 1512(c)(2).  As explained in the government's supplemental brief, *see* ECF 224, at 9, that interpretation largely parallels the statutory definition for "corruptly" used in Section 1505, which, like Section 1512(c)(2), covers congressional obstruction. *See* 18 U.S.C. § 1515(b) (defining "corruptly" for purposes of Section 1505 as "acting with an improper purpose, personally or by influencing another, including making a false or misleading statement, or withholding, concealing, altering, or destroying a document or other information").  If Congress enacted a "corruptly" definition for congressional obstruction in Section 1505 that largely tracks the standard interpretation for that term in Section 1512(c)(2), Defendants nowhere explain why applying that standard interpretation for congressional obstruction prosecuted under Section 1512(c)(2) is improper.

Unable to muster any case that applies the improper-advantage interpretation of "corruptly" to Section 1512(c) or any other congressional obstruction prosecution, Defendant Nordean resorts (Br. 11-14) to hypotheticals and comparisons to other Capitol breach defendants.  As an initial matter, it is unclear how hypotheticals or comparisons to other cases is relevant to defining "corruptly" for purposes of defendants (such as Defendants here) charged with Section 1512(c)(2). Any uncertainty about how to guide the jury's consideration of the "corruptly" element *in this case* (and in other cases charging Section 1512(c)(2)) can be resolved through a more detailed jury instruction.  For example, the government's proposed instruction below (*see infra*, Section IV) distinguishes between a political activist whose efforts to lobby and influence evinces an intent to obstruct but not corrupt intent, and an activist who seeks to obstruct a proceeding and does so corruptly by, for example, offering illegal bribes, engaging in violence, committing fraud, or engaging in other independently unlawful conduct. *See United States v. North*, 910 F.2d 843, 883

(D.C. Cir. 1990) *withdrawn and superseded in part by United States v. North*, 920 F.2d 940 (D.C. Cir. 1990); *see also* Nordean Br. 10 (quoting similar language from *North*). Such an instruction would make clear that the "firearms lobbyist" and the "former politician" (Nordean Br. 11-12)— neither of whom makes an appearance in Defendants' case—fall outside the scope of Section 1512(c)(2).

### III. The legislatively overruled as-applied constitutional vagueness holding in *Poindexter* has no application here.

Defendant Nordean insists (Br. 14-17) that the D.C. Circuit's decision in *United States v. Poindexter*, 951 F.2d 369 (D.C. Cir. 1991), both "binds this Court" (Br. 14) and implies that the government's proposed definition of "corruptly" is unconstitutionally vague. That is incorrect.

1. Start with the claim that *Poindexter* binds this Court. *Poindexter* interpreted the term "corruptly" in a different statute, 18 U.S.C. § 1505, at a time when Congress had not yet enacted Section 1512(c)(2), the statute at issue here. *Poindexter* expressly refrained from adopting the improper-advantage interpretation of "corruptly" that Defendants now advocate. *Poindexter*, 951 F.2d at 385-86 (quoting *North*, 910 F.2d at 881-82). Five years later, Congress then legislatively overruled *Poindexter* by defining "corruptly" for purposes of Section 1505 not by adopting the improper-advantage theory, but instead legislating a definition of "corruptly" that resembles the standard interpretation of that term in Section 1512(c)(2). *See* 18 U.S.C. § 1515(b).[5] And nearly 15 years after *Poindexter*, the Supreme Court in *Arthur Andersen* implied that "corruptly" as used

---

[5] Defendant Nordean (Br. 16) disputes that Congress enacted Section 1515(b) to overrule *Poindexter*. Senator Bryan noted that the bill that became the False Statements Accountability Act of 1996, Pub. L. No. 104-292, 110 Stat. 3459 (codified as Section 1515(b)) "would correct the [*Poindexter*] court's nonsensical interpretation of Section 1505." *See* 142 Cong. Rec. 25,468 (1996).

in Section 1512 was not vague. *See* 544 U.S. at 705. In short, neither *Poindexter*'s reasoning nor its holding binds this Court.

2. The unconstitutional vagueness arguments that Defendants suggest (Nordean Br. 16-17) or advance (Rehl Br. 9-12) fare no better. The Due Process Clauses of the Fifth and Fourteenth Amendments prohibit the government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amends. V, XIV. An outgrowth of the Due Process Clause, the "void for vagueness" doctrine prevents the enforcement of a criminal statute that is "so vague that it fails to give ordinary people fair notice of the conduct it punishes" or is "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). To ensure fair notice, "'[g]enerally, a legislature need do nothing more than enact and publish the law, and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply.'" *United States v. Bronstein*, 849 F.3d 1101, 1107 (D.C. Cir. 2017) (quoting *Texaco, Inc. v. Short*, 454 U.S. 516, 532 (1982)). To avoid arbitrary enforcement, the law must not "vest[] virtually complete discretion" in the government "to determine whether the suspect has [violated] the statute." *Kolender v. Lawson*, 461 U.S. 352, 358 (1983).

A statute is not unconstitutionally vague simply because its applicability is unclear at the margins, *Williams*, 553 U.S. at 306, or because a reasonable jurist might disagree on where to draw the line between lawful and unlawful conduct in particular circumstances, *Skilling v. United States*, 561 U.S. 358, 403 (2010). "'Even trained lawyers may find it necessary to consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty what some statutes may compel or forbid.'" *Bronstein*, 849 F.3d at 1107 (quoting *Rose v. Locke*, 423 U.S. 48, 50 (1975) (per curiam)). Rather, a provision is impermissibly vague only if it requires proof of an "incriminating fact" that is so indeterminate as to invite arbitrary and "wholly subjective"

application.  *Williams*, 553 U.S. at 306; *see Smith v. Goguen*, 415 U.S. 566, 578 (1974).  The "touchstone" of vagueness analysis "is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal."  *United States v. Lanier*, 520 U.S. 259, 267 (1997).

A statutory provision is therefore "not rendered unconstitutionally vague because it 'do[es] not mean the same thing to all people, all the time, everywhere.'"  *Bronstein*, 849 F.3d at 1107 (quoting *Roth v. United States*, 354 U.S. 476, 491 (1957)).  A statute is instead vague where it fails to specify any "standard of conduct . . . at all."  *Coates v. Cincinnati*, 402 U.S. 611, 614 (1971). "As a general matter," however, a law is not constitutionally vague where it "call[s] for the application of a qualitative standard . . . to real-world conduct; 'the law is full of instances where a man's fate depends on his estimating rightly . . . some matter of degree.'"  *Johnson*, 576 U.S. at 603-04 (quoting *Nash v. United States*, 229 U.S. 373, 377 (1913)).

a.  Defendants fail to overcome the strong presumption that Section 1512(c)(2) passes constitutional muster.  *See United States v. Nat'l Dairy Products Corp.*, 372 U.S. 29, 32 (1963) ("The strong presumptive validity that attaches to an Act of Congress has led this Court to hold many times that statutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language.").  Section 1512(c)(2) does not tie criminal culpability to "wholly subjective" terms such as "annoying" or "indecent" that are bereft of "narrowing context" or "settled legal meanings," *Williams*, 553 U.S. at 306, nor does it require application of a legal standard to an "idealized ordinary case of the crime," *Johnson*, 576 U.S. at 604.  Section 1512(c)(2)'s prohibition on "corruptly . . . obstruct[ing], influenc[ing], or imped[ing]" an "official proceeding" gives rise to "no such indeterminacy." *Williams*, 553 U.S. at 306.  The statute requires that a defendant, acting with consciousness of

wrongdoing and intent to obstruct, attempts to or does undermine or interfere with a statutorily defined official proceeding.

b.  Defendants' more targeted attack on "corruptly," relying on *United States v. Poindexter*, *supra*, is equally unavailing.  As noted above, the D.C. Circuit in *Poindexter* held that the term "corruptly" was "vague . . . in the absence of some narrowing gloss."  951 F.2d at 378.  In addition to not "binding" this Court, *see supra*, at XX, *Poindexter* is inapposite for three reasons.

First, the D.C. Circuit narrowly confined *Poindexter*'s analysis to Section 1505's use of "corruptly," and expressly declined to hold "that term unconstitutionally vague as applied to all conduct."  951 F.2d at 385.  Five years later, in *United States v. Morrison*, 98 F.3d 619 (D.C. Cir. 1996), the D.C. Circuit rejected a *Poindexter*-based vagueness challenge to 18 U.S.C. § 1512(b) and affirmed the conviction of a defendant for "corruptly" influencing the testimony of a potential witness at trial.  *Id*. at 629-30.  Other courts have similarly recognized "the narrow reasoning used in *Poindexter*" and "cabined that vagueness holding to its unusual circumstances."  *United States v. Edwards*, 869 F.3d 490, 502 (7th Cir. 2017); *see also, e.g*., *United States v. Kelly*, 147 F.3d 172, 176 (2d Cir. 1998) (rejecting vagueness challenge to "corruptly" in 26 U.S.C. § 7212(a)); *United States v. Shotts*, 145 F.3d 1289, 1300 (11th Cir. 1998) (same for 18 U.S.C. § 1512(b)); *United States v. Brenson*, 104 F.3d 1267, 1280 (11th Cir. 1997) (same for 18 U.S.C. § 1503).  The defendants' invocation of *Poindexter* accordingly fails to establish that Section 1512(c) suffers the same constitutional indeterminacy.

Second (and as noted above), *Poindexter* predated the Supreme Court's decision in *Arthur Andersen LLP v. United States*, 544 U.S. 696.  There, the Court explained the terms "'[c]orrupt" and 'corruptly' are normally associated with wrongful, immoral, depraved, or evil."  *Id*. at 705 (citation omitted).  In doing so, the Court "did not imply that the term was too vague."  *Edwards*,

869 F.3d at 502.  Third, courts have encountered little difficulty when addressing "corruptly" in Section 1512(c)(2) following *Arthur Andersen*.  *See* ECF 224, at 5.  Such efforts demonstrate that the statute's "corruptly" element does not invite arbitrary or wholly subjective application by either courts or juries.[6]

## IV.    Draft Jury Instruction on "corruptly" for Section 1512(c)(2)

### <u>OBSTRUCTION OF JUSTICE OF AN OFFICIAL PROCEEDING – DEFINITION OF CORRUPTLY</u>

From: Seventh Circuit Pattern Criminal Jury Instructions; *Arthur Andersen LLP v. United States*, 544 U.S. 696, 706 (2005); *United States v. Gordon*, 710 F.3d 1124, 1151 (10th Cir. 2013); *United States v. Friske*, 640 F.3d 1288, 1291 (11th Cir. 2011); *United States v. Watters*, 717 F.3d 733, 735 (9th Cir. 2013); *United States v. North,* 910 F.2d 843, 883 (D.C. Cir. 1990), *withdrawn and superseded in part by United States v. North*, 920 F.2d 940 (D.C. Cir. 1990); *United States v. Cervantes*, No. 16-10508, 2021 WL 2666684, at *6 (9th Cir. June 29, 2021).

A person acts "corruptly" if he or she acts knowingly, with intent to obstruct or impede an official proceeding, and with consciousness of wrongdoing.   "Consciousness of wrongdoing" means that the person understands or is aware that what he or she is doing is wrong, immoral, depraved, or evil.

Not all attempts to obstruct or impede an official proceeding involve acting corruptly.  For example, a political activist might call a representative in Congress and threaten to oppose his reelection and peacefully protest the representative in public spaces unless the representative votes in a congressional proceeding against taking action that the activist believes to be a waste of taxpayer money.  The activist is acting with the intent to obstruct or impede the proceeding but is

---

[6] At the end of his brief, Defendant Nordean injects an argument (Br. 21-23) about his motion for bond and to reopen bail proceedings. That issue has no relationship to the questions the Court asked the parties to brief.

13

not necessarily doing so corruptly.[7]  By contrast, a political activist who obstructs or impedes a congressional proceeding by engaging in conduct such as offering illegal bribes, engaging in violence, committing fraud, or other independently unlawful conduct, is acting corruptly.

## CONCLUSION

For the reasons given here and in the government's other response briefs, the Court should deny Defendants' dismissal motion.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052

By:      /s/ Luke M. Jones
LUKE M. JONES, VA Bar No. 75053
ERIK M. KENERSON, OH Bar No. 82960
JASON B.A. MCCULLOUGH
D.C. Bar No. 998006; NY Bar No. 4544953
Assistant United States Attorneys
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-7066
Luke.Jones@usdoj.gov

/s/ James I. Pearce
James I. Pearce
Capitol Breach Appellate Coordinator
United States Attorney's Office
NC Bar No. 44691
555 Fourth Street, N.W.
Washington, DC 20530
(202) 532-4991
James.Pearce@usdoj.gov

---

[7] This example is derived from *United States v. North*, 910 F.2d 843, 883 (D.C. Cir. 1990) *withdrawn and superseded in part by United States v. North*, 920 F.2d 940 (D.C. Cir. 1990).