**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **21-CR-175 (TJK)** |
| | : | |
| **ETHAN NORDEAN,** | : | |
| also known as "Rufio Panman," | : | |
| | : | |
| **JOSEPH BIGGS,** | : | |
| | : | |
| **ZACHARY REHL,** | : | |
| | : | |
| **CHARLES DONOHOE,** | : | |
| | : | |
| **ENRIQUE TARRIO,** | : | |
| also known as "Henry Tarrio," | : | |
| | : | |
| **DOMINIC PEZZOLA,** | : | |
| also known as "Spaz," | : | |
| also known as "Spazzo," | : | |
| also known as "Spazzolini," | : | |
| | : | |
| **Defendants.** | : | |

**MOTION TO VACATE TRIAL DATE AND**
**TO EXCLUDE TIME UNDER THE SPEEDY TRIAL ACT**

The United States of America, by and through the United States Attorney for the District of Columbia, respectfully moves the Court to vacate the May 18, 2022, trial date in this case. On March 7, 2022, the grand jury returned a superseding indictment, the second superseding indictment, which added two defendants and, for the previously charged defendants, several new charges. On March 9, 2022, the Court issued a Minute Order vacating the existing pretrial motions briefing schedule. For the reasons set forth below, the government asserts that a continuance of the existing trial date is warranted and in the interest of justice. The government

submits that a new trial date should be set after all defendants and their counsel are before this Court and can apprise the Court of their positions and availability.

The government has conferred with counsel for the defendants. Counsel for both defendant Tarrio and Pezzola have indicated that they will not be ready to proceed to trial in May 2022, and will request a later trial date.  As of filing, counsel for defendant Nordean has not expressed a position to the government (government counsel understands that counsel for Nordean is currently in trial on another matter).  Counsel for the remaining defendants oppose a continuance of the trial date.

## BACKGROUND

### *Second Superseding Indictment*

On March 7, 2022, a grand jury returned the second superseding indictment, ECF 305, which was unsealed the following day.  The indictment added two new defendants:  Enrique Tarrio, who was not previously charged in connection with the events of January 6, 2022; and Dominic Pezzola, who was previously charged in a related case pending before this Court (21-cr-52).  This Court previously ordered defendant Pezzola's pre-trial detention, and he remains detained.

Defendant Tarrio was arrested in Miami, Florida, on March 8, 2022.  He made his initial appearance in Miami that day.   A detention hearing was conducted on March 15, 2022, by Soutern District of Florida Magistrate Judge Lauren Louis, who found that there were no conditions sufficient to protect the community and ordered that defendant Tarrio be detained pending trial. Defendant Tarrio has not sought review of that finding by this Court.

The second superseding indictment differs from the prior indictment in the following ways.

It charges all six defendants with conspiracy to obstruct an official proceeding, in violation of 18 U.S.C. § 1512(k) (a new charge); obstruction of an official proceeding and aiding and abetting, in violation of 18 U.S.C. § 1512(c)(2), 2; obstruction of law enforcement during civil disorder and aiding and abetting, in violation of 18 U.S.C. § 231(a)(3), 2; destruction of government property and aiding and abetting, in violation of 18 U.S.C. § 1361, 2 (including an additional count); and assaulting, resisting, or impeding certain officers, in violation of 18 U.S.C. § 111(a)(1) (a new charge with two counts).   The indictment also charges defendant Dominic Pezzola with robbery of personal property of the United States, in violation of 18 U.S.C. § 2112 (previously charged against Pezzola but a new charge in this case).

The second superseding indictment is based, in large part, on evidence recently obtained by the government as a result of the FBI's ongoing and diligent investigation in this case.   The indictment contains new factual allegations, particularly with respect to Tarrio's role as a leader of the conspiracy.   In the weeks leading up to January 6, 2021, Tarrio spearheaded a conspiracy to corruptly obstruct, influence, and impede the Certification of the Electoral College Vote resulting from the 2020 Presidential Election. Beginning on December 20, 2020, Tarrio created a new chapter for the Proud Boys, referred to as the Ministry of Self Defense or MOSD ("MOSD"). Tarrio described the MOSD as a "national rally planning" chapter that would include only "hand selected members."   Tarrio and the other MOSD leaders (which include defendants Nordean, Biggs, Rehl, and Donohoe) imposed a command-and-control structure on this new chapter, which ensured that those Proud Boys who came to Washington, D.C. on January 6 would follow the MOSD leaders' commands.

The objective, as it developed in the weeks leading up to January 6, focused on the Capitol.

3

On January 3, an MOSD leader stated "the main operating theater should be out in front of the house of representatives.   It should be out in front of the Capitol building. That's where the vote is taking place and all of the objections."   Tarrio understood this to be the criminal objective, stating on January 4, "I didn't hear this voice note until now, you want to storm the Capitol."

On January 6, Tarrio's men—including MOSD leaders Nordean, Biggs, Rehl, and Donohoe, and the hand-selected members of the MOSD—were at the front of the crowd that unlawfully breached the Capitol grounds and overran police lines meant to protect the Capitol and its occupants. Co-conspirator Dominic Pezzola was the first person to physically breach the Capitol when he used a stolen Capitol Police riot shield to break a window adjacent to the Senate Wing Door, which allowed the first members of the mob to breach the interior of the Capitol at 2:13 p.m.   The certification of the Electoral College vote was almost immediately halted.

Tarrio was not physically present at the Capitol on January 6. On January 4, he was arrested in Washington, D.C., for his December 12 burning of a "#BLACKLIVESMATTER banner. He was detained briefly, and upon his release on January 5, he was ordered to leave the District of Columbia.   Tarrio nonetheless continued to exercise command and control over the MOSD, whose leaders on the ground sought Tarrio's approval of the plan for January 6 later that evening. As the riot unfolded on January 6, Tarrio claimed credit for the scenes unfolding in and around the Capitol, posting a message on his social media account at 2:38 p.m. that read, "Don't fucking leave," and celebrated the success of the conspiracy in an encrypted chat for a small group of Proud Boys leadership, stating "Make no mistake…" and then "We did this…"

Given defendant Tarrio's central role in the allegations in this case, and defendant Pezzola's defining role as the first individual to breach the Capitol building itself, the interests of

justice require that they be tried jointly with the other defendants in this case.   Counsel for both defendant Tarrio and Pezzola have indicated that they will not be ready to proceed to trial in May 2022, which counsels in favor of continuing the May trial date.   In addition, all defendants will require time to review and analyze the recently discovered evidence that forms the basis for the second superseding indictment.   A continuance of the currently scheduled trial date is therefore necessary to ensure a fair trial for all parties.

### *Case-Specific and Cross Discovery Materials*

Throughout the pendency of this case, the government has made significant efforts to provide counsel and the defendants with the materials relevant to the charges against them and to the preparation of their defense.   "Case-specific" discovery principally has included materials obtained from the FBI's case files regarding the investigation of each defendant—for example, materials obtained through the execution of search warrants, the issuance of grand jury subpoenas, and documentation of the FBI's review and analysis of that information.   Given the overlap in evidence relating to other individuals and those charged in this case, the government has made a concerted effort to produce "cross discovery"—that is, material obtained in other cases that is potentially relevant to the defendants in this case.   The volume of case-specific and cross discovery provided by the government to date includes multiple terabytes of material that has been provided through dozens of productions.

In addition to the newly discovered evidence that provided the basis, in part, for the second superseding indictment, the government also executed several additional search warrants contemporaneously with the arrest of Tarrio.   As a result of these warrants, the government has obtained additional information and devices, and the FBI is moving expeditiously to assess that

information and examine those devices.   Because those devices were just recovered, the government is not in a position to estimate the volume of relevant evidence that will be identified. It is the FBI's goal, however, that these devices can be accessed and reviewed, and that relevant materials will be made available to defense counsel within 60 to 90 days.

### *Global Discovery*

On February 10, 2022, the government filed a memorandum regarding the status of "global discovery," that is, the government's ongoing production to all defense teams of voluminous data collected by the government in relation to the events of January 6, 2021.   ECF. 290.   As the government noted in that filing, the data being made available through that effort far exceeds the information to which any defendant is entitled, but the government is nonetheless endeavoring to provide that data in light of the unprecedented nature of the events of January 6, 2021—that is, hundreds of similar crimes being committed in the same place contemporaneously *Id.* at 2.

To date, these materials include tens of thousands of hours of surveillance video, body-worn camera footage, and public source video; information and data from tens of thousands of tips provided to the Federal Bureau of Investigation ("FBI") and local police departments; hundreds of internal investigation reports into the conduct of law enforcement on January 6, 2021; hundreds of thousands of FBI reports documenting the investigation of all subjects identified as playing a role in the breach of the Capitol; and data seized pursuant to legal process or consent from thousands of digital devices and other digital accounts of those who participated in the Capitol Breach.   As defendants are in a better position to determine what evidence they believe is material to their defense, the government's plan—to provide the defense with all data that may contain such information, but in a manner that will facilitate search, retrieval, sorting, and management of that

information—continues to be reasonable and appropriate.

As the government's February 10, 2022, memorandum stated, the government developed a short-term discovery plan to enable certain trials to proceed before the global discovery plan is substantially complete.   ECF 290 at 17.   The government noted, however, that he short-term plan outlined in the filing would not be feasible for complex cases like this one.   *Id.*   The government anticipates filing a further status memorandum in the near future.

### *Third Superseding Indictment*

As explained above, the government continues to investigate and identify evidence relevant to the six defendants charged in the second superseding indictment.   The government anticipates that, based in part on evidence seized on March 8, 2022, it may seek to charge several additional defendants and/or seek to add new charges.   The government expects that any such superseding indictment would issue prior to May 20, 2022.

### ARGUMENT

As a multi-defendant conspiracy case, this case is undoubtedly more complex than most of the criminal cases brought against U.S. Capitol rioters.   And, as described above, evidence gathered during the pendency of the case led to the second superseding indictment, which adds two new defendants.   As that indictment makes clear, Tarrio was preeminent among the co-conspirators before, during, and after the events of January 6, 2021, and it is appropriate that he be tried jointly with the other defendants in this case.   Doing so requires a continuance of the scheduled May trial date.   Additional considerations, including those regarding discovery outlined above, also counsel in favor of a continuance.

A continuance of the May trial date is within the sound discretion of the Court, cabined by

the requirements of the Speedy Trial Act.   Section 3161(h) of the Speedy Trial Act sets forth periods of delay which the Court must exclude from the computation of time within which a trial must commence.   Those periods include a "reasonable period of delay when [a] defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted."   18 U.S.C. § 3161(h)(6).   Here, a continuance and exclusion of time under this provision is warranted in light of the second superseding indictment, which adds two defendants, including one (Tarrio) not previously charged.   *See United States v. Van Smith*. 530 F.3d 967, 972 (D.C. Cir. 2008) ("The Supreme Court has stated that '[a]ll defendants who are joined for trial generally fall within the speedy trial computation of the latest codefendant'") (quoting *Henderson v. United States*, 476 U.S. at 323 n. 2 (1986).)

As this Circuit said in *Van Smith*: "The Speedy Trial Act excludes delay attributable to resetting a defendant's speedy trial clock upon the addition of a co-defendant so that the government will not be forced to choose between prosecuting defendants separately and violating the Speedy Trial Act."   *Van Smith*, 530 F.3d at 972 (citing *United States v. Sutton*, 801 F.2d 1346, 1365 (D.C. Cir. 1986)).   Here, the government should not be forced to choose between trying the defendants separately and violating the Speedy Trial Act, particularly given that the government moved expeditiously to obtain the second superseding indictment that adds defendants to the previous indictment.

Moreover, the Supreme Court has recognized "a preference in the federal system for joint trials of defendants who are indicted together." *Zafiro v. United States*, 506 U.S. 534, 537 (1993); *see also United States v. Speight*, 941 F. Supp. 2d 115, 119 (D.D.C. 2013).   And "this preference is especially strong when the respective charges require presentation of much the same evidence,

8

testimony of the same witnesses, and involve two [or more] defendants who are charged, *inter alia*, with participating in the same illegal acts." *United States v. Wilson*, 605 F.3d 985, 1016 (D.C. Cir. 2010) (internal quotation marks omitted).   Courts have made clear that severance is particularly disfavored in conspiracy cases, where all conspirators can be held responsible for acts committed by one conspirator in furtherance of the conspiracy, *see Pinkerton v. United States,* 328 U.S. 640 (1946), meaning that evidence will overlap.   *See, e.g., United States v. Wilson,* 481 F.3d 475, 482 (7th Cir.2007) ("[T]here is a strong preference that co-conspirators be jointly tried, particularly when they were indicted together."); *United States v. Soto–Beniquez,* 356 F.3d 1, 29 (1st Cir. 2003) ("Because conspiracy cases often involve evidence that is admissible against all members of the conspiracy, in the context of conspiracy, severance will rarely, if ever, be required.") (internal quotation marks omitted); *United States v. Spinelli,* 352 F.3d 48, 55 (2d Cir.2003) ("Joint trials are often particularly appropriate in circumstances where the defendants are charged with participating in the same criminal conspiracy, as is the case here.").

As is also relevant to this motion, pursuant to subsection 3161(h)(7)(A), the Court must exclude:

> Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.

18 U.S.C. § 3161(h)(7)(A).   An ends-of-justice finding is within the discretion of the Court. *See, e.g., United States v. Rojas-Contreras*, 474 U.S. 231, 236 (1985); *United States v. Hernandez*, 862 F.2d 17, 24 n.3 (2d Cir. 1988).   "The substantive balancing underlying the decision to grant such a continuance is entrusted to the district court's sound discretion." *United States v. Rice*, 746

F.3d 1074 (D.C. Cir. 2014).

Section 3161(h)(7)(B) sets forth a non-exhaustive list factors that the Court must consider in determining whether to grant an ends-of-justice continuance, including:

    (i)    Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice.

    (ii)    Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.

***

    (iv)    Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

18 U.S.C. § 3161(h)(7)(B)(i)(ii) and (iv).   Notably, "[i]n setting forth the statutory factors that justify a continuance under subsection (h)(7), Congress twice recognized the importance of adequate pretrial preparation time." *Bloate v. United States*, 559 U.S. 196, 197 (2010) (*citing* §3161(h)(7)(B)(ii), (B)(iv)).   As the Supreme Court has observed, the Speedy Trial Act "recognizes that criminal cases vary widely and that there are valid reasons for greater delay in particular cases." *Zedner v. United States*, 547 U.S. 489, 497 (2006). "Much of the Act's flexibility is furnished by § 3161(h)([7]), which governs ends-of-justice continuances." *Id.* at 498. "Congress clearly meant to give district judges a measure of flexibility in accommodating unusual, complex, and difficult cases."   *Id.* at 508.   And it knew "that the many sound grounds for granting

10

ends-of-justice continuances could not be rigidly structured." *Id.*

For the reasons stated above regarding the addition of new defendants and charges, the ongoing production of case-specific and cross discovery, and the ongoing global discovery productions, an ends-of-justice continuance is warranted here, based on the factors described in 18 U.S.C. § 3161(h)(7)(B)(i)(ii) and (iv), particularly given that new counsel and defendants are entering the case.   The need for reasonable time to organize, produce, and review voluminous discovery is among multiple pretrial preparation grounds that Courts of Appeals have routinely held sufficient to grant continuances and exclude the time under the Speedy Trial Act—indeed, including in cases involving far less complexity in terms of the volume and nature of data.   *See, e.g.*, *United States v. Bikundi*, 926 F.3d 761, 777-78 (D.C. Cir. 2019) (upholding ends-of-justice continuances totaling 18 months in two co-defendant health care fraud and money laundering conspiracy case, in part because the District Court found a need to "permit defense counsel and the government time to both produce discovery and review discovery"); *United States v. Bell*, 925 F.3d 362, 374 (7th Cir. 2019) (upholding two-month ends-of-justice continuance in firearm possession case, over defendant's objection, where five days before trial a superseding indictment with four new counts was returned, "1,000 pages of new discovery materials and eight hours of recordings" were provided, and the government stated that "it needed more than five days to prepare to try [the defendant] on the new counts"); *United States v. Vernon*, 593 F. App'x 883, 886 (11th Cir. 2014) (district court did not abuse its broad discretion in case involving conspiracy to commit wire and mail fraud by granting two ends-of-justice continuances due to voluminous discovery); *United States v. Gordon*, 710 F.3d 1124, 1157-58 (10th Cir. 2013) (upholding ends-of-justice continuance of ten months and twenty-four days in case involving violation of federal

securities laws, where discovery included "documents detailing the hundreds financial transactions that formed the basis for the charges" and "hundreds and thousands of documents that needs to be catalogued and separated, so that the parties could identify the relevant ones") (internal quotation marks omitted); *United States v. Lewis*, 611 F.3d 1172, 1177-78 (9th Cir. 2010) (Upholding ninety-day ends-of-justice continuance in case involving international conspiracy to smuggle protected wildlife into the United States, where defendant's case was joined with several co-defendants, and there were on-going investigations, voluminous discovery, a large number of counts, and potential witnesses from other countries); *United States v. O'Connor*, 656 F.3d 630, 640 (7th Cir. 2011) (Upholding ends-of-justice continuances totaling five months and twenty days in wire fraud case that began with eight charged defendants and ended with a single defendant exercising the right to trial, based on "the complexity of the case, the magnitude of the discovery, and the attorneys' schedules").

Given the due diligence the government continues to apply to meet its discovery obligations, as set forth above and in its discovery status memoranda, and the imperative that defense counsel be given adequate time to search, review, and digest these discovery materials to prepare their defenses, it is well-established that an ends-of-justice continuance under the Speedy Trial Act is warranted under 18 U.S.C. § 3161(h)(7)(A), based on the factors described in 18 U.S.C. § 3161(h)(7)(B)(i)(ii) and (iv).

## CONCLUSION

For the reasons described above, the government respectfully requests that the Court vacate the May 18, 2022, and set a new trial date, set, but only after all defendants and their counsel are before this Court and can apprise the Court of their positions and availability.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052

*/s/ Erik M. Kenerson*
ERIK M. KENERSON, OH Bar No. 82960
LUKE M. JONES, VA Bar No. 75053
JASON B.A. MCCULLOUGH
D.C. Bar No. 998006; NY Bar No. 4544953
Assistant United States Attorneys
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-7201
Erik.Kenerson@usdoj.gov

13