**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) |
| v. | ) Case No. 1:21-cr-175-TJK |
| | ) |
| ETHAN NORDEAN, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**DEFENDANT NORDEAN'S OPPOSITION TO THE GOVERNMENT'S MOTION TO
VACATE TRIAL DATE AND TO EXCLUDE TIME UNDER THE SPEEDY TRIAL ACT
AND MOTION TO SEVER DEFENDANTS TARRIO AND PEZZOLA UNDER RULE 14**

The government charged Nordean 14 months ago.  The Court revoked his bond, almost a

year ago, in April 2021.  For long stretches of his pretrial incarceration, Nordean has been held in

solitary confinement, due to Covid-19 restrictions.  The Court has been apprised over the past

year that he has little access to counsel and cannot review evidence in his case.  That is still the

case.  The Court has stated that, had it dismissed the charges Nordean faces under 18 U.S.C. §

1512(c)(2), it would have granted his motion to reopen bail proceedings.  At the same time,

another judge in this Court has held that the government's § 1512(c)(2) charge in the January 6

cases is an improper use of that statute.  Whether or not that judge erred (Nordean submits he did

not), it still bespeaks caution regarding a period of pretrial delay and incarceration which is

presumptively prejudicial under Supreme Court precedent before one even considers the debate

as to whether the charge on which Nordean is detained is a well-pleaded crime.

Last year, the Court suggested that the government should complete discovery by August

2021.  Seven months later, the government now moves to vacate a May 2022 trial date.  The

reasons it gives do not withstand scrutiny, and to the extent the Court credits them, Nordean

1

moves to sever newly added Defendants Pezzola and Tarrio for the prejudicial delay their joinder causes and for certain Confrontation Clause issues their addition will necessarily raise.  Fed. R. Crim. P. 14(a).  If the government wishes to delay the trial, it may do so by working with the defense to create reasonable release conditions under § 3142(i).  If it chooses not to, Nordean opposes vacatur of the trial date, without waiving any of his rights to Rule 16, *Brady* and *Roviaro* material.  Should the government be unable to comply with its discovery obligations over a year after charging Nordean and seven months after the Court's proposed discovery deadline, it may proceed to trial having announced it will be in breach of them.  ECF No. 290, p. 20.

**Second Superseding Indictment**

The government acknowledges that, with respect to Nordean, the Second Superseding Indictment (SSI) amends the prior indictment, filed a year ago, in one respect alone.  That is the SSI's charge that Nordean aided and abetted assault by virtue of some combination of (a) Dominic Pezzola's theft of a Capitol Police officer's riot shield and (b) the allegation that Defendant Donohoe "threw a water bottle at law enforcement." SSI, ¶¶ 87, 117.   As explained below, this legal theory does not merit a substantive response, much less justify an indefinite trial delay.

The other primary amendment to the indictment is to add Enrique Tarrio and Pezzola as defendants.  The allegations relating to Pezzola are not new.  The SSI merely incorporates allegations long pending in his separate criminal case.  As to Tarrio, the charge appears to be that he obstructed an official proceeding by talking with people about protesting in D.C. on January 6.  This was sinister, and not at all normal protest outside the Capitol, the SSI alleges, not merely because all the defendants (except Pezzola) belong to a political organization in bad odor but

because the defendants used faux security jargon like "Ministry of Self-Defense," "boots on the ground," and decided not to "wear Proud Boys colors" that day.  None of Tarrio's alleged communications appears to distinguish his charged actions from any of the other defendants' allegations.  The Tarrio case rests on a series of Telegram messages about others traveling to D.C. to attend the rally and protest the election, i.e., the plan of thousands of protesters that day, albeit dressed up in loaded terms designed to maintain the conspiracy-case façade, such as "commands from leadership," "protective equipment," "encrypted communications," and the like.

The centerpiece Tarrio allegation appears to be that he received a short document called "1776 Returns," concerning a "plan" to occupy "a few 'crucial buildings' in Washington, D.C., on January 6, including House and Senate office buildings around the Capitol." SSI, ¶ 41.  The Court will notice some things about this claim.  The government's apparent theory of the case is that the defendants conspired to occupy the Capitol Building.[1]  For some reason, the government does not view the omission of the building at issue from the 1776 Returns "plan" as detrimental to the insinuation it uses the document to further.  Second, the government does not allege Tarrio shared this document with Nordean or anyone else or that the document was the basis for defendants' actions on January 6.  Finally, the government says it believes that it is full of dread significance that the 1776 Returns document refers to the "Storming of the Winter Palace" as an apparent antecedent to the January 6 "plan."  The historical event in question was effected by

---

[1] The government cannot decide if the crime was to plan to enter the Capitol Building or merely to protest outside it.  As it knows, the latter is constitutionally protected activity if nonviolent. Yet it has not uncovered any evidence of a plan to "occupy" the Capitol Building (there was not such a plan) and conceding that a plan to nonviolently protest outside the Capitol is not a crime would require it to drop its conspiracy charges.  This it will never do, no matter what the evidence shows.  So, the ambiguity of what the government is alleging will continue through trial.

3

thousands of sailors and soldiers armed with assault rifles and grenades and shells fired from a battleship.  Here, none of the defendants wielded so much as a clenched fist.[2]  Unintentionally, however, the government's references to the Winter Palace underline how manipulative is its frequent use here of the word "storming."

Virtually all of the Tarrio allegations are built on Telegram messages the government has possessed as far back as April 2021.  SSI, ¶¶ 21, 30, 33-38, 44, 49-50, 64-67.  As the Court knows, the government had examined Nordean's mobile phone by that point and had gained access to thousands of pages of "MOSD" chats.  Indeed, some of the Tarrio chats alleged in the SSI were specifically used in the government's motions to detain Nordean a year ago.  *Id.*, ¶¶ 64-67.  Yet Tarrio was not added as a defendant until March 2022, nearly a year later.

The government adds that it "may" seek to charge several additional defendants.  It appears to be referring, at least, to individuals identified as Persons 1, 2 and 3 in the SSI.  SSI, ¶¶ 55, 60, 62.  Again, the Court will notice that the SSI allegations pertaining to those Persons are drawn from Telegram evidence the government extracted from Nordean's phone by April 2021.  *Id.*, ¶ 55 ("On January 5, 2021 . . .PERSON-1 created a new encrypted messaging group entitled 'Boots on the Ground'. . ."); ¶ 62 (In the "New MOSD Leaders Group," PERSON-2 stated, "Rufio is in charge, cops are the primary threat, don't get caught by them or BLM . . .").  The government says it will seek to charge these individuals and others by May 20, 2022, "based *in part* on evidence seized on March 8, 2022."  ECF No. 314, p. 7 (emphasis added).  In fact, its conspiracy allegations against the six defendants already charged in this case show that the government had possessed its primary "conspiracy evidence" by April 2021.  It elected not to charge anyone else for a year.  It elected not to add Pezzola to this case for a year.

---

[2] As Nordean shows below, Pezzola is not a properly added defendant in this case.

**Argument**

Nordean opposes the government's attempt to vacate the trial date unless it agrees to work with him in securing pretrial release under § 3142(i).  That is because, as Nordean argued in the status conference on March 23, his Sixth Amendment speedy trial right has been violated. Whether post-arrest delay constitutes a violation of the Sixth Amendment right was addressed in *Barker v. Wingo*, 407 U.S. 514 (1972), which governs the analysis today.  *Barker* set up a four-part balancing test.   If these factors ultimately weigh against the government, there is a "presumption of prejudice," and dismissal of the government's case is the appropriate remedy. *Strunk v. United States*, 412 U.S. 434, 439-40 (1973).

The *Barker* factors are: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertions of the speedy trial right; and (4) the prejudice stemming from the delay. *Barker*, 407 U.S. at 519-20.  Post-arrest delay of a year or more is "presumptively prejudicial." *Doggett v. United States*, 505 U.S. 647, 653 n. 1 (1992); *United States v. Irizarry-Colon*, 848 F.3d 61 (1st Cir. 2017) (same).  Delays attributable to the government weigh in favor of finding a speedy trial violation.  In particular, this Court has held that delays resulting from a prosecutor's effort to proceed in a federal, instead of a local, forum count toward a speedy trial violation. *United States v. Thomas*, 527 F. Supp. 261, 263 (D.D.C. 1981).  With regard to the fourth factor, the defendant may show prejudice through long periods of harsh pretrial incarceration.  *Doggett*, 505 U.S. at 654.

Here, Nordean was arrested in February 2021.  The government proposes vacating a May 2022 trial date.  Thus, the delay is presumptively prejudicial.   *Doggett*, 505 U.S. at 653 n. 1. The government's reasons for delay have varied over time.  Initially, the government asserted that delay was attributable to the January 6 investigation being one of the largest in its history

and the logistical difficulty involved in providing global January 6 discovery to each defendant. That contention rested and rests on several flawed premises.  First, the government elected to pursue 800 or more federal cases simultaneously when that was not driven by any statute of limitations imperative.  Nothing prevented the government from sensibly staggering prosecutions in tranches.  Common sense and basic fairness say the government may not create an unnecessary docket bottleneck and then use it to eliminate the speedy trial rights of hundreds of defendants.  Nor may the government's investigatory and public relations-related goals outweigh the accused's constitutional rights.

Second, the difficulties inherent in making *global* January 6 discovery productions to the defendants do not excuse the government's unexplained delays in producing *case-specific* discovery that has been in its possession for months.  Just one example demonstrates the point. In January 2021 the government seized from Eddie Block video clips depicting in real time virtually the entire January 6 "conspiracy" charged here.  ECF No. 166.  Yet it did not produce the full set of clips to Nordean until seven months later, in August 2021.  *Id.*  Even from the perspective of the government the Block clips constitute some of the most important evidence in this case.  But they were not turned over to the defense until Nordean specifically demanded them nearly a year into his criminal prosecution.  The government never explained why the clips had not been produced.  This was not "global" discovery and it had nothing to do with the problems involved in the "largest investigation in DOJ history." The key evidence simply sat unproduced in a government office for months for no reason.

Now, however, the government asserts a different reason for vacating the May trial and tolling the STA.  It claims that new defendant Tarrio will need time to prepare for trial and that it

may add still more new defendants.  This delay is entirely attributable to the government.[3]  As

shown above, the government could have added Tarrio to this case months ago—its allegations

revolve around Telegram chats in the government's possession in April 2021.  The same goes for

Persons 1-3 in the SSI.

The government claims this delay is excused under the STA, Section 3161(h)(6), citing

*United States v. Van Smith*, 530 F.3d 967, 972 (D.C. Cir. 2008).  It quotes *Van Smith*: "The

Supreme Court has stated that '[a]ll defendants who are joined for trial generally fall within the

speedy trial computation of the latest codefendant.'" 530 F.3d at 972 (quoting *Henderson v.*

*United States*, 476 U.S. at 323 n. 2 (1986)).  The government appears confused.  Tarrio, the

"latest codefendant," was charged on March 7 and appeared in court a couple of days later.  Even

if Tarrio's STA computation controlled, trial would still need to be commenced on the May trial

date or shortly thereafter, absent some other STA reason not related to the addition of Tarrio per

se.  § 3161(c)(1).

The government says it should not be "forced to choose between trying the defendants

separately and violating the Speedy Trial Act, particularly given that the government moved

expeditiously to obtain the second superseding indictment that adds defendants to the previous

---

[3] As Nordean noted in the March 23 conference, he has in the past conceded that the Court had
yet to rule on certain pending motions.  That does not make any trial delay attributable to the
defense under *Barker* and the Sixth Amendment right. If it did, the STA would be forcing the
defendant to choose between constitutional rights, forcing the defendant, for example, to choose
between his liberty interest (seeking bail) and his right to a speedy trial.  This the STA may not
constitutionally do.  *E.g.*, *Simmons v. United States*, 390 U.S. 377, 394 (1968) (it is "intolerable
that one constitutional right should have to be surrendered in order to assert another").  In any
case, the STA provides for the exclusion of delay resulting from pretrial motions that are
"prompt[ly] dispos[ed]." § 3161(h)(1)(D).  However, Nordean's motion to reopen bail was
pending for approximately seven months; his motion to dismiss for six months; and his *Roviaro*
motion for three months.

indictment." ECF No. 314, p. 8.  It is not clear what the government means.  If trial proceeds on

the May trial date, it is not "forced to choose between trying the defendants separately and

violating the Speedy Trial Act." It will try all the defendants together, unless Nordean's motion

to sever Defendants Pezzola and Tarrio is granted, as discussed below.  But if that motion *is*

granted, the government faces no STA dilemma.  And as shown above, the government did not

"move expeditiously" to add Tarrio to this matter.  Rather, nearly all the evidence cited in the

SSI consists of Telegram messages that have been in the government's possession for over a

year.  The government has offered no explanation as to why it took so long to add Tarrio to its

case.  That forecloses its § 3161(h)(6) argument, as every circuit that has addressed the question

has found.  *U.S. v. Lewis*, 611 F.3d 1172, 1176 n. 2 (9th Cir. 2010) (holding that § 3161(h)(6) is

subject to a reasonableness limitation); *U.S. v. Stephens*, 489 F.3d 647, 655 (5th Cir. 2007)

("Attribution of the excludable delay of one co-defendant to another co-defendant is not,

however, automatic; rather the period of delay must be reasonable"); *U.S. v. Cordova*, 157 F.3d

587, 599 (8th Cir. 1998) (same); *U.S. v. Howard*, 918 F.2d 329, 336 (2d Cir. 1990) (same); *U.S.

v. Mayes*, 917 F.2d 457, 460 (10th Cir. 1990) (same); *U.S. v. Culpepper*, 898 F.2d 65, 67 (6th

Cir. 1990) (same); *U.S. v. Tobin*, 840 F.2d 867, 869-70 (11th Cir. 1988) (same); *U.S. v. Dennis*,

737 F.2d 617, 621 (7th Cir. 1984) (same).

　　　　To the extent the Court finds the government's continuance argument appropriate under §

3161(h)(6) given the addition of Pezzola and Tarrio to this matter, Nordean moves to sever those

defendants.  The Court may sever defendants' trials "If the joinder of . . . defendants in an

indictment . . . appears to prejudice a defendant. . ." Fed. R. Crim. P. 14(a).  The Supreme Court

has defined prejudice in this context to be a "serious risk that a joint trial would compromise a

specific trial right of one of the defendants, or prevent the jury from making a reliable judgment

about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993).  The Court may exclude from STA calculation a "reasonable period of delay" on account of a newly joined defendant only if "no motion for severance has been granted." § 3161(h)(6).  A defendant's motion for severance is therefore an important factor in considering the reasonableness of any STA delay.  *Howard*, 918 F.2d at 336; *Mayes*, 917 F.2d at 460; *Dennis*, 737 F.2d at 621.

Here, for the reasons discussed above, the Court should sever Tarrio and Pezzola to the extent it prioritizes their perceived desire for prolonged pretrial preparation because doing so prejudices Nordean's (and three other defendants') Sixth Amendment right to a speedy trial. There is simply no reason Tarrio and Pezzola cannot be tried separately or with the many other Proud Boys defendants whom the government has accused of conspiracy, including defendants it pledges to add in the future.

The government cites the preference in the federal system for joint trials of defendants who are indicted together.  ECF No. 314, p. 8.  What it does not disclose is that precisely the same government delays in adding defendants to January 6 conspiracy matters led a judge in this Court to order separate trials of the Oath Keepers defendants—even though they were indicted together.  *U.S. v. Caldwell*, 21-cr-28, ECF No. 289 (D.D.C. 2021).

Defendant Pezzola must be severed for additional reasons.  If Pezzola is tried with Nordean, and Pezzola exercises his right not to testify, using Pezzola's out-of-court statements against Nordean at trial will conflict with Nordean's Confrontation Clause right unless the government satisfies the requirements for their admission under Federal Rule of Evidence 801(d)(2)(E).  *Bourjaily v. United States*, 483 U.S. 171, 182 (1987).  To admit such statements, the Court must first find by a preponderance of the evidence that there was a conspiracy involving Pezzola and Nordean and that the statements were made during the course and in

furtherance of the conspiracy.  *United States v. Carson*, 455 F.3d 336, 365 (D.C. Cir. 2006).

Here, not only has the government never presented in Court a single piece of evidence showing

any criminal agreement between Pezzola and Nordean, it has not presented evidence that the two

have ever communicated—they have not.

Accordingly, Pezzola must also be severed under Rule 14 because his joinder in this case

will necessarily raise Confrontation Clause issues.  *Bruton v. United States*, 391 U.S. 123, 88 S.

Ct. 1620, 20 L. Ed. 2d 476 (1968) (holding that a co-defendant's out-of-court statements

implicating other defendants are inadmissible when there is no opportunity to cross-examine the

co-defendant).  Once Pezzola is severed, there is no reason to vacate the May trial date on

account of the desire of his counsel for more time before trial.

Finally, Nordean has consistently raised his desire for a speedy trial and has incurred

significant prejudice from the government's delays.  He has been incarcerated for nearly a year

pretrial and in extremely harsh conditions.  He has spent weeks of time in solitary confinement

owing to Covid-19-related jail restrictions.  He has little access to counsel and cannot review

evidence in his current facility, Northern Neck Regional Jail.  There is a substantial risk that he

has been detained for a year on a charge that is not a well-pleaded crime.

In sum, Nordean opposes vacatur of the May trial date, unless the government agrees to

work with the defense to create reasonable release conditions under § 3142(i).  If it chooses not

to, Nordean will proceed to trial without waiving any of his rights to Rule 16, *Brady* and *Roviaro*

material.  To the extent the Court finds that the addition of Tarrio and Pezzola justify vacatur of

the trial date, Nordean moves to sever those defendants.

Dated: March 25, 2022                              Respectfully submitted.

                                                   */s/ David B. Smith*
                                                   David B. Smith (D.C. Bar No. 403068)

108 N. Alfred St.
Alexandria, VA 22314
Phone:(703)548-8911
Fax:(703)548-8935
dbs@davidbsmithpllc.com

Nicholas D. Smith (Va. Bar No. 79745)
7 East 20th Street
New York, NY 10003
Phone: (917) 902-3869

## **Certificate of Service**

I hereby certify that on the 25th day of March, 2022, I filed the foregoing motion with the

Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to

the following CM/ECF user(s):

Jim Nelson
Assistant United States Attorney
555 4th Street, N.W., Room 4408
Washington, D.C. 20530
(202) 252-7846

And I hereby certify that I have mailed the document by United States mail, first class

postage prepaid, to the following non-CM/ECF participant(s), addressed as follows: [none].

/s/ David B. Smith
David B. Smith, D.C. Bar No. 403068
David B. Smith, PLLC
108 North Alfred Street, 1st FL
Alexandria, Virginia 22314
(703) 548-8911 / Fax (703) 548-8935
dbs@davidbsmithpllc.com