IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA            CR Nos. 1:21-cr-00175-TJK-1
                                            1:21-cr-00175-TJK-3
            v.
                                    Washington, D.C.
1-ETHAN NORDEAN                     Wednesday, March 23, 2022
3-ZACHARY REHL,                     10:00 a.m.
            Defendants.
- - - - - - - - - - - - - - - - x
_____

TRANSCRIPT OF ARRAIGNMENT & STATUS CONFERENCE
HELD BEFORE THE HONORABLE TIMOTHY J. KELLY
UNITED STATES DISTRICT JUDGE
_____

APPEARANCES VIA VIDEOCONFERENCE:

For the United States:    Luke M. Jones, Esq.
                          Erik M. Kenerson, Esq.
                          U.S. ATTORNEY'S OFFICE
                          555 4th Street, NW
                          Washington, DC 20530
                          (202) 252-7233

For the Defendants:       Nicholas D. Smith, Esq.
                          DAVID B. SMITH, PLLC
                          7 East 20th Street
                          Suite 4r
                          New York, NY 10003
                          (917) 902-3869

                          Carmen D. Hernandez, Esq.
                          7166 Mink Hollow Road
                          Highland, MD 20777
                          (240) 472-3391

Court Reporter:           Timothy R. Miller, RPR, CRR, NJ-CCR
                          Official Court Reporter
                          U.S. Courthouse, Room 6722
                          333 Constitution Avenue, NW
                          Washington, DC 20001
                          (202) 354-3111


Proceedings recorded by machine shorthand; transcript
produced by computer-aided transcription.

1          <u>**P R O C E E D I N G S**</u>

2          THE DEPUTY CLERK:  We are on the record in

3  Criminal Matter 21-175, United States of America v.

4  Defendant 1, Ethan Nordean; Defendant 3, Zachary Rehl.

5          Present for the Government are Luke Jones and Erik

6  Kenerson; present for Defendant 1 is Nicholas Smith; present

7  for Defendant 3 is Carmen Hernandez; also present is

8  Defendant 1, Mr. Nordean; and Defendant 3, Mr. Rehl.

9          THE COURT:  All right.  Good morning, everyone.

10          And our first order of business, I think, is to

11  get our two defendants arraigned on the new superseding

12  indictment.

13          Let me first ask Mr. Smith whether you have any

14  objection -- well, I guess your defendant -- your client is

15  here.  So in a sense, he's not being arraigned remotely, but

16  you're remote.  So let me just ask whether you have any

17  objection to -- under the way we're proceeding here today,

18  you have any objection or Mr. Nordean has any objection to

19  being arraigned.

20          MR. SMITH:  Yes.  Thank you, Your Honor.

21          The first thing we note is we -- we're unable to

22  see the Court and there's a little bit of feedback.

23  There's, maybe, a sound system on Zoom and a different one

24  in the courtroom.

25          THE COURT:  Hmm.  Well, I guess the first question

```
1     is, then, can we move -- I suppose --
2               MS. HERNANDEZ:  I --
3               THE COURT:  Ms. Hernandez --
4               MS. HERNANDEZ:  I can see the courtroom, Your
5     Honor.
6               THE COURT:  You can see the --
7               MS. HERNANDEZ:  I can see the courtroom.
8               THE COURT:  But not me?
9               THE DEPUTY CLERK:  Oh, I can put it on you.
10              MS. HERNANDEZ:  But not you.
11              THE COURT:  All right.
12              THE DEPUTY CLERK:  Here you go.
13              THE COURT:  We may be able to arrange that.
14              THE DEPUTY CLERK:  (Indicating.)
15              THE COURT:  There we go.  Okay.  So I can -- I
16    think you can see me now.
17              MR. SMITH:  Yes, Your Honor.
18              THE COURT:  All right.  I don't know that I can do
19    much about the feedback, Mr. Smith.  Hopefully, our
20    proceeding won't be too long today.  But with that -- that
21    aside, do you have any objection to your client being
22    arraigned as long as you can -- as long as it's tolerable --
23    so tolerable you can hear me and hear the -- hear
24    Ms. Harris?
25              MR. SMITH:  Yes, Your Honor.  I think there's a
```

1    problem.  On the docket, when the status conference was

2    noticed, there was no indication that Mr. Nordean, our

3    client, would be appearing in court.  So counsel were not

4    put on notice that the defendant would be by himself in the

5    courtroom with, (inaudible) -- prosecutors, government

6    agents.  We don't really know who is there.  We would have

7    appeared in court if we had been informed that Mr. Nordean

8    would be appearing by himself.  So I learned yesterday that

9    Mr. Nordean was driven about four hours round trip from the

10   jail in Northern Neck in Warsaw, Virginia, to the

11   courthouse.

12             (Brief pause.)

13             Apparently -- (inaudible.)  That was a surprise to

14   us, because we understood that Mr. Nordean would either be

15   dialing in or appearing by Zoom, and that would allow his

16   counsel to speak to him in a breakout room before or during

17   a hearing.  Right now, I'm not able to speak to Mr. Nordean,

18   and I had no reason to beforehand because I didn't know he

19   would be appearing in court.  And we would just note for the

20   record that Mr. Nordean is able to dial in to these

21   conferences at any time at Northern Neck.  The only problem

22   here appears to be VTC teleconferencing outside of certain

23   hours at Northern Neck.  But we would just note for the

24   record that when Mr. Nordean was in Seattle, he was dialing

25   in almost every status conference, not appearing by VTC.  So

1   that would allow us to speak to him shortly before the

2   status conference.

3              THE COURT:  Well, okay.

4              MR. SMITH:  So Your Honor, we're able to -- I

5   mean, we're going to waive a reading of the indictment and

6   we're going to enter pleas of not guilty, but we would just

7   ask the Court to indicate to counsel when the defendant will

8   be ordered to -- transferred to the courthouse so that we

9   can be present.

10             THE COURT:  That's certainly a reasonable request,

11  Mr. Smith.  Let me just put on the record a few things.

12             Obviously -- or the reason for the confusion was

13  at least in part because of my attempt to get as many

14  defendants and as many counsel present before me at one

15  time, and now we're up to six defendants here.  And then, of

16  course, there was your issue yesterday which we're happy to

17  accommodate.  I know -- I understand you were in trial.  And

18  so we bumped yesterday to today for your client.

19             Ms. Harris, do you -- is there something you

20  wanted to correct on the record as far as what you

21  understood in terms of Mr. Nordean's availability and where

22  he's being detained?

23             THE DEPUTY CLERK:  Yes, Your Honor.

24             THE COURT:  You can remove your mask if you're

25  comfortable.

 1          THE DEPUTY CLERK:  Yes, Your Honor.  So where

 2   Mr. Nordean is being detained now, there is no option to

 3   have a telephone conference in the morning.  They only allow

 4   hearings between 2:00 and 4:00 p.m.  That's the only time

 5   they allow slots.  There's no telephone hearings available

 6   in the morning.  That was done in Seattle -- which is a

 7   whole different facility -- because they allow that, but

 8   Northern Neck does not allow that.  Hearings must be done

 9   between 2:00 and 4:00 p.m.

10          THE COURT:  All right.  And that ran into a

11   conflict with Mr. Rehl's availability; is that correct?

12          THE DEPUTY CLERK:  Correct.  Mr. --

13          THE COURT:  All right.

14          THE DEPUTY CLERK:  At Mr. Rehl's facility, they do

15   not allow afternoon hearings because that's saved for the

16   Eastern District of Pennsylvania's Clerk's Office hearings.

17          THE COURT:  All right.  So it sounds like the

18   breakdown was that, Mr. Smith -- again, the intent here was

19   to get all -- as many defendants before me and counsel

20   before me in whatever way possible at the same time, and it

21   sounds like the breakdown was that you were not informed

22   that he would be here in person.  So I apologize for that,

23   and you should be aware of, obviously, when he's going to be

24   brought here, and we'll endeavor not to have that

25   miscommunication again.

1          MR. SMITH:  Oh, thank you, Judge.

2          One last point for the future is that when

3     Ms. Harris was referencing the ability of Mr. Nordean to

4     have a status conference at Northern Neck, I believe that's

5     a reference to video teleconferencing.  It is the case that

6     a -- that an inmate can make a private call to any number he

7     wishes, including the dial-in number here, at any time.

8     That's not -- he -- Mr. Nordean could have dialed in to this

9     status conference using a phone that's available to inmates

10    at 10:00 a.m.

11         THE COURT:  Ms. Harris, I think, has different

12    information.

13         THE DEPUTY CLERK:  That is not the case.

14         MR. SMITH:  Okay.

15         THE DEPUTY CLERK:  That may be --

16         MR. SMITH:  And --

17         THE DEPUTY CLERK:  -- for the -- for defendants to

18    call whoever they need to call, but as far as hearings are

19    concerned, we have to schedule hearings through my

20    supervisor.  I've spoken to her with this -- about this, and

21    we can only schedule hearings between 2:00 and 4:00 p.m. at

22    Northern Neck Regional Jail.  What defendants can do outside

23    of that with their time and phone calls they can make, I

24    have no idea, but I have to follow procedure for scheduling

25    and it has to be between 2:00 and 4:00.  She can only

1    schedule hearings between 2:00 and 4:00.

2            THE COURT:  All right.  Very well.

3            That out of the way, Mr. Smith, do you object --

4    first of all, and just to clarify for you, Mr. Smith, there

5    are no prosecutors in the courtroom.  There's -- there are

6    no parties in the courtroom other than the marshals, your

7    client, the court reporter, my clerk, Ms. Harris, and

8    myself.

9            With all that said, do you -- can -- do you or

10   your client object to proceeding with arraigning him on the

11   most recent charging document?

12           MR. SMITH:  No, Your Honor.

13           THE COURT:  All right.  Same question to you,

14   Ms. Hernandez.

15           MS. HERNANDEZ:  Mr. Rehl consents to proceeding

16   via videoconference, Your Honor, pursuant to the CARES Act

17   and the findings of the Chief Judge.

18           THE COURT:  All right.  Very well.

19           Ms. Harris, why don't you arraign the two

20   defendants who are here.

21           THE DEPUTY CLERK:  Yes, Your Honor.

22           Ethan Nordean and Zachary Rehl, in Criminal Matter

23   21-175, you are each charged with 18 United States Code

24   Section 1512(k), conspiracy to obstruct official

25   proceedings; 18 United States Code Sections 1512(c)(2) and

 1   2, obstruction of an official proceeding and aiding and

 2   abetting; 18 United States Code Sections 231(a)(3) and 2,

 3   obstruction of law enforcement during civil disorder and

 4   aiding and abetting; 18 United States Code Sections 1361 and

 5   2, destruction of government property and aiding and

 6   abetting; and 18 United States Code Section 111(a)(1),

 7   assaulting, resisting, or impeding certain officers.

 8              Mr. Smith, does your client waive the formal

 9   reading of the second superseding indictment?  And for the

10   purposes of this arraignment, how does he wish to plea?

11              MR. SMITH:  Yes, Ms. Harris.  He waives a formal

12   reading of the indictment and Mr. Nordean enters a plea of

13   not guilty to every charge.

14              THE DEPUTY CLERK:  A plea of not guilty is entered

15   for Defendant Nordean.

16              Ms. Hernandez, does your client waive the formal

17   reading of the second superseding indictment?  And for the

18   purposes of this arraignment, how does he wish to plea?

19              MS. HERNANDEZ:  Mr. Rehl waives the formal reading

20   of the superseding indictment -- the second superseding

21   indictment, pleads not guilty to all counts, continues to

22   maintain his rights under the Sixth Amendment and the Speedy

23   Trial Act and the Fifth and Sixth Amendments not to be

24   questioned except in the presence of his counsel.

25              THE DEPUTY CLERK:  A plea of not guilty is entered

1    for Defendant Rehl, Your Honor.

2              THE COURT:  All right.  Very well.

3              The second item that I think we need to address

4    today which we did discuss, as Ms. Hernandez at least knows,

5    yesterday with the other defendants is the trial date.  And

6    let me just offer -- and I heard from the Government

7    yesterday on this.  I've -- Mr. Smith, you may be aware of

8    some of these -- you may be aware of this.  I heard from the

9    Government, I heard from Ms. Hernandez, I heard from the

10   other defendants, and I have permitted -- the Government, as

11   you know, has filed a motion to continue the trial date, and

12   I've allowed Ms. Hernandez and any other defendant who would

13   like to put something down on paper opposing that to file

14   that by Friday.

15             I -- before I hear from you, Mr. Smith, on that

16   topic, I will say, having -- I thought overnight about,

17   Ms. Hernandez, your -- a point I think you raised which is

18   the point about how many defendants I can practically try at

19   once.  Whether that's constrained by COVID or not, there

20   certainly is a -- there's a limitation there one way or the

21   other, and whether -- if it really does warrant a

22   continuance, if we're going to have -- if -- obviously, the

23   new charging document adds two additional defendants to the

24   case, one who had been charged before; one who has not been

25   charged -- had not been charged before.  But in any event --

 1   and the Government has represented in their motion that

 2   there may be a few more defendants in play in the future, as

 3   well.  If I wouldn't be able to try many more than or,

 4   maybe, any more than four defendants at a time, it strikes

 5   me that, maybe, there is no basis to move the trial simply

 6   because -- now, some defendant may very well want that.  The

 7   charges are different.  There are -- and I think another

 8   bridge we're going to have to cross is, I know the

 9   defendants have represented -- various defendants have been

10   -- have represented at various times that they haven't had

11   sufficient access to the evidence, access to counsel,

12   etcetera.  So those issues aside, it seems to me just by

13   virtue of the superseding, it may be that that -- the

14   superseding itself doesn't create a real reason to continue

15   the trial date simply because I'm never going to be -- I'm

16   not going to be able to try the -- all these defendants

17   together at once anyway.

18        So I guess first -- let me hear from the

19   Government, I guess, on that limited point and then,

20   Mr. Smith, I'll hear from you and we'll go from there.

21        MR. JONES:  Thank you, Your Honor.  Luke Jones for

22   the Government.

23        I think we -- we lay out our position, the Court

24   knows, in our filing.  The strong support under the case law

25   and I think, (inaudible) -- from this case to try these

1     defendants, (inaudible) -- that are charged in the second

2     superseding indictment together.  I think particularly with

3     respect to the addition of Defendant Tarrio, who is clearly

4     identified in the indictment as principal leader of the

5     conspiracy, the importance of trying him with the other

6     defendants, including those two that are before the Court

7     today, the Government would submit, is essential and

8     strongly urge the Court to, you know, ensure that those

9     defendants are tried jointly.

10          As to whether additional defendants come into the

11    case, you know, obviously, it's somewhat speculative at this

12    point, but the, you know -- the Government would certainly

13    urge the Court to make arrangements to ensure that these

14    defendants are tried together and that -- and clearly, the

15    May date won't work for Defendant Tarrio, and in that

16    respect, the Government would submit that the motion to,

17    (inaudible) -- should be granted.

18          THE COURT:  All right.  Mr. Smith, I will hear

19    from you on this.

20          MR. SMITH:  Thank you, Judge.

21          So we -- we'll be filing a formal opposition to

22    the motion to vacate where we'll set out our position fully,

23    but I think I want to use this opportunity now to make a

24    distinction between Mr. Nordean's, (inaudible) -- and his

25    Sixth Amendment right to a speedy, (inaudible) -- as

1    possible on the record that we are, right now, and have

2    been, (inaudible) -- a Sixth Amendment/Speedy Trial Act

3    argument.  There has already been a violation of

4    Mr. Nordean's Speedy Trial Act -- speedy trial

5    constitutional right in the following way.  Under the

6    Barker -- Wingo -- Barker against Wingo case, Judge --

7    that's 407 U.S. 514 -- there has already been triggered

8    presumptive prejudice of Mr. Nordean's speedy trial right,

9    and that's because there's been a post-accusation,

10   (inaudible) -- of over one year from Mr. Nordean's arrest.

11   So there are four factors under Barko [sic] that govern

12   whether a defendant's speedy trial, (inaudible) -- has been

13   violated and they're factors that don't pertain to Speedy

14   Trial Act continuances, filed motions, and the like.

15          So the first factor is length.  And, again, under

16   the Doggett case -- that's 505 U.S. 647 -- a delay of over

17   one year is presumptively prejudicial.  So under the first

18   Barker factor, that counts in favor of this speedy trial

19   right violation.

20          The second factor is a reason for the delay.  The

21   way the courts break down the "reason for the delay" factor

22   is whether the delay is more attributable to the Government

23   or to the defense.  The question, unlike the Speedy Trial

24   Act, is not whether there is any motion pending.  The

25   question is whether the delay is generally attributable to

1    the Government, (inaudible) -- defense.  Here, there is very

2    little argument that the Government is not responsible for

3    the delay.  And I'll give a couple of examples.  Last

4    year -- here -- of course, the defendants were originally

5    arrested and charged February of 2021.  Last year, we had

6    various status conferences where the defense counsel would

7    bemoan an unlimited discovery timeline.  There seemed --

8    there was no scheduling order for when discovery would need

9    to be completed.  The Government would say, This is an

10   enormous case.  This is an enormous investigation.  So we

11   need more time.  And the Court, if you go back into the

12   record, says, Well, Government, how about August 2021?

13   You'll get it done by then.  And I'm not quoting the Court

14   exactly, but that's approximately what the Court was

15   suggesting.  Well, that was August of 2021 and we are now in

16   March of 2022 and the Government is not, (inaudible) -- that

17   defendants might be added drip by drip into the indefinite

18   future which would cause even more delays.  So Judge, the

19   delay isn't attributable to the defense.  The defendants

20   have been arguing continuously over the past year that they

21   need to move forward.  Now, there have been motions that

22   have been filed, but, Judge, to count, for example, a motion

23   to dismiss as against Mr. -- cutting against Mr. Nordean's

24   discovery rights would be entirely unjust if only for this

25   reason.  A few hundred feet away from the Court, there is

1    another courtroom where Mr. Nordean's conduct is not only

2    not a detainable offense right now, but it's not even a

3    crime.  So we have a situation where if you appear in front

4    of one judge in this District Court, you are innocent --

5    (inaudible.)  In front of another judge, this is a crime and

6    you may be detained past the line of presumptive prejudice

7    under Barker v. Wingo.  That's not a sustainable situation,

8    and we would argue that even if it's the case that another

9    judge a few hundred feet away is mistaken, that is an

10   extremely powerful argument for not counting motion delays

11   against Mr. Nordean for arguing that he is not held on any

12   offense, much less a detainable one.

13        Then the third Barker factor is whether the

14   defendant has asserted his right to a speedy trial.  I think

15   -- I don't have the citations in front of me right now, but

16   I think it's fair to say that the defendants in this case

17   have argued for a speedy trial for over a year now.  Now,

18   there have been various points when they've said, We agree

19   that under the Speedy Trial Act, a continuance tolls the

20   Speedy Trial Act.  That's not a waiver of your

21   constitutional right to a speedy trial for the reason that

22   we just said.  We have to be able to file a motion to

23   dismiss, particularly when it's meritorious enough to earn a

24   judgment from one of your colleagues on the bench.

25        Then the fourth factor is prejudice, Your Honor.

1   Prejudice to the defendant.  And under the Doggett case I

2   cited, prejudice is also presumptive once we're past the

3   one-year mark.  And the reason that's particularly the case

4   is because of pretrial confinement.  If we're past

5   presumptive prejudice and the defendants are detained the

6   entire time on an offense on which they might be exonerated,

7   that's prejudice, Your Honor.

8           So we are formally arguing that there has already

9   been a Speedy Trial Act violation.

10          On the points for the continuance -- the vacatur

11  of the trial date, Your Honor, we haven't had an opportunity

12  to address the new indictment with the Court, but there are

13  no new facts in this indictment.  What the Government has

14  done is added the new defendants it could have added a year

15  ago and they've added a couple of, sort of, peccant claims

16  about documents that the Government doesn't allege or share

17  with any of the other defendants.  With respect to the facts

18  relating to Mr. Nordean, there are no new facts in this

19  indictment.  As to Mr. Tarrio's prejudice, Mr. Tarrio wasn't

20  apparently in Washington, D.C., during this event, and the

21  charge appears to be based on some text messages and a doc-

22  -- a single document he received which he may not have

23  reviewed with anyone.  I -- respectfully, I think that the

24  speedy trial rights of the defendants who have been waiting

25  in jail for over a year trump the frivolous and weak charges

1  that seem to be filed against Mr. Tarrio, and Mr. Tarrio can

2  also be added to a second group of defendants that Mr. Jones

3  was referencing would be charged in the future.  The rights

4  of one defendant do not trump the rights of the other three

5  defendants.

6       So we certainly don't think there's anything new

7  we need to review before trial.  If the Government feels

8  that its case is this -- strong enough to detain

9  Mr. Nordean, it should feel it's strong enough to go to

10  trial, but it apparently doesn't feel that it's strong

11  enough, and I don't blame them for that.

12       THE COURT:  All right.  All right.  Mr. Smith,

13  let's just keep it to the factors.

14       MR. SMITH:  So Judge, the other issue here is that

15  Mr. Nordean was transferred to the District of Columbia on

16  the premise that he would have greater access to counsel in

17  D.C.

18       THE COURT:  Well, he was also --

19       MR. SMITH:  (Inaudible.)

20       THE COURT:  Mr. Smith, to be clear, he was

21  transferred here primarily because he's going to stand trial

22  here, but yes, another reason to do so was to at least

23  potentially improve his access to counsel.  Correct.

24       MR. SMITH:  So we would just put it on the record

25  that there appears to be no intention on the marshals' part

1    to transfer Mr. Nordean until very shortly before trial to

2    the District of Columbia.  So the jail in Warsaw where

3    Mr. Nordean is located is about a four-hour round trip drive

4    from the District where this court is being held.  That is

5    not access that is -- I mean, it's perhaps access that's

6    greater than in Seattle a few thousand miles away from the

7    District, but it's certainly not the District where the

8    trial is being held.  So access to counsel is not

9    substantially greater.

10             And then, Your Honor, the Government is attempting

11   to move the trial date.  So Mr. Nordean would have been

12   moved across the country not because he's being tried in the

13   near-term future if the trial date is continued.  So we

14   think this is -- again, we are reiterating our argument that

15   Mr. Nordean is being deprived of reasonable access to

16   counsel.  All of the devices for review of discovery that

17   the Government had been touting, (inaudible) -- the Court to

18   show that Mr. Nordean would be able to review the Relativity

19   and Evidence.com, the information is that that's not

20   available to Mr. Nordean in Northern Neck in Warsaw,

21   Virginia, and it's not clear when he will get access to

22   that.  So Your Honor, we would reiterate, again, that his

23   right to access to counsel is being violated and it -- there

24   is no indication in the record of when that will be fixed.

25             So there's another bail issue here, Judge, and I'm

```
 1    really concerned that when we're talking about more vacaturs
 2    of trial dates, we're looking at a Groundhog Day-type
 3    scenario with bail motions where we're doing the same thing
 4    over and over and over again.  And, Judge, from the
 5    Government's perspective and, maybe, the Court's, I could
 6    see why you'd say, Well, just stop.  You've already made
 7    your point clear.  You've made your point clear that
 8    Mr. Nordean doesn't have access to counsel and he should be
 9    released.  Judge, under the Barker decision I just
10    mentioned, under the four factors, the number -- the sheer
11    number of times the defendant has complained about his Sixth
12    Amendment right violation goes to the factors involved in
13    Barko [sic].  So we are compelled, Judge, to keep repeating
14    the argument that he is being denied access to counsel, that
15    he can't adequately prepare for trial, that he is not being
16    held in the District, and that we are offering the most
17    stringent bail conditions imaginable for his release so that
18    he can gain access to counsel.
19              THE COURT:  Mr. Smith -- okay.  Very well.  And
20    you can -- and I'll hear what you -- you'll file -- I assume
21    you're going to file your opposition by Friday which is what
22    I've asked Ms. Hernandez to do.  There won't be any problem
23    with that; correct?
24              MR. SMITH:  Correct.
25              THE COURT:  All right.  I will say -- but to sum
```

1    up your argument, though, you are -- this is perhaps summing

2    it up too glibly -- but you're taking the position both that

3    you want the trial date to remain but that your client does

4    not currently have adequate access to counsel and to the

5    evidence to prepare for trial.  Do I have that right?

6                MR. SMITH:  Your Honor, if that weren't the

7    legally correct position, then the alternative would be to

8    compel the Government [sic] to choose between his

9    constitutional rights.  So if my position is not correct

10   that the defendant can have both of those things, then the

11   alternative is he can only have one of those things.  So he

12   can either have his speedy trial right or he can have

13   sufficient access to counsel, but he cannot have both.  The

14   reason this is not the defendant's choice is because there

15   is a perfectly viable third option which the parties seem to

16   assume does not exist but, in fact, exists in reality.  The

17   option is that we have offered the most stringent bail

18   conditions --

19               THE COURT:  Mr. Smith, I don't want to hear -- I

20   don't want to relitigate the bail.  If you want to put it in

21   the motion, I'll certainly read it, but I'm not going to

22   hear you on that today.

23               MR. SMITH:  But that's -- but I'm just answering

24   the Court's question --

25               THE COURT:  I understand.

```
 1              MR. SMITH:  -- of why -- yeah.

 2              THE COURT:  I understand.

 3              All right.  So does the Government -- and I -- as

 4    I have mentioned the other day, I'm going to let the

 5    Government file a reply to whatever any defendant files on

 6    Friday on Tuesday.  But is -- does anybody from the

 7    Government want to take a crack, since we are here today, in

 8    just responding to what Mr. Smith laid out?

 9              MR. JONES:  Your Honor, we're obviously happy to

10    file a response to whatever defendants file on Friday.  I'll

11    just say, I know Your Honor asked about the continuance

12    motion the Government -- and Mr. Smith's raised some other

13    issues, including what appears to be an oral motion

14    regarding speedy trial and, again, raising the issue of

15    detention.  I don't want these issues to get conflated and,

16    you know, I think the prudent course is to have the parties

17    brief them for the Court to address them, you know, at our

18    next status hearing.

19              THE COURT:  All right.  They are -- I mean, they

20    are --

21              MR. JONES:  And I will --

22              THE COURT:  Go ahead.  Go ahead, Mr. --

23              MR. JONES:  I will --

24              THE COURT:  -- Jones.

25              MR. JONES:  -- just note -- I'm, you know -- there
```

1    was reference yesterday and, again, today to this idea that

2    the Government's second superseding indictment, the timing

3    of that was somehow in bad faith or reflected some

4    unnecessary delay by the Government, and we'd simply just

5    note for the record that those claims are baseless and, you

6    know, we would rebut those.

7            THE COURT:  All right.  Well, I'll -- as I

8    indicated before, I think my thinking is not as clear-cut as

9    it was the other day, again, mostly because of the point,

10   Ms. Hernandez, that you raised -- I think it was you; I'm

11   giving you credit one way or the other --

12           MS. HERNANDEZ:  I'll take credit, Your Honor.

13           THE COURT:  All right.  All right.  Very well.

14           -- that as a practical matter, I -- and a little

15   bit of this -- and that as a practical matter, I have

16   limitations on how many defendants I can try at once anyway.

17   And so why do I need to hold up the trial for these

18   defendants that -- if there are a number of additional

19   defendants coming along?  The Government may well have an

20   interest in trying certain defendants together.  Maybe they

21   will articulate that in their opposition.  But I think it's

22   -- at least makes it much more plausible to me that we need

23   to retain the current trial date for these defendants and

24   worry about trying additional defendants down the road, but

25   that's -- I'll see what you all put down on paper and rule

1    on it expeditiously.

2              We have -- the only other thing I wanted to

3    mention, we have set as best, you know -- the challenge here

4    with all these defendants in different locations is trying

5    to get everyone together at the same time.  We set this

6    matter down for two weeks from yesterday to hash out all of

7    this once I receive the papers and we've set that for April

8    5th at 10:30, I believe.

9              THE DEPUTY CLERK:  11:00.

10             THE COURT:  11:00 o'clock?  11:00 o'clock,

11   Ms. Harris is reminding me.  11:00 o'clock.

12             Is that -- Mr. Smith, are you available at that

13   time?

14             MR. SMITH:  Yes, Your Honor.

15             THE COURT:  All right.  So you know, I will read

16   the papers.  If I can, you know -- time is of the essence at

17   this point, but I guess I would just say, I wouldn't assume

18   if I were any party that we -- that that trial -- that that

19   first trial date -- the May -- the late May trial date won't

20   be operable, because I do think it is a viable argument --

21   and part of this -- frankly, I have to do a little homework

22   to find out how many defendants I really can try -- again,

23   given the COVID restrictions, even assuming we are using the

24   ceremonial courtroom, how many defendants I can reasonably

25   try at once, and when I look at it, I -- again, the

```
 1    Government may want to articulate its reasons, but if I've

 2    got two new defendants here to make six and I -- we can --

 3    the Government has signaled that more are on the way, we're

 4    going to be trying -- we're going to -- there are going to

 5    be two trials one way or the other, it seems to me, and if

 6    that's the case, the -- it may -- it -- what -- the wisest

 7    course may be to go ahead and get that first tranche of

 8    defendants tried on the quicker side.  So I'll see what the

 9    defendants file on Friday, see what the Government files the

10    following Tuesday, and we'll go from there.

11              MR. SMITH:  (Indicating.)

12              THE COURT:  Mr. Smith?

13              MR. JONES:  Your Honor, if I could --

14              THE COURT:  Yeah.  Mr. Jones, go ahead.

15              MR. JONES:  Yeah.  Sorry, Your Honor.  I was just

16    -- if the Court's willing to permit the Government until

17    Wednesday, that would allow us -- we'd appreciate the

18    opportunity.

19              THE COURT:  Well, given that -- I will, and given

20    that -- especially given that I think Mr. -- I suspect

21    Mr. Smith's -- will be raising -- if his argument to me

22    today is any reflection, he'll be raising a, kind of,

23    broader set of issues that are related.  So I -- that seems

24    fair to me, Mr. Jones.  I'll give the Government until

25    Wednesday.
```

```
 1                    Mr. Smith, you had your hand raised.
 2                    MR. SMITH:  Yes.  There are two implications of
 3          the -- that follow from the trial date decision which is the
 4          pretrial motions deadline -- the pretrial motions were
 5          vacated because of the Court's -- because of the
 6          Government's new indictment, naturally, but I think we would
 7          need to decide pretty quickly what -- when the pretrial
 8          motion process and discovery would need to conclude and we
 9          would want a, you know -- a scheduling order for when
10          discovery production would need to be complete by.  If we do
11          have -- once we decide, (inaudible) -- final trial date so
12          that discovery doesn't become trickling in the weekend
13          before trial.
14                    THE COURT:  Well --
15                    MR. SMITH:  And then I think the second issue,
16          Your Honor --
17                    THE COURT:  Mm-hmm.
18                    MR. SMITH:  Oh.
19                    THE COURT:  Go ahead.
20                    MR. SMITH:  Oh, and then I think the second issue,
21          Your Honor, is the -- one of the under-seal motions we have
22          filed would need to be resolved shortly if we're going to be
23          able to preserve the right involved.
24                    THE COURT:  I understand both those things.  The
25          under-seal motion, I certainly understand.  And the motions
```

 1    hearing and discovery cutoff, you know, I think that's going

 2    to be tricky because -- and I think the parties should be

 3    prepared to talk about this when we come back, you know?

 4    The Government has represented that they --

 5              I mean, Mr. Jones, why don't you -- I don't want

 6    to misstate what the Government's representation in its

 7    latest discovery report was, but more or less, the

 8    Government indicated that it would not be -- that discovery

 9    might not be complete by the trial date, number one, or even

10    -- or before the trial date, number one.  Number two, and

11    now we have you presumably -- the Government has indicated

12    there were -- there may be new discovery associated with

13    these new defendants that would be relevant to the case

14    that, obviously, they -- the Government hasn't produced yet

15    to the four defendants who are detained and have been

16    detained for a year.

17              So I -- Mr. Jones, what's your response to that?

18              On some level -- again, this -- I feel like this

19    goes back to the -- in some respects, the question,

20    Mr. Smith, you were raising which is -- or we were talking

21    about a moment ago which is, you know, if I find that the

22    Government has acted reasonably in terms of discovery and

23    discovery is not complete, if the defendants want to forge

24    ahead with a trial date -- I mean, on some level, I can't --

25    obviously, it's subject to these other, you know, speedy

1    trial -- the Barker v. Wingo and these other speedy trial

2    arguments you may have, but assuming I don't find that the

3    constitutional speedy trial right has been violated, it

4    seems to me if the defense wants to plow ahead, you'd -- and

5    wants to retain that trial date, you're doing so at the risk

6    that you're not going to have all the discovery and that

7    things may well trickle in.

8              Mr. Jones, why don't you tell me what the

9    Government's position is going to be, then, on that, sort of

10   -- on this discovery issue that Mr. Smith raises.

11             MR. JONES:   Thank you, Your Honor.

12             Yes, and I think as we indicated in our motion,

13   discovery's not going to be complete and accessible to the

14   defense by the current trial date.  We've already begun

15   producing the new discovery, but we are not done, and I

16   don't think we'll reasonably be done, (inaudible) -- trial

17   date.  And I understand Your Honor's point about defendants

18   potentially wanting to plow ahead.  I think that, you

19   know -- it's our understanding that, you know, a defendant

20   can't simply waive their right to -- I know Brady evidence,

21   but with respect to the defendants who are currently before

22   the Court, recognizing their opposition to -- objection to

23   the motion to continue, I don't know that the Court inquired

24   as to the other defendants whether -- if the Court were to

25   deny the motion to continue, whether those defendants would,

1    in fact, assert that they were prepared to go to trial.  I

2    think the answer to that would be no, that they're not

3    prepared to go to trial, and I think the -- that that's an

4    inquiry the Court should make.

5              THE COURT:  You're -- Mr. Jones, you're talking

6    about the newly added defendants or the other two defendants

7    who were not recently added?

8              MR. JONES:  I'm talking about the other

9    defendants, as well.  I don't think that there -- I don't

10   think there's a record, Your Honor, as to whether or not

11   those defendants have indicated that they are -- would

12   choose to go to trial in May.  I think that, you know, the

13   sticking point for these defendants is, you know,

14   principally their pretrial detention and that, you know,

15   were that circumstance different, there would be no

16   opposition to a continuance.

17             THE COURT:  Well, I agree with that, but I guess

18   my point is I -- well, and I can make that inquiry when we

19   come back, but the -- but I suppose the question is, their

20   detention aside, they're opposing the motion to continue the

21   trial date.  So I -- is it -- you think there's daylight

22   between opposing a motion to continue and, if I deny that

23   motion, saying, "Yes, we're prepared to go to -- go

24   forward"?

25             MR. JONES:  Yeah, I do believe there's daylight

1    there, Your Honor.

2              THE COURT:  Okay.  Fair enough.  Fair enough.

3              MR. SMITH:  (Indicating.)

4              THE COURT:  Mr. Smith?

5              MR. SMITH:  Yeah, Judge.  The question the Court

6    asked the Government was, if the defendants choose to plow

7    ahead and exercise their right to a speedy trial, are they

8    not somehow implicitly waiving any Rule 16 or Brady rights

9    that they might have in discovery that had not been produced

10   up to that point?  And the reason they are not waiving any

11   Brady or Rule 16 rights, Your Honor, is because of a --

12   there's a Supreme Court decision called Simmons against the

13   United States.  Simmons, 390 U.S. 377.  It's a 1968 Supreme

14   Court decision which holds that a defendant cannot be

15   compelled to choose between constitutional rights owing to a

16   government decision.  So the -- Mr. Nordean cannot be given

17   the choice of exercising his constitutional rights or

18   receiving Brady.  So if Mr. Nordean plows ahead or exercises

19   his right to a constitutional trial -- speedy trial after

20   he's been detained for over a year pretrial, he is not

21   waiving his right to Brady.  So if, for example, the trial

22   were to proceed in May and the Government announces before

23   trial that, We can't guarantee Brady will not have been

24   produced by that point; that Rule 16 material will not have

25   been produced, it is not waived, and if there is a

1     subsequent discovery of that information, Mr. Nordean's

2     constitutional rights would be violated.

3           So there is no tradeoff.  And so if -- but there

4     is a decision the Government can make.  The Government can

5     do one of three things.  They can either agree that the

6     conditions that Mr. Nordean has offered for bail are

7     reasonable or that Mr. Nordean's bail petition under 3142(i)

8     has become reasonable in light of the delays involved.  We

9     would be -- we want to make clear for the record, we --

10    willing to work with the Government to create security

11    conditions that would suffice for its security purposes.  So

12    that the second thing the Government could do is it could

13    produce -- ensure -- put the resources on the matter to

14    ensure that Brady and Rule 16 material is produced by a date

15    certain.  The Court could set a scheduling order to produce

16    that material by a date certain or, Your Honor -- well,

17    those might be the only two choices.  So -- settlement.

18    Settlement.  Negotiated settlement, Your Honor, would be

19    another option, but that doesn't seem to be in the cards

20    right now.

21          THE COURT:  All right.  All right.  So fair

22    enough.  I guess my experience has been -- and I don't

23    necessarily disagree with anything you're saying, Mr. Smith.

24    My experience so far has been that, you know, most -- well,

25    that a -- let's put it this way.  Most cases, it doesn't

1     come to this.  Either counsel will ask for more -- defense

2     counsel, that is -- will ask for more time to prepare and --

3     or go ahead and, as you say, the Government puts the

4     resources in to make sure that the discovery is complete

5     before trial, but you don't necessarily have a situation

6     like this arise.

7             All right.  Well, look, I don't think we need to

8     talk about this any further.  I'll just say, you are right,

9     Mr. Smith, to raise -- if we are going to go forward, it's

10    going to be a very expedited motions schedule -- let's put

11    it that way -- to prepare for that date.  And I hate to put

12    everyone, you know, in limbo here for another 10 days, but I

13    think I need to see what you all put down on paper in order

14    to decide how to proceed, and I need -- and the other thing,

15    as I mentioned, is I think it's important for me to consult

16    with the folks here in the courthouse who know these things

17    to make -- to inquire about how many defendants I can

18    reasonably try at once.  But, again, I think the Government

19    should respond to whatever arguments the defendants make.

20    If there's a particular interest they have in trying certain

21    defendants together, I think it's incumbent upon the

22    defendant -- the Government to make that argument.

23            All right.  Anything further any party wants to

24    raise here today?

25            Mr. Jones, anything from you?

```
 1                 MR. JONES:  No, Your Honor.  I think on the record
 2    yesterday, you stated the reasons for why time is tolled --
 3    excluded between now and the next date.  I assume those
 4    would apply here.
 5                 THE COURT:  That's correct.  I'll just go ahead
 6    and --
 7                 Well, what's -- Mr. Smith, you -- what's your
 8    client's position on whether speedy trial is tolled between
 9    today and April 5th?
10                 MR. SMITH:  Thank you, Your Honor.
11                 So we've been trying to maintain the exact same
12    line throughout the last year and longer which is, under the
13    Speedy Trial Act, the time period is tolled when a motion is
14    pending --
15                 (Brief pause.)
16                 THE COURT:  Mr. Smith, let me just --
17                 MR. SMITH:  (Inaudible.)
18                 THE COURT:  Let me just interrupt you, because you
19    cut out for a minute there.  Your screen froze and the court
20    reporter did not get what you said.
21                 MR. SMITH:  Is -- can Your Honor --
22                 (Brief pause.)
23                 MS. HERNANDEZ:  Your bandwidth is low, Mr. Smith.
24                 MR. SMITH:  -- hear me now?
25                 THE COURT:  I can hear you now.
```

1              MR. SMITH:  Okay.  Judge, how about now?

2              THE COURT:  I can -- I could hear what you just

3       said.

4              MR. SMITH:  We are trying to take the position

5       throughout this case that the Speedy Trial Act is tolled by

6       virtue of a filed motion.  (Inaudible) -- pending and

7       unresolved tolls the Speedy Trial Act.  We are not waiving

8       our constitutional right to a speedy trial.

9              THE COURT:  But -- very well.  Very well.

10             Ms. Hernandez, what's your --

11             Understood that your constitutional rights are

12      preserved.

13             Ms. Hernandez, what's your view?

14             MS. HERNANDEZ:  Well, Your Honor, as I said

15      yesterday, I stand by the objections that we've filed -- or

16      that I articulated yesterday.

17             And just for the record today, Your Honor, because

18      Mr. Rehl was not at the hearing --

19             THE COURT:  Please, go ahead.

20             MS. HERNANDEZ:  -- I'm not going to repeat the

21      arguments I made yesterday.  I agree with much of what

22      Mr. Smith has just articulated and join in those arguments

23      just so Mr. Rehl understands that I did make those

24      objections and I will be filing something in writing.

25             But the Court raised another issue -- or another

1  issue was just raised today which I had actually noted in a

2  status report.  This notion that the Government, in their

3  latest discovery report, indicated two things -- or one

4  thing; that trial in May was not workable because they had

5  not completed discovery, but -- and I think the more glaring

6  or the equally glaring point to be drawn from their status

7  report is they never told the parties or the Court when they

8  actually believed it will be workable.  I -- they didn't

9  give a timeline for when -- okay.  So it's not workable in

10 May, but it will be workable by June or July or 2025.

11 There's no indication when this ends.  And I know I have

12 made this argument orally in the past, but I do think that

13 the Court needs to, at some point -- or currently needs to

14 enter an order that says, You have to complete your

15 discovery procedures by a date certain and whatever you do

16 not produce by that date doesn't come in.  The Brady

17 obligation continues.  But there is authority for the Court

18 to put a limit on an endless discovery production.  And,

19 again, I am not making a -- I will take the Government at

20 its word that they're acting with due diligence and that

21 they have produced, you know -- they've thrown as much -- as

22 many resources as they're able to or however they want to

23 formulate what they're doing, but it is -- it continues to

24 be a problem.  And I will tell the Court -- and I think I

25 mentioned this yesterday -- the Speedy Trial Act itself even

1    puts a one-year limit for foreign evidence, you know --

2    there are foreign --

3              THE COURT:  Yes.

4              MS. HERNANDEZ:  -- cases which this court tries a

5    lot of extradition cases, and even in those cases, the

6    Speedy Trial Act explicitly says if you're seeking MLAT, you

7    know -- foreign evidence, you have a year.  So we're not

8    even going foreign here.  We're going locally.  And I

9    understand there's a lot of evidence --

10             THE COURT:  Right.  I mean, it --

11             MS. HERNANDEZ:  -- but there has to be --

12             THE COURT:  It's a -- I understand your point,

13   Ms. Hernandez, and it's obviously a -- it's a similar

14   principle but a very different kind of scenario.  It -- the

15   MLAT process might be about a small amount of evidence, but

16   it's the question of getting it from that foreign country.

17   But I take your point.  I take your point.

18             MS. HERNANDEZ:  Correct.  And also, Your Honor, I

19   agree that we're all in a difficult situation, but the

20   defendants shouldn't have to waive one right in order to

21   assert another right.  I think that's also written, you know

22   -- and the -- I don't know if the Court -- if the Government

23   -- I know the Government's response is, We don't know when

24   we're going to supersede and it's up to the grand jury; it's

25   not up to us.  But to the extent that the Government's the

```
 1    one who mentioned that they might be superseding yet one
 2    more time, if the Government could identify when they're
 3    going to make that decision of bringing another superseding
 4    indictment before the grand jury, maybe, that also would
 5    inform -- would be a -- would be something that we should
 6    have available to us when we're making our motions or --
 7              THE COURT:  Well --
 8              MS. HERNANDEZ:  -- responding to the Government.
 9              THE COURT:  Ms. Hernandez, I actually think they
10    did do that in their representation.  I think they
11    represented --
12              MS. HERNANDEZ:  Oh, it's by May -- they said --
13              THE COURT:  -- that there was a date that they
14    gave in their filing.  Correct.
15              MS. HERNANDEZ:  Yeah, they said it would be by
16    May.
17              THE COURT:  And let --
18              MS. HERNANDEZ:  That is correct, Your Honor.
19              THE COURT:  And let me just say, Mr. -- for
20    Mr. Rehl's benefit -- because, Ms. Hernandez, you made this
21    point -- Ms. Hernandez is right.  She spent -- we spent a
22    lot of time -- she spent a lot of time before me making
23    these same points and arguing on your behalf very
24    effectively and vociferously yesterday.  So I want Mr. Rehl
25    to know that, because we're not plowing the same ground here
```

1   today with you here, you can be assured that Ms. Hernandez

2   was acting on your behalf when we were all together

3   yesterday when you could not be here to join us.

4           All right.  So I -- look, I think I have -- those

5   are fair points, Ms. Hernandez, and I think the Government

6   would be wise to address that in their reply, but I think

7   it's something that -- I think you're right -- when we come

8   back, I'm going to have to address one way or the other in

9   terms of a discovery cutoff in the case, but -- all right.

10  Very well.

11          All right.  Anything further from either side?  I

12  will look to see what you all file.  And we'll -- well, why

13  don't I go ahead and --

14              THE DEPUTY CLERK:  (Indicating.)

15              THE COURT:  Yes?  Ms. Harris has something.

16              THE DEPUTY CLERK:  I didn't know if you excluded

17  speedy trial.

18              THE COURT:  No, not yet.  No, I have to do that.

19  That's correct.

20          So I will find, then, for the same reasons we

21  talked about yesterday both under 3161 -- oh, let's make

22  sure I cite the right part of the statute -- under

23  3161(h)(6), which is a reasonable period of delay when the

24  defendant is joined for trial with a co-defendant as to whom

25  the time for trial has not run and no motion for severance

1    has been granted, under that provision as well as under the

2    provision for a -- that there is a motion pending, under

3    those two provisions, the Speedy Trial Act would be tolled

4    from now through April 5th.  And then in addition to that, I

5    would also do so under 3161(h)(7)(A), the -- in the

6    interests of justice.  And I would do so -- and -- to allow

7    the parties to brief these issues that we have talked about

8    here today before me and for me to decide how to proceed

9    based on their submissions.  So for all those reasons, the

10   time will be tolled from today through April 5th.

11              Anything further from the Government?

12              MR. JONES:  No, Your Honor.  Thank you very much.

13              THE COURT:  All right.  Anything from either of

14   the defendants?

15              MR. SMITH:  The last point we'd like to make, Your

16   Honor, is that we object to the Speedy Trial Act -- the

17   Court's analysis of the Speedy Trial Act factors except to

18   the extent they apply to a pending motion.  So we object to

19   the interests-of-justice finding of -- but just noting that

20   for the record that we are only conceding that the Speedy

21   Trial Act may be tolled because there's a pending motion

22   filed, but we believe those are motions that had to be filed

23   to preserve other of Mr. Nordean's constitutional rights.

24   So we do not -- we would find -- we are arguing that those

25   motions that are necessary to preserve his constitutional

1  rights in no way detract from his constitutional right to a

2  speedy trial.

3          THE COURT:  Right.  I understand the

4  constitutional argument.  But you're also objecting under

5  (h)(6) that this is not a reasonable period of delay when a

6  defendant is joined for trial with a co-defendant as to whom

7  time for trial has not run and no motion for severance has

8  been granted?

9          MR. SMITH:  We would like to make clear that in

10  every proceeding we have had with the Speedy Trial Act

11  continuance question, the only factor, (inaudible) -- on,

12  (inaudible) -- the Speedy Trial Act is any motion,

13  (inaudible) -- by the defendant.  We do not concede and we

14  disagree that any other interests-of-justice factor applies

15  because those were, (inaudible) -- requiring the

16  Government -- the defendant to choose between constitutional

17  rights.

18          THE COURT:  Mr. Smith, I'm just going to ask you

19  to articulate -- I know this is not what you really want to

20  do, but I know that the court reporter could not get that

21  last whole point you made.  And so I'm just going to ask you

22  to articulate it again.  Just -- I'll just say, 3161, the

23  (6) is not an interests-of-justice finding, but go ahead.

24          MR. SMITH:  Your Honor, our position is, and has

25  always been, that we are -- that the defendant is only

1  conceding a Speedy Trial Act continuance is appropriate

2  under the Act because of a pending motion which Mr. Nordean

3  was required to file to preserve other constitutional

4  rights.

5          THE COURT:  All right.

6          MR. SMITH:  Did that -- did --

7          THE COURT:  That --

8          MR. SMITH:  Your Honor, did that statement come

9  through?

10          THE COURT:  It did.  It did.  It did.

11          MR. SMITH:  Okay.

12          THE COURT:  Very well.

13          MR. SMITH:  And the last question -- or the last

14  question, Your Honor, is when the Court intends to hear

15  argument on the under-seal motion.  I think the Court's last

16  order indicated that there would need to be another

17  conference to wrap up the issue.

18          THE COURT:  We'll -- we will discuss that on the

19  5th.  Obviously, if the trial gets continued, then the need

20  to deal with that -- the timing of having to deal with that

21  would be affected by that.  So we can discuss that on April

22  5th.

23          Until then, the parties are dismissed.

24          MR. JONES:  Thank you, Your Honor.

25          THE DEPUTY CLERK:  All rise.

1          (Proceedings concluded at 11:15 a.m.)

2                * * * * * * * * * * * *

3              <u>CERTIFICATE OF OFFICIAL COURT REPORTER</u>

4         I, TIMOTHY R. MILLER, RPR, CRR, NJ-CCR, do hereby

5    certify that the above and foregoing constitutes a true and

6    accurate transcript of my stenographic notes and is a full,

7    true and complete transcript of the proceedings to the best

8    of my ability, dated this 25th day of March 2022.

9         Please note:  This hearing occurred during the COVID-19

10   pandemic and is, therefore, subject to the technological

11   limitations of court reporting remotely.

12                          <u>/s/Timothy R. Miller, RPR, CRR, NJ-CCR</u>
                           Official Court Reporter
13                         United States Courthouse
                           Room 6722
14                         333 Constitution Avenue, NW
                           Washington, DC 20001

15

16

17

18

19

20

21

22

23

24

25