**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) |
| | ) |
| v. | ) Case No. 1:21-cr-175-TJK |
| | ) |
| ETHAN NORDEAN, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**NORDEAN'S REPLY IN RESPONSE TO THE GOVERNMENT'S OPPOSITION TO**
**HIS MOTION TO SEVER DEFENDANTS TARRIO AND PEZZOLA**

On March 30, the government filed its Reply in Support of Motion to Vacate Trial Date
and to Exclude Time Under the Speedy Trial Act.  ECF No. 327.  The filing incorporates the
government's opposition to Nordean's previously filed Motion to Sever Defendants Tarrio and
Pezzola under Rule 14(a).  ECF No. 321.  Nordean files this reply to the government's
opposition to severance.[1]

The government makes four arguments: (1) the question of whether the Court should
vacate the trial date and indefinitely exclude time under the Speedy Trial Act is "separate and
distinct" from defendants' detention pretrial for a period of time that is concededly
presumptively prejudicial under Sixth Amendment precedent; (2) the government "is unaware of
any" court granting Rule 14 severance to avoid prejudicial delay of trial; (3) the government's

---

[1] On March 21, the government filed its motion to vacate.  ECF No. 314.  The next day, the
Court ordered the defendants to respond by March 25.  As Nordean's counsel was in trial
between March 21-22, Nordean had effectively two days to respond to a significant trial-related
motion concerning his liberty.  Cf. LCrR 47(b) (providing defendants 14 days to respond to
motions).  On March 24, the Court enlarged only the government's time to file a reply.  Nordean
objects on due process grounds to this asymmetrical procedure, which did not afford him
sufficient time to respond to the government's motion and to conduct complete legal research.

1

delay of over a year in joining Pezzola and Tarrio to the case was "reasonable"; and (4) Nordean's constitutional speedy trial right has not been violated, as the D.C. Circuit has affirmed longer trial delays in cases involving South American narcotics kingpins who could not be extradited to the United States for years. Selectively quoting from hearings over the past year, the government also creates a misleading picture of Nordean's speedy trial position.

The government's arguments are nonsense. For over a year, the government has traded on margin with the Court, asking it to revoke defendants' bonds without a breach of release conditions; to interpret criminal statutes in unprecedented ways and to apply the novel, flexible understandings retroactively; to indefinitely postpone discovery deadlines; to vacate trial dates; and to keep defendants detained for presumptively prejudicial periods in harsh conditions in a nonviolent case. It has asked the Court for indefinite detention in all but name. The government has pulled the Court far out on a limb in extending this credit, promising nothing less than a conspiracy to end democracy. Now, as the government files lengthy motions to indefinitely put off trial over a year into the case, it should be apparent that the government cannot meet the Court's margin call. Its indictment has turned out to be a piece of politicized enthusiasm put together in the days after January 6. The Court should deny the motion to vacate the trial date for an indefinite period, or else release Nordean on strict conditions under § 3142(i). To do neither would violate Nordean's constitutional rights.

**Argument**

      **A.**      **The question of whether the Court should vacate the trial date and exclude time under the Speedy Trial Act is not "separate and distinct" from the length and harshness of Nordean's pretrial confinement; courts often sever trials due to prejudicial delay**

The government represents that it is "unaware of any" case law holding that Rule 14 severance is appropriate to avoid "prejudice at the pretrial phase through continued

incarceration." ECF No. 327, p. 4.  It adds: "the relevant case law focuses on whether a joinder would result in an unfair trial vis-à-vis evidence that would be introduced regarding co-defendants. . ." *Id.*   For that reason, it argues that "Defendants' incarceration status should be addressed separately"—i.e., without regard to its length.  *Id.*, p. 19.  If the government accurately represents that it is not aware of authority showing the error of its nonsensical position, that means it has not undertaken legal research before arriving at that position.

Decisions acknowledging the appropriateness of Rule 14 severance solely to avoid prejudicial delay of trial are legion.  Indeed, some circuits maintain that a defendant *must* move to sever on that basis in order to argue that such delays attributable to defendant joinder are unreasonable and thus not excludable under the Speedy Trial Act (STA).  *E.g.*, *United States v. Vasquez*, 918 F.2d 329, 336 (2d Cir. 1990); *United States v. Mayes*, 917 F.2d 457, 460 (10th Cir. 1990); *United States v. Culpepper*, 898 F.2d 65, 67 (6th Cir. 1990); *United States v. Dennis*, 737 F.2d 617, 621 (7th Cir. 1984).  Other circuits that do not require defendants to move to sever still observe that they *may* make such a motion to avoid prejudicial delay in trial as a result of joinder of another defendant.  *United States v. Stephens*, 489 F.3d 647, 655 (5th Cir. 2007); *United States v. Cordova*, 157 F.3d 587, 599 (8th Cir. 1998); *United States v. Tobin*, 840 F.2d 867, 869-70 (11th Cir. 1988).

The question in all such cases: whether the government's delay in joining additional defendants was *reasonable.*  If not, the Court may sever trials, and delay attributable to joinder may not be excluded under § 3161(h)(6) or (h)(7).  *E.g.*, *Vasquez*, 918 F.2d at 336; *Mayes*, 917 F.2d at 460; *Culpepper*, 898 F.2d at 67; *Dennis*, 737 F.2d at 621.  Thus, the Court must reject the government's attempt to reframe the issue such that Nordean would have to show that joinder-

related delay is attributable to the government's "bad faith."  ECF No. 327, p. 6.  The

government cites no authority in support of its self-serving severance standard.  There is none.[2]

      The government's contention that the length and nature of *incarceration* during pretrial

delay do not factor into the reasonableness-of-joinder-delay analysis is contradicted by Supreme

Court precedent.  As Nordean showed in his opposition to the government's vacatur motion, the

Court has explicitly held that "oppressive pretrial incarceration" is a defendant "interest" that

suggests a constitutional speedy trial right violation, all else being equal.  *Barker v. Wingo*, 407

U.S. 514, 523 (1972).  It is therefore necessarily a factor in the STA joinder analysis, as

Congress enacted that statute not to supersede *Barker* but to give more system to its open-

endedness.  *E.g.*, *United States v. Mehrmanesh*, 652 F.2d 766, 769 (9th Cir. 1980).

      Courts often sever trials to avoid prejudicial delay under the *Barker* and STA

framework—and thus take account of the length of a defendant's pretrial incarceration.  *E.g.*,

*United States v. Chantharath*, 2011 U.S. Dist. LEXIS 118461, *12-15 (D.S.D. Oct. 12, 2011);

*United States v. Byrd*, 466 F. Supp. 2d 550, 551 (S.D.N.Y. 2006) (Rakoff, J.).

      As the court put it, uncontroversially, in *Chantharath*,

> "[A] district court should grant a severance under Rule 14 only if there is a serious risk that
> a joint trial would compromise a specific trial right of one of the defendants, or prevent the
> jury from making a reliable judgment about guilt or innocence." *Zafiro v. United
> States,* 506 U.S. 534, 539, 113 S. Ct. 933, 122 L. Ed. 2d 317 (1993) (reasoning that there
> are various ways for a district court to determine prejudice). The right to a speedy trial "is
> as fundamental as any of the rights secured by the Sixth Amendment." *Klopfer v. North
> Carolina,* 386 U.S. 213, 226, 87 S. Ct. 988, 18 L. Ed. 2d 1 (1967). "The history of the right
> to a speedy trial and its reception in this country clearly establish that it is one of the most
> basic rights preserved by our Constitution." *Id.*  Severance is warranted when a
> defendant's Sixth Amendment rights will otherwise be violated. . . .

> [Defendant1] and [Defendant 2] have been incarcerated for 20 months and 18 months
> respectively.  They have been awaiting trial and, thus, and have been uncertain of their

---

[2] The Court will notice that none of the defendants' responses accused the government of "bad faith." Supplying those words itself, the government protests too much.

futures for a significant amount of time. . . [T]he court finds that the second [*Barker*] interest weighs in favor of severance [from newly added Defendant 3]. . .

[Defendant 1] and [Defendant 2] have been waiting for trial for 20 months and 18 months respectively. The delay between their indictments and trial has already surpassed the presumptively prejudicial threshold by eight months for [Defendant 1] and six months for [Defendant 2]. Another continuance to allow [Defendant 3] to proceed to trial with [Defendant 1] and [Defendant 2] would violate [Defendant 1's] and [Defendant 2's] Sixth Amendment rights. Thus, the fourth factor weighs in favor of granting severance.

*Chantharath*, 2011 U.S. Dist. LEXIS 118461, at *12-15; *Byrd*, 466 F. Supp. 2d at 551 (similar).

### B.     The government's delay of over one year in joining Pezzola and Tarrio was not reasonable

The government's reply nowhere addresses the aforementioned reasonableness standard that governs severance and exclusion of STA time due to defendant joinder under § 3161(h)(6) and (h)(7).  Thus, the argument is forfeited.  *E.g.*, *Alvarez v. Lynch*, 828 F.3d 288, 295 (4th Cir. 2016) (a party's failure to respond to a conspicuous, nonfrivolous argument ordinarily constitutes an argument forfeiture).

**Pezzola.**  But even if the government had addressed the relevant standard, its reply shows that vacatur of the trial date is inappropriate, that severance is appropriate.  In a footnote, the government concedes there was no (creditable) reason whatsoever for a delay of over a year in joining Pezzola to this case.  ECF No. 327, p. 8 n. 3.  "The government agrees that the evidence with respect to Pezzola is not new, either to the currently charged defendants . . . . or to Pezzola himself.  Pezzola was charged on January 29, 2021" and added to this case, over a year later, on March 7, 2022.  Thus, the government offers no basis at all for this Court to find the delay reasonable.  The Court should therefore decline to exclude time under § 3161(h)(6), decline to vacate the trial date on this ground, and sever defendant Pezzola.  *Vasquez*, 918 F.2d at 336; *Mayes*, 917 F.2d at 460; *Culpepper*, 898 F.2d at 67; *Dennis*, 737 F.2d at 621; *Chantharath*, 2011 U.S. Dist. LEXIS 118461, *12-15; *Byrd*, 466 F. Supp. 2d at 551.

Although the government's failure to offer a reason for the yearlong delay in adding Pezzola is a sufficient ground for severance, Nordean will address its response to the separate *Bruton* problem Pezzola's joinder inevitably poses.  The government does not deny the possibility of a *Bruton* issue preventing Nordean from cross-examining Pezzola as to any seemingly incriminating statement the non-Proud Boy member may have made which is used by the government.  ECF No. 327, p. 5.  Rather, it argues that Nordean must first identify any Pezzola statement and move to exclude it line-by-line—that is, sometime after Pezzola has been joined and thus after trial has been indefinitely delayed.  *Id.*

It is not hard to see the discreditable game the government has long been playing with Pezzola as the Joker card that it would use to trump due process.  For over a year it has failed to adduce any evidence showing a criminal agreement between Pezzola and Nordean without which *Bruton* would effectively prevent the defendants from being tried together.  Without citing evidence, it has incanted vaguely that Pezzola "participated" in MOSD chats.  *E.g.*, ECF No. 84, p. 6 ("Pezzola is *included as a participant* in a Telegram message string for the Ministry of Self Defense.") (emphasis added).  In other words, the government aims to secure an indefinite delay of trial by the joinder of a defendant even as it does not deny the likelihood that it will not ultimately be able to try them together given Nordean's Confrontation Clause right.  *Bourjaily v. United States*, 483 U.S. 171, 182 (1987) (using defendant 2's out-of-court statements against defendant 1 at trial will conflict with the latter's Confrontation Clause right unless the government satisfies the requirements for their admission under Federal Rule of Evidence 801(d)(2)(E)).  That minor issue can be dealt with later, says the government.  Of course, that has it exactly backwards.  Particularly where the parties have already reached presumptively prejudicial trial delay and where it is incomprehensible that the government would not attempt to

use Pezzola's purportedly incriminating statements in a joint trial,[3] the government must establish now by a preponderance of the evidence that there *was* a conspiracy involving Pezzola and Nordean and that Pezzola's statements, inevitably to be used at trial, were made during the course and in furtherance of the conspiracy.  *United States v. Carson*, 455 F.3d 336, 365 (D.C. Cir. 2006).  The government's reply offers no evidence at all of that "conspiracy."  For that reason too Pezzola must be severed.[4]

 **Tarrio**.  Nordean's opposition to the government's vacatur motion showed that most of the allegations regarding Tarrio in the Second Superseding Indictment (SSI) are built on Telegram messages *the government has possessed as far back as April 2021*, when it searched Nordean's mobile phone.  SSI, ¶¶ 21, 30, 33-38, 44, 49-50, 64-67.  The government's reply does not deny this.

 Instead, it excuses the delay in joining Tarrio to the case by pointing to "important, newly discovered evidence recovered from Tarrio's phone." ECF No. 327, p. 7.  And although Tarrio's phone was seized on January 4, 2021, "the government was not able to obtain access to it" until nearly a year later, in December 2021.  *Id.*  The government represents that this delay was "despite diligence." *Id.*

 This argument fails to establish reasonable STA and *Barker* joinder delay for several reasons.  First, the government did not exercise "diligence." In fact, the government did not even make a request on Tarrio's counsel for the passcode to his phone.  As the government knows,

---

[3] The government's apparent suggestion that limiting instructions would cure the Confrontation Clause problem is mistaken.  *Bruton*, 391 U.S. at 137 (limiting instructions do not cure the Confrontation Clause issue).

[4] If the Court does not sever Pezzola, and the trial is delayed as a result over Nordean's speedy trial objection, the government's reply has plainly forfeited any right to offer Pezzola's statements at a trial with Nordean.  ECF No. 327, p. 5.

such a request is utterly conventional in any investigation involving a search of a mobile device, even after a search warrant has been secured.  *E.g.*, *United States v. Mangini*, 2021 U.S. Dist. LEXIS 66764, at *3 (S.D.N.Y. Apr. 6, 2021) (describing the process whereby, after obtaining a search warrant for a mobile phone, agents and prosecutors turn to the defense to provide the passcode to the phone so as to avoid the potentially lengthy delay in "cracking" the device).  Not having even sought the passcode under this typical procedure, the government's yearlong delay in searching the Tarrio phone cannot be deemed "reasonable."

Second, the government does not dispute that the "newly discovered evidence" regarding Tarrio takes the form of Telegram messages which the government *independently obtained* through, inter alia, its seizure of Nordean's phone *in April 2021*.  ECF No. 327, pp. 7-8.  The government specifically cites to Tarrio's messages to Nordean and in the "MOSD leadership chat" between January 2 and January 4, 2021.  *Id.* (citing SSI, ¶¶ 46-50).  *All of this "evidence" was made available to the government in April 2021 on Nordean's device.*

In sum, just as with Pezzola, the government offers no basis for this Court to find reasonable delay in joining Tarrio to this case over a year after obtaining the "evidence" cited in the SSI.  The Court should therefore decline to exclude time under § 3161(h)(6), decline to vacate the trial date on this ground, and sever defendant Tarrio.  *Vasquez*, 918 F.2d at 336; *Mayes*, 917 F.2d at 460; *Culpepper*, 898 F.2d at 67; *Dennis*, 737 F.2d at 621; *Chantharath*, 2011 U.S. Dist. LEXIS 118461, *12-15; *Byrd*, 466 F. Supp. 2d at 551.

C.   **Nordean's constitutional right to a speedy trial has been violated and vacating the trial date indefinitely while he is incarcerated pretrial will only increase the prejudice**

The government concedes that the delay in Nordean's trial is already presumptively prejudicial under the *Barker* test.  ECF No. 327, p. 12.  However, it raises these

counterarguments: (1) Nordean's Sixth Amendment position must be "disingenuous" as he is willing to consent to a STA continuance if the government will drop unreasonable demands regarding his pretrial detention; (2) trial delay is not the government's fault—because Covid-19 and "incredible complexity"; (3) Nordean has not "consistently raised his desire for a speedy trial"; (4) over a year of harsh pretrial incarceration is not prejudicial to Nordean; and (5) because the remedy for a speedy trial violation is dismissal, the Court should not consider the Sixth Amendment speedy trial right in connection with the government's request to indefinitely delay trial.  ECF No. 327, pp. 12-19.  These arguments fail.

Begin with the government's claim that Nordean's invocation of his right to a speedy trial must be "disingenuous" because he is willing to consent to vacatur of the trial date on the condition that the government work with him to create reasonable release conditions.  ECF No. 327, p. 12 n. 5.  That vile argument is suitably placed in a footnote.  Among other things, Nordean has offered a $1 million cash bond forfeitable upon any material breach of a condition; home detention and GPS location monitoring; 24/7 video surveillance of his home; and warrantless and unannounced searches of his home.  His family has offered to personally monitor Nordean and provide regular, sworn reports to the Court.  He offered these things in a nonviolent case where the Court itself has announced that it was at least uneasy about interpreting the criminal statute on which he is held in the government's unprecedented and flexible manner.  Nordean had not breached any condition of release when his bond was revoked.  He has been held in pretrial detention for nearly a year, often in solitary confinement, during exceedingly restrictive Covid-19-era jail protocols.  That Nordean would be willing to waive a STA objection in order to secure extremely strict conditions of release does not imply he "disingenuously" points to the legal reality that trial delay is already presumptively prejudicial.

To the contrary, it shows he is willing to accept half a loaf rather than none by offering a compromise that ameliorates some of the prejudice caused by passing indefinite pretrial delay in incarceration.

Next, the government claims that the conceded presumptively prejudicial delay must be someone else's fault—namely, Covid-19's and the investigation's "incredible complexity." As to the coronavirus, the government cites to *United States v. Taylor*, 2020 U.S. Dist. LEXIS 232741 (D.D.C. Dec. 10, 2020) for the proposition that "the Covid-19 pandemic is a valid basis to postpone trial." ECF No. 327, p. 14.  But *Taylor* is inapt in this case.  There, the court had excluded time under the STA explicitly on the basis that Covid-19-related restrictions in the courthouse set a moratorium on jury trials.  2020 U.S. Dist. LEXIS 23274, at *15.

Here, by contrast, it appears that *only one of the Court's STA exclusion decisions was predicated on Covid-19.*  4/6/21 Hr'g Tr. at 68 (tolling not based on Covid-19); 4/19/21 Hr'g Tr. at 80 (same); 6/3/21 Hr'g Tr. at 28 (same); 7/15/21 Hr'g Tr. at 7 (same); 9/21/21 Hr'g Tr. at 78-79 (same).  In the November 3, 2021 status conference alone, the Court excluded STA time between the hearing date and December 7, 2021, partly based on pandemic-related constraints. 11/3/21 Hr'g Tr. at 31.  But that constitutes a total of 34 days among the over 365 days since Nordean was arrested and charged.  Moreover, the jury trial moratorium is no longer in place, of course, so it would not justify vacatur of the May trial date in the *Barker* framework.

Then there is the perceived "significant complexity of the government's discovery obligations that arise from the events of January 6, 2021." ECF No. 327, p. 14.  Even taken at face value, this "fact" would not somehow weigh in favor of the government under *Barker*'s second factor.  For *Barker* does not require the defendant to show "a deliberate attempt to delay the trial in order to hamper the defense." 407 U.S. at 531.  Even "a more neutral reason such as

10

negligence *or overcrowded courts* . . . should be considered [as favoring the defendant] since ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Id.* (emphasis added).  Thus, that the government indisputably created the "overcrowded courts" and "incredible discovery complexity" by unprecedently charging 800 or more defendants at the same time does not weigh against *Nordean* but against the government. *Barker*, 407 U.S. at 531.  The government does not even contest Nordean's argument that it could have more efficiently staggered prosecutions in echelon formations over the statute of limitations period and avoided "possession, custody or control" discovery over the entire pool from the outset, or by bringing tranches of the cases in D.C. Superior Court under the D.C. Code, creating less of a docket bottleneck in federal court.  And that is to say nothing of its unforced decision to place novel and unprecedented interpretations on criminal statutes, thus artificially inflating the pool of charges it "had to prosecute." Had the government stayed true to traditional crimes, such as assault and property destruction, the "incredible discovery complexity" it created for itself would be greatly diminished.

Moreover, the burdensome "global" discovery that the government says justifies the trial delay is largely useless and unasked for.  Its burden is to produce Rule 16 and *Brady* material for the specific defendant at issue, not every second of Capitol footage on January 6.  As this Court has recognized many times, "'open-file discovery does not relieve the government of its *Brady* obligations.'" *United States v. Saffarina*, 424 F. Supp. 3d 46, 85 (D.D.C. 2020) (quoting *United States v. Hsia*, 24 F. Supp. 2d 14, 29 (D.D.C. 1998) (Friedman, J.)); *United States v. Blankenship*, 2015 U.S. Dist. LEXIS 76287, at *3 (S.D. W. Va. June 12, 2015) (same); *United States v. Salyer*, 2010 U.S. Dist. LEXIS 77617 (E.D. Cal. Aug. 2, 2010) (same); *United States v. Bornovsky*, 820 F.2d 575, 575 (2d Cir. 1987) ("The government did not fulfill its obligation

merely by providing mountains of documents to defense counsel who were left unguided. . . .").

In *Hsia*, this Court held that "the government cannot meet its *Brady* obligations by providing [the defendant] with access to 600,000 documents and then claiming that [the defendant] should have been able to find the exculpatory information in the haystack." 24 F. Supp. 2d at 29.  The Court ordered the government to identify the *Brady* material of which it was aware.  *Id.*  Similarly, in *Saffarina* the government produced "millions of pages of documents" to the defense but refused to identify any *Brady* material of which it was aware.  424 F. Supp. 3d at 86.  This Court ordered the government to identify the *Brady* material of which the government was or should be aware.  424 F. Supp. 3d at 90-91.  The Court based its decision on the fact that the defendant was "an individual defendant who neither has the benefit of parallel civil litigation, nor access to voluntary corporate assistance to sift through the massive amounts of documents within the government's voluminous production." *Id.* at 92.

Relying on *Saffarina*, a judge in this Court held that "open-file" discovery was not sufficient in the context of the January 6 investigation. *United States v. Griffin*, 21-cr-92-TNM (D.D.C. 2021), 9/20/21 Hr'g.

Thus, the delay supposedly attributable to producing "terabytes" of useless "global" material, ECF No. 327, p. 9, is not a fact that redounds in the government's favor under the second *Barker* factor.  To the contrary, it represents an attempt to overwhelm the defense with gratuitous "open file" discovery in avoidance of its *Brady*-identification obligations.  *Saffarina*, 424 F. Supp. 3d at 85; *Griffin*, 21-cr-92-TNM (D.D.C. 2021), 9/20/21 Hr'g.

Third, the government represents that Nordean has not "consistently raised his desire for a speedy trial." ECF No. 327, p. 15 n. 7.  Nordean's claim to the contrary "is not true." *Id.* Citing to various hearing transcripts, the government selectively quotes Nordean's counsel on the

subject of a speedy trial.  The government's argument is misleading.

Here are some examples of Nordean objecting to delays in his trial date as he is detained pretrial for a year.  These are omitted from the government's brief.  On April 19, Nordean asked for a shorter STA continuance given that the Court had just revoked his bond.  4/19/21 Hr'g Tr. at 71.

On June 3, Nordean explicitly objected to a continuance of the STA and did not agree that every kind of defense motion—even one essential to preserving a defendant's rights—would toll the STA.  6/3/21 Hr'g Tr. at 19.

On July 15, Nordean explicitly asked for a trial date, noting that even if a trial were held in April 2022, it would be "pretty serious pretrial [incarceration] time." 7/15/21 Hr'g Tr. at 10-11.  The Court understood Nordean to be invoking his speedy trial right, for it responded, "Mr. Smith, you're going to get your trial date. I'm sensitive to the points you're raising about [prolonged] detention." *Id.* at 13.

In other hearings, Nordean has not consented to STA continuances.  Instead, he has pointed out the provision under § 3161(h)(1)(D) that a pending motion may result in excludable delay.  7/15/21 Hr'g Tr. at 78; 9/21/21 Hr'g Tr. at 81; 11/3/21 Hr'g Tr. at 29-30.  To the extent the Court construes counsel as having meant that the period running from the filing of the motion to the court's disposition was excludable, counsel's statement was partly in legal error.   Section 3161(h)(1)(D) "excludes time in two situations." *Henderson v. United States*, 476 U.S. 321, 328 (1986).  "The first arises when a pretrial motion requires a hearing." *Id.*  In that case, § 3161(h)(1)(D) "excludes the entire period between the filing of the motion *and the conclusion of the hearing*." *Id.* (emphasis added).  "The second situation concerns motions that require no hearing and that result in a 'prompt disposition.'" *Id.*  "Prompt disposition" is limited to the 30-

day cap identified in § 3161(h)(1)(H).  *Id.*

Here, even assuming Nordean's motion to dismiss, filed on June 3, 2021, was a motion that "required" a hearing, that hearing was held on September 21, 2021.  The period between that date and the Court's disposition of the motion, on December 28, 2021, is thus not STA excludable under Supreme Court precedent.  *Henderson*, 476 U.S. at 328.  On July 20, 2021, Nordean filed his motion to reopen the bail hearing.  ECF No. 122.  On December 14, the Court denied Nordean's motion, explicitly holding that it was *not* holding a reopened detention "hearing" under § 3142(f).  12/14/21 Hr'g Tr. at 8.  Thus, that motion period is not excluded under § 3161(h)(1)(D).  As for Nordean's *Roviaro* motion, the Court has not held a hearing.

In sum, then, no Nordean motion has tolled the STA since September 2021, assuming arguendo his motion to dismiss "required" a hearing in the first place.

Fourth and finally, the government argues that Nordean has not established the prejudice factor under the *Barker* test.  ECF No. 327, p. 17.  That is wrong.  As discussed above, "oppressive pretrial incarceration" satisfies this element of the speedy trial test.  *Barker*, 407 U.S. at 523; *see also Jackson v. Ray*, 390 F.3d 1254, 1264 (10th Cir. 2004) (the "second most important [prejudice] factor" is oppressive pretrial incarceration "because the seriousness of a post-accusation delay worsens when the wait is accompanied by pretrial incarceration"); *United States v. Selzter*, 595 F.3d 1170, 1175 (10th Cir. 2010) ("Prolonged pretrial incarceration is a well-established type of prejudice that a defendant may rely upon in making a Sixth Amendment speedy trial claim.").

The "approximately 13 months [Nordean] will have been detained at the time of the presently schedule trial" cannot run afoul of the *Barker* test, the government argues, because "pretrial detention would be *per se* impermissible in complex cases." ECF No. 327, p. 18.  Not

one bit.  That period of pretrial detention is impermissible in complex cases—where the government has indicted hundreds of individuals *before, not after, conducting any investigation*, a factor that was completely within the government's power to control.  As the government knows, that is not a large set of cases.  To the contrary, that distinction makes Nordean's case rather anomalous for a federal prosecution.  In addition, "13 months" does not fully account for Nordean's prejudice, as the government is attempting to indefinitely extend his pretrial incarceration *beyond* that mark.

None of the authorities cited by the government on this point is apposite.  In fact, its citations are quite misleading.  Consider the government's citation to *United States v. Tchibassa*, 452 F.3d 918, 924 (D.C. Cir. 2006).  *Tchibassa* holds that "delay of nearly eleven years" is not a speedy trial violation in this circuit—represents the government.   ECF No. 327, p. 13.  Eleven years is greater than the "13 months" Nordean has been incarcerated, to be sure.  Except that the eleven-year delay in that case was not between arrest and trial, as in Nordean's case, but between the defendant's indictment and his arrest.  *Tchibassa*, 452 F.3d at 922.  Absurdly, the defendant in *Tchibassa* argued that because the government, after indicting him, could not find and extradite him from his lair "located across the Congo River from Kinshasa" his speedy trial right had been violated.  *Id.*  Uncontroversially, then, the D.C. Circuit excused the "delay of nearly eleven years" between indictment *and arrest* because the defendant was not in custody and the "delay" was entirely attributable to the defendant.  *Id.*

The government characterizes the holding of *United States v. Lopesierra-Gutierrez*, 708 F.3d 193 (D.C. Cir. 2013) as "no speedy trial violation where defendant was detained for three-and-a-half years pretrial." ECF No. 327, p. 18.  Three and a half years is longer than "13 months," points out the government.  As with *Tchibassa*, the government misleadingly omits that

virtually the entire pretrial delay in *Lopesierra-Gutierrez* was attributable to the government's inability to extradite the defendant's co-conspirators and that the defendant did not even object to delay attributable to the joinder of additional international defendants.  708 F.3d at 203.  The D.C. Circuit was clear that it relied on the special circumstances relating to the time-consuming extradition of co-defendants.  *Id.*

Or take the government's citation to *United States v. Rice,* 746 F.3d 1074, 1082 (D.C. Cir. 2014).  The D.C. Circuit found the defendant's 26-month pretrial incarceration consistent with *Barker*, says the government.  ECF No. 327, p. 18.  Again, as with *Tchibassa* and *Lopesierra-Gutierrez*, the government has misleadingly omitted that *Rice* is an extradition case.  After Rice was arrested for his involvement in a South American drug conspiracy, six defendants remained outside the country awaiting extradition.  746 F.3d at 1076.  Although *the district court* suggested severing the domestic defendants from the unextradited ones, the defendant did not take up the offer.  *Id.* at 1076-77.  On appeal, the defendant argued that the court erred by not severing the unextradited defendants *sua sponte.  Id.* at 1079.  The D.C. Circuit rejected that frivolous argument, noting "the need to bring foreign defendants and witnesses to the United States" and citing *Lopesierra-Gutierrez*.  *Rice,* 746 F.3d at 1080.

*Tchibassa*, *Lopesierra-Gutierrez* and *Rice* are nothing like Nordean's case.  Unlike Nordean's case, all of them involve matters where the government faced complex hurdles extraditing the defendants to the United States from countries traditionally reluctant or unable to do so.  Unlike Nordean's case, they involve defendants who were not even incarcerated pretrial.  And unlike Nordean's case, they involve defendants who did not even move to sever newly

joined defendants.[5]

Taken together, then, the government has cited no authority rejecting Nordean's argument that over a year of pretrial incarceration, in a case not involving extradition, satisfies the prejudice factor of the *Barker* test.  It argues that "the particular circumstances of his confinement" are not "so oppressive." ECF No. 327, p. 19.  The government does not believe its own position.  As anyone with passing familiarity with the federal prison system knows, the hardship borne by those incarcerated during the Covid-19 pandemic has been ferocious.  Nordean has been held in solitary confinement for long stretches of time.  Many international non-governmental organizations have concluded that the "devastating use of this harmful form of confinement in many US prisons cannot be squared with respect for human rights." *US: Look Critically at Widespread Use of Solitary Confinement*, Human Rights Watch, June 18, 2012, available at: https://www.hrw.org/news/2012/06/18/us-look-critically-widespread-use-solitary-confinement (collecting studies and reports).

Indeed, that is one reason why the same Department of Justice that hypocritically insists on Nordean's harsh pretrial detention for political reasons, despite the many viable release options available, just a few months ago decided not to order thousands of convicts who had been released in the pandemic to return to prison.  *DOJ Says Prisoners Released on Home Confinement Because of Covid Can Stay*, NBC News, Dec. 21, 2021, available at:

---

[5] The government's unpublished and out-of-circuit citations do not avail it.  *United States v. Muhtorov*, 2021 U.S. Dist. LEXIS 36170, at *176-79 (10th Cir. Dec. 8, 2021) (case involved hundreds of motions, including CIPA issues, and defendant did not assert his speedy trial right until four years into the proceedings); *United States v. Flores-Lagonas*, 992 F.3d 550, 563 (8th Cir. 2021) (defendant caused delay through years of psychological evaluations regarding competency to stand trial); *United States v. Worthy*, 772 F.3d 42, 47 (1st Cir. 2014) (affirming district court's denial of a speedy trial motion to dismiss because defendant first raised the argument five days before trial and had not objected to trial continuances).

https://www.nbcnews.com/politics/justice-department/doj-says-prisoners-released-home-confinement-because-covid-can-stay-n1286406.  And it is why sentencing courts have found ways to grant "2 for 1 days harsh time credit" for time served in pretrial confinement during the pandemic.  As one court characteristically explained the matter, the "constant lockdowns and other unusually severe conditions of confinement necessary to reduce the risk of COVID infection in the close quarters of a prison. . . mak[e] the conditions of confinement harsher, both physically and psychologically, than they would otherwise normally be." *United States v. Henareh*, __ F. Supp. 3d__, No. 11-cr-93-JSR, 2021 U.S. Dist. LEXIS 6855 (S.D.N.Y. Jan. 13, 2021) (Rakoff, J.); *United States v. Rodriguez*, 492 F. Supp. 3d 306, 311 (S.D.N.Y. 2020) (same); *United States v. Garcia*, 505 F. Supp. 3d 328, 332 (S.D.N.Y. 2020) (same).

Finally, the government contends that the Court should ignore a Sixth Amendment speedy trial right violation when considering whether to the vacate the May trial date, because "the only proper remedy is dismissal." ECF No. 327, p. 12 n. 5.  That does not make sense.  If Nordean's speedy trial right has already been violated, the Court should not exacerbate the error by worsening the prejudice caused by his pretrial detention for a presumptively prejudicial duration.  And even if his right has not been hitherto violated, the fact that the trial delay is already presumptively prejudicial cautions against indefinitely delaying Nordean's trial and thereby violating his right in the near future.

For all the foregoing reasons, the Court should either deny the government's motion to vacate the trial date and sever Defendants Pezzola and Tarrio or order the government to work with Nordean to create release conditions satisfactory to all parties and the Court.

Dated: April 3, 2022                              Respectfully submitted,

                                                  */s/ David B. Smith*

David B. Smith (D.C. Bar No. 403068)
108 N. Alfred St.
Alexandria, VA 22314
Phone:(703)548-8911
Fax:(703)548-8935
dbs@davidbsmithpllc.com

Nicholas D. Smith (Va. Bar No. 79745)
7 East 20th Street
New York, NY 10003
Phone: (917) 902-3869

## **Certificate of Service**

I hereby certify that on the 3rd day of April, 2022, I filed the foregoing filing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following CM/ECF user(s):

> Jim Nelson
> Assistant United States Attorney
> 555 4th Street, N.W., Room 4408
> Washington, D.C. 20530
> (202) 252-7846

And I hereby certify that I have mailed the document by United States mail, first class postage prepaid, to the following non-CM/ECF participant(s), addressed as follows: [none].

/s/ David B. Smith
David B. Smith, D.C. Bar No. 403068
David B. Smith, PLLC
108 North Alfred Street, 1st FL
Alexandria, Virginia 22314
(703) 548-8911 / Fax (703) 548-8935
dbs@davidbsmithpllc.com

19