```
               IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF COLUMBIA
- - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA          CR Nos. 1:21-cr-00175-TJK-1
                                          1:21-cr-00175-TJK-2
v.                                        1:21-cr-00175-TJK-3
                                          1:21-cr-00175-TJK-5
1-ETHAN NORDEAN                            1:21-cr-00175-TJK-6
2-JOSEPH RANDALL BIGGS
3-ZACHARY REHL                    Washington, D.C.
5-ENRIQUE TARRIO                  Thursday, April 21, 2022
6-DOMINIC PEZZOLA,                2:00 p.m.
                     Defendants.
- - - - - - - - - - - - - - - - x
```
_____

               TRANSCRIPT OF STATUS CONFERENCE
        HELD BEFORE THE HONORABLE TIMOTHY J. KELLY
                UNITED STATES DISTRICT JUDGE
_____

APPEARANCES VIA VIDEOCONFERENCE:

For the United States:   Luke M. Jones, Esq.
                         Erik M. Kenerson, Esq.
                         Jason B.A. McCullough, Esq.
                         U.S. ATTORNEY'S OFFICE
                         555 4th Street, NW
                         Washington, DC 20530
                         (202) 252-7233

For the Defendants:      Nicholas D. Smith, Esq.
                         David B. Smith, Esq.
                         DAVID B. SMITH, PLLC
                         7 East 20th Street
                         Suite 4r
                         New York, NY 10003
                         (917) 902-3869

                         John D. Hull, IV, Esq.
                         HULL MCGUIRE PC
                         1420 N Street, NW
                         Washington, DC 20005
                         (202) 429-6520

                         Carmen D. Hernandez, Esq.
                         7166 Mink Hollow Road
                         Highland, MD 20777
                         (240) 472-3391

APPEARANCES VIA VIDEOCONFERENCE CONTINUED:

For the Defendants:        Nayib Hassan, Esq.
                           LAW OFFICES OF NAYIB HASSAN, P.A.
                           6175 NW 153 Street
                           Suite 209
                           Miami Lakes, FL 33014
                           (305) 403-7323

                           Sabino Jauregui, Esq.
                           JAUREGUI LAW, P.A.
                           1014 West 49 Street
                           Hialeah, FL 33012
                           (305) 822-2901

                           Steven A. Metcalf, II, Esq.
                           METCALF & METCALF, P.C.
                           99 Park Avenue
                           6th Floor
                           New York, NY 10016
                           (646) 253-0514

Court Reporter:            Timothy R. Miller, RPR, CRR, NJ-CCR
                           Official Court Reporter
                           U.S. Courthouse, Room 6722
                           333 Constitution Avenue, NW
                           Washington, DC 20001
                           (202) 354-3111

Proceedings recorded by machine shorthand; transcript
produced by computer-aided transcription.

1          **P R O C E E D I N G S**

2          THE DEPUTY CLERK:  We are on the record in

3     Criminal Matter 21-175, United States of America v.

4     Defendant 1, Ethan Nordean; Defendant 2, Joseph R. Biggs;

5     Defendant 3, Zachary Rehl; Defendant 5, Enrique Tarrio; and

6     Defendant 6, Dominic Pezzola.

7          Present for the Government are Jason McCullough,

8     Luke Jones, and Erik Kenerson; present for Defendant 1 are

9     David Smith and Nicholas Smith; present for Defendant 2 is

10    John Hull; present for Defendant 3 is Carmen Hernandez;

11    present for Defendant 5 are Nayib Hassan and Sabino

12    Jauregui; present for Defendant 6 is Steven Metcalf.

13    Defendants 1, 2, 3, 5, and 6 are not present as their

14    appearance is waived.

15         THE COURT:  All right.  Well, good afternoon to

16    everyone.

17         We are here for argument under seal on a motion

18    that was filed by Defendant Nordean, but before we get to

19    that, I'd like to go ahead and address where we left off the

20    last time we were all together which is rescheduling our

21    trial date.  I had asked the parties to confer about their

22    availability and, helpfully, I got a filing from Defendant

23    Nordean very quickly thereafter about the parties'

24    availability in -- or at least some parties' availability to

25    begin August 8th.

```
 1              Let me first, I guess, turn to the Government.  I
 2    think the Government, in past pleadings, had represented
 3    that August was available for the Government.  So I don't
 4    know who wants to address that.  But is August 8th a good
 5    day for the Government?
 6              MR. MCCULLOUGH:  Yes, Your Honor.  Jason
 7    McCullough for the United States.  And indeed August 8th is
 8    a date that is available for the Government.  The Government
 9    takes the position that all of the defendants should be
10    present for the trial and believes that Defendant Pezzola
11    can be present for the trial.  I'm happy to address that at
12    more length, but I understand Your Honor's likely getting to
13    that.
14              THE COURT:  Yes.  Well, let me -- that would be
15    the next thing I would inquire about.
16              So Mr. Metcalf, tell me at least, you know -- it
17    wasn't your direct representation, but in the filing that
18    Mr. Nordean made, he indicated that you all indicated that
19    you weren't available for trial on that date and could not
20    provide a date when you would be prepared to do so.  So let
21    me ask you to elaborate on the reasons for that.
22              MR. METCALF:  Thank you, Your Honor.  Good
23    afternoon.
24              So as I -- I've stated to Your Honor before and
25    everyone else who I've spoke to on this matter, we -- when
```

1   we got superseded in this --

2          THE COURT:  Well, to be clear --

3          MR. METCALF:  -- we did not have a --

4          THE COURT:  Mr. Metcalf, I just want to make one

5   thing -- you never -- maybe, you said to other folks, but

6   you haven't made any representations, I don't think, to me

7   on this point.

8          MR. METCALF:  I did on the record, I believe, the

9   last time and it was --

10          THE COURT:  All right.

11          MR. METCALF:  -- that in good faith, I was not in

12   a position to go forward at the speed that this case was

13   going.  When we got superseded on this case, we did not have

14   a trial date picked at that time.

15          THE COURT:  Correct.

16          MR. METCALF:  Since January, Mr. Pezzola was

17   transferred to a different vicinity, and I've had difficulty

18   speaking with him and just trying to get that communication

19   up and going.  So from my understanding, I was not at the

20   level and I'm not at the speed that everybody else was in

21   this case.  So in good faith, I could not say.  And in

22   fairness to Mr. Pezzola and myself, I could not say that I

23   was able to make the representations at that time that I was

24   willing to be able to say that I could go to trial around

25   the dates that everyone was looking for.  The dates that I

1    would be looking for would be more along the lines of

2    September/October.  I know that that's not going to happen.

3    Everybody has really come to the understanding that April --

4    or August 8th is their date.  Now, I believe that there was

5    one other attorney who was on a similar scenario from having

6    just been retained, but he is also now of the belief that he

7    could be ready on August 8th, from my understanding and the

8    recent filing.  So with that being said, I'm not going to be

9    the only hold-off here.  And if August 8th is going to work

10   for everybody -- all the defense counsel in this situation,

11   I'm going to have to figure out a way to make it work.

12             THE COURT:  Well, let me just say this.  I

13   understood -- the reason I interrupted you before was only

14   that I thought -- your representations before were that you

15   could not be prepared at the May trial date.  And so for

16   that and other reasons, I vacated the May trial date.

17   Obviously, we're talking about a trial date now in August.

18   I think -- look, I -- here's what I think -- here's how I

19   think we should proceed.  Obviously, this just underscores

20   the challenges of getting a case this complex and with this

21   many defendants off the ground.  I have, you know -- it

22   seems like I can't go fast enough for some folks and you

23   can't go slow enough for others.  But in any event, look,

24   Mr. Metcalf, we are -- at this point, you're not telling me

25   you have, you know, a trial before another judge or

```
 1   something like that.  And I think, given the length of time
 2   the case -- acknowledging what you're saying before about
 3   you didn't have a trial date -- your case had not been set
 4   for trial, even though your client had been -- has been --
 5   had been charged and, in fact, held and, in fact, detained
 6   for quite a long time, even understanding that, I think
 7   we're talking about a trial date that's still, you know,
 8   three-and-a-half months out.  If we get -- I mean, I'll --
 9   if you want to put something down on paper and explain to me
10   why you, even with all the lead time you've had here, can't
11   be ready, I mean, I'll entertain it, but I think, at this
12   point, I'm going to set the trial on the date that everyone
13   can be there and be prepared and we'll deal with any hiccups
14   as they come along, but I think, you know, again --
15              MS. HERNANDEZ:  (Indicating.)
16              THE COURT:  Yeah.  Ms. Hernandez, are you --
17   you're raising your hand?
18              MS. HERNANDEZ:  Yes, Your Honor.  Just two
19   caveats.
20              THE COURT:  Okay.
21              MS. HERNANDEZ:  I have a small trial in front of
22   Judge Cooper.  Defendant is out.  I assume Judge Cooper will
23   agree -- my client is okay with continuing the trial date.
24   So I assume -- that's an August trial date.  It's a one-week
25   trial.  So I'm --
```

1          THE COURT:  I assume he would do that, too.  And

2     if -- I assume he would do that, too.  Again, I think we

3     would cross that bridge if that was --

4          MS. HERNANDEZ:  And the -- I've said this.  I have

5     a September 19th trial -- the date that we came up with was

6     based on the representation from the Government that their

7     trial -- their case in chief would take two-and-a-half weeks

8     to four weeks at the outset and just I have a trial --

9     four-defendant, six defense counsel -- set for September

10    19th.  Defendants have been in jail since 2018.  It's been

11    continued because of COVID and multiple reasons.  So for

12    those of us who talk a lot during our cross-examinations and

13    all of that, it's going to be a problem -- I just want --

14    the defense -- defense counsel know about it.  I just want

15    the Court to know.  That case is in front of Boasberg.  I

16    think it's --

17          THE COURT:  Okay.

18          MS. HERNANDEZ:  -- not going to be moved.

19          THE COURT:  I have, you know -- to be candid -- I

20    mean, I -- in order to accommodate that trial, I'd be -- the

21    August 8th trial date, I would be moving a few matters

22    around, too.  None with detained defendants, but I do have a

23    detained defendant trial starting that same day,

24    Ms. Hernandez.  So -- in another case.  So I'm going to be

25    in the same boat as you.  And you -- I mean, I, you know --

 1    whenever -- I guess I would say yes, you have folks talking

 2    a lot and that can extend trials, but I think you probably

 3    would agree with me that the likelihood of the trial going

 4    shorter than is estimated is usually -- it's more likely

 5    that the trial will go shorter than longer.  That's been my

 6    experience over the years.  Maybe -- from your face

 7    reaction, maybe not.

 8            MS. HERNANDEZ:  It seems -- it would seem -- it

 9    would be surprising in this case.

10            THE COURT:  Okay.  Well, you know, there's a first

11    time for everything.

12            All right.  So Mr. Metcalf, if no one --

13            Does anyone else want to be heard on the issue of

14    the trial date?

15            (Brief pause.)

16            All right.  So Mr. Metcalf, I, you know -- as I

17    said, I'm not -- it would be -- I'm certainly not in the

18    business of making defendants go to trial when they can

19    articulate exactly why they're not prepared to do so.  And

20    I'll certainly hear you as we get closer if there's some

21    specific reason you want to lay out that you're not able to

22    be prepared, but I think on the record before me, I'm going

23    to set the entire case that we have before us for trial on

24    August 8th, and then let me just work backwards -- I mean, I

25    guess the only other date that I was linking to that date

```
 1    would be a pretrial conference, and the date that I picked
 2    out that at least I'm available is July 13th.  So again,
 3    given the number of counsel here, maybe, the easiest thing
 4    to do -- so it's a Wednesday -- would be for any counsel who
 5    has a concern with that date -- and we'll say 10:00 o'clock
 6    in the morning -- anyone has a concern with that date, raise
 7    your hand and I will call on you.  I'm not even going to ask
 8    people to hit the button -- the raise-your-hand button.
 9    Literally raise your hand and I'll --
10               MR. METCALF:  (Indicating.)
11               THE COURT:  Mr. Metcalf?
12               (Brief pause.)
13               You are still muted, sir.
14               MR. METCALF:  Does Your Honor have a specific time
15    on the 13th?
16               THE COURT:  So I think I said 10:00 o'clock in the
17    morning.  10:00 o'clock in the morning.
18               MR. METCALF:  I --
19               THE COURT:  And my -- we can, obviously, see what
20    the situation is as we get closer.  I think for cases that I
21    have had -- and we'll see whether we're -- what the -- what
22    COVID precautions will have to be taken at that time, but --
23    I mean, my hope would be to be able to have that in person
24    so that we could all get, sort of, comfortable with whatever
25    the -- whether there are still Plexiglass shields, for
```

1    example, up in my courtroom at that time.  Let's cross --

2    I'll cross my fingers and hope that there are not, but in

3    any event, that's my -- and -- but, again, if we can -- as

4    we get closer, we can have a conversation about that.

5          So -- all right.  I'll set that date if there's no

6    objection there, a pretrial conference on the 13th at 10:00

7    o'clock, and then I'm just going to set a motions schedule

8    to begin -- let's see, you know -- to begin in mid-June that

9    would end right at the end -- so it basically -- pretrial

10   motions to be filed June 15th, which is a Wednesday, and

11   I'll set a schedule that just has those motions being ripe

12   by the 13th and we'll go from there.

13         Is that a -- does anyone want to be heard on any

14   of that?

15         MR. NICHOLAS SMITH:  Ms. Hernandez just filed a

16   motion this morning that might affect the timing on that

17   schedule or --

18         Carmen, do you want to speak to that or --

19         MS. HERNANDEZ:  I -- the motion just asks the

20   Court to direct the Government to identify case-in-chief

21   discovery --

22         THE COURT:  Well --

23         MS. HERNANDEZ:  -- as soon as possible.  I think

24   it --

25         THE COURT:  Ms. --

```
 1              MS. HERNANDEZ:  -- would help.

 2              THE COURT:  Ms. Hernandez, here's -- so on that

 3    front -- so let me just -- I want to address discovery in a

 4    moment separately.  So I'm -- that -- the schedule -- the

 5    trial -- or the scheduling order that I issue will have the

 6    motions schedule beginning May [sic] 15th and rolling

 7    forward to be ripe at a motions hearing and pretrial

 8    conference on July 13th.

 9              Now, on the issue of discovery -- and I know

10    Mr. Biggs, who is -- I mean, I'm sorry, Mr. Hull, who's not

11    on the video but is on audio, filed a notice, too.

12              Ms. Hernandez, I didn't see your motion, but I saw

13    what Mr. Hull filed.

14              What I propose to do, because I don't want to burn

15    time with motions, you know -- with having this be through

16    motions practice, is set a date as quickly as we can.  We

17    may not be able to do it today because what I will want to

18    do is have your clients present, number one; number two, the

19    discovery folks from the Government who are not present here

20    today, but I know, Mr. Jones, Mr. McCullough,

21    Mr. Kenerson -- the discovery -- the folks who are in charge

22    in your office of making sure that discovery is prioritized

23    for upcoming trials and that are really in the weeds on how

24    that is working and how we can facilitate that, I think it

25    makes sense to just -- rather than have this be done
```

1    piecemeal and have motions come in one at a time, for us to

2    just set a date as soon as we can -- we can all be together

3    -- and talk about how to facilitate that.  I don't want to

4    wait to get motions.  I think it makes sense for us to all

5    just have all the folks who know the practicalities of this

6    on a conference like this and talk it through.

7          Does anyone have -- and so -- I don't know.  What

8    I'm going to ask is -- after we're done here today, I'll

9    have Ms. Harris reach out to the parties and then also think

10   about how we can get all your -- the defendants present,

11   too, but when she reaches out to the Government, if the

12   Government can be cognizant of the fact that I -- what I

13   really want to have is Ms. -- the folks in your office who

14   are, you know, knee deep in this, to make sure that they can

15   be present so we can talk about how to facilitate discovery.

16         MR. MCCULLOUGH:  Understood, Your Honor.  Thank

17   you.

18         THE COURT:  All right.  So --

19         MS. HERNANDEZ:  Your Honor --

20         MR. HULL:  And, Your Honor --

21         THE COURT:  Yes.  Ms. --

22         MR. HULL:  Excuse me --

23         THE COURT:  I think that was -- was that Mr. Hull?

24         MR. HULL:  That was Mr. Hull.  Yeah, Dan Hull for

25   Joe Biggs.

```
 1              THE COURT:  Yep.

 2              MR. HULL:  It -- this may affect your thinking a

 3    little bit.

 4              THE COURT:  Okay.

 5              MR. HULL:  Today, I was able to talk with the

 6    Marshals Service, and although it's not intended, the two

 7    issues I raised, Joe Biggs, the current solitary

 8    confinement -- which may have been a mistake, okay, at this

 9    point; we're not sure that -- just a possibility -- and his

10    ability to do discovery in a jail that's -- everybody wants

11    to be in but doesn't really have the technological chops yet

12    for, you know, tablets and laptops.  Well, what, apparently,

13    the situation might be -- and it's going to take a while to

14    work this out -- is that the Marshals Service would permit

15    me to get a tablet or something that Joe Biggs can look at

16    stuff on, but in exchange for that, he would need to stay in

17    solitary because they don't want the tablet out in general

18    pop, which I understand.  I think I, kind of, get that.  And

19    the only other alternatives are his going to Louisville

20    [sic] or someplace like that which I'm not sure we want.

21    None of this is perfect.  We want the August date the trial

22    date.  I like the date sooner rather than better [sic], but

23    I'm just saying that there may be a -- some light here, what

24    I just found out about today.  I'm getting Joe a tablet,

25    even though he might have to be in the SHU to use it, if
```

1    that's understandable.

2          THE COURT:  It is understandable, and all I can

3    say is I think we would all benefit from having, again, the

4    folks at the U.S. Attorney's Office here who are, you know

5    -- we can just -- we just need to cut through all the games

6    of telephone, have the folks who know exactly how these

7    programs work and how -- how they should work and how they

8    shouldn't.  We might even want to have a representative from

9    the marshals present now that I think about.

10          MR. HULL:  I was going to suggest that, and --

11          THE COURT:  Yeah.

12          MR. HULL:  -- I think that would -- they seem to

13    understand who has the tack and who doesn't and they're --

14          THE COURT:  Right.

15          MR. HULL:  -- way ahead in their thinking about --

16    I mean, they do things advisably, although it doesn't always

17    seem like it at the time.

18          THE COURT:  Okay.

19          MR. HULL:  So yeah, over on the fourth floor of

20    your building is -- there should be a representative, if

21    there could be.  Yeah.

22          THE COURT:  Okay.  So --

23          MR. HULL:  Marshals Service.

24          THE COURT:  -- as I said --

25          MR. HULL:  Right.

 1            THE COURT:  -- we'll -- rather than, you know,

 2    deal with this piecemeal and force the defense to file

 3    motions, let's just all -- I mean, I don't think it makes

 4    sense to pick the day today, but what I'm going to ask

 5    Ms. Harris to do is, again, reach out first to the

 6    Government -- we'll include the marshals in this -- and just

 7    we'll get a date literally as soon as we possibly can that

 8    meets everyone's schedules to talk about discovery so we can

 9    knock that out.

10            MS. HERNANDEZ:  Your Honor, for your information,

11    I will be filing a motion regarding Brady disclosures -- or

12    discovery -- or the problems I believe are present with the

13    Brady discovery.

14            THE COURT:  All right.  Look, Ms. Hernandez, you

15    can -- I'm not going to tell you not to file it.  I -- all I

16    can say is we are going to have, as soon as we can get

17    everyone together, a -- in -- a status conference about

18    discovery, and yes, I think a lot of that is going to be

19    about the technical aspects of discovery, but if you want to

20    save your, you know, writing and raise that at that time,

21    then that's fine, too, but I -- whatever you want to do.

22            MS. HERNANDEZ:  I think there are issues.  It's

23    just a -- we have a different understanding, I think, of

24    Brady obligations.  I've been --

25            THE COURT:  Well --

 1              MS. HERNANDEZ:  I've been having discussions with

 2      the Government, but I believe --

 3              THE COURT:  All right.  Well, that -- hmm.  The

 4      contours of that, I think, are fairly well established, but

 5      all right.  We'll -- very well.

 6              MR. HASSAN:  (Indicating.)

 7              THE COURT:  Mr. Hassan, I see your both real hand

 8      and electronic hand up.

 9              MR. HASSAN:  Judge, so this is the situation with

10      my client.  Judge, he's been moved around from every

11      facility possible.  I mean, he's been going bouncing around.

12      And so my worry about sending him a tablet or sending him

13      any discovery is that, then, the marshals take it away from

14      him because that's what arose in a prior situation.  We sent

15      it off to a facility and, therefore, they took away his

16      materials before he transferred.  And so those issues are

17      arising.  I know I've spoken with Mr. Kenerson as well as

18      Mr. Jones regarding this issue.  I've also discussed it with

19      the Court before as far as the possibility to be relocated

20      down to South Florida to discuss issues.  But, Judge, this

21      is something that -- I mean, we just need an end location

22      for him --

23              THE COURT:  Right.

24              MR. HASSAN:  -- so either I can travel to see him

25      or send documents to him so he can review it and it not be

1    taken away from him.

2              THE COURT:  I hear you loud and clear.  That's a

3    completely fair request.  And that -- again, I think, maybe,

4    that's why having the marshals involved in this conversation

5    hopefully will bear fruit.  I agree with you.  If he's -- I

6    mean, particularly since you are where you are -- I mean,

7    we, obviously, have to get him here to trial, but if he's --

8    if you're there -- and I'll -- we can talk about it, but

9    yes, I agree.  He has to get settled wherever he's going to

10   be and the next step is, obviously, to make sure he has

11   access to discovery.  I -- no argument from me here.

12             And, Ms. Hernandez, since you raised it, actually,

13   I did notice you -- and you had -- in a couple of your

14   filings already, you'd mentioned this issue about Brady,

15   kind of, tangentially.  So why don't I just do this, also --

16   I mean, I had this on my agenda to do, as well.  Just you --

17   because of your filings, and also, a review of the record,

18   the strangeness of the way the defendants in this case were

19   arrested and made their initial appearances in different

20   jurisdictions, I'm just going to go ahead and give the Due

21   Process Protections Act warnings, again, to the Government

22   just out of an abundance of caution.

23             So I will order the Government to review its

24   disclosure obligations under Brady v. Maryland, 373 U.S. 83,

25   1963, and its progeny, as set forth in Local Criminal Rule

```
 1     5.1, and I will order them to comply with those provisions.
 2     The failure to comply could result in dismissal of the
 3     indictment or information, dismissal of individual charges,
 4     exclusion of Government evidence or witnesses, continuances,
 5     bar discipline, or any other remedy that is just under the
 6     circumstances.
 7              Mr. McCullough, does the Government have any
 8     questions about those obligations?
 9              MR. MCCULLOUGH:  No, Your Honor.  We are aware of
10     our Brady obligations and are following them and complying
11     with the Court's ruling.
12              THE COURT:  All right.  Very well.  And I'll --
13              MR. HULL:  Thank you for that, Your Honor.
14              THE COURT:  Absolutely.  And I'll go ahead and
15     just -- again, I think, for some defendants, this might --
16     the -- it's clear that this was already done, but we'll
17     enter an order on the docket, as well.
18              All right.  So again, with the caveat that we will
19     come back as soon as we -- as soon as Ms. Harris can herd
20     all the cats and talk about discovery, my thought is now, if
21     there's nothing else anyone wants to talk about on the
22     public record, to move into a sealed portion of the hearing
23     to talk about the pending motion.  Does anyone have any
24     objection to that?
25              MR. HASSAN:  Judge, the one thing I wanted to
```

1  bring up to the Court's attention is we filed a motion to --

2  a few days ago and there's been no direction from the Court

3  in regards to the Government's necessity to file a response

4  and, therefore, reply thereafter.  So I just wanted to know

5  what the Court's process was in that.

6          THE COURT:  I will -- that's a good point.  And it

7  applies to Mr. Nordean as well, too, because he also has now

8  another motion for bond outstanding.  So I mean, I'm going

9  to have the Government -- Mr. Hassan, I'm going to have the

10  Government respond -- I mean, they obviously have to respond

11  under the rules.  They will respond under the rules.  And

12  would -- do you typically file a reply?  Will you -- do you

13  plan to file a reply?

14          MR. HASSAN:  Judge, I would anticipate, depending

15  what the Government files.

16          THE COURT:  Sure.

17          MR. HASSAN:  I'll file a reply within the rules.

18          THE COURT:  I don't want to cut you off from that,

19  but what I think as we get -- as the pace of things here

20  accelerates, what I'm going to do is once you've filed your

21  reply, I'm just going to -- we'll have Ms. Harris reach out

22  both to Mr. Nordean now that his motion is ripe but then

23  also to you once your client's motion is ripe and just

24  schedule a hearing where you're the only one present.  We

25  don't need to have -- well, you and your client.  We don't

```
1    need to have every single other person present for your

2    client's detention hearing or appeal of detention order.  So

3    we will take that up.  We may set a control date down the

4    line when we're all going to be here next together, but

5    we're not -- I'm not going to wait.  As soon as that's ripe,

6    I'll take it up and we'll let you know when I'll hear

7    argument on it.

8              MR. HASSAN:  Thank you, Judge.  I appreciate it.

9              THE COURT:  Absolutely.  Absolutely.

10             MR. METCALF:  Your Honor, Steven Metcalf.  May I

11   be heard just for one second?

12             THE COURT:  Yes, sir.

13             MR. METCALF:  With regards to this next hearing --

14   or motion that's under seal, I am not a part of it.  I have

15   been trying to juggle five different cases I had on this

16   morning up until this afternoon.  I have a 3:00 o'clock.  If

17   I'm not a part of this application, can I be excused before

18   3:00 o'clock?

19             THE COURT:  You may.  I suppose, then -- what I --

20   here's what I'll do before, Mr. Metcalf.  I will -- before

21   you go, I think -- let me just -- let's just -- let's do

22   this.  Again, as I've said, I think we're going to be back

23   sooner than this -- we will be back sooner than this for

24   both a status conference on discovery and at least with

25   regard to Mr. Nordean's and Mr. Tarrio's motions regarding
```

 1    detention.  So what I'm really just trying to do is set a,

 2    kind of, control date when we know we'll all -- at least the

 3    attorneys, let's say, and we'll worry about the defendants,

 4    I guess, separately -- can have a status conference.  And so

 5    I'd like to set a control date of May 19th as a date when,

 6    again, we can all just -- and, Mr. Metcalf, so I wanted to

 7    deal with this before you leave.

 8            Are you all available and would you -- again, just

 9    to hash out -- really, just as a control date, would you all

10    be available 2:00 o'clock in the afternoon on May 19th -- or

11    let me put it this way.  Is anyone not available?

12            (Brief pause.)

13            All right.  Seeing no hand up, what I plan -- let

14    me ask -- and, again -- let me ask what the Government's

15    position would be about what I should do with the speedy

16    trial clock between now and May 19th.

17            MR. MCCULLOUGH:  Your Honor, the Government would

18    move for an ends-of-justice tolling of the Speedy Trial Act

19    based on the volume of discovery and the ability of the

20    defendants to digest that discovery and prepare for trial.

21    The complexity of the case as well -- a multi-defendant case

22    with multiple counts -- would further promote that

23    ends-of-justice continuance.  As well, as Your Honor knows,

24    multiple motions have been filed at this point and would be

25    tolling the Speedy Trial Act for -- on their filing until

 1    they are resolved.

 2            THE COURT:  All right.  Obviously, pending

 3    motions, to the extent they -- let me put it this way.  By

 4    operation of law, they will either toll or not toll the

 5    Speedy Trial Act as the law requires.

 6            Does any -- let me ask -- well, let me ask at

 7    least the newly join- -- first to just ask the newly joined

 8    defendants, do you all have any objection to the Speedy

 9    Trial Act -- tolling the Speedy Trial Act in the interests

10    of justice for, I guess, two reasons: one, the reasonable

11    period of delay that has now -- is now in play because you

12    all have been joined to the case; and then, secondly, for

13    the discovery reasons that the Government has outlined?

14            Mr. Hassan?

15            MR. HASSAN:  No, Judge.  No objection.

16            THE COURT:  Mr. Metcalf?

17            MR. METCALF:  I have no objections, Your Honor.

18            THE COURT:  All right.  Does any -- I will give

19    any defendant who would like to put on the record their

20    objection to that the opportunity to do so now.

21            MR. NICHOLAS SMITH:  Yes, Your Honor.  We're

22    objecting for the reasons in our -- the papers for -- on

23    behalf of Nordean.

24            THE COURT:  All right.  Very well.

25            So then I will find, though, that -- with the

1    consent of two defendants and over the objection of one

2    defendant that this -- to toll the Speedy Trial Act from now

3    through May 19th because that is part of -- under 18 United

4    States Code 3161(h)(6), a part of a reasonable period of

5    delay when a defendant is joined for trial with a

6    co-defendant as for whom the time for trial has not run and

7    no motion for severance has been granted as well as in the

8    interests of justice because I do find that the ends of

9    justice that are served by taking such action outweigh the

10   best interests of the public and the defendant in a speedy

11   trial.  And I'm doing so here, again, to give the Government

12   and the def- -- the opportunity to produce, and at least

13   those two defendants the opportunity to review, the

14   discovery in this matter to -- and to dis- -- to consult

15   with their counsel about that discovery.

16           All right.  As I said, we will not -- we will be

17   together again before May 19th, but I wanted to at least put

18   that on the books.

19           Mr. Metcalf, if you would like to be excused now,

20   that's fine.

21           MR. MCCULLOUGH:  (Indicating.)

22           THE COURT:  Mr. McCullough?

23           THE DEPUTY CLERK:  Judge Kelly --

24           THE COURT:  Yes?

25           THE DEPUTY CLERK:  -- I just --

```
 1                  THE COURT:  Okay.
 2                  THE DEPUTY CLERK:  -- want to --
 3                  THE COURT:  Ms. Harris.  Ms. Harris first.
 4                  THE DEPUTY CLERK:  Before Mr. Metcalf leaves, I
 5      just want to confirm for the control status that even though
 6      it's a control status for May 19th, that the appearance of
 7      the defendants will be waived for that hearing time if it
 8      should happen.
 9                  THE COURT:  Is there any defense counsel who will
10      not waive their client's presence for that control status
11      date on May 19th?
12                  MR. NICHOLAS SMITH:  Yes, Your Honor.  This is
13      Nick Smith for Ethan Nordean.  We would take the position
14      that Mr. Nordean would like to be present if he's able to
15      attend by videoconference, but if he would have to be
16      transported physically, we would waive his appearance.  So
17      it would depend on whether Ms. Harris will be able to
18      coordinate with the facility at that time, but if he's not
19      -- if she can't, then we're okay with -- we would waive.
20                  THE COURT:  Very well.
21                  MR. HASSAN:  Judge --
22                  THE COURT:  Ms. Harris is so instructed.
23                  Mr. Hassan?
24                  MR. HASSAN:  Your -- Judge, we sit in the same
25      position, to be quite frank with you.  Our client --
```

1          THE COURT:  Okay.

2          MR. HASSAN:  -- would like to, (inaudible) -- at

3    every turn, Judge.  So --

4          THE COURT:  Fair enough.

5          MS. HERNANDEZ:  Your Honor --

6          THE COURT:  Ms. Hernandez?

7          MR. HULL:  Your Honor --

8          MS. HERNANDEZ:  Same position for Mr. Rehl --

9          MR. HULL:  Excuse me.

10          MS. HERNANDEZ:  -- Your Honor.

11          THE COURT:  Mr. Hull?

12          MR. HULL:  Yes.  We'd like Joe Biggs there

13    present --

14          THE COURT:  All right.

15          MR. HULL:  -- on the 19th, and I think that's

16    doable.

17          THE COURT:  Okay.  So Ms. Harris, I think the

18    overall instruction to you is -- and any defendant speak up

19    if this is -- if what I'm saying is inaccurate -- but the

20    defense counsel agree that their clients' presence would be

21    waived only if you are unable to procure their attendance by

22    video that day -- by video only and not by any other way but

23    by video.

24          THE DEPUTY CLERK:  Just to let you know now who I

25    can already tell you will not be able to appear at 2:00

1    o'clock on that date based on the scheduling of the

2    facilities --

3              THE COURT:  Ms. Harris, we don't like bad news

4    here, but if you must.

5              (Laughter.)

6              THE DEPUTY CLERK:  Well, Defendant Biggs, because

7    he is at Alexandria, the earliest in the afternoon that they

8    allow hearings is 3:00 o'clock.  Defendant Rehl in

9    Philadelphia, the afternoon is not an option at all for his

10   appearance.  I don't know where Defendant Tarrio will be

11   come that date, but if he's still at NNRJ, both he and

12   Defendant Nordean should be fine because they do allow 2:00

13   o'clock hearings.  So if it's --

14             THE COURT:  Okay.

15             THE DEPUTY CLERK:  -- available, they would be

16   fine.

17             THE COURT:  All right.  Ms. Harris, I would just

18   say, you know, you'll do your best on all fronts, as you've

19   been asked to do, and we'll see who we're able to get.

20             All right.  So as I said, Mr. Metcalf, you are

21   excused if you do not want to participate in the hearing.

22             Does anyone now have anything further they'd like

23   to address before we go into sealed session?

24             (Brief pause.)

25             With no -- seeing no positive responses,

1    Ms. Harris, would you please place us all under seal.

2         (Following proceedings under seal:)































43











































































* * * * * * * * * * * *

CERTIFICATE OF OFFICIAL COURT REPORTER

I, TIMOTHY R. MILLER, RPR, CRR, NJ-CCR, do hereby certify

that the above and foregoing constitutes a true and accurate

transcript of my stenographic notes and is a full, true and

complete transcript of the proceedings to the best of my

ability, dated this 28th day of April 2022.

/s/Timothy R. Miller, RPR, CRR, NJ-CCR
Official Court Reporter
United States Courthouse
Room 6722
333 Constitution Avenue, NW
Washington, DC 20001