# United States v. Abdel Rahman:
# Jury Instructions

Hon. Michael B. Mukasey
Southern District of New York
September 23, 1995

The following jury instructions were prepared by the Southern District of New York's United States District Judge Michael B. Mukasey in a trial for seditious conspiracy to conduct a campaign of urban terrorism, including participation in the 1993 bombing of the World Trade Center and plans to bomb New York landmarks, *United States v. Abdel Rahman*, No. 1:93-cr-181 (S.D.N.Y. Mar. 17, 1993).

# Contents

Introduction .......................................................................................... 6

    Juror Attentiveness ............................................................................ 6

    Role of the Court ............................................................................... 7

    Role of the Jury ................................................................................. 7

    Conduct of Counsel .......................................................................... 8

    Improper Considerations: Race, Religion, National Origin, Sex, Age, Nature of Crimes Charged, Sympathy .............................................. 9

    The Government as a Party ............................................................... 9

    Indictment—Summary .................................................................... 10

Count One: Seditious Conspiracy ...................................................... 12

    Summary .......................................................................................... 12

    Summary of the Applicable Statute ................................................ 12

    Elements of the Crime .................................................................... 12

        First Element: Existence of an Agreement ............................. 12

        First Element: Objects or Goals of the Conspiracy ............... 14

        First Element: Intent to Levy War or Forcibly to Oppose the United States ......................................................................... 14

        Second Element: Within the United States ............................ 16

        Third Element: Knowing Participation in the Conspiracy ..... 17

        Third Element: "Unlawful," "Willful," and "Knowing" Participation ........................................................................... 18

        Effect of Arrest ...................................................................... 19

        Agreement with Government Agent Not Sufficient ............... 19

        Acts and Declarations of Co-Conspirators ........................... 20

        Evidence of Defendants' Statements of Opinion ................... 20

*United States v. Abdel Rahman: Jury Instructions*

Religion as Motive ........................................................... 21

Multiple Conspiracies ....................................................... 22

Count Two: Solicitation to Murder Hosni Mubarak of Egypt ............................ 23

Summary ................................................................... 23

Elements of the Crime ...................................................... 24

First Element: Solicitation of Others ...................................... 24

Second Element: Intention for Others to Commit the Murder ............. 24

Disability or Innocence of Person Solicited Is No Defense ................. 25

Count Three: Conspiracy to Murder Hosni Mubarak of Egypt ......................... 25

Summary ................................................................... 25

Elements of the Crime ...................................................... 25

First Element: Existence of an Agreement ............................... 26

First Element: Time and Duration of Conspiracy .................................. 26

Second Element: Knowing Participation in the Conspiracy ................ 26

Second Element: "Unlawful," "Willful," and "Knowing";
Willful Ignorance ........................................................ 27

Third Element: Overt Act in Furtherance of the Conspiracy ................ 28

Acts and Declarations of Co-Conspirators ............................... 29

Must Be More Than One Conspirator .................................... 29

Count Four: Solicitation to Attack a Military Installation .................................. 29

Summary ................................................................... 29

Elements of the Crime ...................................................... 30

First Element: Solicitation of Others ...................................... 30

Second Element: Intention of Others to Attack a Military
Installation ............................................................. 30

Disability or Innocence of Person Solicited Is No Defense ................. 31

Count Five: Bombing Conspiracy ........................................................ 31

Summary ................................................................... 31

Elements of the Crime ...................................................... 31

First Element: Existence of the Conspiracy ............................. 32

First Element: Agreement to Bomb or to Transport Explosives .......... 32

First Element: Interstate Commerce Component ................................... 33

First Element: Place of the Offense ................................... 33

Second Element: Knowing Participation in the Conspiracy ................ 33

Third Element: Overt Act in Furtherance of the Conspiracy ................ 34

Acts and Declarations of Co-Conspirators; Must Be More Than
One Conspirator ........................................................ 34

*United States v. Abdel Rahman: Jury Instructions*

Count Six: Attempted Bombing ................................................................ 34

    Summary ............................................................................................... 34

    Elements of the Crime ......................................................................... 35

        First Element: Intent to Bomb ...................................................... 35

        Second Element: Substantial Step ................................................ 36

        Factual Impossibility Not a Defense ............................................ 36

        Aiding and Abetting ..................................................................... 36

Counts Seven Through Fourteen: Introduction ................................... 38

Count Seven: Murder of Meir Kahane .................................................. 38

    Summary ............................................................................................... 38

    Elements of the Crime ......................................................................... 38

        First Element: Murder of Meir Kahane ....................................... 38

        Second Element: Membership in the Jihad Organization ............ 39

        Third Element: For the Purpose of Maintaining or Increasing a
        Position in the Jihad Organization ............................................... 40

Counts Eight and Nine: Violent Assault on Irving Franklin and Carlos
Acosta and Attempted Murder of Carlos Acosta .................................. 40

Count Nine: Attempted Murder of Postal Police Officer Carlos Acosta ........... 41

    Elements of the Crime ......................................................................... 41

        First Element: Attempted Murder ................................................ 41

        Second and Third Elements: Membership in Jihad Organization;
        In Connection with Maintaining or Increasing Position in Jihad
        Organization ................................................................................. 42

Counts Eight and Nine: Assault on Irving Franklin and Carlos Acosta ........... 42

    Elements of the Crime ......................................................................... 42

        First Element: Assault on Irving Franklin and Carlos Acosta with
        a Dangerous Weapon, Resulting in Serious Bodily Injury ............ 43

        Second and Third Elements: Membership in the Jihad
        Organization and Maintaining or Increasing Position in that
        Organization ................................................................................. 43

Count Ten: Attempted Murder of Postal Police Officer Carlos Acosta ........... 44

    Summary ............................................................................................... 44

    Elements of the Crime ......................................................................... 44

        Second Element: Federal Employment at the Time in Question ......... 44

Count Eleven: Use of Firearm Against Meir Kahane ........................... 45

    Summary ............................................................................................... 45

    Elements of the Offense ...................................................................... 45

        First Element: Commission of the Predicate Crime ............................. 45

*United States v. Abdel Rahman: Jury Instructions*

Second Element: Knowing Use of Firearm During and in
Relation to the Commission of the Predicate Crime ............................. 45

Counts Twelve and Thirteen: Use of Firearm Against Irving Franklin and
Carlos Acosta ............................................................................................... 46

    Summary .................................................................................................. 46

    Elements of the Offense ......................................................................... 46

Count Fourteen: Possession of Firearm ..................................................... 47

    Summary .................................................................................................. 47

    Elements of the Crime ........................................................................... 47

        First Element: Knowing Possession of a Firearm .................. 47

        Second Element: Firearm Was Shipped or Transported in
        Interstate Commerce ................................................................ 48

Count Fifteen: Shipping Firearm for the Spring 1993 Bombing Plot ............... 48

    Summary .................................................................................................. 48

    Elements of the Crime ........................................................................... 48

        First Element: Knowledge of Criminal Act ............................. 48

        Second Element: Shipment, Transportation, or Receipt of
        Firearm ....................................................................................... 49

        Aiding and Abetting ................................................................. 49

Count Sixteen: Using and Carrying Firearm in 1993 Bombing Plot ............... 49

    Summary .................................................................................................. 49

    Elements of the Crime ........................................................................... 50

        First Element: Commission of the Predicate Crime ............... 50

        Second Element: Knowing Use of Firearm During and in
        Relation to the Commission of the Predicate Crime ............. 50

        Aiding and Abetting ................................................................. 51

Counts Twenty Through Twenty-Eight: Introduction ......................... 51

Counts Twenty and Twenty-One: Assault Upon a Federal Officer ............... 51

    Summary .................................................................................................. 51

    Elements of the Offense ......................................................................... 51

        First Element: Federal Officer ................................................. 52

        Second Element: Forcible Conduct ......................................... 52

        Third Element: Willfulness ....................................................... 53

        Fourth Element: Engaged in the Performance of Official Duties ......... 53

Count Twenty-Two: Assault and Resistance During Execution of a
Search Warrant ........................................................................................... 53

    Summary .................................................................................................. 53

*United States v. Abdel Rahman: Jury Instructions*

Elements of the Crime ................................................................ 53

    First Element: Authorization ............................................... 54

    Second Element: Forcible Conduct ..................................... 54

Count Twenty-Three: Possession of False Identification Documents .............. 54

  Summary .............................................................................. 54

  Elements of the Crime ......................................................... 55

    First Element: Knowing Possession ..................................... 55

    Second Element: Intent to Use or Transfer Unlawfully ......... 56

    Third Element: Effect on Interstate or Foreign Commerce ... 56

Counts Twenty-Four Through Twenty-Eight: Fraud and Misuse of Visas, Permits, and Other Documents ......................................................... 56

  Summary .............................................................................. 56

  Elements of the Crime ......................................................... 57

    First Element: Possession of False Documents .................... 57

    Second Element: Knowledge of Falsity of Documents ......... 58

General Principles ....................................................................... 58

  Introduction ......................................................................... 58

  Presumption of Innocence and Burden of Proof ................... 58

  Reasonable Doubt ................................................................ 59

  Multiple Counts—Multiple Defendants ............................... 60

  Defense: Entrapment ........................................................... 60

  Voluntary Intoxication ......................................................... 61

  Direct and Circumstantial Evidence .................................... 62

  Credibility of Witnesses ....................................................... 63

  Defendants' Testimony ......................................................... 64

  Improper Consideration of Defendant's Right Not to Testify ..... 64

  Character Testimony ............................................................ 65

  Testimony of Confidential Informant and Accomplice; Prior Perjury ....... 65

  Expert Testimony ................................................................. 66

  Testimony of Law Enforcement Officers .............................. 66

  Uncalled Witness Equally Available to Both Sides ............... 67

  Persons Not Charged ............................................................ 67

  Stipulations ......................................................................... 67

  Punishment .......................................................................... 67

  Tape Recordings and Transcripts ......................................... 68

  Particular Investigative Techniques ..................................... 69

*United States v. Abdel Rahman: Jury Instructions*

Right to See Exhibits and Hear Testimony; Communications with Court ........................................................................................ 69

Submitting the Indictment and Charge ......................................... 70

Duty To Consult and Need for Unanimity ................................... 70

Conclusion: Charge as a Whole, Duty to Consult, Selection of a Foreperson ................................................................................... 71

Verdict Form ................................................................................. 71

Post-Verdict Remarks ................................................................... 77

# Introduction

**Juror Attentiveness**

Members of the jury, you are about to enter your final duty, which is to decide the fact issues in this case.

Before you do that, I will instruct you on the law. Please pay close attention to me now. I will go as slowly as I can and try to be as clear as possible.

I told you at the very start of the trial that your main function during the taking of testimony would be to listen carefully and observe each witness who testified. It has been obvious to me and to counsel that you have faithfully discharged this duty. It is evident that you followed the testimony with close attention.

I should tell you a few things about this thick set of instructions before I begin to read them with you. First, these instructions are laid out essentially in three sections. The first, which is quite short, deals with your role as jurors, the role of the court, and other preliminary matters. The second, which is by far the longest, describes the indictment and the elements of each count you will be asked to decide. The third section discusses some principles you should use in weighing the evidence that applies to the charges, and in measuring the credibility of witnesses.

Just so that you are not left wondering how long it will take me to get through these instructions, it should take a little under four hours, and we will break in the morning and for a longer than usual lunch period because no one should have to listen to my voice for longer than that without a break.

Finally, you should not be dismayed or discouraged by the length of these instructions. The main reason why they are so long is that several counts are being submitted to you for decision, and the various elements of each count must be explained separately. But you should be aware that there is virtually nothing in this charge that has not been a part of instructions submitted to other juries that have reached verdicts in other cases. I think you will find that if you proceed step by step and count by count you should have no difficulty applying these instructions to help you weigh the evidence and decide the case.

For your convenience, there is a table of contents to help you locate particular instructions you may wish to consult, although as I will instruct you later, no part of this charge should be considered out of context.

*United States v. Abdel Rahman: Jury Instructions*

**Role of the Court**

You have now heard all the evidence in the case as well as the final arguments of the lawyers for the parties.

It is my duty at this point to instruct you as to the law. It is your duty to accept these instructions of law and apply them to the facts as you determine them, just as it has been my duty to preside over the trial and decide what testimony and evidence is relevant under the law for your consideration.

On these legal matters, you must take the law as I give it to you. If any attorney has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.

You should not single out any instruction as alone stating the law, but you should consider my instructions as a whole when you retire to deliberate in the jury room. Each of you has a copy of these instructions to take with you into the jury room.

You should not, any of you, be concerned about the wisdom of any rule that I state. Regardless of any opinion that you may have as to what the law may be— or ought to be—it would violate your sworn duty to base a verdict upon any other view of the law than the one I give you.

**Role of the Jury**

Your role, as I have said, is to consider and decide the fact issues that are in the case. You, the members of the jury, are the sole and exclusive judges of the facts. You pass upon the weight of the evidence, you determine the credibility or believability of the witnesses, you resolve whatever conflicts there may be in the testimony, and you draw whatever reasonable inferences and conclusions you decide to draw from the facts as you have determined them. In doing so, you must weigh and consider the evidence without regard to sympathy, prejudice, or passion for or against any party.

I will later discuss with you how to pass upon the credibility—or believability—of the witnesses.

In determining the facts, you must rely upon your own recollection of the evidence. What the lawyers have said in their opening statements, in their closing arguments, in their objections, or in their questions is not evidence. You should bear in mind particularly that a question put to a witness is never evidence. It is only the answer that is evidence. Nor is anything I may have said during the trial, or may say during these instructions, with respect to a fact matter to be taken instead of your own independent recollection. What I say is not evidence.

If there is any difference or contradiction between what any lawyer has said and what you decide the evidence showed, or between anything I may have said and what you decide the evidence showed, it is your view of the evidence—not the lawyers' and not mine—that controls.

The evidence before you consists of the answers given by witnesses—the testimony they gave, as you recall it—and the exhibits that were received in evidence, including stipulations as to facts or testimony.

As I said, the evidence does not include questions. Only the answers are evidence. But you may not consider any answer that I directed you to disregard or that I directed struck from the record. Do not consider such answers.

In weighing the evidence presented to you, your assessment should not be influenced by how much time the lawyers spent on particular topics, or how emphatically or eloquently they spoke about particular topics. Similarly, it is not who introduced an exhibit, or who called a witness, or who did not question a witness, that is important, but rather what the exhibit or the witness's testimony proves. It is for you alone to decide the weight and importance of evidence you heard. One of your principal tasks is to separate the important from the unimportant and focus on what you find is important. Evidence that took five minutes to present may be more important than evidence that took an entire day to present. It is not how much time or effort the lawyers spent on particular evidence, but what that evidence proves, that is important.

Since you are the sole and exclusive judges of the facts, I do not mean to indicate any opinion as to the facts or what your verdict should be. The rulings I have made during the trial are not any indication of my views of what your decision should be as to whether or not the government has proved its case.

I also ask you to draw no inference from the fact that on occasion I asked questions of certain witnesses. These questions were only intended for clarification or to move things along, and certainly were not intended to suggest any opinion on my part as to the verdict you should render or whether any of the witnesses may have been more credible than any other of the witnesses. It is important that you understand that if I did express such an opinion you would not be obliged in any way to follow it.

Also, anything I may have said during the trial or may say during the course of this charge with regard to any matter of evidence or testimony is not to be taken in place of your own recollection.

I may refer to evidence during the course of this charge. If I do, I will try to refer to it as accurately as I can. If I should make a mistake, it is your recollection, and yours alone, that governs. You are not to take anything that I say as evidence or as controlling upon you in any way in your determination of the facts. It is your own independent recollection of the evidence that controls.

**Conduct of Counsel**

It is the duty of the attorney for each side of a case to object when the other side offers testimony or other evidence that the attorney believes is not properly admissible. Counsel also have the right and duty to ask the court to make rulings of law and to request conferences at the side bar out of the hearing of the jury. All those questions of law must be decided by me, the court. You should not bear any prejudice against an attorney or his client because the attorney objected to the admissibility of evidence, or asked for a conference out of the hearing of the jury, or asked the court for a ruling on the law.

While I am on the subject of the lawyers, you may well have developed impressions over these months of the lawyers in this case—favorable impressions

*United States v. Abdel Rahman: Jury Instructions*

of most of them, I hope; perhaps mixed impressions of others; perhaps you may even have unfavorable impressions of some. Such impressions are natural. But please remember, it is not the lawyers who are on trial here, and your decisions in this case cannot be based on whether you like or dislike counsel for one party or another or whether you think they speak well or badly. Lawyers are here to help present evidence and to argue its significance, but it is the evidence or lack of evidence alone that must decide the case, not your feelings—good or bad— toward the lawyers.

As I already indicated, my rulings on the admissibility of evidence do not indicate any opinion about the weight or effect of such evidence. Again, you are the sole judges of the believability of all witnesses and the weight and effect of all evidence.

### Improper Considerations: Race, Religion, National Origin, Sex, Age, Nature of Crimes Charged, Sympathy

Your verdict must be based solely upon the evidence, or the lack of evidence, developed at trial.

It would be improper for you to consider, in reaching your decision as to whether the government sustained its burden of proof, any personal feelings you may have about any defendant's race, religion, national origin, sex, or age. All persons are entitled to the presumption of innocence and the government has the burden of proof, as I will discuss later.

It would be equally improper for you to allow any feelings you might have about the nature of the crimes charged to interfere with your decision-making process.

It would also be improper for you to base your verdict on any feelings of sympathy you may have for any defendant. In order to reach a true and just verdict, you must not let fear or prejudice, or bias or sympathy, interfere with your deliberations.

To repeat, your verdict must be based exclusively upon the evidence or the lack of evidence in the case.

### The Government as a Party

As I have said, you are to perform the duty of being the sole and exclusive judges of the facts without bias or prejudice as to any party. You are to perform your final duty in an attitude of complete fairness and impartiality.

The case is important to the government because the enforcement of criminal laws is a matter of great and legitimate concern to the community. Equally, it is important to the defendants, who are charged with serious crimes.

The fact that the prosecution is brought in the name of the United States of America entitles the government to no greater consideration than that given to any other party to a litigation. By the same token, the government is entitled to no less consideration. All parties, whether government or individuals, stand as equals at the bar of justice.

*United States v. Abdel Rahman: Jury Instructions*

**Indictment—Summary**

With these preliminary instructions in mind, let us turn to the charges against the defendants, as contained in the indictment. Each of you has been provided with a copy of the indictment to use during your deliberations. You may also refer to it during this charge, if you wish. I remind you that an indictment itself is not evidence. It merely describes the charges made against each defendant and is the means by which each defendant was formally notified of the charges against him. It is an accusation. It may not be considered by you as evidence of the guilt of a defendant, and of course only the evidence or the lack of evidence decides that issue.

The indictment in this case is best summarized as being divided into five different categories or groups of charges. In one group, all defendants are charged in one or more counts with agreeing to violate federal law—a crime called conspiracy. Specifically, every defendant on trial before you is charged in Count One with a conspiracy violation that I described for you at the very start of the trial: the crime that is often referred to as "seditious conspiracy," although those words do not appear in the body of the law that defines the crime. In addition to that conspiracy charge, two other conspiracies are charged in the indictment: Count Five charges all defendants on trial with conspiring to violate the federal bombing and explosives laws; and Count Three charges that the defendant Omar Ahmad Ali Abdel Rahman conspired with others, including Siddig Ibrahim Siddig Ali, to murder Hosni Mubarak, President of Egypt.

In a second category of offenses, the defendant Omar Ahmad Ali Abdul Rahman alone is charged with two counts of soliciting or requesting others to commit crimes of violence. Specifically, Count Two charges that Dr. Abdel Rahman solicited Siddig Ali, Abdel Rahman Haggag (referred to in the indictment as "Abdo Mohammed Haggag"), and Emad Salem to murder Hosni Mubarak, President of Egypt, and Count Four charges that Dr. Abdel Rahman solicited Emad Salem to attempt to damage or destroy American military installations.

In a third category of offenses, several defendants are charged with violations alleged to have been committed during the course of the bombing conspiracy I mentioned a moment ago. Specifically, seven defendants—Clement Hampton-El, Amir Abdelgani, Fares Khallafalla, Tarig Elhassan, Fadil Abdelgani, Mohammed Saleh, and Victor Alvarez—are charged in Count Six with attempted bombing. Victor Alvarez is charged in Counts Fifteen and Sixteen with violations of the federal firearms laws: that is, he is charged in Count Fifteen with unlawfully transporting or shipping a firearm in interstate commerce, and he is charged in Count Sixteen with using and carrying a firearm during and in relation to the bombing conspiracy charged in Count Five.

The fourth category of offenses involves the defendant El Sayyid Nosair and the events of November 5, 1990. Mr. Nosair is charged in Count Seven with murdering Meir Kahane in aid of racketeering activity—a concept I will describe to you in detail a little later. Mr. Nosair is charged in Counts Eight and Nine with a violent assault on Irving Franklin and Postal Police Officer Carlos Acosta in aid of racketeering activity. He is charged in Count Ten with attempting to murder

*United States v. Abdel Rahman: Jury Instructions*

Postal Police Officer Acosta. In Counts Eleven, Twelve, and Thirteen, Mr. No-sair is charged with using a firearm in connection with violent crimes: respectively, the assaults on Meir Kahane, Irving Franklin, and Postal Police Officer Acosta. Mr. Nosair is also charged in Count Fourteen with possessing a firearm with an obliterated serial number.

The fifth category of offenses involves only the defendant Ibrahim el-Gabrowny and relates to the events of March 4, 1993. Count Twenty-Two charges that Mr. el-Gabrowny forcibly assaulted persons authorized to execute a search warrant issued in connection with the investigation of the World Trade Center bombing. Counts Twenty and Twenty-One charge Mr. el-Gabrowny with assaults on two different federal law enforcement officers: respectively, Special Agent Michael Burke of the Federal Bureau of Alcohol, Tobacco and Firearms, and Detective Thomas Corrigan, a Special Deputy United States Marshal assigned to a federal task force. Finally, Counts Twenty-Three through Twenty-Eight charge Mr. el-Gabrowny with offenses arising out of his alleged possession of false identification documents.

When you read the indictment, you will notice that it charges acts occurred "on or about" certain dates. It does not matter if a specific transaction is alleged to have occurred on or about a certain date and the testimony indicates that in fact it was a different date. The law requires only a substantial similarity between the dates alleged in the indictment and the dates established by the evidence. The same goes for most of the other contentions as to time and duration in the indictment. For example, with respect to the counts of conspiracy charged in the indictment, it is not necessary for the government to prove that a conspiracy existed for the entire time specified in the indictment, so long as it existed at some time during the period alleged. Nor must the government prove the exact dates alleged so long as there is a substantial similarity between the dates in the indictment and the proof at trial.

Further, when I describe the elements of each count of the indictment, I will refer you to the pages in the indictment where that count appears. I will not read each count of the indictment to you, but you must read each count for yourselves during your deliberations so that you can determine whether the government has proved the charge contained in that count. The indictment alleges that all the crimes charged were committed by some or all defendants as part of what the indictment charges were the activities of a "jihad organization" or group, described on pages 2 through 6 of the indictment.

As you will see, the charges in Counts Seventeen, Eighteen, and Nineteen are not being submitted to you for decision. You should not speculate on why that is so, but simply consider and decide the charges in the remaining counts.

Finally, you may notice that some of the counts charge similar crimes—for example, the three conspiracy counts have several features in common. Sometimes during these instructions, in order to avoid repetition, I will refer you explicitly to language in an earlier instruction that can be applied to a later count. However, sometimes I have not done that. Whatever similarities you may detect among different counts of the indictment, you may not apply the instructions for

*United States v. Abdel Rahman: Jury Instructions*

one count to help you decide another count unless I have told you explicitly to do so.

# Count One: Seditious Conspiracy

## Summary

Count One charges that all of the defendants and other persons participated in a conspiracy, which is simply an unlawful agreement, with each other and with other persons, to do at least one of two things: (1) to levy a war of urban terrorism against the United States, or (2) to oppose by force the authority of the United States. This charge is contained on pages 6 through 28 of the indictment and is alleged to have been carried out by the defendants as members of the group described on pages 2 through 6 of the indictment.

## Summary of the Applicable Statute

Count One charges that all of the defendants violated section 2384 of Title 18, United States Code, which reads in relevant part as follows:

> If two or more persons in any State or Territory, or in any place subject to the jurisdiction of the United States, conspire to . . . levy war against [the United States] or to oppose by force the authority [of the United States],

they shall be guilty of a crime.

## Elements of the Crime

In order to find a defendant guilty of the crime charged in Count One of the indictment, you must find beyond a reasonable doubt:

*First:* that two or more persons conspired or agreed with one another with the goal of making war against the United Sates or of opposing by force the authority of the United States;

*Second:* that two or more members of the conspiracy either formed the conspiracy or pursued its goals in the United States or its Territories or in any place subject to the jurisdiction of the United States; and

*Third:* that the defendant you are considering joined in that agreement with awareness of one or more of its unlawful goals.

### First Element: Existence of an Agreement

As I have just told you, the first thing that the government must prove at this trial, beyond a reasonable doubt, is that the conspiracy charged in Count One actually existed. The essence of the crime of conspiracy is an agreement between two or more persons to do something that violates the law. Whether the agreement is ever carried out, or whether it succeeds or fails, does not matter. Indeed, the agreement need not be consistently followed. The unlawful purpose in this case is to wage a war of urban terrorism against the United States, or to oppose by force the authority of the United States.

The government must prove, beyond a reasonable doubt, that the particular conspiracy the defendants are charged with participating in existed, and existed at

*United States v. Abdel Rahman: Jury Instructions*

or about the time alleged in the indictment. If you find that the conspiracy charged in Count One of the indictment did not exist, you cannot find any defendant guilty on Count One of the indictment.

A conspiracy has sometimes been called a partnership for criminal purposes in which each partner becomes the agent of every other partner, and has the authority to act and speak on behalf of every other partner. However, to establish the existence of a conspiracy, the government is not required to show that two or more people sat around a table and entered into a formal contract, orally or in writing, stating that they have formed a conspiracy to violate the law and setting forth the means by which it was to be carried out or the part to be played by each conspirator. Indeed, it would be extraordinary if there were such a formal document or specific agreement. It is enough if two or more persons, in any manner, whether they say so directly or not, come to a common understanding to violate the law. Express language or specific words are not required to indicate agreement to, or membership in, a conspiracy.

It is important, in order to understand what a conspiracy is, to keep in mind the difference between the object or goal of the conspiratorial agreement—that is, the criminal act that two or more people agree to commit—and the agreement itself. A conspiracy—the agreement to commit a crime—is a violation of law entirely separate and distinct from the criminal act that the members of the conspiracy agree to commit. Let me give an example that has nothing to do with this case. If two or more people were to agree to rob a bank, that agreement itself would be a crime. It would make no difference, as far as conspiracy law is concerned, whether or not the conspirators actually carried out their plan to rob the bank. If the government could prove beyond a reasonable doubt that there was an agreement to rob the bank, those defendants who had agreed to rob the bank would be guilty of conspiracy. On the other hand, even if the bank actually was robbed by someone, there would be a robbery but no conspiracy if the government could not prove that the person who actually robbed the bank agreed to the robbery beforehand with another person.

Just as is true of the bank robbery example I used, it does not matter whether the conspiracy charged in Count One was successful or not. The question is whether two or more persons formed an agreement to wage war against the United States or to oppose its authority by force. If two or more persons did agree to do one of those things, the crime of conspiracy is complete. It does not matter whether the persons who formed the agreement actually carried out their plans or whether the agreement ultimately was successful.

Of course, proof concerning the accomplishment of the object of a conspiracy may be the most persuasive evidence of the existence of the conspiracy itself. In other words, success of the venture in carrying out an act, if you believe it was carried out, is often the best proof of the venture or the agreement. But as I just said, it is not necessary that a conspiracy actually succeed in its purpose for you to conclude that it existed.

Also, in determining whether there has been an unlawful agreement, you may consider the acts and conduct of the alleged members of the conspiracy that are

*United States v. Abdel Rahman: Jury Instructions*

done to carry out an apparent criminal purpose. This is true whether the acts and conduct were performed by one or more of the defendants, or whether they were performed by persons who are not named in this indictment as defendants, provided that you find those persons were members of the conspiracy charged in this indictment. Sometimes the only evidence available is that of disconnected acts on the part of the alleged individual conspirators. However, when taken together and in connection with the reasonable inferences that flow from them, those acts may show a criminal agreement just as conclusively as more direct proof. Whether any acts that were proved during this trial show a conspiracy, or not, is for you to decide.

If, upon consideration of all the evidence, direct and circumstantial, you find beyond a reasonable doubt that the minds of at least two persons met—that is, that they agreed, as I have explained a conspiratorial agreement to you, to work together in furtherance of the unlawful scheme charged in the indictment—then proof of the existence of the conspiracy is established.

### First Element: Objects or Goals of the Conspiracy

In Count One, the defendants are charged with agreeing to make war against the United States or to oppose by force the authority of the United States. Although two separate objects or goals are charged, you may find the conspiracy proved if it is established that either one of those objects was agreed to by two or more persons. The government is not required to prove both goals. However, the government must prove at least one of those objects or goals beyond a reasonable doubt. If the government has not proved that at least one of those goals was a goal of the conspiracy charged in Count One, your verdict must be not guilty.

### First Element: Intent to Levy War or Forcibly to Oppose the United States

The two goals of the conspiracy charged in the indictment—(1) to wage war against the United States, or (2) to oppose by force the authority of the United States—both have as a common ingredient not only the use of force but also opposition to the United States, functioning through its government.

In other words, it is not enough for the prosecution to prove that two or more persons agreed to commit random acts of violence, to prevent some person or people who work for the government from doing their job, or simply to violate a law of the United States. Rather, the prosecution must prove that those who participated in the conspiracy intended to use force for the purpose of attacking the United States, functioning through its government. The prosecution may prove such intent by showing that the conspirators intended to use force directly against the United States government or one of its agencies, including any department or military installation. The prosecution may prove such intent also by showing that the conspirators intended to inflict such widespread damage on civilian targets and persons that the act reasonably could be considered as an attack on the United States, functioning through its government.

In order to establish a defendant's intent, it is not required that the prosecution also prove his motive—that is, his reason for acting with intent. However, in

*United States v. Abdel Rahman: Jury Instructions*

determining whether a defendant acted with intent to levy war or oppose by force the authority of the United States, you may consider all the evidence in the case, including proof of what motivated a particular defendant to use force, if you find he was so motivated. If you find that the conspirators intended to use force against civilian targets, you may consider whether a conspirator wanted to use force that would inflict widespread punishment or suffering as retribution for some policy or act of the United States government or that would have the effect of attempting to force the United States government to perform some act or to change some policy.

However, when the law uses the words "levy war against the United States," that does not mean that the conspirators must have been planning to overthrow the government, to replace it with another government, or to seize United States territory. Nor does it mean that the target of force must necessarily be a government employee or government property. Rather, I instruct you that an attack even on people who do not work for the government, and even on property that does not belong to the government, may be considered an act of "war" against the United States if it caused or threatened damage that would be widespread enough to show an intent to threaten the peace and safety of a large segment of the population, that such widespread damage was intended by members of the conspiracy, and that the purpose of causing such widespread damage was either to punish or retaliate against the United States government for an act or policy that it followed or to force the United States government to perform some act or change some policy.

You should consider the acts, if any, that were planned, and how severe the consequences of each planned act were or might have been, as well as the statements and other conduct by defendants that you consider to be relevant. Taking all these factors into consideration, you must then decide, based on your common sense, whether the acts that the conspirators planned to commit could constitute a "war" against the United States as I have explained that concept to you. Again, let me remind you that the only acts you may consider here are those that the prosecution has proved, beyond a reasonable doubt, that the conspirators either committed or planned to commit.

To determine whether any of the acts that defendants conspired to commit constituted "opposing by force the authority of the United States," you should consider whether the proved acts, whether they were actually committed or simply planned, included elements of force and whether they were intended to oppose or undermine the authority of the United States government to conduct one or more of its official functions and could have had that effect. Force is defined in the conventional sense. An act involves force if it threatens or results in violence or if it threatens or results in harming or destroying property or harming or killing people. An act opposes the authority of the United States if, when successfully carried out, it would adversely affect the ability of the United States government to govern the country or to perform one of its proper functions. Here I want to caution you that affecting the ability of the United States government to govern or to perform one of its proper functions must be a principal purpose of

*United States v. Abdel Rahman: Jury Instructions*

the person who commits the act and not merely an incidental effect of an act that is planned or carried out for another purpose. In other words, in order to be guilty of conspiring to oppose by force the authority of the United States, a person must help plan an act that could have that effect and must intend to oppose the authority of the United States and not simply to do something for another purpose, even though it may have the incidental effect of interfering with the authority of the United States.

So the question for you to consider is what was in the minds of those who planned the use of force, if you find any such plan existed? To establish the existence of the conspiracy charged in Count One, the government must prove that two or more people agreed to use force for the purpose of attacking the United States, functioning through its government, as I have explained that concept to you. However, if you find that there was simply an agreement to attack people or places without an intention to attack the United States, functioning through its government, then the conspiracy charged in Count One would not be proved and your obligation would be to return a verdict of not guilty as to that count.

As you can probably see from the objects, or goals, I have just described, an agreement to use force is a necessary ingredient of each. To prove someone guilty of the conspiracy charged in Count One, the government must show that the conspirators agreed that physical force would be used. In this case, the indictment charges that the conspirators agreed to use force by planning and carrying out certain acts of violence, including bombings. Again, it is not necessary for the government to show that force was actually used by the conspirators. Nor is it necessary for the government to prove that the conspirators agreed as to every detail of how force was to be used, or as to the specific targets for the use of force. Indeed, just as participants in a legitimate business venture may be unaware of details or may disagree about details, and still be working together to make a profit, so too participants in a criminal venture may be unaware of details or disagree about details and still be working together to further a criminal purpose. However, the government must prove at least that the conspirators intended to use force.

As to any goal or goals which you may find the conspirators agreed to promote, you must be unanimous. For example, if some of you find that the conspirators agreed only to wage a war of urban terrorism and the remaining jurors find that the conspirators agreed only to oppose by force the authority of the United States, that is not enough. You must be unanimous as to one or the other or both.

*Second Element: Within the United States*

The second element that the government must prove beyond a reasonable doubt in order to establish that a conspiracy as charged in Count One existed is that the conspiracy, as I have explained it to you, was formed or pursued in the United States or its Territories or in a place subject to its jurisdiction. In order to find the existence of a conspiracy of the sort charged in Count One, you must find that the

*United States v. Abdel Rahman: Jury Instructions*

conspiracy was joined by a defendant or pursued in the United States, its Territories, or any place subject to its jurisdiction.

There may not be any dispute that the specific acts charged, if proved, occurred in the United States. Nonetheless, in order to find the conspiracy charged in Count One, you must find that a conspiracy with one of the two goals I mentioned was formed or pursued in the United States or its Territories or in a place subject to its jurisdiction.

*Third Element: Knowing Participation in the Conspiracy*

If you find that the government has proved beyond a reasonable doubt that the conspiracy charged in the indictment existed, then you must determine whether each individual defendant was a member of that conspiracy. I remind you that guilt is individual and that you must consider each defendant's participation or lack of participation separately. In determining whether the defendant you are considering became a member of the conspiracy, you must determine not only whether he participated in it, but whether he did so with knowledge of its unlawful purpose. Did the defendant join with an awareness of at least one of the unlawful aims and purposes of the conspiracy?

In defining the requirement of participation in the conspiracy, I said that you must determine whether or not the defendant you are considering knowingly joined in the agreement with intent to further at least one of the conspiracy's two unlawful goals—(1) waging a war of urban terrorism against the United States, or (2) opposing by force the authority of the United States.

When you consider whether a particular defendant was a member of the conspiracy charged in Count One, you must determine whether he knowingly and intentionally agreed to further one of the two unlawful purposes of the conspiracy—to wage a war of urban terrorism against the United States or to oppose by force the authority of the United States. I have already explained these goals to you when I explained the nature of the conspiracy charged in Count One, and I am not going to repeat that explanation here. It is contained on pages 12 through 16 of these instructions and it applies when you are deciding whether a defendant agreed to further one of these goals.

To have guilty knowledge, a defendant need not know the full extent of the conspiracy, nor need he know all of the activities of the conspiracy. Further, the defendant need not know who all the co-conspirators are. Indeed, a single act may be enough to bring the defendant within the membership of the conspiracy provided that the defendant was aware of the conspiracy and knowingly associated himself with one of its unlawful aims.

Of course, mere association or relationship with a conspirator does not make someone a member of a conspiracy. Nor is knowledge without participation or participation without knowledge sufficient. What is necessary is that the defendant you are considering participated by agreeing to further one of the unlawful purposes of the conspiracy. In other words, in order to participate in a seditious conspiracy, a defendant must have had knowledge of at least one of the two unlawful purposes of the conspiracy—(1) to make war on the United States, or

*United States v. Abdel Rahman: Jury Instructions*

(2) to oppose by force the authority of the United States—and must have agreed to aid in the accomplishment of one of those ends.

Now, although mere presence or mere association with conspirators is not enough, it is a factor you may consider among others to determine whether a defendant was a member of the conspiracy. The defendant's presence may establish his membership in a conspiracy if all of the circumstances considered together show that his presence was intended to advance the goals of that conspiracy. He must not only have been present, he must have known about the conspiracy, and he must have intended by his presence to participate in the conspiracy or to help it succeed. In other words, presence itself may demonstrate membership in a conspiracy only if that presence is a functional part of the conspiracy.

If you find that a conspiracy of the kind charged in Count One existed and that the defendant you are considering participated knowingly and intentionally in it, the extent or length of his participation has no bearing on whether or not he is guilty. A defendant may join a conspiracy at any point after it begins, and leave before the conspiracy ends, and still be held responsible as a conspirator. Once a conspiracy has been proved, the act of any conspirator becomes, in the eyes of the law, the act of all of the members of the conspiracy. Thus, if you find that a seditious conspiracy existed and that a particular defendant participated in the conspiracy, then even if the defendant you are considering participated in the conspiracy to a degree more limited than that of another co-conspirator, that defendant is equally guilty, so long as he was a conspirator at any time during the relevant period.

If you find that a defendant joined the conspiracy charged in Count One, then that defendant is presumed to remain a member of the conspiracy—and is responsible for all actions taken in furtherance of the conspiracy after he joins— until the conspiracy has been completed or abandoned or otherwise ended, for example by the arrest of some or all conspirators.

The question then is, did the defendant you are considering join the conspiracy charged in Count One and participate in it with the awareness of at least one of its basic purposes and aims?

*Third Element: "Unlawful," "Willful," and "Knowing" Participation*

In defining the requirement of participation in the conspiracy, I have used the words "unlawful," "willful," and "knowing." As I explained before, these terms mean that you must find beyond a reasonable doubt that the defendant knew what he was doing and he did it deliberately and voluntarily as opposed to mistakenly or accidentally.

The word "unlawful" simply means contrary to law—that is, to do something which the law forbids. Agreeing to engage in sedition, defined as the two goals of making war against the United States or opposing by force the authority of the United States, is unlawful.

A person acts knowingly if he acts purposely and deliberately and not because of mistake or accident or other innocent reason.

*United States v. Abdel Rahman: Jury Instructions*

A person acts willfully if he acts voluntarily, intentionally, and with a bad purpose—that is, a purpose to do something the law forbids. Of course, it is not necessary that the defendant knew that he was violating any particular law. But you must be convinced beyond a reasonable doubt that he was aware that what he was doing was, in general, unlawful.

Your decision whether a defendant acted knowingly, intentionally, or willfully, and whether he joined the conspiracy with intent to make war on the United States, or to oppose by force the authority of the United States, involves a decision about that defendant's state of mind. Since it is not possible to look into a person's mind to see what he was thinking, you must consider all the facts and circumstances shown by the evidence and exhibits in order to determine what his state of mind was.

In our everyday affairs, we are continually called upon to decide from the actions of others what their state of mind is. Therefore, you may well rely on circumstantial evidence in determining a defendant's state of mind. It is up to you, based on all the evidence, to determine whether each defendant knowingly and intentionally entered the alleged conspiracy, and whether he did so with one of its unlawful goals in mind. Of course, you may consider a defendant's statements as well if you find them relevant to the issue of his state of mind.

### Effect of Arrest

I mentioned a few moments ago that the arrest of some or all of the conspirators is one way that a conspiracy might come to an end. I instruct you that the arrest of a conspirator does not necessarily end that conspirator's participation in the conspiracy. If you find beyond a reasonable doubt that a defendant participated in a conspiracy in some way despite being incarcerated, the fact that he happened to be incarcerated has no bearing on the question whether he was a member of the conspiracy. If you find that he participated while in jail, he may still be found to be a member of the conspiracy. On the other hand, if you do not find that a defendant participated in the conspiracy while in jail, then his acts after confinement in jail could not show his participation in the conspiracy.

### Agreement with Government Agent Not Sufficient

When I say that the government must prove the existence of an agreement between two or more persons, it is important to recall that an agreement between a defendant and someone you find to have been a government agent, such as Emad Salem, is not enough to establish a conspiracy. The government must prove that at least two people who were not government agents agreed to wage a war of urban terrorism against the United States or to oppose by force the authority of the United States. If you find that at least two people who were not government agents agreed to one or more of those goals, that is enough to prove the existence of the conspiracy, even if they also thought that Emad Salem was part of the conspiracy and not a government agent. Also, it is possible for two people to agree to one or more of these goals through someone who is a government agent, but there must be two or more people who are not government agents agreeing to one

or more of these goals, and each must be aware that someone other than the government agent also is participating in the conspiracy.

### Acts and Declarations of Co-Conspirators

You will recall that I have admitted into evidence acts and statements of others who, the government charges, were accomplices or co-conspirators of the defendants on trial here.

The reason for allowing this evidence to be received against the defendants has to do with the nature of the crime of conspiracy. A conspiracy is often referred to as a partnership in crime. As in other types of partnerships, when people enter into a conspiracy to accomplish an unlawful end, each and every member becomes an agent for the other conspirators in carrying out the conspiracy.

Therefore, the reasonably foreseeable acts, declarations, statements, and omissions of any member of the conspiracy and in furtherance of the common purpose of the conspiracy are deemed, under the law, to be the acts of all of the members, and all of the members are responsible for such acts, declarations, statements, and omissions.

If you find, beyond a reasonable doubt, that the defendant you are considering was a member of the conspiracy charged in the indictment, then any acts done or statements made in furtherance of the conspiracy by a person also found by you to have been a member of the conspiracy may be considered against that defendant. This is so even if such acts were done and statements were made in the defendant's absence and without his knowledge.

However, before you may consider the statements or acts of a co-conspirator in deciding the issue of the defendant's guilt, you must first determine that the acts and statements were made during the existence, and in furtherance, of the unlawful scheme. If the acts were done or the statements made by someone whom you do not find to have been a member of the conspiracy, or if they were not done or said in furtherance of the conspiracy, they may not be considered by you in deciding whether a defendant is guilty or not guilty.

### Evidence of Defendants' Statements of Opinion

I am not going to discuss in detail how each defendant is claimed to have furthered the conspiracy charged in Count One, or any other crime charged in this indictment, but I do want to discuss briefly evidence that has been introduced about statements by some defendants expressing their opinions about various political, public, or religious issues. I want to emphasize to you that expression of opinion alone—opinion in the sense of a point of view—even an opinion advocating violence, is not a crime in this country. Evidence of these statements by certain defendants was introduced for any of three purposes, and those are the only purposes for which you may consider such statements of opinion on political, public, or religious issues:

1. First, you may consider whether such statements are evidence of why a defendant was taking certain actions at the time he spoke—what his purpose was.

2. Second, you may consider whether a defendant's opinions expressed at one time are evidence that at some other time he took actions in accordance with those opinions, if you find other evidence supports a finding that he took such actions.

3. Third, you may consider whether a defendant was an authority figure to other people, knew that those other people acted on the basis of his opinions, and, knowing that, expressed his opinion to those he was aware would act in conformity with it. There are two parts to that: he must in fact be an authority figure to others, and he must know that he is. An expression of opinion by a defendant under those circumstances may be considered by you as evidence that a conspiracy or criminal venture charged in a particular count existed and that the defendant in question was a member of that conspiracy. Whether or not such an expression of opinion is evidence of a defendant's participation in a conspiracy is something for you to decide based not only on the expressed opinion itself, but also on other circumstances, including other conduct and other statements by that defendant, and other conduct and statements by others who you may find are members of the conspiracy, if you find a conspiracy existed.

What this means is that there are potentially three categories of statements that you may find were proved in this case. One is simple statements of a point of view on a political, social, or religious issue without any of the related circumstances I discussed in the numbered paragraphs above. Those statements may never be treated as evidence of a crime. The second category includes statements expressing a point of view that you find relevant for one of the three purposes I mentioned above. The third category is statements that do not express a point of view at all, but which you may find were made to further some purpose of a conspiracy. Those statements, if you find they were made, may be treated as evidence in and of themselves and given whatever weight you think they deserve.

Although this instruction appears as part of the instructions as to Count One, you should use it to help you evaluate the evidence as to any count for which you find it relevant.

### Religion as Motive

I want to say a few words about how religion may be involved as an issue in this case, and also about how it is not an issue in this case. These are essentially the same instructions I gave you on this subject at the start of the trial, and they continue to apply.

The government has argued to you that among the motives or reasons some defendants had for committing the acts charged in the indictment were certain of their religious beliefs. Some defendants have argued that the government was motivated by opposition to their religion in bringing these charges, and some have argued that their religious beliefs were not a motive for violence.

You will recall that when I described a few moments ago the elements of the conspiracy charged in Count One, motive was not among them. The government

*United States v. Abdel Rahman: Jury Instructions*

does not have to prove that someone had a motive or reason for committing a crime, but only that he acted with the intent to further one of the unlawful goals I described a few moments ago.

A defendant does not have to prove anything, and certainly not that the government had a motive or reason for bringing charges. However, the government may try to prove and argue a motive, and a defendant may try to prove and argue a motive by the government as well. Let me illustrate this with an example that has nothing to do with this case. If the government charges a defendant with bank robbery, it does not have to prove the defendant's motive for committing the robbery. However, the government may, if it wishes, present evidence that the defendant needed the money badly as evidence that he had a motive to rob the bank. Of course, the defendant may try to show that he was in fact a millionaire and did not need the money, and argue that the government was picking on him only because he was wealthy.

However, it is important for you to understand that although the government may introduce proof of religious belief and argue motive from that, you may not find that a defendant committed any offense charged in this indictment merely because you may disagree with or dislike his religious beliefs. Nor may you find that he did not commit an offense simply because you agree with or admire his religious beliefs.

Every person in this country, including each of these defendants, has the right to believe what he or she wishes. To put the matter simply, if you find beyond a reasonable doubt that a defendant committed, or helped or counseled others to commit, one or more of the crimes charged in this indictment with the required state of mind, it is not a defense that he acted in the name of religion, and your verdict as to that defendant should be guilty.

On the other hand, if you find there is not enough evidence to prove beyond a reasonable doubt that a defendant committed a crime, his religion cannot provide the basis for a criminal conviction, and your verdict as to that defendant should be not guilty.

As with the previous instruction I gave you, although this instruction appears as part of the instructions as to Count One, you should use it to help you evaluate the evidence as to any count for which you find it relevant.

*Multiple Conspiracies*

In this case, the defendants have argued, among other things, that the government's proof fails to show the existence of only one overall conspiracy. Rather, they argue that if any conspiracy has been proved it is actually two or more separate and independent conspiracies with various groups of members.

Whether there existed a single unlawful agreement, or many such agreements, or indeed no agreement at all, is a question of fact for you to determine in accordance with the instructions I am about to give you.

When two or more people join together to further one or more common unlawful designs or purposes, a single conspiracy exists. By way of contrast, multiple conspiracies exist when there are separate unlawful agreements to achieve

*United States v. Abdel Rahman: Jury Instructions*

distinct purposes. Proof of several separate and independent conspiracies is not proof of the single overall conspiracy charged in the indictment, unless one of the conspiracies proved happens to be the single conspiracy described in the indictment.

You may find that there was a single conspiracy despite the fact that there were changes in either membership, by the termination, withdrawal, or addition of new members, or activities, or both, so long as you find that some of the co-conspirators continued for the entire duration of the conspiracy to act for the purposes charged in the indictment. The fact that the members of a conspiracy are not always identical does not necessarily imply that separate conspiracies exist.

On the other hand, if you find that the conspiracy charged in the indictment did not exist, you cannot find any defendant guilty of the single conspiracy charged in the indictment. This is so even if you find that some conspiracy other than the one charged in this indictment existed, even though the purposes of both conspiracies may have been the same, and even though there may have been some overlap in membership.

Similarly, if you find that a particular defendant was a member of another conspiracy, and not the one charged in the indictment, then you must acquit that defendant of the conspiracy charge.

But if you find that the conspiracy charged in the indictment was proved, and that a defendant was a member of the conspiracy charged in the indictment, then your verdict as to that defendant should be guilty even if you find that he was also a member of some other conspiracy as well.

Therefore, what you must do is determine whether the conspiracy charged in the indictment existed. If it did, then you must determine the nature of the conspiracy and who were its members.

# Count Two:
# Solicitation to Murder Hosni Mubarak of Egypt

## Summary

Count Two of the indictment charges defendant Omar Ahmad Ali Abdel Rahman with soliciting other persons to murder Hosni Mubarak of Egypt, in violation of sections 1111 and 1116 of Title 18 of the United States Code. Count Two appears on page 29 of the indictment.

Section 1111 of Title 18 states that, "Murder is the unlawful killing of a human being with malice aforethought"—that is, killing in a planned and purposeful way.

Section 1116 of Title 18 provides that, "Whoever kills or attempts to kill a foreign official . . . shall be punished as provided under [section 1111] . . . ." "'Foreign official' means . . . a . . . President [of a foreign country] . . . .'"

The solicitation statute, section 373 of Title 18 of the United States Code, provides that,

> Whoever, with intent that another person engage in conduct constituting a felony that has as an element the use, attempted use, or threatened use of physi-

*United States v. Abdel Rahman: Jury Instructions*

> cal force against property or against the person of another in violation of the laws of the United States, and under circumstances strongly corroborative of that intent, solicits, commands, induces, or otherwise endeavors to persuade such other person to engage in such conduct

shall be guilty of a crime.

### Elements of the Crime

The government must prove each of the following two elements beyond a reasonable doubt to sustain its burden of proving the defendant guilty:

*First:* that Dr. Abdel Rahman solicited, commanded, induced, or otherwise tried to persuade Siddig Ibrahim Siddig Ali, Abdel Rahman Haggag (referred to in the indictment as Abdo Mohammed Haggag), or Emad Salem to commit the murder of Hosni Mubarak as President of Egypt; and

*Second:* that Dr. Abdel Rahman's actions strongly indicated that he intended Mr. Siddig Ali, Mr. Haggag, or Mr. Salem to actually commit the murder of Mr. Mubarak.

### First Element: Solicitation of Others

For you to find that Dr. Abdel Rahman solicited others, you must determine that the alleged solicitation, command, or inducement was serious and substantial. In general, this means that the solicitation or command must be made under circumstances showing that Dr. Abdel Rahman was serious that the murder be carried out. For example, a person at a baseball game who shouts "kill the umpire" would not be guilty of solicitation to murder because the circumstances would not support the conclusion that he genuinely wanted the result. But if the setting is like the one in an old western movie, and there is a lynch mob surrounding the jail, and a person shouts encouragement to that mob surrounding the jail to lynch a prisoner, he might be found to have intended that other persons actually murder the prisoner.

In addition, you must find that Dr. Abdel Rahman engaged in conduct that can be described as commanding, urgently requesting, inducing, or trying to persuade Mr. Siddig Ali, Mr. Haggag, or Mr. Salem to carry out the murder of Mr. Mubarak. You need not find that he solicited all three of those people, only that he solicited one of them. However, you must agree unanimously on which one of those three he solicited, if any, in order to return a guilty verdict on this count.

### Second Element: Intention for Others to Commit the Murder

The second element you must determine is whether Dr. Abdel Rahman's actions strongly indicated that he intended others to commit the murder of Hosni Mubarak.

If you find that Dr. Abdel Rahman solicited others to murder Hosni Mubarak, you must then consider whether Dr. Abdel Rahman acted with the required state of mind. In order to find him guilty, you must find that he actually intended that the murder of Hosni Mubarak be carried out.

*United States v. Abdel Rahman: Jury Instructions*

*Disability or Innocence of Person Solicited Is No Defense*

I instruct you that it is no defense to a prosecution of Dr. Abdel Rahman for soliciting a crime that Mr. Haggag or Mr. Salem would not have been persuaded to murder Hosni Mubarak either because Mr. Salem was a government agent or because Mr. Haggag was unwilling to commit the solicited act.

# Count Three:
# Conspiracy to Murder Hosni Mubarak of Egypt

## Summary

Count Three of the indictment charges defendant Omar Ahmad Ali Abdel Rahman with conspiring with Siddig Ibrahim Siddig Ali and others to murder Hosni Mubarak of Egypt in violation of sections 1111 and 1116 of the United States Code, Title 18. Count Three appears on page 30 of the indictment, although as you will see it incorporates or includes certain acts charged in Count One. The relevant statute on this subject is section 1117 of Title 18, which reads in relevant part as follows:

> If two or more persons conspire to violate section 1111 [or] 1116 . . . of this title, and one or more of such persons do any overt act to effect the object of the conspiracy,

they shall be guilty of a crime.

As I told you a few moments ago, section 1111 of Title 18 makes it a crime to commit murder, which is defined as the unlawful killing of a human being with malice aforethought, and section 1116 makes it a crime to kill or attempt to kill a foreign official, official guest, or internationally protected person. The statute provides that the term "foreign official" includes the president of a foreign country.

## Elements of the Crime

In order to find Dr. Abdel Rahman guilty of the conspiracy charged in Count Three of the indictment, you must find beyond a reasonable doubt:

*First:* that two or more persons entered the unlawful agreement charged in Count Three of the indictment starting sometime around 1991 and continuing through around August 1993;

*Second:* that the defendant knowingly joined in that agreement, with some knowledge of the unlawful aim and objective of the scheme; and

*Third:* that one of the members of the conspiracy knowingly committed at least one of the overt acts charged in the indictment to further the objective of the conspiracy.

Count Three charges Dr. Abdel Rahman with conspiring with Siddig Ali and others to murder Hosni Mubarak. Let me remind you that Count One of the indictment charged all the defendants with a different kind of conspiracy—seditious conspiracy. The nature of these two crimes is essentially the same, insofar as they both consist of an agreement of two or more persons to accomplish some unlawful purpose, so it should come as no surprise to you that two of the

*United States v. Abdel Rahman: Jury Instructions*

elements of the crimes are the same. The requirements of finding that persons entered into an unlawful agreement and knowing participation by the defendant in the conspiracy are essentially the same in both of these conspiracy counts. One difference, however, is that the conspiracy to murder charged in Count Three requires the commission of at least one overt act in furtherance of the conspiracy. The overt acts Dr. Abdel Rahman allegedly committed are listed on page 30 of the indictment. I will not read them to you now; you will read them yourselves during your deliberations.

In spite of the similarities in the nature of the crimes charged in Counts One and Three, because of the differences in wording between the two statutes involved, I have formulated the instructions in Count Three in a way that is different from the formulation used in Count One. Do not be concerned about any differences you may detect, but simply apply the instructions for each count only to that count, unless you are told explicitly to refer back to instructions from the prior count.

### First Element: Existence of an Agreement

As I have just mentioned, the requirement of an agreement is identical in Counts One and Three of the indictment, and therefore, the instruction for finding an agreement is also the same. I will not repeat that instruction in detail here. Instead, I refer you to pages 12 through 14 of these instructions for an explanation of the first element of conspiracy insofar as it relates to the existence of an unlawful agreement. Of course, here the government must prove that the purpose of the conspiratorial agreement charged in Count Three was to commit the murder of Hosni Mubarak. As I have already explained, murder is the unlawful killing of a human being with malice aforethought.

### First Element: Time and Duration of Conspiracy

Just a few more points before we turn to the second element of conspiracy. First, the indictment charges that the conspiracy to murder charged in Count Three existed from in or about 1991 and continuously thereafter up to and including August 1993. It is not essential that the government prove that the conspiracy started and ended on those specific dates. Instead, it is enough if you find that the conspiracy was formed and that it existed for some substantial time within the period set forth in the indictment.

Second, a conspiracy, once formed, is presumed to have continued until its objectives are accomplished, there is an affirmative act of termination by its members, or it is otherwise terminated—for example, by the arrest of one or more of the conspirators. So too, once a person is found to be a member of a conspiracy, he is presumed to continue his membership until its termination.

### Second Element: Knowing Participation in the Conspiracy

The second element of conspiracy is membership or participation in the conspiracy. This element was also a requirement for finding seditious conspiracy, so much of the following instruction may sound familiar.

*United States v. Abdel Rahman: Jury Instructions*

If you find beyond a reasonable doubt that the conspiracy charged in the indictment existed, you must determine whether Dr. Abdel Rahman was a member of that conspiracy. In determining whether he became a member of the conspiracy, you must determine two things: (1) whether he participated in it, and (2) whether he did so with knowledge of its unlawful purposes. Did the defendant join with an awareness of at least some of the unlawful aims and purposes of the conspiracy?

To have guilty knowledge, a defendant need not know the full extent of the conspiracy. Similarly, a defendant need not know all of the activities of the conspiracy or even who all the co-conspirators are. Indeed, a single act may be enough to bring a defendant within the membership of the conspiracy, provided that the defendant was aware of the conspiracy and knowingly associated himself with its criminal aims.

Mere association with a conspirator does not make someone a member of the conspiracy. Nor is knowledge without participation sufficient. What is necessary is that the defendant you are considering participate with knowledge of at least some of the unlawful purposes of the conspiracy and with the intent to aid in the accomplishment of those ends. It is not necessary, however, that a defendant receive or even anticipate any financial benefit from his participation in the conspiracy, so long as the defendant participated in it in the way that I have explained.

If you find that the conspiracy existed and that the defendant you are considering participated knowingly and willfully in it, the extent of his participation has no bearing on whether or not he is guilty. A defendant may join a conspiracy at any point during its progress and be held responsible for all that occurs thereafter. Even if the defendant participated in the conspiracy to a degree more limited than that of another co-conspirator, the defendant is equally culpable so long as he was a conspirator.

The question, then, is did the defendant you are considering join the conspiracy and participate in it with awareness of at least some of its basic purposes and aims?

*Second Element: "Unlawful," "Willful," and "Knowing"; Willful Ignorance*

In defining the second element of conspiracy, the requirement of participation in the conspiracy, I have used the words "unlawful," "willful," and "knowing." I have previously defined these terms for you in explaining seditious conspiracy on pages 18 through 19 of these instructions, and I will not repeat those definitions now.

In determining whether a defendant knowingly participated in the conspiracy, you must find, beyond a reasonable doubt, that he was aware of the conspiracy and knowingly associated himself with its aim. However, in determining whether a defendant had some knowledge of the unlawful aim or objective of the conspiracy charged in Count Three, you may also consider whether that defendant deliberately ignored what would otherwise have been obvious to him. If you find beyond a reasonable doubt that the defendant acted with a conscious purpose

*United States v. Abdel Rahman: Jury Instructions*

to avoid learning the truth, then you may find that the defendant acted know-ingly. However, guilty knowledge may not be established by demonstrating that the defendant was merely negligent, foolish, or mistaken.

If you find that the defendant was aware of a high probability that the unlaw-ful aim and objective of the conspiracy was to carry out a murder, and that the defendant acted with deliberate disregard of the facts, you may find that the de-fendant acted knowingly. However, if you find that the defendant actually did not know of the unlawful aim and objective of the conspiracy, he may not be con-victed.

### Third Element: Overt Act in Furtherance of the Conspiracy

The third element that the government must prove beyond a reasonable doubt, to establish the offense of conspiracy as charged in Count Three, is that at least one of the overt acts charged in the indictment was knowingly committed by at least one of the conspirators in furtherance of the conspiracy, at or about the time and place alleged. I want to emphasize that although an overt act need not be proved in order to establish the conspiracy charged in Count One, an overt act must be proved to establish the conspiracy charged in Count Three. That is one way in which the elements of the two counts differ.

The indictment on page 30 charges that various overt acts were committed. I am not going to read them aloud now; you are to read them yourselves when you deliberate in the jury room. In order for the government to satisfy this third ele-ment, it does not have to prove all of the overt acts alleged in the indictment, but it must prove at least one.

The government must prove beyond a reasonable doubt that the overt act was committed for the purpose of carrying out the unlawful agreement. In order for the government to satisfy this element, it must prove beyond a reasonable doubt that at least one overt act which you find was committed was knowingly and willfully done by at least one conspirator to further or carry out some object or purpose of the conspiracy. In this connection, you should bear in mind that the overt act, standing alone, may be a perfectly lawful act. Frequently, however, an apparently innocent act loses its harmless character if it is a step in carrying out or assisting a conspiratorial scheme. You are therefore instructed that the overt act does not have to be an act that, in and of itself, is criminal or constitutes an objective of the conspiracy.

You need not find that a particular defendant committed the overt act. It is enough for the government to prove beyond a reasonable doubt that one of the conspirators knowingly committed an overt act in furtherance of the conspiracy. Such an act becomes, in the eyes of the law, the act of all of the members of the conspiracy.

You are further instructed that the overt act need not have been committed at precisely the time alleged in the indictment. It is enough if you are convinced beyond a reasonable doubt that it occurred at or about the time and place stated.

*United States v. Abdel Rahman: Jury Instructions*

### *Acts and Declarations of Co-Conspirators*

As I pointed out in connection with Count One, you will recall that I have admitted into evidence acts and statements of others who the government charges were accomplices or co-conspirators of the defendant Dr. Abdel Rahman.

The reason for allowing this evidence to be received against this defendant has to do with the nature of the crime of conspiracy. A conspiracy is often referred to as a partnership in crime. As in other types of partnerships, when people enter into a conspiracy to accomplish an unlawful end, each and every member becomes an agent for the other conspirators in carrying out the conspiracy.

Therefore, the reasonably foreseeable acts, declarations, statements, and omissions of any member of the conspiracy that are in furtherance of the common purpose of the conspiracy, are deemed, under the law, to be the acts of all of the members, and all of the members are responsible for such acts, declarations, statements, and omissions.

If you find, beyond a reasonable doubt, that the defendant you are considering was a member of the conspiracy charged in the indictment, then any acts done or statements made in furtherance of the conspiracy by a person also found by you to have been a member of the conspiracy may be considered against that defendant. This is so even if such acts were done and statements were made in the defendant's absence and without his knowledge.

However, before you may consider the statements or acts of a co-conspirator in deciding the issue of the defendant's guilt, you must first determine that the acts and statements were made during the existence of, and in furtherance of, the unlawful scheme. If the acts were done or made by someone whom you do not find to have been a member of the conspiracy, or if they were not done or said in furtherance of the conspiracy, they may not be considered by you in deciding whether the defendant is guilty or not guilty.

### *Must Be More Than One Conspirator*

Count Three of the indictment charges that Dr. Abdel Rahman conspired with Siddig Ibrahim Siddig Ali and others known and unknown to the grand jury. A person cannot conspire with himself, and therefore you cannot find the defendant guilty unless you find beyond a reasonable doubt that he participated in the conspiracy charged with at least one other person. However, that person need not be named in the indictment and need not be another defendant in this case. But I caution you again that that person cannot be Emad Salem, who was a government agent.

## Count Four: Solicitation to Attack a Military Installation

### Summary

We turn now to Count Four, which is set forth on page 31 of the indictment.

In Count Four, the indictment charges Omar Ahmad Ali Abdel Rahman with soliciting Emad Salem to damage or destroy by fire or explosives an American

*United States v. Abdel Rahman: Jury Instructions*

military installation in violation of section 844(f) of Title 18 of the United States Code.

Section 844(f) of Title 18 provides,

> Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other personal or real property in whole or in part owned, possessed, or used by, or leased to, the United States, any department or agency thereof, or any institution or organization receiving Federal financial assistance

shall be guilty of a crime.

The solicitation statute is section 373 of Title 18 of the United States Code, which I read to you in connection with Count Two, and which appears on page 23 of the charge. I will not reread it here; you may refer to that page if you wish to read it.

**Elements of the Crime**

The government must prove each of the following elements beyond a reasonable doubt to sustain its burden of proving the defendant guilty of the crime charged in Count Four:

*First:* that Dr. Abdel Rahman solicited, commanded, induced, or otherwise tried to persuade Mr. Salem to damage or destroy by fire or explosives an American military installation; and

*Second:* that Dr. Abdel Rahman's actions strongly indicated that he intended Mr. Salem to attack an American military installation, through the use, attempted use, or threatened use of physical force against the property of an American military installation. I charge you that an attack by fire or explosives on an American military installation is such a crime.

*First Element: Solicitation of Others*

For you to find that Dr. Abdel Rahman solicited Emad Salem, you must determine that the alleged solicitation, command, or inducement was serious and substantial. In general, this means that the solicitation or command must be made under circumstances showing that Dr. Abdel Rahman was serious that an attack on the American military installation be carried out.

In addition, you must find that Dr. Abdel Rahman engaged in conduct that can be characterized as commanding, entreating, inducing, or trying to persuade Mr. Salem to carry out an attack on the military installation. You need not find that he did all of those things. However, in order to return a guilty verdict you must find beyond a reasonable doubt that he did one of those things.

*Second Element: Intention of Others to Attack a Military Installation*

The second element you must determine is that Dr. Abdel Rahman's actions strongly indicated that he actually intended Emad Salem to cause an attack on a military installation. A military installation falls within the definition of property owned by the United States.

*United States v. Abdel Rahman: Jury Instructions*

*Disability or Innocence of Person Solicited Is No Defense*

I instruct you that it is no defense to a prosecution for soliciting a crime that Emad Salem could not be convinced to attack an American military installation because he was a government agent, or was otherwise unwilling to commit the solicited act. The issue here is the state of mind of the defendant, Dr. Abdel Rahman, not the state of mind of the person he allegedly asked to do the act, Emad Salem.

# Count Five: Bombing Conspiracy

## Summary

Count Five of the indictment charges all the defendants with conspiring together and with others—that is, with participating in an unlawful agreement—to violate sections 844(i) and 842(a)(3)(A) of Title 18 of the United States Code. Section 844(i) makes it a crime to use fire or explosives to damage or destroy, or attempt to damage or destroy, buildings, vehicles, or real estate used in interstate or foreign commerce, or to cause explosive materials to be transported in interstate commerce. Count Five appears on pages 32 and 33 of the indictment and incorporates or includes certain acts that appear as part of Count One. The alleged targets of this conspiracy were the United Nations complex, the federal office building at 26 Federal Plaza, the Lincoln and Holland Tunnels, and the George Washington Bridge. The destruction of any of these targets could have involved the destruction of buildings, vehicles, or real estate used in interstate or foreign commerce. Section 842(a)(3)(A) makes it a crime to transport, ship, cause to be transported, or receive in interstate commerce any explosive materials, which are defined in section 841(c) as explosives, blasting agents, and detonators.

The relevant statute on this subject is section 371 of Title 18 of the United States Code which provides in relevant part as follows:

> If two or more persons conspire . . . to commit any offense against the United States . . . and one or more of such persons do any act to effect the object of the conspiracy,

they shall be guilty of a crime.

## Elements of the Crime

In order to find the defendant you are considering guilty of the crime charged in Count Five of the indictment, you must find beyond a reasonable doubt:

*First:* that two or more persons entered the unlawful agreement charged in Count Five at or about the time charged. That agreement must have taken place in or have been intended to have an effect in the United States, and must have included at least one of the following two goals:

a. to damage or destroy, or attempt to damage or destroy, by means of fire or an explosive, any building, vehicle, or any other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce; or

31

*United States v. Abdel Rahman: Jury Instructions*

    b.  to transport, ship, cause to be transported, or receive in interstate or foreign commerce explosive materials;

*Second:* that the defendant under consideration unlawfully, knowingly, and willfully joined in that agreement with awareness of at least one of its unlawful goals; and

*Third:* that one of the members of the conspiracy, not necessarily a defendant on trial before you, committed one of the overt acts charged in the indictment in order to further some objective of the conspiracy.

### First Element: Existence of the Conspiracy

With respect to the part of the first element that deals with how you determine whether an unlawful agreement exists, I refer you to instructions on pages 12 through 14, which are part of the charge on Count One and discuss how you determine whether a conspiracy existed. You should apply these instructions to Count Five as well. Of course, here the government must prove that the purpose of the conspiratorial agreement charged in Count Five was to carry out a bombing or cause explosives to be transported in interstate or foreign commerce.

### First Element: Agreement to Bomb or to Transport Explosives

The conspiracy the government must prove as to Count Five is one with at least one of the two aims described in the indictment: (a) to damage or destroy, or attempt to damage or destroy, by means of fire or an explosive, any building, vehicle, or any other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce; or (b) to transport, ship, or cause to be transported or to receive in interstate or foreign commerce explosive materials. As I explained in connection with the seditious conspiracy charged in Count One, the conspirators need not have agreed to both goals—one is sufficient. You must, however, be unanimous as to which goal or goals you find the conspirators agreed to.

    Here, I remind you that there is no requirement that the conspiracy was a successful one. That is, if you find that a conspiracy existed, you need not find that the conspirators actually carried out any bombings or actually transported, shipped, or received any explosive materials in interstate and foreign commerce. Of course, if you find that any bombings were carried out, or that any explosive materials were transported in interstate or foreign commerce by unlicensed persons, you may consider such an actual bombing or shipment of explosives to be evidence that the conspiracy to carry out those prohibited activities existed. To prove guilt, however, the government must establish *either* that there was an agreement to engage in the destruction or attempted destruction of buildings, vehicles, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce, or that unlicensed persons agreed to transport, ship, or receive explosive materials in interstate or foreign commerce, not necessarily both.

*United States v. Abdel Rahman: Jury Instructions*

### First Element: Interstate Commerce Component

You will note that the crimes that were the alleged goals or objects of this conspiracy refer to property "used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce" and to explosives being transported, shipped, or received in interstate and foreign commerce.

Interstate commerce means commerce or business carried on between a place in one state and a place in another state. It means commerce between places within the same state, but passing through any place outside that state. Foreign commerce means commerce between a state and some foreign country. I instruct you that unlike residential property, business-related and government-related property is generally used in or affecting interstate—and often foreign—commerce, even if it has only a slight effect on interstate or foreign commerce.

As I explained to you from the outset, the charge in Count Five is a conspiracy charge. That means it focuses on the criminal agreement, not the crime that was the object of the conspiracy. It is probably obvious to you that since there is no requirement that the conspiracy be successful—that is, that the government prove that the object crime was ever actually committed—neither is there a requirement that the government prove there was actually an effect on interstate or foreign commerce. The government does not have to prove that explosives were actually moved in interstate commerce, or even that property used in, or having some effect on, interstate or foreign commerce was in fact damaged or destroyed. What is required is that the agreement into which the conspirators entered had a potential to affect interstate or foreign commerce in some way. Of course, if you find that commerce was in fact affected by the conspirators' activities, that effect would satisfy the requirement of showing a potential effect on commerce.

Also, there is no requirement for the government to show that a defendant knew his activities had a potential effect on commerce. As I have stated, what is required is that you find, regardless of what the defendant may have known, that the conspiracy had the potential to affect interstate or foreign commerce.

### First Element: Place of the Offense

The first element the government must prove beyond a reasonable doubt includes that the conspiracy was either formed or in some way acted upon within the United States.

### Second Element: Knowing Participation in the Conspiracy

With respect to the second element, the government must establish that the defendant under consideration unlawfully, knowingly, and willfully joined the conspiracy with awareness of at least one of its unlawful ends. I direct your attention again to pages 26 through 28 above, which are a part of the charge on Count Three, where I discussed with you the principles regarding what the government must establish about the extent of knowledge and participation by an alleged conspirator in order to establish guilt. These principles apply to this count as well.

*United States v. Abdel Rahman: Jury Instructions*

*Third Element: Overt Act in Furtherance of the Conspiracy*

To sustain its burden of proof, the government must show beyond a reasonable doubt that at least one overt act was knowingly committed by at least one of the co-conspirators, and that the purpose of that act was to further or carry out some object or purpose of the conspiracy. I have already described for you—in connection with Count Three (on page 28 above)—what an overt act requirement is and what it means for an act to be in furtherance of a conspiracy. I will not repeat those instructions, which apply equally to the overt act requirement in the Count Five conspiracy.

I remind you that the overt acts that relate specifically to Count Five are listed on page 33 of the indictment.

*Acts and Declarations of Co-Conspirators; Must Be More Than One Conspirator*

I have previously instructed you as to how you may consider the acts and statements of those you may find were members of the conspiracy. These instructions appear on page 29 above, and you should apply them to this count as well.

Also, as I have instructed you earlier on page 29, in order to find that any defendant participated in the conspiracy charged in this count, you must find that there was more than one conspirator who was not a government agent. You should consult that earlier instruction here as well.

# Count Six: Attempted Bombing

**Summary**

Count Six charges that seven defendants—Clement Hampton-El, Amir Abdelgani, Fares Khallafalla, Tarig Elhassan, Fadil Abdelgani, Mohammed Saleh, and Victor Alvarez—attempted to bomb buildings, vehicles, and other real and personal property in violation of section 844(i) of Title 18 of the United States Code. That statute reads in relevant part as follows:

> Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce,

shall be guilty of a crime.

The indictment charges in Count Five that the defendants conspired to violate the law I just quoted, while Count Six alleges that they actually violated the statute by attempting to bomb. Conspiracy to commit a crime is an entirely separate and distinct charge from the actual violation or substantive charge which may be the object of a conspiracy, which here is attempted bombing. You must determine each defendant's guilt or lack of it separately on each of these counts. In your deliberations, however, you may rely at times on the same evidence as to each count.

*United States v. Abdel Rahman: Jury Instructions*

**Elements of the Crime**

In order to prove the charge of attempting to bomb, the government must show beyond a reasonable doubt as to a defendant that:

*First:* the defendant intended to destroy by fire or explosives any buildings, vehicles, or property used in interstate or foreign commerce or affecting interstate or foreign commerce; and

*Second:* the defendant willfully took some action that was a substantial step in an effort to bring about or accomplish the bombing.

The mere intention to commit a specific crime does not amount to an attempt. In order to convict any defendant of an attempt, you must find beyond a reasonable doubt that the defendant intended to bomb, and that he took some action which was a substantial step toward the commission of the bombing.

*First Element: Intent to Bomb*

In order to establish that the defendants intended to violate section 844(i), the government must prove beyond a reasonable doubt the following three things:

*First:* that the defendant you are considering intended to set fire to or intended to use an explosive to damage or destroy property;

*Second:* that the property was used in or affected interstate or foreign commerce; and

*Third:* that the defendant acted maliciously.

1. The first element of the offense that the government must prove beyond a reasonable doubt is that the defendants, by means of fire or explosives, intended to damage or destroy property.

    To find beyond a reasonable doubt that a defendant intended to destroy or damage the property in question by an explosive, you need not find that the explosion actually occurred. You also need not find that the defendant actually possessed an explosive. You need only find that the defendant intended to use a substance that, when ignited, would cause an explosion. The term "explosion" is used in its customary or ordinary sense—that is, an explosion is a rapid expansion of gases caused by a rapid burning of material, which may cause a sharp noise.

    If you find, therefore, that the defendants intended to damage or destroy property by means of fire or explosives as I have defined the term for you, the first element of intending to bomb is satisfied.

2. Next, the government must prove beyond a reasonable doubt that the property that the defendants intended to damage or destroy was property used in or affecting interstate commerce.

    "Interstate commerce" means commerce or business between any place in one state and another place outside that state. It also means commerce between places within the same state but passing through any place outside that state.

    Business-related property, as opposed to residential property, is considered as being used in or affecting interstate commerce even if it has a

*United States v. Abdel Rahman: Jury Instructions*

minimal effect on interstate commerce. That is to say, business-related property may be considered as affecting interstate commerce if food or drink that has moved in interstate commerce is sold there, or if oil or gas that has moved in interstate commerce is used to heat the building.

The government need not prove that explosives were shipped in interstate commerce, but only that the property that the defendants intended to damage or destroy was used in or affected interstate commerce.

If you find, therefore, that the facts show beyond a reasonable doubt that the property in question comes within the definition of "property used in or affecting interstate commerce," which I have just described to you, the second element of the offense is established.

3.  If you find that any of the defendants intended to damage or destroy property within the definition I have given you by means of fire or explosives, you must then consider whether any such defendant acted with the required state of mind to be guilty of a violation of section 844(i) of Title 18 of the United States Code. You may not find a defendant guilty for acting mistakenly or carelessly. In order to find a defendant guilty, you must find that he intended deliberately to set a fire or use explosives.

*Second Element: Substantial Step*

In determining whether a defendant's actions amounted to a substantial step toward the commission of a bombing, it is necessary to distinguish between mere preparation on the one hand and the actual doing of the criminal deed on the other. Mere preparation, which may consist of planning the offense, or of devising, obtaining, or arranging a means for committing the offense is not an attempt, although some preparations may amount to an attempt. The acts of a person who intends to commit a crime will constitute an attempt if the acts themselves clearly indicate an intent to willfully commit the crime and the acts are a substantial step in a course of conduct that is planned to culminate in the commission of the crime.

*Factual Impossibility Not a Defense*

Factual impossibility is not a defense to a charge of attempting to commit a crime if the crime could have been committed if the relevant factual circumstances had been as the defendant believed them to be. In other words, a person is guilty of an attempt to commit a crime if, acting with the state of mind otherwise required for the commission of the crime, he intentionally engages in conduct which would constitute the crime if the relevant factual circumstances were as he believed them to be.

*Aiding and Abetting*

In Count Six of the indictment, each of the seven defendants I mentioned is also charged with having aided and abetted an attempted bombing.

Again, the aiding and abetting statute, section 2 of the United States Code, Title 18, reads as follows:

*United States v. Abdel Rahman: Jury Instructions*

Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

Under this statute, it is not necessary for the government to show that a defendant physically committed the crime with which he is charged in order for you to find him guilty. A person who aids or abets another to commit an offense is just as guilty of that offense as if he committed it himself. Accordingly, you may find a defendant guilty of Count Six if you find that the government has proved beyond a reasonable doubt that another person actually committed or attempted to commit the offense, as I have explained the concept of attempt to you, and that the defendant you are considering aided and abetted that person in committing or attempting to commit the offense. As you can see, the first requirement is that you find that another person has committed or attempted to commit the crime charged. Obviously, no one can be convicted of aiding and abetting the criminal acts of another if no crime was committed or attempted by the other person in the first place. But if you do find that a crime was committed or attempted, then you must consider whether the defendant aided or abetted the commission or attempted commission of the crime.

In order to aid or abet another to commit a crime, it is necessary that the defendant you are considering willfully and knowingly associated himself in some way with the crime charged, and that he willfully and knowingly tried by some act to help make the crime successful. Of course, the mere presence of a person where a crime is being committed, even coupled with knowledge that a crime is occurring, or the mere acquiescence by a person in the criminal conduct of others, is not enough to establish aiding and abetting. An aider or abettor must participate in the crime charged as something he wished to bring about.

In order to determine whether a defendant aided and abetted a crime, ask yourself, did the defendant participate in the crime charged as something he wished to bring about? Did he associate himself with the criminal venture knowingly and willfully? Did he seek by his actions to make the criminal venture succeed? If he did, then he is an aider and abettor and therefore guilty of the offense you have found to have been committed. If he did not, then he is not an aider and abettor, and is not guilty of that offense.

Here too, in determining whether a defendant acted knowingly, you may consider whether that defendant deliberately closed his eyes to what would otherwise have been obvious to him. If you find beyond a reasonable doubt that the defendant acted with a conscious purpose to avoid learning the truth, then you may find that the defendant acted knowingly. However, guilty knowledge may not be established by demonstrating that the defendant was merely negligent, foolish, or mistaken.

If you find that the defendant was aware of a high probability that he was associating himself with an attempted bombing, and that his actions would help make that crime successful, but the defendant acted with deliberate disregard of these facts, you may find that the defendant acted knowingly. However, if you

*United States v. Abdel Rahman: Jury Instructions*

find that the defendant actually did not know about the criminal venture or the effect of his actions, he may not be convicted.

# Counts Seven Through Fourteen: Introduction

I will now instruct you on the elements of the crimes charged in Counts Seven through Fourteen. Each of these counts is brought against defendant El Sayyid Nosair, and they all relate to the events of November 5, 1990, including the murder of Meir Kahane and the assaults on Irving Franklin and Postal Officer Carlos Acosta.

# Count Seven: Murder of Meir Kahane

### Summary

Count Seven of the indictment charges El Sayyid Nosair with murdering Meir Kahane for the purpose of maintaining and increasing his position in the Jihad Organization, an alleged criminal enterprise. Count Seven appears on pages 34–35 of the indictment.

Section 1959(b)(2) of Title 18 of the United States Code defines an enterprise as "any . . . group of individuals associated in fact although not a legal entity, which is engaged in, or the activities of which affect, interstate or foreign commerce."

### Elements of the Crime

In order to meet its burden of proof that defendant El Sayyid Nosair is guilty of the crime charged in Count Seven, the government must establish beyond a reasonable doubt each of the following elements:

*First:* that on or about November 5, 1990, Mr. Nosair murdered Meir Kahane;

*Second:* that Mr. Nosair was a member of the Jihad Organization, and that that was an enterprise engaged in, and the activities of which affected, interstate or foreign commerce; and

*Third:* that Mr. Nosair murdered Meir Kahane at least in part for the purpose of maintaining or increasing his position in the Jihad Organization.

### *First Element: Murder of Meir Kahane*

With respect to Count Seven of the indictment, the first element that the government must prove beyond a reasonable doubt is that on or about the date charged in Count Seven the defendant El Sayyid Nosair murdered and conspired to murder Meir Kahane.

In order to find that the defendant Nosair murdered Meir Kahane, you must find that the government has proved, beyond a reasonable doubt, both of the following two elements:

*First*, that on or about November 5, 1990, Mr. Nosair did, in fact, cause the death of Meir Kahane; and

*Second*, that on or about November 5, 1990, the defendant specifically intended to cause the death of Meir Kahane.

Under the murder statute, a person intends to cause the death of another person when his conscious objective is to cause the death of a person.

### Second Element: Membership in the Jihad Organization

For you to find Mr. Nosair guilty of this count, you must find also that he was, before the alleged murder took place, a member of the Jihad Organization described at pages 2–6 of the indictment and that that organization was an enterprise, as defined in section 1959(b)(2) of Title 18 of the United States Code, engaged in racketeering activity. That section defines an enterprise as "any union or group of individuals associated in fact . . . which is engaged in, or the activities of which affect, interstate or foreign commerce."

This element has four parts: the existence of the enterprise or group, the defendant's membership in that enterprise, the enterprise's engagement in acts of racketeering, and the enterprise's effect on interstate commerce.

The first element that the government must prove beyond a reasonable doubt is that the enterprise alleged in the indictment existed.

An enterprise under the statute does not have to have a particular name or, for that matter, have any name at all. It does not have to be a commonly recognized legal entity, such as a corporation, a trade union, a partnership, or the like, nor need it be registered or licensed as an enterprise.

The statute makes clear that an enterprise may be, and I am quoting, "a group of individuals [who are] associated in fact although not a legal entity." Thus, an enterprise may be a group of people informally associated together for a common purpose of engaging in a course of conduct. In addition to having a common purpose, this group of people must have a core of personnel who function as a continuing unit. Furthermore, the enterprise must continue to exist in substantially similar form through the period charged. This does not mean that the membership must remain identical, but the enterprise must have a recognizable core that continues through the duration.

The indictment describes the enterprise alleged as a "Jihad Organization," further described in paragraphs 1–12 at pages 2–6 of the indictment. You are to read those pages yourselves.

If you decide that the Jihad Organization was composed of a "group of individuals" you must then determine whether it was engaged in "racketeering activity." The term racketeering activity is defined by a statute, Title 18, United States Code, section 1961(1). It includes acts or threats involving murder and arson as well as acts involving retaliating against informants.

If you decide that the Jihad Organization existed, and engaged in racketeering activity, you must decide whether there was any effect at all on interstate or foreign commerce from the activities of the group. The effect can be minimal—it need not be substantial, nor need Mr. Nosair be aware of the effects. All that is necessary is that the activities of the enterprise affect interstate or foreign commerce in some minimal way—for example, by members traveling in interstate or

*United States v. Abdel Rahman: Jury Instructions*

foreign commerce or conducting activities, criminal or otherwise, that in some way affected property in interstate or foreign commerce.

In summary, if you find that there was, in fact, a group of people characterized by (1) a common purpose or purposes, (2) an ongoing formal or informal organization or structure, (3) core personnel who functioned as a continuing unit during a substantial time period within the time charged in the indictment, and (4) an effect on interstate or foreign commerce as I have described, then you may find that an enterprise existed.

However, I instruct you that if you do not find that the Government has proved beyond a reasonable doubt that the Jihad Organization described in Count One existed, then you cannot find Mr. Nosair was a member of that organization and you must find him not guilty of the crime charged in Count Seven.

*Third Element: For the Purpose of Maintaining or Increasing a Position in the Jihad Organization*

If you find that Mr. Nosair murdered Meir Kahane and that Mr. Nosair was a member of the Jihad Organization, which was an enterprise engaged in racketeering activity, and an enterprise whose activities affected or would affect interstate or foreign commerce, then you must decide next whether Mr. Nosair murdered Meir Kahane in order to maintain or increase his position in the Jihad Organization.

To establish this last element the government need not prove that Mr. Nosair had as his only or even his most important purpose maintaining or increasing his position in the Jihad Organization. Rather, the necessary motive requirement will be satisfied if you infer that Mr. Nosair committed the murder of Meir Kahane because he knew it was expected of him by reason of his membership in the enterprise, that he committed it in furtherance of that membership, or because by committing the murder he would gain prestige or position within the Jihad Organization. Any of these reasons would be sufficient, if proved beyond a reasonable doubt. If, on the other hand, you find that the murder was unrelated to the Jihad Organization, then you must find Mr. Nosair not guilty on this count.

# Counts Eight and Nine:
## Violent Assault on Irving Franklin and Carlos Acosta and Attempted Murder of Carlos Acosta

Counts Eight and Nine charge El Sayyid Nosair with violent crime in aid of racketeering activity. Counts Eight and Nine can be found on pages 35–36 of the indictment. In those counts, Mr. Nosair is accused of assaulting Irving Franklin (Count Eight) and attempting to murder and otherwise assaulting Carlos Acosta (Count Nine) with a dangerous weapon, with the result that serious bodily injuries were sustained by each of the victims. These counts have two elements in common with the murder charged in Count Seven, as follows: As was true of Count Seven, the government must establish the existence of the enterprise charged and that Mr. Nosair committed the violent crime charged in connection

*United States v. Abdel Rahman: Jury Instructions*

with maintaining or increasing his position in the enterprise—something I will discuss further in a moment.

Count Eight charges Mr. Nosair only with assault on Irving Franklin. Count Nine charges Mr. Nosair both with attempted murder of Carlos Acosta and with assault on Carlos Acosta. In other words, Count Nine charges two crimes and you will be asked to render verdicts as to both. I will instruct you first as to the attempted murder charge in Count Nine. I will then instruct you as to the assault charges in Counts Eight and Nine. The assault charges in the two counts have the same elements.

# Count Nine:
## Attempted Murder of Postal Police Officer Carlos Acosta

### Elements of the Crime

In order to meet its burden of proof that the defendant Mr. Nosair attempted to murder Mr. Acosta as charged in Count Nine, the government must establish beyond a reasonable doubt each one of the following elements of the crime:

*First:* that on or about November 5, 1990, Mr. Nosair attempted to murder Mr. Acosta;

*Second:* that Mr. Nosair was a member of the Jihad Organization, an enterprise engaged in, and the activities of which affected, interstate or foreign commerce; and

*Third:* Mr. Nosair attempted to murder Mr. Acosta in connection with maintaining or increasing his position in the Jihad Organization.

*First Element: Attempted Murder*

With respect to Count Nine of the indictment, the first element the government must prove beyond a reasonable doubt is that on or about the date charged in Count Nine, the defendant El Sayyid Nosair attempted to murder Carlos Acosta.

In order to find that the defendant Mr. Nosair attempted to murder Carlos Acosta, you must find that the government has proved, beyond a reasonable doubt, both of the following two elements:

*First*, that on or about November 5, 1990, Mr. Nosair specifically intended to cause the death of Carlos Acosta; and

*Second*, that on or about November 5, 1990, Mr. Nosair willfully took some action that was a substantial step in an effort to bring about or accomplish the murder.

A person intends to cause the death of another person when his conscious objective is to cause the death of that person. He need not know who the person is in order to have such an intent.

I instruct you that firing a weapon at another person is a substantial step in accomplishing a murder, if there is, in fact, an intent to murder.

*United States v. Abdel Rahman: Jury Instructions*

*Second and Third Elements: Membership in Jihad Organization; In Connection with Maintaining or Increasing Position in Jihad Organization*

I have explained the second element—membership in the Jihad Organization—in connection with my instructions on Count Seven. Those instructions may be found on pages 39 through 40 of this charge, and they apply to this count as well, except that we are dealing here with a charge of attempted murder rather than actual murder. I will not repeat those instructions again here but simply refer you to them and ask you to apply those instructions to this count as well and remind you that you must find an intent to murder Carlos Acosta before you may convict. Obviously, the charge in Count Nine that we have been discussing relates to Carlos Acosta as the victim rather than Meir Kahane, and you should consider the instructions I gave earlier with that change in mind.

With respect to the third element—attempted murder in connection with maintaining or increasing Mr. Nosair's position in the Jihad Organization, you may apply the legal principle of transferred intent, which I will now explain to you. That principle says that if a defendant planned to commit a murder to maintain or increase his position in an enterprise and, in attempting to carry out that plan, committed a violent assault or attempted murder on another person, the intent of the planned murder may be transferred to the other crimes.

What this means, for your purposes, is that the government may prove the third element in Count Nine by proving that on November 5, 1990, the defendant El Sayyid Nosair planned to cause the death of Meir Kahane for the purpose of maintaining or increasing his position in the enterprise and then attempted to murder Carlos Acosta in the course of carrying out or immediately fleeing from the Kahane homicide.

I remind you that Mr. Nosair may not be convicted of attempted murder on Count Nine unless the government has established the existence of the enterprise charged and that Mr. Nosair acted with a purpose to maintain or increase his position in that enterprise, which you may decide by applying the principle of transferred intent that I just described. I remind you that you must consider each count separately.

# Counts Eight and Nine:
# Assault on Irving Franklin and Carlos Acosta

### Elements of the Crime

In order to meet its burden of proof that defendant Nosair assaulted Irving Franklin and Carlos Acosta in connection with maintaining or increasing his position in an enterprise, the government must establish beyond a reasonable doubt each of the following elements, which you should consider separately for Mr. Franklin and Mr. Acosta:

*First:* that on or about November 5, 1990, Mr. Nosair assaulted Mr. Franklin as charged in Count Eight and Mr. Acosta as charged in Count Nine with a dangerous weapon, resulting in serious bodily injury;

*United States v. Abdel Rahman: Jury Instructions*

*Second:* that Mr. Nosair was a member of the Jihad Organization, an enterprise engaged in, and the activities of which affected, interstate or foreign commerce; and

*Third:* that Mr. Nosair assaulted Mr. Franklin as charged in Count Eight and Mr. Acosta as charged in Count Nine in connection with maintaining and increasing his position in the Jihad Organization.

### First Element: Assault on Irving Franklin and Carlos Acosta with a Dangerous Weapon, Resulting in Serious Bodily Injury

An "assault" is an unlawful attempt with force and violence to do injury to the person of another, with such apparent present possibility of carrying out such an attempt as to put the person against whom the attempt was made in fear of personal violence.

To establish assault with a dangerous weapon, the government must prove that an assault occurred and that it was carried out with a dangerous weapon. To establish assault resulting in serious bodily injury, the government must prove that an assault occurred and that it caused the person assaulted serious bodily injury. I instruct you that you may find gunshot wounds are serious bodily injuries.

You must make the determinations separately as to Irving Franklin in Count Eight and Carlos Acosta in Count Nine.

### Second and Third Elements: Membership in the Jihad Organization and Maintaining or Increasing Position in that Organization

As I have mentioned, the indictment charges that the crime described in Counts Eight and Nine were committed in aid of racketeering activity—that is, in order for Mr. Nosair to maintain or increase his position in the Jihad Organization, which is the racketeering enterprise charged in the indictment. If you find that Mr. Nosair committed the assaults charged in Counts Eight and Nine or the attempted murder charged in Count Nine, you may decide whether any such crime was committed in aid of racketeering activity by applying the legal principle of transferred intent, which I have already explained to you and which I will now repeat. That principle says that if a defendant planned to commit a murder to maintain or increase his position in an enterprise and, in attempting to carry out that plan, committed a violent assault or attempted murder on another person, the intent of the planned murder may be transferred to the other crimes.

What this means, for your purposes, is that the government may prove the second and third elements of the offense charged in Counts Eight and Nine by proving that on November 5, 1990, the defendant El Sayyid Nosair specifically intended to cause the death of Meir Kahane for the purpose of maintaining or increasing his position in the enterprise and then willfully shot Irving Franklin, as charged in Count Eight, and Carlos Acosta, as charged in Count Nine, in the course of carrying out or immediately fleeing from the Kahane homicide.

I remind you that Mr. Nosair may not be convicted on Counts Eight and Nine unless the government has established the existence of the enterprise charged and that Mr. Nosair acted with a purpose to maintain or increase his position in that

*United States v. Abdel Rahman: Jury Instructions*

enterprise, which you may decide by applying the principle of transferred intent that I have just described. I remind you again that you must consider each count separately.

# Count Ten:
## Attempted Murder of Postal Police Officer Carlos Acosta

**Summary**

Count Ten charges Mr. Nosair with the attempted murder of Postal Police Officer Carlos Acosta, in violation of section 1114 of Title 18 of the United States Code.

Section 1114 of Title 18 of the United States Code provides, "Whoever kills or attempts to kill . . . any officer or employee of the Postal Service" shall be guilty of a crime.

**Elements of the Crime**

In order to meet its burden of proof that the defendant, Mr. Nosair, attempted to murder Mr. Acosta, the government must establish beyond a reasonable doubt each one of the following elements of the crime:

*First:* that on or about November 5, 1990, Mr. Nosair attempted to murder Mr. Acosta; and

*Second:* that Mr. Acosta was a Postal Police Officer and was engaged in the performance of his official duties at the time in question.

I have explained the first element of this charge in connection with my instructions on Count Nine. Those instructions may be found on page 41 of this charge, and they apply to this count as well. I will not repeat them again here but simply refer you to them and ask you to apply those instructions to this count as well. If you find that the government has not proved beyond a reasonable doubt the elements of attempted murder of Carlos Acosta as they are explained on page 41, then you must return a verdict of not guilty as to Count Ten as well. If you find that the government proved beyond a reasonable doubt that Mr. Nosair did commit the crime of attempted murder of Carlos Acosta as that crime is explained on page 41, you must nonetheless consider the first element above.

*Second Element: Federal Employment at the Time in Question*

The second element the government must prove beyond a reasonable doubt is whether on or about November 5, 1990, Mr. Acosta was employed by the Post Office and was engaged in the performance of his official duties. The government does not have to prove that Mr. Nosair knew the identity of Mr. Acosta, or that Mr. Nosair knew Mr. Acosta was an employee of the Post Office, or that Mr. Nosair knew Mr. Acosta was engaged in the performance of his official duties.

The crime of attempted murder of a Post Office employee is designed to protect federal employees and federal functions and therefore it is sufficient for the government to show that Mr. Nosair intended to perform the acts which are charged upon a man who in fact was a federal employee engaged in the performance of his official duties. I instruct you that a Postal Police Officer is a federal

employee. But whether or not Mr. Nosair knew that Mr. Acosta was a Postal Police Officer at the time of the alleged attempted murder is irrelevant to such a determination, and should not be considered by you.

## Count Eleven: Use of Firearm Against Meir Kahane

**Summary**

In Count Eleven of the indictment, El Sayyid Nosair is charged with using a firearm to commit the murder of Meir Kahane. The relevant statute on this subject is section 924(c) of Title 18 of the United States Code, which provides, "Whoever, during and in relation to any crime of violence . . . for which he may be prosecuted in a court of the United States, uses or carries a firearm" shall be guilty of a crime.

**Elements of the Offense**

The government must prove each of the following elements beyond a reasonable doubt to sustain its burden of proving the defendant guilty on Count Eleven:

*First:* that Mr. Nosair committed a crime of violence—here, the murder of Meir Kahane—for which he might be prosecuted in a court of the United States; and

*Second:* that Mr. Nosair knowingly used or carried a firearm in connection with the murder of Meir Kahane.

*First Element: Commission of the Predicate Crime*

The first element the government must prove beyond a reasonable doubt is that Mr. Nosair committed a crime of violence for which he might be prosecuted in a court of the United States.

Mr. Nosair is charged in Count Seven of the indictment with committing the crime of murder. I instruct you that murder is a crime of violence. However, it is for you to decide whether the government has proved beyond a reasonable doubt that the defendant committed the crime of murder in aid of racketeering as charged. If you find that the government has not proved beyond a reasonable doubt that Mr. Nosair committed the crime of murder in aid of racketeering, and you have returned a verdict of not guilty as to Count Seven, then you must return a verdict of not guilty as to Count Eleven as well.

*Second Element: Knowing Use of Firearm During and in Relation to the Commission of the Predicate Crime*

The second element the government must prove beyond a reasonable doubt is that Mr. Nosair knowingly used a firearm during and in relation to committing the murder of Meir Kahane.

A "firearm" is any weapon which will or is designed to or may be readily converted to expel a projectile by the action of an explosive.

*United States v. Abdel Rahman: Jury Instructions*

Under this statute, to use a firearm means to have the firearm available in such a way that it furthered the commission of the murder of Meir Kahane or was an integral part of the commission of the crime.

To satisfy this element, you must find also that the defendant knowingly used the firearm. This means that he used the firearm purposely and voluntarily, and not by accident or mistake. It also means that he knew that the weapon was a firearm, as we commonly use the word.

# Counts Twelve and Thirteen:
## Use of Firearm Against Irving Franklin and Carlos Acosta

**Summary**

In Counts Twelve and Thirteen of the indictment, which is found on pages 37–38, El Sayyid Nosair is charged with using a firearm to commit assault on Irving Franklin and attempt to murder Postal Police Officer Carlos Acosta, respectively. The relevant statute on this subject is the same as for Count Eleven—section 924(c) of Title 18 of the United States Code, which provides: "Whoever, during and in relation to any crime of violence . . . for which he may be prosecuted in a court of the United States, uses or carries a firearm" shall be guilty of a crime.

**Elements of the Offense**

The government must prove each of the following elements beyond a reasonable doubt to sustain its burden of proving the defendant guilty on Counts Twelve and Thirteen:

*First:* that Mr. Nosair committed a crime of violence for which he might be prosecuted in a court of the United States—here, the assault on Irving Franklin in connection with Count Twelve and the attempted murder of Carlos Acosta in connection with Count Thirteen; and

*Second:* that Mr. Nosair knowingly used or carried a firearm in connection with the assault on Mr. Franklin and attempted murder of Mr. Acosta.

I have already explained the elements of committing a crime of violence and using or carrying a firearm in connection with a crime of violence when I instructed you as to the elements of Count Eleven. These elements have the same meaning here, and I will not repeat the explanation. It may be found on pages 45 through 46 of these instructions, and you should apply the same explanation here. Obviously, the charges we are discussing now relate to Irving Franklin and Carlos Acosta as the victims rather than Meir Kahane, and you should consider the instructions I gave earlier with that change in mind. However, I instruct you specifically that if you have returned a not guilty verdict on Count Eight, charging the assault on Irving Franklin, then you must also return a not guilty verdict on Count Twelve, and if you have returned a not guilty verdict on Count Ten, charging the attempted murder of Carlos Acosta, then you must also return a not guilty verdict on Count Thirteen.

*United States v. Abdel Rahman: Jury Instructions*

# Count Fourteen: Possession of Firearm

## Summary

In Count Fourteen of the indictment, found on page 38 of the indictment, El Sayyid Nosair is charged with possessing a firearm that had the importer's and manufacturer's serial number removed, obliterated, and altered, and which firearm had previously been shipped and transported in interstate commerce.

The applicable statute, section 922(k) of Title 18 of the United States Code, provides that,

> It shall be unlawful for any person knowingly . . . to possess . . . any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered and has, at any time, been shipped or transported in interstate commerce.

## Elements of the Crime

The government must prove each of the following elements beyond a reasonable doubt to sustain its burden of proving defendant Nosair guilty:

*First:* that Mr. Nosair knowingly possessed a firearm that had the importer's or manufacturer's serial number removed, obliterated, or altered at the time he possessed it; and

*Second:* that the firearm had been shipped or transported in interstate commerce.

### First Element: Knowing Possession of a Firearm

The first element that the government must prove beyond a reasonable doubt is that on or about November 5, 1990, Mr. Nosair knowingly possessed a firearm with the importer's or manufacturer's serial number removed, obliterated, or altered.

A "firearm," as I have said in connection with earlier counts, is any weapon that will or is designed to or may be readily converted to expel a projectile by the action of an explosive. To "possess" means to have something within a person's control.

The government must prove also that the firearm in question had the importer's or manufacturer's serial number removed, obliterated, or altered at the time Mr. Nosair possessed it. There is no need to prove that all of the serial numbers were changed, or that none of them were readable. The government need prove only that any of the numbers were either removed, obliterated, or altered in some fashion.

To satisfy this element, you must find also that Mr. Nosair knowingly possessed the firearm. This means that he possessed it purposely and voluntarily, and not by accident or mistake. It means also that he knew that the weapon was a firearm, as we commonly use the word.

*United States v. Abdel Rahman: Jury Instructions*

*Second Element: Firearm Was Shipped or Transported in Interstate Commerce*

The second element the government must prove beyond a reasonable doubt is that the firearm Mr. Nosair is charged with possessing was shipped or transported in interstate commerce.

Here, you have heard the testimony of Stephen Bettenhauser that the firearm in question was manufactured by the Sturm, Ruger Company, and you have heard Kimberly Pritula, who works for that company, testify that the company had no manufacturing facilities in New York State at or before the time in question; you may consider that testimony in deciding this issue.

# Count Fifteen:
# Shipping Firearm for the Spring 1993 Bombing Plot

## Summary

In Count Fifteen, found on page 39 of the indictment, Victor Alvarez is charged with transporting a firearm in interstate commerce in connection with the plot to blow up various buildings and structures in the New York City area, in violation of section 924(b) of the United States Code.

Section 924(b) of Title 18 of the United States Code provides,

> Whoever, with intent to commit therewith an offense punishable by imprisonment for a term exceeding one year, or with knowledge or reasonable cause to believe that an offense punishable by imprisonment for a term exceeding one year is to be committed therewith, ships, transports, or receives a firearm in interstate or foreign commerce

shall be guilty of a crime.

## Elements of the Crime

In order to convict Mr. Alvarez of the offense charged, you must find that the government has proved beyond a reasonable doubt the following elements:

*First:* that Mr. Alvarez had knowledge or reasonable cause to believe that other defendants were planning the bombing conspiracy charged in Count Five; and

*Second:* that in furtherance of that crime Mr. Alvarez shipped or transported a firearm in interstate or foreign commerce, or caused a firearm to be shipped or transported in interstate or foreign commerce.

*First Element: Knowledge of Criminal Act*

The first element that the government must prove beyond a reasonable doubt is that Mr. Alvarez had knowledge or reasonable cause to believe that others were planning the bombing conspiracy charged in Count Five.

However, it is not necessary for the government to prove that Mr. Alvarez had actual, direct knowledge of the bombing conspiracy charged in Count Five. It is sufficient to satisfy this element if you find that Mr. Alvarez had reasonable cause to believe from the facts presented to him that there was a bombing conspiracy as described in Count Five. Thus, if you determine that Mr. Alvarez had

possession of facts that, although not amounting to knowledge of a specific plan, would cause a reasonable person of Mr. Alvarez's intelligence and experience, knowing the same facts, to reasonably conclude that there was a bombing conspiracy, this element is satisfied.

In connection with this first element, I instruct you that if you find that the conspiracy charged in Count Five did not exist, you must find Mr. Alvarez not guilty on Count Fifteen.

### Second Element: Shipment, Transportation, or Receipt of Firearm

The second element that the government must prove beyond a reasonable doubt is that Mr. Alvarez shipped or transported a firearm or caused it to be shipped or transported in interstate or foreign commerce.

The words "ships" and "transports" have their common meaning. A "firearm," as I have explained to you already, is any weapon that will or is designed to or may be readily converted to expel a bullet as that term is commonly used. For the purposes of this count, "interstate commerce" means that the firearm was transported or shipped between one state and another state.

In order for the government to satisfy this element, it must prove that the firearm was shipped, transported, or received across state lines and that Mr. Alvarez knowingly caused the firearm to be shipped or transported across state lines. An act is done knowingly if you find that the defendant acted purposely and voluntarily, and not by mistake or accident. In other words, the government must prove beyond a reasonable doubt that Mr. Alvarez knew that what was being shipped or transported was a firearm.

### Aiding and Abetting

In Count Fifteen of the indictment, Victor Alvarez is charged also with having aided and abetted the shipment, transportation, or receipt of a firearm in interstate commerce.

I have already explained the concept of aiding and abetting in connection with the instructions as to Count Six. Those instructions appear on pages 36 through 38 above, and they apply here as well. I will not repeat them again here, but you should apply those instructions as to aiding and abetting that appear on pages 36 through 38 above to the charge of aiding and abetting the shipment, transportation, or receipt of a firearm in interstate commerce as charged against Mr. Alvarez in Count Fifteen.

# Count Sixteen:
# Using and Carrying Firearm in 1993 Bombing Plot

## Summary

In Count Sixteen, found on page 40 of the indictment, Victor Alvarez is charged with using and carrying a firearm in relation to the bombing conspiracy charged in Count Five of the indictment. The relevant statute on this subject is one I have quoted in my instructions as to Counts Eleven, Twelve, and Thirteen. It is section

*United States v. Abdel Rahman: Jury Instructions*

924(c) of Title 18 of the United States Code, which provides, "Whoever, during and in relation to any crime of violence . . . for which he may be prosecuted in a court of the United States, uses or carries a firearm," shall be guilty of a crime.

**Elements of the Crime**

The government must prove each of the following elements beyond a reasonable doubt to sustain its burden of proving the defendant guilty on Count Sixteen:

*First:* that Mr. Alvarez committed a crime of violence for which he might be prosecuted in a court of the United States; and

*Second:* that Mr. Alvarez knowingly used or carried a firearm in connection with that crime.

*First Element: Commission of the Predicate Crime*

The first element the government must prove beyond a reasonable doubt is that Mr. Alvarez committed a crime of violence for which he might be prosecuted in a court of the United States.

Mr. Alvarez is charged in Count Five of the indictment with participating in a bombing conspiracy. I instruct you that the crime of participating in a bombing conspiracy is a crime of violence. However, it is for you to determine whether the government has proved beyond a reasonable doubt that the defendant participated in the bombing conspiracy as charged. Further, I instruct you that if you find that the government has not proved that Mr. Alvarez participated in the bombing conspiracy charged in Count Five, and your verdict on that count as to Mr. Alvarez is not guilty, then you must find Mr. Alvarez not guilty on this count—Count Sixteen—as well.

*Second Element: Knowing Use of Firearm During and in Relation to the Commission of the Predicate Crime*

The second element the government must prove beyond a reasonable doubt is that Victor Alvarez knowingly used or carried a firearm during and in relation to the bombing conspiracy. The government need not prove both that Mr. Alvarez used and carried a firearm. It need prove only one or the other. Thus, if the government has proved only that Mr. Alvarez carried a firearm, that would be sufficient to find him guilty of the crime charged.

A "firearm" is any weapon which will or is designed to or may be readily converted to expel a projectile by the action of an explosive.

Under this statute, to use a firearm means to have the firearm available in such a way that it furthers the commission of the bombing conspiracy, or is an integral part of the commission of the crime. It is not necessary that the government prove that Mr. Alvarez fired or even displayed the weapon. As long as Mr. Alvarez had the firearm available to protect criminal endeavors if necessary, that is sufficient to establish use of the firearm.

Under this statute, to carry a firearm means to have it within your control so that it is available in such a way that it furthers the bombing conspiracy or is an integral part of the commission of the crime.

*United States v. Abdel Rahman: Jury Instructions*

To satisfy this element, you must find also that Mr. Alvarez knowingly carried or used the firearm. This means that he carried the firearm purposely and voluntarily, and not by accident or mistake. It also means that he knew that the weapon was a firearm, as we commonly use the word. However, the government is not required to prove that the defendant knew that he was breaking the law.

### Aiding and Abetting

In Count Sixteen of the indictment, Victor Alvarez is charged also with having aided and abetted using and carrying a firearm in the bombing conspiracy.

I have already explained to you the concept of aiding and abetting in connection with Count Six. That instruction appears on pages 36 through 38 above, and it applies here as well. I am not going to repeat it, but you should apply that instruction to this count as well.

## Counts Twenty Through Twenty-Eight: Introduction

I will now describe the elements of the crimes charged in Counts Twenty through Twenty-Eight, which relate to defendant Ibrahim el-Gabrowny alone, and cover the events of March 4, 1993. Counts Twenty through Twenty-Two contain charges growing out of the confrontation between law enforcement officers and Mr. el-Gabrowny preceding Mr. el-Gabrowny's arrest on that date. Counts Twenty-Three through Twenty-Eight relate to allegedly forged passports and other documents allegedly found in Mr. el-Gabrowny's possession that day.

## Counts Twenty and Twenty-One: Assault Upon a Federal Officer

### Summary

Counts Twenty and Twenty-One of the indictment charge defendant Ibrahim el-Gabrowny with striking Michael Burke, a Special Agent of the United States Department of the Treasury, Bureau of Alcohol, Tobacco and Firearms, also known as the "ATF," and Thomas Corrigan, a New York City detective who was also a Special Deputy United States Marshal, on March 4, 1993, while these officers were executing a search warrant issued in connection with the investigation into the World Trade Center bombing. The relevant statute, section 111(a)(1) of the United States Code, Title 18, provides,

> Whoever . . . forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any [federal officer] while engaged in or on account of the performance of official duties

shall be guilty of a crime.

### Elements of the Offense

In order to find the defendant Ibrahim el-Gabrowny guilty of the crimes charged in Counts Twenty and Twenty-One, you must find the following facts beyond a reasonable doubt:

*United States v. Abdel Rahman: Jury Instructions*

*First:* that on or about March 4, 1993, Michael Burke, the alleged assault victim in Count Twenty, was employed by the United States Department of the Treasury, Bureau of Alcohol, Tobacco and Firearms, and Thomas Corrigan, the alleged assault victim in Count Twenty-One, was a Special Deputy United States Marshal;

*Second:* that on or about that date, the defendant forcibly assaulted, resisted, opposed, impeded, intimidated, or interfered with the officer in question;

*Third:* that the defendant willfully did the act or acts charged, in other words, that he acted knowingly, intentionally, and voluntarily; and

*Fourth:* that, at the time, the officer in question was engaged in the performance of his official duties.

### First Element: Federal Officer

Now, as I have stated, the first element you must find is that on or about March 4, 1993, the victim alleged to have been assaulted was a federal law enforcement agent; in Count Twenty, an agent of the United States Department of the Treasury, Bureau of Alcohol, Tobacco and Firearms, and in Count Twenty-One, a Special Deputy United States Marshal. The government does not have to prove that the defendant knew the identity of the victim, or that the defendant knew the victim was a federal officer, or that the defendant knew the victim was engaged in the performance of his official duties.

### Second Element: Forcible Conduct

The second element the government must prove is that the defendant, Ibrahim el-Gabrowny, "forcibly assault[ed], resist[ed], oppose[d], impede[d], intimidate[d], or interfere[d] with" the victim.

Although the indictment alleges that the defendant did all of these things, I instruct you that it is not necessary for the government to prove that the defendant did all of those things. It is sufficient if the government proves beyond a reasonable doubt that the defendant did any one of these several alternative acts as charged. All of the acts—assault, resist, oppose, impede, intimidate, and interfere with—are modified by the word "forcibly." Thus, before you can find the defendant guilty, you must find, beyond a reasonable doubt, that he acted forcibly. "Forcibly" means by use of force. Physical force is one means that satisfies this element. You may also find that a person who has the present ability to inflict bodily harm upon another and who willfully threatens or attempts to inflict bodily harm upon such person, has acted forcibly. In such a case, the threat must be a present one.

An "assault" is an unlawful attempt to use force and violence to injure the person of another, which puts the person against whom the attempt was made in fear of personal violence.

The word "resist" means opposing by physical power, striving against, or exertion, to counteract, defeat, or frustrate. The word "oppose" means to resist by physical means; "impede" means stopping progress, obstructing, or hindering; "intimidate" means to make timid or fearful, to inspire or affect with fear, to

*United States v. Abdel Rahman: Jury Instructions*

frighten, deter, or overawe; and "interfere with" means to come into collision with, to intermeddle, to hinder, or to intervene.

### Third Element: Willfulness

In order to convict the defendant, you must be satisfied, beyond a reasonable doubt, that he committed the acts charged in the indictment willfully. In other words, you must be persuaded that the defendant acted knowingly, intentionally and voluntarily, with a bad purpose, and not by mistake or by accident.

### Fourth Element: Engaged in the Performance of Official Duties

The last element the government must prove beyond a reasonable doubt is that at the time of the alleged assault the officer in question was engaged in the performance of his official duties. You may find the officer was so engaged if you find that, at the time of the alleged assault, he was acting within the scope of what he was employed to do. On the other hand, if you find that the officer was involved in a personal venture of his own, you must find that he was not engaged in the performance of his official duties, and you must acquit the defendant of the crime charged.

I remind you that you must consider each of these counts separately and return a separate verdict as to each.

# Count Twenty-Two:
# Assault and Resistance
# During Execution of a Search Warrant

## Summary

Count Twenty-Two of the indictment charges defendant Ibrahim el-Gabrowny with striking law enforcement officers Michael Burke and Thomas Corrigan on March 4, 1993, while they were assisting in the execution of a search warrant issued in conjunction with the investigation into the bombing of the World Trade Center. That count appears on page 44 of the indictment. The relevant statute, section 2231(a) of the United States Code, Title 18, provides,

> Whoever forcibly assaults, resists, opposes, prevents, impedes, intimidates, or interferes with any person authorized to serve or execute search warrants or to make searches and seizures while engaged in the performance of his duties with regard thereto or on account of the performance of such duties,

shall be guilty of a crime.

## Elements of the Crime

In order to find Ibrahim el-Gabrowny guilty of the crime charged, you must find the following facts beyond a reasonable doubt:

*First:* that on or about March 4, 1993, the officers who were the alleged assault victims were authorized to serve or execute search warrants, or to make searches and seizures;

*United States v. Abdel Rahman: Jury Instructions*

*Second:* that on that same date, the defendant Ibrahim el-Gabrowny forcibly assaulted, resisted, opposed, prevented, impeded, intimidated, or interfered with the officers in question;

*Third:* that the defendant willfully did the act or acts charged—in other words, that he acted knowingly, intentionally, and voluntarily; and

*Fourth:* that, at the time, the law enforcement officers were engaged in executing a search warrant.

If the government has proved all four of these elements beyond a reasonable doubt, your verdict should be guilty. If the government has failed to prove any one of these elements beyond a reasonable doubt, your verdict should be not guilty.

These elements are already familiar to you, as they are essentially the same elements that comprised the crime of assault on a federal officer charged in Counts Twenty and Twenty-One. I therefore refer you to the instructions found on page 53, which you should apply here as well. There are, however, some differences, which I will now explain.

### First Element: Authorization

The first element you must find is that on or about March 4, 1993, the officers said to have been assaulted were authorized to serve or execute search warrants, or to make searches and seizures. Search warrants may be served or executed by an officer specifically named in the warrant or by an officer authorized by law to carry out such duties. I instruct you that law enforcement personnel, including Michael Burke and Thomas Corrigan, were authorized by law to serve or execute search warrants.

### Second Element: Forcible Conduct

The second element the government must prove is that the defendant Ibrahim el-Gabrowny "forcibly assault[ed], resist[ed], oppose[d], prevent[ed], impede(d), intimidate[d], or interfere[d] with" the victims. All of these acts, with the exception of "prevent," were defined for you in the description of forcible conduct for Counts Twenty and Twenty-One found on pages 52 through 53, and you should apply these definitions here. The word "prevent" here means to forcibly keep something from happening.

## Count Twenty-Three:
## Possession of False Identification Documents

### Summary

Count Twenty-Three of the indictment charges defendant Ibrahim el-Gabrowny with possessing five fraudulent Nicaraguan passports, five fraudulent Nicaraguan birth certificates, and two fraudulent Nicaraguan driver's licenses, with the intent to transfer such documents. It charges him also with aiding and abetting such possession. Count Twenty-Three appears on page 45 of the indictment. The rele-

vant statutes on this subject are sections 1028 and 2 of the United States Code, Title 18. Section 1028 reads in relevant part,

> Whoever . . . knowingly possesses with intent to use unlawfully or transfer unlawfully five or more identification documents (other than those issued lawfully for the use of the possessor) or false identification documents

shall be guilty of a crime. To establish that this section was violated, the government must show,

> the production, transfer, or possession prohibited by this section is in or affects interstate or foreign commerce, or the identification document, [or] false identification document . . . is transported in the mail in the course of the production, transfer, or possession prohibited by this section.

Section 2 of Title 18, which I have read to you before, provides,

> Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

## Elements of the Crime

In order to prove the defendant Ibrahim el-Gabrowny guilty of the crime charged in Count Twenty-Three, the government must establish beyond a reasonable doubt that,

*First:* on or about March 4, 1993, the defendant knowingly possessed, or aided and abetted others in possessing, five or more identification documents that were not issued lawfully for his own use;

*Second:* the defendant possessed such documents with the intent to use or transfer them unlawfully; and

*Third:* the defendant's transfer or possession of false identification documents was in or affected interstate commerce, or the documents were transported in the mail in connection with his possession of these documents.

### First Element: Knowing Possession

The first element that the government must prove beyond a reasonable doubt is that Ibrahim el-Gabrowny knowingly possessed five or more identification documents or false identification documents.

The term "identification document" includes a document made or issued by or under the authority of a foreign government or a political subdivision of a foreign government, which, when completed with information concerning a particular person, is of a type intended or commonly accepted for the purpose of identification of persons.

A "false" identification document includes an identification document that has been obtained by false statements or fraud.

Possession of these items is done "knowingly" if it is done voluntarily and intentionally, rather than by mistake, accident, or other innocent reason.

*United States v. Abdel Rahman: Jury Instructions*

*Second Element: Intent to Use or Transfer Unlawfully*

The second element that the government must prove beyond a reasonable doubt is that Ibrahim el-Gabrowny intended to use the false identification documents unlawfully or to transfer them unlawfully.

To prove this element, the government must show that Mr. el-Gabrowny did more than possess the false identification documents. The government must show beyond a reasonable doubt that he intended to use or transfer the documents in such a way as would violate a federal, state, or local law, or be part of the making of a misrepresentation that violates a law. I instruct you that it is a federal crime to transfer identification documents or false identification documents to another person knowing that the documents were stolen or produced without lawful authority. The government is not required to establish that Mr. el-Gabrowny actually put the documents to a use that violated a law; it must establish only that his intended use would have violated a law. The question on which you should focus when considering this second element is simply whether Mr. el-Gabrowny intended to use the alleged false documents unlawfully or to transfer them unlawfully.

If you find that Mr. el-Gabrowny possessed five or more false identification documents, you may consider all of the evidence and circumstances surrounding his possession of those documents in order to determine whether he intended to use or transfer the documents in a way that would violate a federal, state, or local law.

I remind you that the count also charges Mr. el-Gabrowny with aiding and abetting in the unlawful possession and use of the identification documents in question. I have instructed you earlier, at pages 36 through 38, on the concept of aiding and abetting. You should apply these instructions to the charge in this count as well.

*Third Element: Effect on Interstate or Foreign Commerce*

The final element that the government must prove beyond a reasonable doubt is that the unlawful use or transfer of the false identification documents intended by Mr. el-Gabrowny was in, or would have affected, interstate or foreign commerce.

I have already given you instructions about what interstate and foreign commerce mean, on page 33 above, and I will not repeat them here. I instruct you that the use of false passports to travel from the United States to another country is considered to be use "in" foreign commerce. I further instruct you that the use of birth certificates and driver's licenses to assist in such travel would affect foreign commerce.

# Counts Twenty-Four Through Twenty-Eight:
# Fraud and Misuse of Visas, Permits, and Other Documents

### Summary

Counts Twenty-Four through Twenty-Eight appear at page 46 of the indictment. They charge Ibrahim el-Gabrowny with knowingly possessing, obtaining, accept-

*United States v. Abdel Rahman: Jury Instructions*

ing, and receiving documents prescribed by statute and regulation for entry into the United States, with the knowledge that such documents were forged, counterfeited, altered, or falsely made, or with the knowledge that they were procured by means of false claim or statement or otherwise procured by fraud or unlawfully obtained, in violation of Title 18, United States Code, section 1546(a). This statute provides, in relevant part, as follows:

> Whoever knowingly . . . uses, attempts to use, possesses, obtains, accepts, or receives any [immigrant or nonimmigrant] visa, permit, border crossing card, alien registration receipt card, or other document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States, knowing it to be forged, counterfeited, altered, or falsely made, or to have been procured by means of any false claim or statement, or to have been otherwise procured by fraud or unlawfully obtained

shall be guilty of a crime.

Each count charges possession of a different false passport, as follows:

Count 24: Victor Noel Jafry
Count 25: Ninfa Safary Calderon
Count 26: Maria Marcos Safary
Count 27: Jaime Marcos Safary
Count 28: Jorge Marcos Safary

## Elements of the Crime

In order to find Ibrahim el-Gabrowny guilty of Counts Twenty-Four through Twenty-Eight, the government must prove each of the following elements beyond a reasonable doubt:

*First:* that on or around March 4, 1993, the defendant knowingly used, attempted to use, possessed, obtained, accepted, or received a document prescribed by statute or regulation for entry into, or as evidence of authorized stay or employment in, the United States; and

*Second:* that the defendant did so knowing that such documents were forged, counterfeited, altered, or falsely made, or that they were procured by means of any false claim or statement, or have been otherwise obtained by fraud or unlawfully obtained.

### First Element: Possession of False Documents

The first element that the government must prove beyond a reasonable doubt is that Ibrahim el-Gabrowny knowingly possessed, obtained, accepted, or received a document prescribed by statute or regulation for entry into, or as evidence of authorized stay or employment in, the United States.

I have previously defined the term "knowingly." An act is done knowingly if it is done voluntarily and intentionally, rather than by mistake, accident, or other innocent reason.

Although these counts allege that Mr. el-Gabrowny did "possess, obtain, accept, and receive" documents prescribed by statute and regulation for entry into the United States, I instruct you that it is not necessary for the government to

prove that Mr. el-Gabrowny did all of those things—that is, possessed, obtained, accepted, and received. It is sufficient if the government proves beyond a reasonable doubt that the defendant did any one of these several alternative acts as charged.

The terms "possess, obtain, accept, and receive" have their ordinary, everyday meaning.

The term "other document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States" refers to passports of a kind actually issued by a foreign government and that fall within that category of documents that are prescribed for use in entry into or as evidence of authorized stay or employment in the United States.

I further instruct you that the document need only be one that can be used to enter the United States, even though the intended use may have been something different. Thus, if you find that the defendant intended, for example, to use the passports to allow another person to leave the United States, that does not prevent such passports from being prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States.

*Second Element: Knowledge of Falsity of Documents*

The second element the government must prove beyond a reasonable doubt is that the defendant Mr. el-Gabrowny possessed, obtained, accepted, or received the documents knowing that they were forged, counterfeited, altered, or falsely made, or that they were procured by means of any false claim or statement, or to have been otherwise procured by fraud or unlawfully obtained.

A document procured by means of any false claim or statement is one that was obtained by giving information that was not true.

# General Principles

## Introduction

I have just described the charges in the indictment. I will now discuss the principles you must apply in deciding whether the government has proved those charges beyond a reasonable doubt.

## Presumption of Innocence and Burden of Proof

Each of the defendants has pleaded not guilty to the charges in the indictment.

As a result of this plea of not guilty, the burden is on the prosecution to prove guilt beyond a reasonable doubt. This burden never shifts to a defendant for the simple reason that the law never imposes upon a defendant in a criminal case the burden or duty of testifying himself, or calling any witness, or locating or producing any evidence.

The law presumes each defendant to be innocent of all the charges against him. I therefore instruct you that each defendant is to be presumed by you to be innocent of each charge throughout your deliberations until such time, if it comes, that you as a jury are satisfied that the government has proved the defen-

*United States v. Abdel Rahman: Jury Instructions*

dant you are considering guilty beyond a reasonable doubt of the charge you are considering.

Each defendant began the trial here with a clean slate. This presumption of innocence alone is sufficient to acquit each defendant unless you as jurors are unanimously convinced beyond a reasonable doubt of his guilt, after a careful and impartial consideration of the evidence. If the government fails to sustain its burden as to any charge against any defendant, you must find that defendant not guilty of that charge.

This presumption was with each defendant when the trial began and remains with him even now as I speak to you and will continue with him into your deliberations unless and until you are convinced that the government has proved his guilt beyond a reasonable doubt.

## Reasonable Doubt

The question that naturally arises is, "What is a reasonable doubt?" What does that term mean? The words almost define themselves. It is a doubt based in reason and arising out of the evidence in the case, or the lack of evidence. It is a doubt that a reasonable person has after carefully weighing all of the evidence in the case.

Reasonable doubt is a doubt that appeals to your reason, your judgment, your experience, and your common sense. If, after a fair and impartial consideration of all the evidence, you candidly and honestly believe that you are not satisfied that the government has proved the guilt of a defendant, that you do not have an abiding and firm belief of a defendant's guilt—in other words, if you have such a doubt as would reasonably cause a prudent person to hesitate in acting in matters of importance in his or her own affairs—then you have a reasonable doubt, and in that circumstance it is your duty to acquit.

On the other hand, if, after a fair and impartial consideration of all the evidence you do have an abiding belief that the government has proved a defendant's guilt, such a belief as a prudent person would be willing to act upon in important matters in the personal affairs of his or her own life, then you have no reasonable doubt, and under such circumstances it is your duty to convict that defendant.

One final word on this subject: Reasonable doubt is not whim, nor is it speculation about what may have happened. It is not an excuse to avoid the performance of an unpleasant duty. Nor is it sympathy for a defendant. Beyond a reasonable doubt does not mean a positive certainty, or beyond all possible doubt. After all, it is virtually impossible for a person to be absolutely and completely convinced of any contested fact that by its nature is not subject to mathematical proof and certainty. As a result, the law in a criminal case is that it is sufficient if the guilt of a defendant is established beyond a reasonable doubt, not beyond all possible doubt.

*United States v. Abdel Rahman: Jury Instructions*

### Multiple Counts—Multiple Defendants

The indictment in this case contains multiple counts that will be submitted to you for decision. Each count charges one or more of the defendants with a different crime.

There are 10 defendants on trial before you. You must consider each count of the indictment and each defendant's involvement in that count separately, and you must return a separate verdict as to each defendant for each count in which he is charged.

In reaching your verdict, bear in mind that guilt is individual. Your verdict of guilty or not guilty must be based solely upon the evidence about each defendant. The case against each defendant, on each count, stands or falls upon the proof or lack of proof against that defendant, and your verdict as to any defendant on any count should not control your decision as to the other defendants or any other count, except as you have been specifically instructed as to particular counts which depend on proof of charges in other counts.

### Defense: Entrapment

Defendants Clement Hampton-El, Tarig Elhassan, Fares Khallafalla, Amir Abdelgani, Fadil Abdelgani, Mohammed Saleh, and Victor Alvarez, among other arguments and defenses they have asserted as to all the counts in this indictment, have argued that they were the victims of entrapment by an agent of the government. The law permits government agents to trap an unwary criminally-minded person, but the law does not permit government agents to entrap an unwary innocent. Thus, a defendant may not be convicted of a crime if it was the government agent who gave the defendant the idea to commit the crime, if it was the government agent who also persuaded him to commit the crime, and if he was not ready and willing to commit the crime before the government agent spoke with him.

On the other hand, if the defendant was ready and willing to violate the law, and the government merely presented him with an opportunity to do so, that would not constitute entrapment.

Your inquiry on this issue should first be to determine if there is any evidence that a government agent took the first step that led to a crime charged in the indictment, that he induced that criminal act. I want to stress that the inducement must come from someone who was then working as a government agent. The only such person in this case is the informant Emad Salem. If a defendant was induced by Siddig Ibrahim Siddig Ali, that is not inducement by a government agent. And here inducement means soliciting, proposing, or suggesting that the defendant commit the crime charged. In this connection, you have seen and heard evidence that the government informant, Emad Salem, placed and set up items in the Queens garage also referred to as a safe house, and you saw a separate tape depicting that conduct. You may consider that conduct together with whatever other conduct of Emad Salem you find relevant in determining whether Emad Salem induced a defendant who had contact with those items to participate in criminal activity if you find that such conduct had the purpose of inducing a defendant's participation. However, that conduct by Emad Salem was not admit-

*United States v. Abdel Rahman: Jury Instructions*

ted to suggest that it is improper for a government agent to provide the means for another person to commit a crime, and that conduct by Emad Salem does not in any way diminish any defendant's responsibility for his own conduct if you find beyond a reasonable doubt that the defendant was ready and willing to engage in criminal conduct, as I am about to instruct you. If you find there was no evidence that the defendant in question was induced by a government agent, there can be no entrapment and your inquiry on this defense should end there.

If, on the other hand, you find some evidence that a government agent induced the defendant you are considering to commit the criminal acts charged in the indictment, then you must decide if the government has satisfied its burden to prove beyond a reasonable doubt that the defendant you are considering was ready and willing before the inducement to commit the crime. The defendant need not prove his lack of predisposition; the government must prove such predisposition beyond a reasonable doubt. If you find beyond a reasonable doubt that the defendant was predisposed—that is, ready and willing—to commit the offenses charged in the indictment, and merely was awaiting a favorable opportunity to commit the offenses, then you should find that the defendant was not the victim of entrapment. On the other hand, if you have a reasonable doubt that the defendant would have committed the offense charged without the government agent's inducement, you must acquit the defendant as to whom you make that finding.

With respect to the defense of entrapment, you must consider each defendant and each count charged in the indictment separately. Regardless of whether or not you find that a defendant was entrapped into committing the crime charged in any particular count, you must nevertheless consider whether or not he was entrapped into committing the crimes charged in the other counts. The fact that a defendant was or was not entrapped into committing the conduct charged in one count does not necessarily mean that he was or was not entrapped into committing the conduct charged in other counts. Similarly, the fact that one defendant was or was not entrapped into committing the conduct charged in one count does not necessarily mean that another defendant charged in the same count was or was not entrapped into committing the same conduct charged in the same count.

**Voluntary Intoxication**

There has been evidence introduced by the defendant Victor Alvarez that he used cocaine at times during the course of the events proved at trial. Whether to credit that evidence, and how much weight, if any, to give it, is up to you. I want to say a few things, however, about voluntary intoxication.

Intoxication or being high on cocaine in itself is not a legal defense to a criminal charge. However, intoxication may, under some circumstances, negate the existence of the defendant's intent to commit the crime that the government must prove in order to establish guilt.

If you find that the defendant was intoxicated throughout the entire course of his alleged participation in the crimes charged, you may conclude that the defendant did not have the required intent that I described earlier. However, I remind

*United States v. Abdel Rahman: Jury Instructions*

you that, in this case, Victor Alvarez is charged with three offenses—seditious conspiracy, bombing conspiracy, and attempted bombing—that are charged to have continued over a lengthy period of time, and Mr. Alvarez's participation in those crimes is said to have occurred over a course of several days. If you find that Mr. Alvarez formed the intent required to establish guilt at any time, the fact that he may at times have ingested cocaine, if you find that he did, would not excuse his conduct in any way. Also, even if you believe that the defendant was intoxicated to some degree at some times, you still may conclude that even at those times he was capable of having the required intent.

After considering all of the evidence, if you find that the government has established each of the elements of the offenses beyond a reasonable doubt, then you may find the defendant guilty. On the other hand, if you find the government has failed to meet this burden beyond a reasonable doubt, you must find the defendant not guilty.

I remind you also that Mr. Alvarez, through his attorney, made other arguments to you about his capacity based on the testimony of Dr. Aranda and Mr. Alvarez and certain tapes, and you may give these arguments and that evidence whatever weight you think they deserve.

### Direct and Circumstantial Evidence

There are two types of evidence that you may properly use in reaching your verdict. One type of evidence is direct evidence. One kind of direct evidence is a witness's testimony about something he or she knows by virtue of his or her own senses—something the witness has seen, felt, touched or heard. Direct evidence may also be in the form of an exhibit. The other type of evidence is circumstantial evidence.

Circumstantial evidence is evidence that tends to prove one fact by proof of other facts. There is a simple example of circumstantial evidence that is often used in this courthouse.

Assume that when you came into the courthouse this morning the sun was shining and it was a nice day. Assume that the courtroom blinds are drawn and you cannot look outside.

As you are sitting here, someone walks in with an umbrella that is dripping wet. Somebody else then walks in with a raincoat that is also dripping wet.

Now, you cannot look outside the courtroom and you cannot see whether or not it is raining. So you have no direct evidence of that fact. But on the combination of the facts that I have asked you to assume, it would be reasonable and logical for you to conclude that between the time you arrived at the courthouse and the time these people walked in, it had started to rain.

That is all there is to circumstantial evidence. You infer on the basis of reason and experience and common sense from an established fact the existence or the nonexistence of some other fact.

Many facts, such as a person's state of mind, can only rarely be proved by direct evidence.

Circumstantial evidence is of no less value than direct evidence. It is a general rule that the law makes no distinction between direct and circumstantial evidence, but simply requires that before convicting each defendant you, the jury, must be satisfied of the defendant's guilt beyond a reasonable doubt from all the evidence in the case.

## Credibility of Witnesses

Now for the important subject of evaluating testimony.

How do you evaluate the credibility or believability of the witnesses? The answer is that you use your plain common sense. Common sense is your greatest asset in the fulfillment of your obligation as a juror. You should ask yourselves, did the witness appear to be honest, open, and candid? Or did the witness appear evasive or as though he or she were trying to hide something? How responsive was the witness to the questions asked on direct examination and on cross-examination ?

There are several ways in which you may decide a witness's testimony is not credible. First, the way a witness testifies may persuade you that the witness is being inaccurate or untruthful. Second, you may conclude that the testimony of a witness fails to conform to the facts as indicated by the other evidence you have seen—including the motivation of the witness to receive a benefit, or testimony of other witnesses. Third, you may be persuaded by the evidence you have heard regarding discrepancies between the trial testimony of a witness and something done or said at some earlier time by that witness. You may reach any of these conclusions for any number of reasons, for example, because a witness's recollection is wrong, because a witness did not accurately see or hear what he or she testified about, because a witness was nervous or confused or because he or she didn't express him or herself clearly. Or a witness may be intentionally testifying falsely. If you find that a witness is intentionally telling a falsehood, that is always a matter of importance that you should weigh carefully.

However, few people recall every detail of every event precisely the same way. A witness may be inaccurate, contradictory, or even untruthful in some respects and yet entirely believable and truthful in other respects. It is for you to determine whether such inconsistencies are significant or inconsequential, and whether to accept or reject all or to accept some and reject the balance of the testimony of any witness. You are not required to accept testimony even though the testimony is uncontradicted and the witness's testimony is not challenged. You may decide because of the witness's bearing or demeanor, or because of the inherent improbability of the testimony, or for other reasons sufficient to yourselves, that the testimony is not worthy of belief. On the other hand, you may find, because of a witness's bearing and demeanor and based upon your consideration of all the other evidence in the case, that the witness is truthful.

Similarly, it is for you to decide whether a prior statement was inconsistent and, if so, how much, if any, weight to give to an inconsistent statement or a discrepancy when determining whether to believe all or part of a witness's testimony. However, you may consider such evidence of a witness's prior inconsis-

*United States v. Abdel Rahman: Jury Instructions*

tent statements only insofar as it relates to that witness's credibility. Evidence of a prior inconsistent statement must not be considered by you as affirmative evidence in determining guilt or innocence, except for statements that have been received in evidence. Otherwise, evidence of a prior inconsistent statement was placed before you for the more limited purpose of helping you decide whether, and how much, to believe the trial testimony of the witness who contradicted himself or herself.

Thus, there is no magic formula by which you can evaluate testimony. You bring to this courtroom all your experience and all of the background that you have in your everyday life. You determine for yourself in many circumstances the reliability of statements that are made by others to you and upon which you are asked to rely and act. You may use the same tests here that you use in your everyday life. You may consider the interest of any witness in the outcome of this case and any bias or prejudice of any such witness, and this is true regardless of who called or questioned the witness.

Now, this is certainly not to suggest that any witness with an interest in a case will necessarily testify falsely. It is simply a matter for you to consider as you review the credibility of witnesses.

### Defendants' Testimony

Defendants Clement Hampton-El, Tarig Elhassan, Fadil Abdelgani, and Victor Alvarez have taken the witness stand. The law permits, but does not require, a defendant to testify on his own behalf. Obviously, a defendant has a keen personal interest in the outcome of his prosecution.

In appraising the defendant's credibility, you may take that fact into consideration.

However, I want to say to you with equal force that simply because the defendant has an interest in the outcome of the trial does not mean that he has testified falsely. It is for you to decide to what extent, if at all, the defendant's interest in the outcome of this case has affected or colored his testimony.

### Improper Consideration of Defendant's Right Not to Testify

The other defendants did not testify in this case. Under our Constitution, a defendant has no obligation to testify or to present any other evidence, because it is the government's burden to prove the defendant guilty beyond a reasonable doubt. That burden remains with the government throughout the entire trial and never shifts to the defendant. A defendant is never required to prove that he is not guilty.

You may not attach any significance to the fact that a defendant did not testify. No adverse inference against him may be drawn by you because he did not take the witness stand. You may not consider this in any way in your deliberations in the jury room.

*United States v. Abdel Rahman: Jury Instructions*

## Character Testimony

Defendants Omar Ahmad Ali Abdel Rahman, Clement Hampton-El, and Tarig Elhassan have called witnesses who have given their opinion of the defendants' good character. This testimony is not to be taken by you as each witness's opinion as to whether the defendant on whose behalf he has testified is guilty or not guilty. That question is for you alone to determine. You should, however, consider this character evidence together with all the other facts and all the other evidence in the case in determining whether the defendant is guilty or not guilty of the charges. Evidence of good character may create a reasonable doubt that a person of good character would commit the offenses charged.

Accordingly, if after considering all the evidence, including testimony about the defendant's good character, you find that you have a reasonable doubt, you must acquit him of all the charges.

On the other hand, if after considering all the evidence, including that of the defendant's character, you are satisfied beyond a reasonable doubt that the defendant is guilty, you should not acquit the defendant merely because you believe him to be a person of good character.

## Testimony of Confidential Informant and Accomplice; Prior Perjury

The government has presented to you testimony by Emad Salem, a confidential informant. Informants frequently are used by the government to obtain leads and to gain introduction to persons suspected of violating the law. There are certain types of crimes, where, without the use of informants, detection would be extremely difficult. There is nothing improper or illegal in the government using an informant so long as the use of the informant does not violate a defendant's rights. Whether or not you approve of the use of informants in an effort to detect criminal activity is not to enter into your deliberations.

You have also heard Mohammed Abdo Haggag testify that he had some involvement in the acts charged in the indictment. There has been a great deal said about this so-called accomplice witness in the summations of counsel and whether or not you should believe him.

The government argues, as it is permitted to do, that it must take the witnesses as it finds them. It argues that frequently only people who themselves take part in criminal activity have the knowledge required to show criminal behavior by others.

For those reasons, the law allows the use of confidential informant and accomplice testimony. Indeed, it is the law in federal courts that the testimony of an informant or an accomplice may be enough in itself for conviction, if the jury finds that the testimony establishes guilt beyond a reasonable doubt.

However, it is also the case that informant and accomplice testimony is of such a nature that it must be scrutinized with great care and viewed with particular caution when you decide how much of that testimony to believe.

There has been evidence that Emad Salem, who testified at this trial, lied under oath at another proceeding. I must warn you that the testimony of a witness who has previously lied under oath should be viewed cautiously and weighed

*United States v. Abdel Rahman: Jury Instructions*

with great care. It is, however, for you to decide whether to credit all of such a witness's testimony, none of it, or whatever parts of it you determine to be worthy of belief, after you have considered it in relation to the other evidence in this case.

I have given you some general considerations on credibility, and I will not repeat them all here. Nor will I repeat all of the arguments on both sides. However, let me say a few things that you may want to consider during your deliberations on the subject of informant and accomplice witnesses.

You should ask yourself whether the informant or accomplice would benefit more by lying, or by telling the truth. Was his testimony made up in any way because he believed or hoped that he would somehow receive favorable treatment by testifying falsely? Or did he believe that his interest would be best served by testifying truthfully? If you believe that the witness was motivated by hopes of personal gain, was the motivation one which would cause him to lie, or was it one which would cause him to tell the truth? Did this motivation color his testimony?

You should look at all the evidence in deciding what credence and what weight, if any, you will want to give to the testimony of an informant or an accomplice witness.

## Expert Testimony

You have heard what is called expert testimony from various witnesses who testified about the Arabic language, medicine, psychology, ballistics, explosives, and tape recordings. An expert is allowed to express his opinion on those matters about which he has special knowledge and training. Expert testimony is presented to you on the theory that someone who is experienced in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

In weighing the expert's testimony, you may consider the expert's qualifications, his opinions, his reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believeve a witness's testimony. You may give the expert testimony whatever weight, if any, you find it deserves in light of all the evidence in this case. You should not, however, accept a witness's testimony merely because he is an expert. Nor should you substitute it for your own reason, judgment, and common sense. The determination of the facts in this case rests solely with you.

## Testimony of Law Enforcement Officers

In this case, you have heard also the testimony of law enforcement officers who did not testify as expert witnesses. The fact that a witness may be employed as a law enforcement official does not mean that his testimony is necessarily deserving of more or less consideration or greater or less weight than that of any other witness.

*United States v. Abdel Rahman: Jury Instructions*

**Uncalled Witness Equally Available to Both Sides**

Both the government and the defendants have the same power to subpoena witnesses to testify on their behalf and evidence to be presented on their behalf. Indeed, some defendants did subpoena witnesses and evidence.

If a potential witness could have been called by the government or by a defendant and neither side called him or her, then you may conclude that the testimony of the absent witness might have been unfavorable either to the government or to the defendant, or to both the government and the defendant.

On the other hand, it is equally within your power, if you decide it is reasonable, to draw no inference whatsoever from the failure of either side to call a witness. Also, if the potential witness was unavailable to both the prosecution and the defense, you may simply disregard his or her possible testimony. You should remember that there is no duty on either side to call a witness whose testimony would be merely cumulative of testimony already in evidence.

The inferences you draw or do not draw in this situation, as in others, is entirely up to you, based on your common sense and your experience. However, you should remember that no defendant is obligated to call any witness, and each defendant is presumed to be innocent whether or not he calls any witnesses.

**Persons Not Charged**

If you conclude that other persons may have been involved in criminal acts charged in the indictment, you may not draw any inference, favorable or unfavorable, towards either the defendants or the government, from the fact that those persons are not named as defendants in this indictment or are not present at this trial.

The decision of whether charges shall be brought against persons believed to have committed crimes is a matter to be decided by a United States Attorney and a grand jury, and the fact that a prosecution has not been brought against other persons who may or may not be involved permits no inference against anyone. It must play no part in your deliberations. Guilt is personal. Whether each defendant is guilty or not guilty of the offenses charged must be determined by you solely on the evidence, or the lack of evidence, presented against him.

**Stipulations**

Stipulations have also been entered into by counsel, and have been reported to you, relating to various facts in this case. A stipulation is an agreement between counsel as to what certain facts were or what the testimony would be if certain people testified before you. These stipulations are the same for your purposes as the presentation of evidence or live testimony. You should consider the weight to be given such evidence just as you would any other evidence.

**Punishment**

The question of possible punishment of each defendant is of no concern to the jury and should not, in any sense, enter into or influence your deliberations. The duty of imposing sentence rests exclusively upon the court—that is, upon me.

*United States v. Abdel Rahman: Jury Instructions*

Your function is to weigh the evidence in the case and to determine whether or not each defendant is guilty beyond a reasonable doubt, solely on the basis of such evidence. Under your oath as jurors, you cannot allow a consideration of the punishment that may be imposed upon a defendant, if he is convicted, to influence your verdict in any way, or, in any sense, enter into your deliberations.

**Tape Recordings and Transcripts**

There have been numerous tape recordings and transcripts introduced into evidence, including tape recordings of the defendants. Some of the tape recordings were made without the knowledge of the defendants whose voices were recorded, but with the consent of another participant in the conversations, principally Emad Salem. These have been referred to sometimes as consensually monitored conversations, or CMs. Other recordings of telephone conversations were made without the consent of any party to the call, but with the permission of the court; these have been referred to sometimes as wiretaps or FISAs. There are other recordings of lectures or sermons by Dr. Abdel Rahman that were secured pursuant to search warrants. I instruct you that all of these procedures for gathering evidence are entirely lawful and that the parties are entitled to use such evidence in this case.

There have also been transcripts presented to you and sometimes read in this case. These transcripts fall into two separate categories, and I will instruct you as to how to consider each. The first category consists of transcripts of conversations that were recorded in English. Those transcripts are for your use only as an aid in following the recorded conversation on the tape. In other words, it is the tape of the English conversations that is the evidence, and the transcript is only for your assistance. If in listening to the tape you hear something different from what is on the transcript, it is what you hear on the tape that is the evidence, not what you see on the transcript.

The second category of transcripts is the English translations of conversations that took place in Arabic. Because you do not speak Arabic, it is the English translations on the transcripts that are the evidence. In evaluating these translations, you should consider the credibility and qualifications of the translator witnesses who testified to the accuracy of each of the transcripts, because each of these translations is, in effect, the testimony of the translator witness as to what is on the tape and what the statements on the tape mean in English. You have heard credibility testimony as to some of these transcripts.

Within this second category of transcripts—the English transcripts of conversations in Arabic—you may recall that there are a few exceptions. One is Exhibits 333 and 333T, relating to a meeting on June 4, 1993, among defendant Mohammed Saleh, Siddig Ibrahim Siddig Ali, and Emad Salem at Mr. Saleh's house, as to which Emad Salem testified that certain words in Arabic were present on the tape even though the translator did not put them in the transcript, and you listened to the tape along with Mr. Salem and saw him raise his hand at the point in the tape where he said those words appeared.

*United States v. Abdel Rahman: Jury Instructions*

Let me explain briefly how that came about and what your role is as to this specific issue.

The transcript was prepared with the assistance of interpreters, including a government interpreter who said he did not hear those words on the tape. The witness, Mr. Salem, said he did hear them. Although in other instances, when we deal with foreign language tapes, it is the transcript rather than the tape that is the evidence, in this instance it will be for you to decide whether those words appear on the tape, based on everything you have heard and seen, including the transcript which does not those words in it, the testimony of Mr. Salem who says those words are on the tape, and the tape itself that you heard as Mr. Salem was testifying. So you will be the ones to resolve those issues based on that evidence.

There are other tapes as well that you have been asked to listen to in order to resolve issues about whether certain Arabic words are used. These exhibits include 381B and 381B-T, and Hampton-El Q50. As to these exhibits as well you will resolve whatever issues you may find it necessary to resolve with respect to disputed language.

Finally, I should point out that you have also listened to certain Arabic language tapes, both audio and video, to help you assess the mood, tone, and state of mind of the participants. You may consider that as well.

## Particular Investigative Techniques

You have heard references, in the arguments of defense counsel in this case, to the fact that certain investigative techniques were not used by the government. There is no legal requirement, however, that the government prove its case through any particular means. Although you are to consider carefully the evidence adduced by the government, you are not to speculate about why they used the techniques they did or why they did not use other techniques. Your concern is whether or not, on the evidence or lack of evidence, each defendant's guilt has been proved beyond a reasonable doubt.

## Right to See Exhibits and Hear Testimony; Communications with Court

You are about to go into the jury room and begin your deliberations. Each of you has a copy of this charge, and the documentary exhibits will be sent to you in the jury room. If you wish to examine other evidence, including the audio- and videotapes, you may do so in the courtroom.

If you want any of the testimony during your deliberations, that can also be done. But please remember that although we have a transcript available, the lawyers must agree on the proper segments that may be called for. If they do not agree, I must resolve any disagreement. That can be and usually is a lengthy and cumbersome process. So please remember that it is not always easy to locate what you might want, and be as specific as you possibly can in requesting exhibits or portions of testimony that you may want, if in fact you do want any.

Any request for testimony—in fact any communication with the court— should be made to me in writing, signed by your foreperson, and given to one of

the marshals. I will respond to any questions or requests you have as promptly as possible either in writing or by having you return to the courtroom so I can speak with you in person. In any event, do not, in any note or otherwise, tell me or anyone else how you or any group of you have voted or propose to vote on any issue until a unanimous verdict is reached. In other words, do not tell me or anyone else what your numerical division is—how many think one way and how many think another—if you are divided at any point on how to decide the case.

### Submitting the Indictment and Charge

I also am sending a copy of the indictment into the jury room for you to have during your deliberations. You will use it to read the crimes allegedly committed by the defendants. You are reminded, however, that an indictment is merely an accusation and is not to be used by you as any proof of the conduct charged.

As I said before, each of you has a copy of my charge. You have received also a verdict form on which to record your verdict. Please do not draw any conclusions from the verdict form or any question on it. That form is intended only to record your verdict and is not part of my charge.

### Duty To Consult and Need for Unanimity

The government has the obligation to prove the essential elements beyond a reasonable doubt, as already explained in these instructions. If it succeeds, your verdict should be guilty; if it fails, it should be not guilty.

To report a verdict, it must be unanimous. Your verdict must represent the considered judgment of each juror; whether your verdict is guilty or not guilty, it must be unanimous.

Your function is to weigh the evidence in the case and determine whether or not each defendant is guilty, solely upon the basis of such evidence.

Each juror is entitled to his or her opinion; each should, however, exchange views with his or her fellow jurors. That is the very purpose of jury deliberation—to discuss and consider the evidence, to listen to the arguments of fellow jurors, to present your individual views, to consult with one another, and to reach an agreement based solely and entirely on the evidence—if you can do so without violence to your own individual judgment.

Each of you must decide the case for yourself after consideration, with your fellow jurors, of the evidence in the case.

But you should not hesitate to change an opinion that, after discussion with your fellow jurors, appears incorrect.

However, if, after carefully considering the evidence and the arguments of your fellow jurors, you hold a conscientious view that differs from the others, you are not to change your position simply because you are outnumbered.

Your final vote must reflect your conscientious belief as to how the issues should be decided.

*United States v. Abdel Rahman: Jury Instructions*

**Conclusion: Charge as a Whole, Duty to Consult, Selection of a Foreperson**

Now I have virtually finished with this charge and my instructions to you, and I thank you again for your patience and attentiveness. Again, please remember that no single part of this charge is to be considered in isolation. You are not to consider any one aspect of this charge out of context. The entire charge is to be considered as an integrated statement and to be taken together.

Now I say this not because I think it is necessary but because it is the tradition of this Court. I advise the jurors to be polite and respectful to each other as I am sure you will be in the course of your deliberations so that each juror may have his or her position made clear to all the others.

When you get into the jury room, before you begin your deliberations, you should select someone to be the foreperson. The foreperson has no greater authority than any other juror but will be responsible for signing all communications to the Court and for handing them to the Marshal during deliberations. Thereafter, the manner in which you conduct your deliberations, of course, is completely within your discretion. You may follow any procedure that you choose, provided that each juror is presented with ample opportunity to express his or her view. That way, when you do reach a verdict you will know that it is a just one, made with the full participation of all the jurors and that you have faithfully discharged your oath. I remind you once again that your oath is without fear or favor and that you must decide the issues on trial based solely on the evidence and my instructions on the law.

Thank you.

Now I will ask you to remain in the jury box for a few moments but not to discuss the case yet, while I confer with counsel at the side bar. I will come back to you for any final word, and then you will be able to begin your deliberations.

# Verdict Form

Please note that the answers to all questions on this form, and all verdicts on this form, must be unanimous.

*I. Count One: Seditious Conspiracy*

    A.  Do you find that the government has proved beyond a reasonable doubt the existence of the conspiracy charged in Count One?

No _____        Yes _____

    If your answer is "No," you must enter a verdict of Not Guilty as to Count One for each defendant listed in C below.

    If your answer is "Yes," answer parts B and C below.

*United States v. Abdel Rahman: Jury Instructions*

B.  Did the conspiracy charged in Count One include one or both of the following goals?

    1.  To wage a war of urban terrorism against the United States?

        No _____        Yes _____

    2.  To oppose by force the authority of the United States?

        No _____        Yes _____

C.  Verdict as to each Defendant:

    1.  Omar Ahmad Ali Abdel Rahman

        Not Guilty _____        Guilty _____

    2.  El Sayyid Nosair

        Not Guilty _____        Guilty _____

    3.  Ibrahim A. el-Gabrowny

        Not Guilty _____        Guilty _____

    4.  Clement Hampton-El

        Not Guilty _____        Guilty _____

    5.  Amir Abdelgani

        Not Guilty _____        Guilty _____

    6.  Fares Khallafalla

        Not Guilty _____        Guilty _____

    7.  Tarig Elhassan

        Not Guilty _____        Guilty _____

    8.  Fadil Abdelgani

        Not Guilty _____        Guilty _____

    9.  Mohammed Saleh

        Not Guilty _____        Guilty _____

    10. Victor Alvarez

        Not Guilty _____        Guilty _____

*II. Count Two: Solicitation to Murder Egyptian President Hosni Mubarak*

    Omar Ahmad Ali Abdel Rahman

        Not Guilty _____        Guilty _____

*United States v. Abdel Rahman: Jury Instructions*

### III. Count Three: Conspiracy to Murder Egyptian President Hosni Mubarak

Omar Ahmad Ali Abdel Rahman

Not Guilty _____          Guilty _____

### IV. Count Four: Solicitation to Attack Military Installation

Omar Ahmad Ali Abdel Rahman

Not Guilty _____          Guilty _____

### V. Count Five: Bombing Conspiracy

A. Do you find that the government has proved beyond a reasonable doubt the existence of the conspiracy charged in Count Five?

No _____          Yes _____

If your answer is "No," you must enter a verdict of Not Guilty as to Count Five for each defendant listed in C below.

If your answer is "No," you must enter also a verdict of Not Guilty as to Count Fifteen.

If your answer is "Yes," answer parts B and C below.

B. Did the conspiracy charged in Count Five include one or both of the following goals:

1. To damage and destroy by fire and explosives, buildings, vehicles, and real estate used in interstate or foreign commerce or in activities affecting interstate or foreign commerce?

No _____          Yes _____

2. To transport and ship in interstate commerce explosive materials without being licensed to do so?

No _____          Yes _____

C. Verdict as to each Defendant:

1. Omar Ahmad Ali Abdel Rahman

Not Guilty _____          Guilty _____

2. El Sayyid Nosair

Not Guilty _____          Guilty _____

3. Ibrahim A. el-Gabrowny

Not Guilty _____          Guilty _____

4. Clement Hampton-El

Not Guilty _____          Guilty _____

*United States v. Abdel Rahman: Jury Instructions*

5.  Amir Abdelgani

Not Guilty _____          Guilty _____

6.  Fares Khallafalla

Not Guilty _____          Guilty _____

7.  Tarig Elhassan

Not Guilty _____          Guilty _____

8.  Fadil Abdelgani

Not Guilty _____          Guilty _____

9.  Mohammed Saleh

Not Guilty _____          Guilty _____

10. Victor Alvarez

Not Guilty _____          Guilty _____

*Note:* If your verdict here as to Victor Alvarez is "Not Guilty," your verdict as to Count Sixteen must be "Not Guilty."

## VI. Count Six: Attempted Bombing

1.  Clement Hampton-El

Not Guilty _____          Guilty _____

2.  Amir Abdelgani

Not Guilty _____          Guilty _____

3.  Fares Khallafalla

Not Guilty _____          Guilty _____

4.  Tarig Elhassan

Not Guilty _____          Guilty _____

5.  Fadil Abdelgani

Not Guilty _____          Guilty _____

6.  Mohammed Saleh

Not Guilty _____          Guilty _____

7.  Victor Alvarez

Not Guilty _____          Guilty _____

*United States v. Abdel Rahman: Jury Instructions*

### VII. Count Seven: Murder of Meir Kahane

El Sayyid Nosair

Not Guilty _____          Guilty _____

*Note:* If your verdict here is "Not Guilty," your verdict as to Count Eleven must be "Not Guilty."

### VIII. Count Eight: Assault of Irving Franklin

El Sayyid Nosair

Not Guilty _____          Guilty _____

*Note:* If your verdict here is "Not Guilty," your verdict as to Count Twelve must be "Not Guilty."

### IX. Count Nine: Attempted Murder and Assault of Carlos Acosta

A.  Attempted Murder of Carlos Acosta

El Sayyid Nosair

Not Guilty _____          Guilty _____

B.  Assault of Carlos Acosta

El Sayyid Nosair

Not Guilty _____          Guilty _____

### X. Count Ten: Attempted Murder of Postal Police Officer Carlos Acosta

El Sayyid Nosair

Not Guilty _____          Guilty _____

*Note:* If your verdict here is "Not Guilty," your verdict as to Count Thirteen must be "Not Guilty."

### XI. Count Eleven: Use of Firearm Against Meir Kahane

El Sayyid Nosair

Not Guilty _____          Guilty _____

### XII. Count Twelve: Use of Firearm Against Irving Franklin

El Sayyid Nosair

Not Guilty _____          Guilty _____

### XIII. Count Thirteen: Use of Firearm Against Carlos Acosta

El Sayyid Nosair

Not Guilty _____          Guilty _____

*United States v. Abdel Rahman: Jury Instructions*

*XIV. Count Fourteen: Possession of Firearm*
El Sayyid Nosair

Not Guilty _____        Guilty _____

*XV. Count Fifteen: Interstate Transportation of Firearm*
Victor Alvarez

Not Guilty _____        Guilty _____

*XVI. Count Sixteen: Using and Carrying a Firearm*
Victor Alvarez

Not Guilty _____        Guilty _____

*XX. Count Twenty: Assault of Agent Michael Burke*
Ibrahim A. el-Gabrowny

Not Guilty _____        Guilty _____

*XXI. Count Twenty-One: Assault of Special Deputy United States Marshal Thomas Corrigan*
Ibrahim A. el-Gabrowny

Not Guilty _____        Guilty _____

*XXII. Count Twenty-Two: Resistance During Execution of Search Warrant*
Ibrahim A. el-Gabrowny

Not Guilty _____        Guilty _____

*XXIII. Count Twenty-Three: Possession of False Identification Documents*
Ibrahim A. el-Gabrowny

Not Guilty _____        Guilty _____

*XXIV–XXVIII. Counts Twenty-Four Through Twenty–Eight: Possession of False Passports*
Count 24: Ibrahim A. el-Gabrowny

Not Guilty _____        Guilty _____

Count 25: Ibrahim A. el-Gabrowny

Not Guilty _____        Guilty _____

Count 26: Ibrahim A. el-Gabrowny

Not Guilty _____        Guilty _____

*United States v. Abdel Rahman: Jury Instructions*

Count 27: Ibrahim A. el-Gabrowny

Not Guilty _____        Guilty _____

Count 28: Ibrahim A. el-Gabrowny

Not Guilty _____        Guilty _____

## Post-Verdict Remarks

Ladies and gentlemen, the last thing I want to do now is to delay your departure from here. You have earned the right to do the one thing you have not been able to do for these last eight or nine months, and that is to resume leading a normal private life. But I think it would be appropriate to say a few words to you in the courtroom, and I promise that I will hold it to a few, at least compared to the jury instructions.

I told you many times during those instructions that the verdict in this case was your concern, not mine, so I should not say anything about the content of your verdict, and I won't. These comments have nothing to do with the result; they were written before the result was announced. But the way you went about reaching a result, and dealing with your responsibilities in this case, deserves recognition. It deserves recognition at least in part because you were selected without your names being known. The lawyers who handled this case, the witnesses who testified, even the judge who presided, have had whatever satisfaction may come to people from having their names mentioned and publicly associated with this case. As jurors who have served anonymously, you have not had that satisfaction, and assuming that you decide to preserve that anonymity, you will not have it.

But you will have a satisfaction of a kind and to a degree that no amount of explicit public recognition can confer. Like other citizens who have served on other juries, you were asked to put your private lives on hold to do jury service—and perform possibly the most important public duty anyone can be called on to perform in a democracy—to decide a dispute between your government and your fellow human beings. The conditions under which you were asked to do that were as difficult as any, and possibly more difficult than any that have been faced by any jury, not only in the history of this courthouse but in the history of this country. You have worked for more than eight months under both tight security and the close scrutiny of a good part of the world.

Under those conditions you took an oath to decide a long and difficult case on the law and the evidence—and nothing else—and then you proceeded to live up to that oath, day in and day out, over these many months. You followed the testimony and the other evidence, including the lengthy tape transcripts, closely, whether or not they were fascinating, because you recognized that important does not always mean fascinating. You followed the several hours of my instructions on the law the same way, and for the same reason.

And then you deliberated—diligently. In fact, at one point you dismayed these lawyers with your diligence, asking to take your notebooks back to your hotel so that you could prepare over a two-day break for the next day of delibera-

*United States v. Abdel Rahman: Jury Instructions*

tions. I still think we should have let you do that, but in spite of that obstacle and others, you continued and did what you swore to do—render a true verdict, according to the law and the evidence.

You did all of that at great personal sacrifice, some of which I know about, some of which I can only guess at, some of which I am sure I will never know or even be able to imagine—involving not only missing work and missing personal appointments, but also your own illnesses and illness and even death in your own families, and throughout you continued to be faithful to the oath you took on the first day of this trial.

In doing all of that, you did something else that I think a great many of your fellow citizens will be grateful for completely without regard for the result you reached in this case. You showed that we still have in this city and in this country something called civic virtue—that all it takes is a need and a call for it, and citizens are willing to respond.

For having done that, you are not so much an anonymous jury as you are a universal jury—you have proved in the best way possible, which is by example, the genius not only of the jury system but also of the democratic system. You represent the very best of both. The deep satisfaction and the quiet pride that come to a person from doing that is something that very few people are privileged to know.

There was a great judge of this court—some people think the greatest judge ever to sit on this court, and perhaps the greatest trial judge of his time—a man named Edward Weinfeld, who used to tell jurors that he would not thank them for their jury service because jury service is a public duty and you are not supposed to thank people for doing their duty. Besides, he would say, the feeling that you have after fulfilling your duty is something that would make any thanks from a judge seem insignificant. I never fully understood what he meant until now. For fulfilling your duty in the way that you did, you are to be admired. For that feeling that is now yours, and yours alone, you are to be envied. Please know that I both admire and envy you.

I will speak with you a bit more in the jury room in a few minutes. Your jury service is now completed, and you are discharged. You may go with the marshal to the jury room.