UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| v. | ) Case No. 1:21-cr-175-TJK |
| ETHAN NORDEAN, et al., | ) |
| Defendants. | ) |

**DEFENDANT NORDEAN'S MOTION *IN LIMINE* TO EXCLUDE THE GOVERNMENT'S PROPOSED EXPERT WITNESS TESTIMONY OF OREN SEGAL**

Defendant Nordean, through his counsel, moves the Court to exclude from trial the testimony of Oren Segal, an expert witness proposed by the government. By artfully characterizing Segal as a "rebuttal" expert, the government attempts to avoid Rule 16's requirement that it disclose to the defense in advance of trial a summary of Segal's proposed testimony. In any case, assuming it concerns "extremism expertise," Segal's testimony should be excluded because (i) he does not possess "scientific, technical or other specialized knowledge" in that "field"; (ii) an opinion on extremism will not help the trier of fact determine a fact in issue; (iii) the testimony would not be based on sufficient facts or data; (iv) the testimony would not be the product of reliable principles and methods; and (v) Segal would not reliably apply any principles and methods to the facts of this case. Fed. R. Evid. 702. Nordean moves for a pretrial *Daubert* hearing with voir dire of the proposed expert.

**The government's expert disclosure**

On September 30, the government served a letter on the defense notifying them that it would attempt to offer the expert testimony of Oren Segal, Vice President, Center for Extremism

1

at the Anti-Defamation League (ADL). The notice did not provide a summary of the proposed testimony. Instead, it provided the following information alone about Segal: "Mr. Segal will offer testimony regarding the Proud Boys organization."

On October 7, the government provided a follow-up notice explaining that "the government does not intend to call Oren Segal in its case-in-chief. If the government calls Mr. Segal, it will be in rebuttal." The government did not explain what subject matter in the defense case would prompt a rebuttal from Segal, as it is almost certainly characterizing the witness that way to avoid the requirement that it disclose in advance of trial a summary of the testimony of any expert the government intends to use in its case-in-chief. Fed. R. Crim. P. 16(a)(1)(G). It attached two transcripts of proceedings where Segal's expert testimony was offered, on what appears to be the subject of extremism generally: *People v. Kinsman, et. al.* (Aug. 1, 2019) in New York State Court and in *United States v. Hunt* (Apr. 23, 2021) in the District Court for the Eastern District of New York. The government did not produce a CV for Segal.

Segal appears to have first offered expert testimony in *People v. Kinsman*. Exh. 1. He is not an academic. Rather, he has worked for the Anti-Defamation League for 20 years and is now the director of ADL's Center on Extremism. *Id.*, p. 64. Segal is an English major from Wheaten College in Massachusetts. *Id.*, p. 65. The Center on Extremism focuses on "tracking and monitoring the extremist movement across the political spectrum." *Id.* Segal's "group of analysts and investigators, and experts, are spending time looking at the way those are inspired by ISIS and Al Qaeda, that want to engage in violence. We look at white supremacy, the far left extremism movement, anybody engaging in violence, or whose ideology is predicated on forms

2

of hate." *Id.* Testified Segal: "I also, you know, investigate and try to educate myself about as much of the extremist activities and their tactics, as possible." *Id.*

Segal has not been published in an academic journal or other scholarly publication. He appears not to have been peer reviewed. He has "written multiple op-eds on the subject of extremism over time and I also oversee the actual production, providing editorial guidance to many of the products that we produce." Exh. 1, p. 67. Segal does not appear to articulate any rubric of principles and methods that guides the formation of his opinions on extremism. *Id.* He does not appear to reveal how his organization gathers and ensures the reliability of data on "extremist activities," whether it uses statistical hypothesis testing, on what bases or whether he makes predictions about extremist activities and groups, or whether his opinions are falsifiable.

I.   **Standard for admissibility of expert testimony**

Rule 702 of the Federal Rules of Evidence provides that "a witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

As for the "sufficient facts or data," upon which the expert's opinion must rest, anecdotal case studies are insufficient. *See*, *e.g.*, *Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 527 (6th Cir. 2012) ("Red flags that caution against certifying an expert include reliance on

3

anecdotal evidence, improper extrapolation, failure to consider other possible causes, lack of testing, and subjectivity."); *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1312 (11th Cir. 1999) (expert testimony should not be based solely on temporal proximity and anecdotal evidence); *United States vs. Ira Stockton*, et al., 13-cr-571, 2016 U.S. Dist. LEXIS 186465, *7 (D.N.M. May 2, 2016) (expert lacks sufficient facts and data where he relied on "anecdotal case studies").

To determine the reliability of the expert's methods, the court should consider testing, peer review, error rates, and acceptability in the relevant expert community. *Daubert v. Merrell Dow Pharms, Inc.*, 509 U.S. 579, 593-94 (1993); *United States v. McLean*, 695 Fed. App. 681, 684 (4th Cir. 2017) (same). Another elementary Rule 702 reliable methodology factor is falsifiability: whether a theory can be proven false, or conversely, whether it is too subjective/value-laden to be disproved. *See*, *e.g.*, *United States v. Wilson*, 484 F. 3d 267, 274 (4th Cir. 2007). Similarly, Rule 703 requires an expert to base his or her opinion on "facts or data," not "subjective impressions." *Brown v. Burlington Northern Santa Fe Ry.*, 765 F.3d 765, 772 (7th Cir. 2014).

A reliable expert method must account for, to the court's satisfaction, causes that might explain the subject phenomena apart from the expert's thesis. *See*, *e.g.*, *Bickerstaff v. Vassar College*, 196 F.3d 435, 450 (2d Cir. 1999) (holding that assumption that race bias tainted professor's course evaluation scores is untenable without attempting to control for other causes for low score); *Smith v. Xerox Corp.*, 196 F.3d 358, 370-71 (2d Cir. 1999) (holding that plaintiff's statistical analysis failed on its own to support an inference of discriminatory treatment sufficient to withstand a summary judgment motion because the analysis did not account for any other causes or for the fact that older workers were more likely to be terminated); *Hollander v. Am. Cyanamid Co.*, 172 F.3d 192, 203 (2d Cir. 1999) (holding that expert report is inadmissible

because its "inference of [age] discrimination solely on the basis of the raw numbers is impermissible in the absence of any attempt to account for other causes of the . . . anomaly"); *Raskin v. Wyatt Co.*, 125 F.3d 55, 67-68 (2d Cir. 1997) (holding that expert report was inadmissible in part because it "assume[d] any anomalies in the . . . data must be caused by age discrimination, and [made] no attempt to account for other possible causes").

Finally, although an expert witness may in certain circumstances rely on hearsay evidence as "data," the witness may not be used as a "conduit" to admit otherwise inadmissible hearsay. *See*, *e.g.*, *Gilmore v. Palestinian Interim Self-Government Auth.*, 53 F. Supp. 3d 191, 212 (D.D.C. 2014); *United States v. Mejia*, 545 F.3d 179, 197 (2d Cir. 2008) (Although an expert is entitled to rely on inadmissible evidence in forming his or her opinion, the expert "must form his [or her] own opinions by applying his [or her] extensive experience and a reliable methodology to the inadmissible materials"); *Estate of Parsons v. Palestinian Auth.*, 715 F. Supp. 2d 27, 33 (D.D.C. 2010) ("Expert opinions may be based on hearsay, but they may not be a conduit for the introduction of factual assertions that are not based on personal knowledge."); *Strauss v. Credit Lyonnais, S.A.*, 925 F. Supp. 2d 414, 445 (E.D.N.Y. 2013) (expert "testimony cannot be used as an excuse to introduce and summarize straightforward factual evidence that has not been admitted, such as a webpage that says 'Hamas carried out a suicide bombing'").

**II.     Segal does not possess "scientific, technical or other specialized knowledge" in the "field" of "extremism"**

To be certifiable, an expert must possess "scientific, technical or other specialized knowledge," which will help the trier of fact understand the evidence or determine a fact in issue. Fed. R. Evid. 702(a).  Segal lacks those attributes on the subject of general extremism and/or Proud Boys extremism.

Segal appears to have no peer-reviewed publications on general extremism or Proud Boys extremism. To the contrary, his writings appear limited to newspaper opinion pieces. He does not appear to have received any technical training in, or earned advanced degrees studying, those areas. His formal education appears to have focused on the study of English literature. While it appears that he has qualified before as an expert witness on extremism, that seems to be limited to two cases, one of which was in state court. Counsel has been unable to locate the courts' reasoning in certifying Segal. It is almost certainly unpersuasive.

Qualifications aside, specialized knowledge about extremism will not help the trier of fact determine any fact in issue in this case. The Court should decline to certify Segal on these facts alone. *Newell Rubbermaid*, 676 F.3d at 527; *McGhan Med. Corp.*, 184 F.3d at 1312.

**III.    Segal appears to rely on anecdotal evidence, not data**

Segal appears to base his opinions and theories on anecdotal evidence. His "14 investigators and analysts . . . look at white supremacy, the far left extremism movement, anybody engaging in violence, or whose ideology is predicated on forms of hate." Exh. 1, p. 66. Segal himself "also, you know, investigate[s] and tr[ies] to educate [him]self about as much of the extremist activities and their tactics, as possible." *Id.*

Even if Segal possesses "scientific, technical or other specialized knowledge," his opinions do not appear to be formed based on a review of sufficient data. His extremism opinion, whatever it may be, should be excluded for that reason alone. *Newell Rubbermaid*, 676 F.3d at 527; *McGhan Med. Corp.*, 184 F.3d at 1312; *Ira Stockton, et al.*, 2016 U.S. Dist. LEXIS 186465, *7.

IV. **Segal does not appear to make use of principles and methods, much less reliable ones**

The government has not provided any summary of Segal's proposed testimony, characterizing him as a mere "rebuttal" expert to avoid that requirement. Nevertheless, judging from his testimony in the *Kinsman* case, he does not appear to make use of principles and methods in arriving at his opinions on extremism. Instead, his team "spend[s] time looking at the way [people] are inspired by" terrorism groups. Exh. 1, p. 66. They are "interested in learning more and frankly mitigating those threats." *Id.* To be sure, Segal may have formed opinions, perhaps even ones with predictive power, based on this kind of anecdotal study. But this is not the stuff of testing, peer review, error rates, and acceptability in the relevant expert community. *Daubert*, 509 U.S. at 593-94; *McLean*, 695 Fed. App. at 684. Segal does not reveal how his organization gathers and ensures the reliability of data on "extremist activities," whether it uses statistical hypothesis testing, on what bases or whether he makes predictions about extremist activities and groups, or whether his opinions are falsifiable.

Segal's is the process of forming opinions based on hunches and "subjective impressions." *Burlington Northern Santa Fe Ry.*, 765 F.3d at 772. His opinions rest on more than politics, yet not on scientific or technical knowledge. For this reason too, Segal's testimony must be rejected.

V. **Segal's methods and principles, such as they are, would not be reliably applied here; the witness would serve as a conduit for prejudicial hearsay**

Even if Segal's methods and principles were reliable, they would still not be reliably applied to this case. Fed. R. Evid. 702(d). Much more likely, his testimony would serve as a way for the government to launder prejudicial hearsay into evidence.

The terrorism expert—essentially the same type as Segal—allows the government to convert otherwise inadmissible, highly inflammatory material into trial testimony in the following way.  Suppose a search of the defendant's home reveals a copy of *The Turner Diaries*, a piece of white supremacist literature.  The defendant is not charged with a hate crime—perhaps with a crime of terrorism—the key point here is the government is itching to show the jury *The Turner Diaries*.  This is where the terrorism expert comes in.  He has never published in a technical journal and is not an academic.  But he does work for a think tank or some nongovernmental organization.  His focus is terrorism or extremism.  Not terrorism or extremism studied within a particular subgroup or timeframe or as a part of a larger political movement, as a historian might do.  Just terrorism and extremism per se.  The thing-in-itself.  Call him for an Al-Qaeda case or an Irish Republican Army car bombing.  The government says to the terrorism expert, Do you perhaps have a theory that Crime of Terrorism A is not unlike white supremacism or that white supremacist extremists do the same things as this defendant? It turns out the expert does have such a theory.  He made that connection once in an op-ed piece in the Wall Street Journal.  And after he's described to the jury by a judge as a terrorism/extremism expert, the op-ed theory does some work for the government.

But the terrorism expert's real value to the government lies in his walk through the "data" with the jury.  Without the expert, the government might have only gotten *The Turner Diaries* into evidence and that was pushing it.  But now the expert's testifying about how he formulated his Journal op-ed theory and it's KKK images, and swastika symbols, and he once read through this racism treatise where he came across this horrible picture of a lynching from the 1950s.  It's up on the ELMO.  The jury is instructed that none of these horribly inflammatory items is to be considered as "evidence."  It's just the expert's "data."

The Court should not permit this tired abuse of the expert witness rule in criminal cases that are politically charged.

**Conclusion**

For the foregoing reasons, the Court should exclude the expert testimony of Oren Segal.

Dated: October 14, 2022                            Respectfully submitted,

*/s/ David B. Smith*
David B. Smith (D.C. Bar No. 403068)
108 N. Alfred St.
Alexandria, VA 22314
Phone:(703)548-8911
Fax:(703)548-8935
dbs@davidbsmithpllc.com

Nicholas D. Smith (D.C. Bar No. 1029802)
1123 Broadway, Suite 909
New York, NY 10010
Phone: (917) 902-3869
nds@davidbsmithpllc.com

*Attorneys for Ethan Nordean*

**Certificate of Service**

I hereby certify that on the 14th day of October, 2022, I filed the foregoing motion with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following CM/ECF user(s):

>Connor Mulroe
>Assistant United States Attorney
>555 4th Street, N.W., Room 4408
>Washington, D.C. 20530

And I hereby certify that I have mailed the document by United States mail, first class postage prepaid, to the following non-CM/ECF participant(s), addressed as follows: [none].

>/s/ David B. Smith
>David B. Smith, VA Bar No. 25930
>David B. Smith, PLLC
>108 North Alfred Street, 1st FL
>Alexandria, Virginia 22314
>(703) 548-8911 / Fax (703) 548-8935
>dbs@davidbsmithpllc.com