**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | **CASE NO. 21-cr-175-1, 2, 3, 5 (TJK)** |
| **v.** | **:** | |
| | **:** | |
| **ETHAN NORDEAN,** | **:** | |
| | **:** | |
| **JOSEPH BIGGS,** | **:** | |
| | **:** | |
| **ZACHARY REHL,** | **:** | |
| | **:** | |
| **and** | **:** | |
| | **:** | |
| **ENRIQUE TARRIO,** | **:** | |
| | **:** | |
| **Defendants.** | **:** | |

**GOVERNMENT'S RESPONSE TO BIGGS'**
**SUPPLEMENT TO TARRIO'S MOTION TO TRANSFER VENUE**
**AND TARRIO'S MOTION TO CALL POLLSTER AS A WITNESS**

Defendant Biggs has filed a supplement to Tarrio's pending motion to transfer venue from the District of Columbia to the Southern District of Florida. That supplement consists mainly of a new juror poll, commissioned by the defendants in this case and carried out by In Lux Research (ILR), the same firm that conducted a previous poll cited in defendant Tarrio's original motion. *See* ECF Nos. 349, 477. The previous ILR poll cited by the defendants did not establish presumptive prejudice requiring a pre-voir dire transfer out of the District of Columbia. *See United States v. Rhodes*, *et. al.*, No. 22-cr-15 (APM), Doc. 176 at 42; *United States v. Garcia*, 2022 WL 2904352 (D.D.C. 2022) (Berman Jackson, J.); *see generally also* Gov't Opp'n to Defendant's Motion to Transfer Venue, ECF No. 376 at 13-22. This new poll fares no better.

**PROCEDURAL HISTORY**

Defendant Tarrio filed his motion to transfer venue on May 2, 2022, followed by a "notice of support," attaching additional polling, on May 3, 2022. ECF Nos. 349, 351. Tarrio cited a poll conducted by ILR ("first ILR Poll") in connection with a different case arising out of the events of January 6, 2021. The government filed an opposition on June 2, 2022. ECF No. 376. On June 9, 2022, Rehl and Biggs both moved to join Tarrio's motion, and Tarrio filed a reply in support of his original motion. ECF Nos. 384, 386, 389. The Court granted those motions by Minute Orders dated June 10, 2022. The government filed a response to Biggs' and Rehl's supplemental filings on June 21, 2022. ECF No. 413. Nordean moved to join Tarrio's motion on September 30, 2022, ECF No. 471, and the Court granted that motion by Minute Order dated October 4, 2022. Defendant Biggs filed the instant supplement on October 10, 2022, which included a poll conducted by ILR ("second ILR Poll") at the behest of these defendants.[1] ECF No. 477. On October 14, 2022, Tarrio filed a motion to call the pollster as a witness at an unspecified hearing. ECF No. 484. The government's response to Biggs' supplement and Tarrio's motion to call the pollster as a witness is below.

**ARGUMENT**

I.    Voir Dire Will Adequately Safeguard The Defendants' Rights to a Fair Trial

The second ILR Poll moves the defendants no closer to overcoming the strong preference in the federal criminal justice system for screening potential juror bias through voir dire. The government has made that point in prior filings and it will not belabor it here. However, it bears

---

[1]    Biggs' supplement states that he submits "on behalf of all five defendants," the second ILR Poll, and that Tarrio's motion was joined by all five defendants. ECF No. 477 at 1. The docket does not reflect Pezzola as having moved to join Tarrio's motion. If Pezzola does in fact join, the government requests that this response apply to him as well.

repeating that the D.C. Circuit has opined that the District Court was "correct" to deny the defendants' "pre-voir dire requests for . . . a change of venue," *United States v. Haldeman*, 559 F.2d 31, 63-64 (D.C. Cir. 1976), even in a case where pre-trial polling found that 93% of the D.C. population knew of the charges against the defendants and 61% had formed the opinion that they were guilty. *Id.* at 144, 178 n.2 (MacKinnon, J., concurring in part and dissenting in part).

Other Circuits are in accord with the D.C. Circuit's preference for voir dire over polling. In *United States v. Rodriguez*, 581 F.3d 775 (8th Cir. 2009), a poll indicated that 99 percent of respondents had heard about the brutal rape and murder with which the defendant was charged, nearly 88 percent of those respondents believed he was guilty, and about 42 percent of respondents had a strongly held opinion of his guilt. *Id.* at 786; Brief for Appellant, *United States v. Rodriguez*, No. 07-1316 (8th Cir.), 2008 WL 194877, at *19. Nonetheless, the Eighth Circuit found no presumption of prejudice, observing that a district court was not required "to consider public opinion polls when ruling on change-of-venue motions." *Rodriguez*, 581 F.3d at 786. In upholding the District Court's decision not to transfer venue out of Boston in the trial arising out of the Boston Marathon bombing, the First Circuit noted that the Supreme Court's emphasis on the important role of voir dire in addressing pretrial publicity "undercuts" the "argument that poll percentages . . . decide the question of a presumption of prejudice." *In re Tsarnaev*, 780 F.3d 14, 23 (1st Cir. 2015) (per curiam).

Moreover, the voir dire in January 6th cases that have gone to trial so far has not borne out the fears envisioned by the defendants in reliance on polls like the ILR Polls. *United States v. Rhodes*, *et. al.*, the only other case which has to date resulted in seditious conspiracy charges arising out of January 6th, is currently in trial, and Judge Mehta issued a jury questionnaire prior to conducting voir dire. That questionnaire addressed many of the issues raised by these

defendants, including the House Select Committee hearings and the prospective jurors' exposure to information about the events of January 6, 2021.  The responses Judge Mehta received did not bear out the picture of bias painted by the ILR Polls.  *See generally United States v. Rhodes, et. al.*, No. 22-cr-15 (APM) (Sept. 27, 2022, Hr'g Tr., morning session, at 14-23).[2]  The table below summarizes the percent of prospective jurors who gave an affirmative or negative response in response to select questions from the questionnaire used in that case.[3]

| Question | Percent Affirmative | Percent Negative |
|---|---|---|
| 11. Anything that would affect ability to be fair and impartial? | 21% | 89% |
| 22. Concern for safety of yourself or a friend on January 6? | 37% | 63% |
| 44. Attend, View, or Listen to House Select Committee Hearings? | 55% | 45% |
| 45. Strong Opinion about January 6th that would affect ability to be fair? | 30% | 70% |
| 46. Heard of Oath Keepers? | 59% | 41% |
| 47. Heard anything about Oath Keepers that would affect ability to be fair and impartial? | 24% | 76% |
| 48. Heard of defendants on trial? | 12% | 88% |
| 49. Anything that would affect ability to be fair and impartial as to defendants on trial? | 5% | 95% |

*See id.* at 15-19.  As Judge Mehta noted, these numbers show that 45 percent of the venire in that case did not even *watch* the Select Committee hearings, let alone have strong feelings on them; 70 percent said they did not have such strong feelings about January 6th that they could not be fair

---

[2]      A copy of relevant portions of that transcript is attached hereto as Exhibit 1.

[3]      The "question" section of the table is a shorthand version of the full questions asked, which are attached hereto for the Court's convenience as Exhibit 2.  The numbers in the "question" section of the table correspond with the numbers of the questions from in Exhibit 2.  The government agrees with Judge Mehta that not all of these questions go directly to bias, *see id.* at 15, but we include them to give the Court the full picture.

and impartial; and a full 95 percent stated that they could be fair and impartial as to those defendants. *Id.* at 16-18.

Of the 150 prospective jurors called to answer the questionnaire ahead of the *Rhodes* trial—one of the highest profile cases to arise out of the events of January 6—a total of 49, or just under one-third, answered affirmatively to *any* of the questions above that asked whether they could be fair stemming from the specifics of that case (Nos. 45, 47, and 49). *Id.* at 18.  Despite that case receiving significant press attention, only 12 percent of prospective jurors had heard of the defendants on trial, and only five percent thought they could not be fair to those particular defendants.  Only about one-third of the strikes for cause based on questionnaire responses in that case were made for bias-related reasons. *Id.* at 18-19.

The numbers produced from a real-world voir dire in an analogous case are a far cry from the purported 91 percent bias rate advocated by the defense, and they strongly counsel against transferring venue out of the District of Columbia prior to conducting any voir dire. *See Irvin v. Dowd,* 366 U.S. 717, 722-23 (1961) (A prospective juror is not disqualified simply because he has "formed some impression or opinion as to the merits of the case. . . . It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.").

II.     The ILR Poll Does Not Support Transferring Venue to the Southern District of Florida.

Even taking the second ILR Poll at face value, it does not provide a reason to transfer venue to the Southern District of Florida (SDFL).  The poll itself is identical to that used in the first ILR Poll, save for the inclusion of the SDFL and the Middle District of Pennsylvania, and the exclusion of the Middle District of Florida and the Eastern District of North Carolina.  The government has previously argued that the poll questions and responses used by ILR do not demonstrate insurmountable bias in this District, and it incorporates those arguments previously made herein.

*See* ECF No. 376 at 18-22.   This response focuses on the survey responses in D.C. and SDFL given that the defendants have requested transfer venue to SDFL.

The poll demonstrates that respondents were aware of the events of January 6 at slightly higher rates in SDFL (97.89%) than the District of Columbia (97.27%).  ECF No. 477-1 at 6 (Question 1).  The two jurisdictions had roughly comparable rates of news exposure, with a higher percentage of respondents in SDFL (31.35%) than in D.C. (27.43%) saying they were exposed more than ten times per week to news about the events of January 6.  *Id.* (Question 4).  A comparable percentage of respondents (66.79% in D.C., 66.27% in SDFL) responded that they would not expect negative effects in their community from a not-guilty vote, and only slightly more D.C. respondents than SDFL respondents (19.26% to 16.51%) responded that they would expect negative effects.  *Id.* at 8 (Question 10).  Similarly, the rate at which respondents replied that they did *not* believe they could be fair jurors was remarkably similar (20.99 percent in D.C., 20.86 percent in SDFL), and a significantly larger portion of D.C. respondents thought their neighbors could be fair jurors—54.74%, as compared to 33.09% from SDFL.[4]  The poll as a whole simply does not support a finding of insurmountable bias in the District of Columbia vis-à-vis SDFL.

---

[4]     The ILR pollster tries to explain away the fact that 63.72 percent of D.C. respondents responded that they could be fair and impartial jurors, the second-highest rate in the second ILR Poll (behind only SDFL at 69.30%).  *See* ECF No. 477-1 at 5, 8, (Question 10).  The pollster tried unpersuasively to explain away a similar difference in the first ILR poll.  *See* ECF No. 376 at 21-22.  This second attempt, in which the pollster acknowledges that the poll "does not prove that respondents are being disingenuous" is no more persuasive when it argues that venue must be transferred because "most of their prospective jurors will need to be convinced to change their mind on issues of the case."  ECF No. 477-1 at 5.  This statement, like the earlier attempts to explain the disparity, still assumes without basis that jurors would fail to put aside any preconceived opinions about a case.  And it ignores Supreme Court precedent holding that knowledge of or preconceived notions about a case do not necessarily render a juror unable to be impartial.  *See Reynolds v. United States*, 98 U.S.145, 155-56 (1878); *Irvin*, 366 U.S. at 723.

The findings of the second ILR poll—just like the first—focused on supposed "prejudicial prejudgment" questions.  ECF No. 477-1 at 3-4.  Those questions are:

(1) "Are you more likely to find a defendant charged with crimes for activities on January 6th guilty or not guilty?  Or is it too early to decide?" (74% of D.C. respondents answered "Guilty.")

(2) "In your opinion, which of the following terms best characterizes the Events of January 6th? 1) An insurrection, 2) An attack, 3) A riot, 4) A protest that got out of control, 5) A rally." (87% of D.C. respondents chose insurrection, attack, or riot.)

(3) "Do you believe that the individuals who entered the Capitol on January 6th planned to do it in advance or decided to do it that day?" (61% of D.C. respondents selected "planned in advance.")

(4) "Do you believe The Events of January 6th were racially motivated?"  (35% of D.C. respondents answered in the affirmative.)

As was the case with the first ILR poll, the last three of these questions do not support a presumption of prejudice because they have little relevance to the potential issues at trial.  The trial in this case would not require jurors to determine whether the events of January 6 were an "insurrection," an "attack," a "riot," or a "protest that got out of control."  Nor will the jury be asked to determine whether anyone planned in advance to go in the Capitol or whether the attack was racially motivated.

The first purported prejudicial prejudgment question—whether the respondent would vote guilty or not guilty for a hypothetical, unspecified January 6 defendant—did not ask about a specific crime or about whether the respondent could keep an open mind and decide a case based on evidence and the judge's instructions.  With such broad wording the Court is left only to

speculate as to what the respondents who answered in the affirmative were thinking when they said they would likely vote guilty.  Are they thinking of misdemeanor charges, such as the type brought under 18 U.S.C. § 1752(a)(1)?  Are they thinking of those who assaulted police? Something else entirely?  The question does not and cannot say. The answers to this question are nearly useless to the Court, and the type of information it seeks to elicit is better obtained in voir dire, where the court can ask questions about a concrete case and follow up answers with further questions. *See United States v. Garcia*, 2022 WL 2904352 at *13 (D.D.C. 2022) (Berman Jackson, J.)

In any event, even if some D.C. residents have "prejudgments," the answer is to exclude those jurors through the voir dire process.  Just like in the first ILR Poll, the second ILR Poll shows that all jurisdictions surveyed—including SDFL—had no shortage of affirmative responses to the purported prejudgment questions.  More than half (52.98%) of SDFL respondents responded that they would vote guilty, for example, along with 42.83% in the Middle District of Pennsylvania and 51.94 percent in the Eastern District of Virginia.  ECF No. 477-1 at 6 (Question 3).  Over 50% of SDFL respondents indicated that the events of January 6 were criminal in some way (as the survey administrators defined that term), and nearly 50% thought it was planned in advance. *Id.*, Questions 5 and 6.  Just as with the first ILR Poll, this demonstrates that a careful voir dire would be necessary in any jurisdiction, and it fails to show that voir dire would be inadequate to weed out biased jurors in the District of Columbia.  In other words, none of the purported prejudicial prejudgment questions sheds any light on what the Supreme Court has made clear is the key question in jury selection: whether a prospective juror could "lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Irvin*, 366 U.S. at 722-23.

III.     The House Select Committee Hearings Do Not Require Transfer

Although the second ILR Poll did not measure what percentage of prospective jurors have watched or listened to the Select Committee hearings, both Biggs and Tarrio have raised those hearings in their recent pleadings.  ECF Nos. 477, 484.  The defendants have not even attempted to show that any bias from those hearings is local, rather than national, in scope.  And, given the nationally televised nature of those proceedings, it is unlikely that defendants could make such a showing.  As noted above, in a recent case, a full 45 percent of the venire had watched none of the hearings at all.  For those prospective jurors who have watched some portion of the hearings, the defendants have proffered no reason follow-on questioning would be inadequate to address any potential bias.   The Select Committee hearings are simply not a reason to transfer venue out of the District of Columbia.

Tarrio also filed a motion to "allow the testimony of Ms. Lindsay Olson of In Lux Research and Analytics, Dallas, Texas" to testify at a hearing on the venue motion pursuant to Fed. R. Evid. 614.  ECF No. 484.  It is unclear why Tarrio cites Rule 614, given that the Rules of Evidence generally do not apply at pretrial hearings.  *See* Fed. R. Evid. 1101(d)(3).  Moreover, Tarrio's motion mentions Ms. Olson only in connection with prejudice he alleges stems from the Select Committee hearings, and her polling asked no questions about those hearings.  And, in any event, Tarrio has not identified any information Ms. Olson would be able to provide at a hearing that is not already set forth in the reports accompanying the ILR polls.  There is no need to call her at a hearing.

## **CONCLUSION**

The defendants have failed to establish that a change in venue is appropriate.  The national scope of the media coverage of this case and the Select Committee hearings means that any potential juror bias is not limited to the District of Columbia.  And the use of focused voir dire would suffice to identify and root out any such bias.  The defendants' request to transfer venue should thus be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:      /s/ Erik M. Kenerson
ERIK M. KENERSON // Ohio Bar No. 82960
JASON B.A. MCCULLOUGH
  D.C. Bar No. 998006
NADIA E. MOORE // N.Y. Bar No. 4826566
  On Detail to the District of Columbia
Assistant United States Attorneys
601 D Street NW
Washington, D.C. 20530
(202) 252-7201
Erik.Kenerson@usdoj.gov

 /s/ Conor Mulroe
Conor Mulroe // N.Y. Bar No. 5289640
Trial Attorney // U.S. Department of Justice,
  Criminal Division
1301 New York Avenue, Suite 700
(202) 330-1788
conor.mulroe@usdoj.gov