UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) ) ) ) |
| v. | ) Case No. 1:21-cr-175-TJK ) ) |
| ETHAN NORDEAN, et al., | ) ) ) |
| Defendants. | ) ) |

**DEFENDANT NORDEAN'S MOTION TO JOIN DEFENDANT REHL'S MOTION TO DISMISS THE INDICTMENT AND FOR SANCTIONS AS A RESULT OF *BRADY* VIOLATIONS**

Defendant Nordean, through his counsel, moves the Court to join the Motion to Dismiss the Indictment and for Sanctions filed by Defendant Rehl. ECF Nos. 533, 534 (sealed). Nordean submits this filing to add the following additional points.

***Brady* violations in connection with plea bargaining**. As Rehl's publicly filed motion indicates, the government has produced a trove of discovery material—comprising hundreds of pages of documents—approximately one month before trial. Significant portions of that production contain information favorable to the defendants and material to the question of guilt or to punishment, i.e., information that must be timely produced to the defendants under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Due Process Protections Act (DPPA), Local Criminal Rule 5.1, and a Court Order. ECF No. 533, p. 1; 3/4/2021 Minute Order ("The failure to comply [with the DPPA and Local Criminal Rule 5.1] could result in dismissal of the indictment or information, dismissal of individual charges, exclusion of government evidence or witnesses, continuances, Bar discipline, or any other remedy that is just under the circumstances.").

Even as the government has made dozens of public filings in court alleging that the

1

defendants are guilty of three criminal conspiracies, it has shielded from the public's view exculpatory information by designating hundreds of pages of discovery material "highly sensitive" under the protective order. Thus, the government is able to shape a public narrative about the defendants and simultaneously prevent them from including favorable information in their own public filings. Making matters worse, the government has made the extraordinary argument that these exculpatory materials cannot be produced directly to defense counsel. It has argued, successfully, that counsel must comply with the following procedure in order to access *Brady* information in this case:

> (1) counsel must travel to an FBI office to review the materials in person;

> (2) counsel may not receive copies of the materials but must take handwritten notes;

> (3) counsel must then move the Court to produce the materials to the defendants, based on summary descriptions of the materials in their handwritten notes; and

> (4) counsel must then file additional motions to secure this evidence for trial.

Discovery restrictions such as these have only ever been applied in cases involving classified information and child crimes. The justification provided by the government for these unprecedented discovery hurdles has rested on certain factual claims about the defense. Defense counsel moved under seal for a fact-finding hearing to establish that the government's justification was demonstrably false. That motion has gone unanswered and unresolved for several months.

Last year, Nordean moved to unseal certain *Brady* materials designated "highly sensitive" by the government. In opposition, the government represented to the Court that these materials were not even relevant to the case, much less *Brady* information. On November 7, however, the government served a letter on the defendants concerning its ongoing production of hundreds of

2

pages of discovery documents a month before trial. In this letter the government described the materials Nordean moved to unseal last year in the following way: the documents are "*on their face, exculpatory*." 11/7/2022 Gov't Ltr., p. 1 (emphasis added).

On October 21, the government made a written plea offer to the defendants. 10/21/2022 Gov't Ltr., p. 1. The government advised that the offer would expire on October 27. *Id.*

In addition to the *Brady* violations described in Rehl's motion, the government has likely committed multiple *Brady* violations in connection with plea bargaining. Almost certainly, these violations have affected the due process rights of every defendant in this matter and in related cases. As multiple courts of appeals have held, a due process violation occurs "if prosecutors or other relevant government actors have knowledge of a criminal defendant's factual innocence but fail to disclose such information to a defendant before he enters into a guilty plea." *McCann v. Mangialardi*, 337 F.3d 782, 788 (7th Cir. 2003) (citing *United States v. Ruiz*, 536 U.S. 622, 153 L. Ed. 2d 586, 122 S. Ct. 2450 (2002) (drawing distinction between impeachment *Brady* and information going to factual innocence); *United States v. Ohiri*, 133 F. App'x 555, 562 (10th Cir. 2005) (same); *Smith v. Baldwin*, 510 F.3d 1127, 1148 (9th Cir. 2007) (same); *Sanchez v. United States*, 50 F.3d 1448, 1454 (9th Cir. 1995) (same); *Campbell v. Marshall*, 769 F.2d 314 (6th Cir. 1985) (same); *White v. United States*, 858 F.2d 416, 423 (8th Cir. 1988) (same).

With respect to Nordean, Biggs, Rehl, Tarrio and Pezzola, the government attempted to secure guilty pleas by October 27 before producing a trove of discovery material including *Brady* information on November 3. With respect to other defendants in this case and related ones—e.g., Charles Donohoe and Jeremy Bertino—counsel does not have specific knowledge as to whether the government made available to their attorneys materials the government has itself described as "on their face, exculpatory" before those defendants entered guilty pleas. But if the

3

government did not, those guilty pleas were not knowing and voluntary and are thus invalid under the Due Process Clause. *Mangialardi*, 337 F.3d at 788; *Ohiri*, 133 F. App'x at 562; *Baldwin*, 510 F.3d at 1148; *Sanchez*, 50 F.3d at 1454; *Marshall*, 769 F.2d at 314; *White*, 858 F.2d at 423.

**Any ex parte applications made in connection with the sensitive materials should be identified.** When Nordean's counsel learned that the government would make a discovery production on November 3—several months after the close of discovery—he inquired whether the government had sought permission, ex parte, from the Court under Rule 16. Fed. R. Crim. P. 16(d)(1). His good-faith basis for believing that such an application could have been made is that, at least on the face of things, the government has no justification under the Court's March 4, 2021 Order, the DPPA, and Local Criminal Rule 5.1 for producing information favorable to the defense that has been in its possession for over a year to the defendants with a month to go before trial. Nordean's counsel repeated this question to the government several times. The government has refused to answer. If the government made an ex parte application or filing in connection with the highly sensitive materials in this case, the defense must be notified of that fact and provided with the docket entry number if any. Nordean has made clear that the defense does not seek any "written statement" providing "good cause" for production delay that the government may have filed. Fed. R. Crim. P. 16(d)(1). Rather, the defense must be apprised of the basic, unsensitive fact that an ex parte application has been filed in the first place, if that is the case. Nordean moves the Court to direct the government to identify such an application if one exists.

**Transcripts from interviews conducted by the House Select Committee on January 6.** The Court will recall that one of the primary reasons put forward by the government to

4

continue the August trial date was to ensure production to the defendants of transcripts of interviews conducted by the House Select Committee. For example, one relevant cooperating witness, Bertino, was interviewed by the Committee. He will also likely be a government witness at trial. To date, the government has not answered the defendants' questions about when these transcripts will be produced.

If the *Brady* rules, the DPPA, court orders and Local Criminal Rule 5.1 are not enforced through sanctions, the defendants' due process rights become a dead letter. Particularly as the defendants did not conspire to commit crimes inside or outside the Capitol and the government has shown the Court no evidence to the contrary, the indictment should be dismissed or significant alternative sanctions imposed. Given that any delay in trial could mean over 2.5 years of pretrial incarceration of presumptively innocent people, a simple trial continuance is not a sanction.

Dated: November 11, 2022               Respectfully submitted,

*/s/ David B. Smith*
David B. Smith (D.C. Bar No. 403068)
108 N. Alfred St.
Alexandria, VA 22314
Phone:(703)548-8911
Fax:(703)548-8935
dbs@davidbsmithpllc.com

Nicholas D. Smith (D.C. Bar No. 1029802)
1123 Broadway, Suite 909
New York, NY 10010
Phone: (917) 902-3869
nds@davidbsmithpllc.com

*Attorneys for Ethan Nordean*

**Certificate of Service**

I hereby certify that on the 11th day of November, 2022, I filed the foregoing motion with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following CM/ECF user(s):

>Connor Mulroe
>Assistant United States Attorney
>555 4th Street, N.W., Room 4408
>Washington, D.C. 20530

And I hereby certify that I have mailed the document by United States mail, first class postage prepaid, to the following non-CM/ECF participant(s), addressed as follows: [none].

>/s/ David B. Smith
>David B. Smith, VA Bar No. 25930
>David B. Smith, PLLC
>108 North Alfred Street, 1st FL
>Alexandria, Virginia 22314
>(703) 548-8911 / Fax (703) 548-8935
>dbs@davidbsmithpllc.com