**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,

v.

ETHAN NORDEAN, et al.,

Defendants.

Case No. 1:21-cr-175-TJK

**DEFENDANT NORDEAN'S REPLY TO THE GOVERNMENT'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE INDICTMENT ON ACCOUNT OF *BRADY* VIOLATIONS**

Defendant Nordean, through his counsel, files this reply to the government's under-seal opposition to the Defendants' Motion to Dismiss the Indictment and for Sanctions. ECF No. 538.

Under seal, the government acknowledges that one month before trial—and months after the close of discovery and nearly two years after Nordean's arrest—it has produced hundreds of pages of "sensitive" records that are material to the defense. Many of them have been in the possession of the U.S. Attorney's Office for a year or longer. Some conflict with what the government has been representing in Court since February 2021. Owing to unusual restrictions the government has placed on the defense's review of that material, it may prove impossible for the defendants to review the documents, interview relevant witnesses (perhaps eight of them or more) and secure the evidence before trial on December 12. Though it is 21 pages, the sealed opposition omits that the government has opposed Nordean's effort to hold a fact-finding hearing to determine whether the security risk purportedly justifying those restrictions has a basis in fact. It omits that, in the Oath Keepers case, the government itself proposed such a hearing. That is,

the government would have the Court ignore that, before making its last-minute discovery production in violation of Court orders, the government conveniently persuaded the Court to hobble the defense's ability to review those sensitive materials based on certain factual claims about the defense while simultaneously inducing the Court to prevent the defense from disproving the claims. The sealed opposition continues to insinuate that anomalous discovery restrictions are warranted on account of factual assertions the government seeks to avoid having to substantiate under normal adversarial procedure. That is understandable: it is considerably less easy to make false claims appear true in open court than in sealed nonpublic filings not subject to fact-finding hearings. Hence the last-minute discovery drops, the government's latest effort to delay the case's trial date as presumptively innocent defendants continue to remain incarcerated pretrial for almost two years.

The government fails to address Nordean's motion to direct the government to identify any ex parte applications or filings it has made in connection with the sensitive discovery, i.e., requests made on the Court of which the defendants and public were not provided notice. Accordingly, the motion should be granted and the applications identified, if any were made. The government contends that even if the sensitive material at issue contains information favorable to the defense under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), it has committed no *Brady* violation as the information was not "suppressed"—it was merely withheld for over a year until after plea bargaining and until one month before trial and nearly two years after the defendants' arrest. ECF No. 538. That is wrong. The *Brady* violations that have occurred will continue until the government, no less than the people it prosecutes, is held accountable to rules.

**Factual and Procedural Background**

The government's opposition references its production in August 2021 of a prior batch of

sensitive discovery materials. The government represents that it disclosed this information to the defense because it was "**on [its] face, exculpatory**," that is, evidence tending to show that the Proud Boys defendants here are not guilty of the conspiracy charges the government has filed against them. ECF No. 538, p. 2 (emboldening added).

That representation should inform the Court's analysis of the government's opposition to Defendants' Motion to Dismiss the Indictment on Account of *Brady* Violations. The Court will recall that when Nordean moved to unseal the sensitive materials produced in August 2021, the government did not take the position that they were "on their face, exculpatory." Just as it does with respect to the trove of sensitive materials produced on November 3, 2022, the government argued that the August 2021 materials were not even relevant in this case. Indeed, the government forced court-appointed counsel for the indigent defendants to file multiple motions in order to simply use that "exculpatory" material at trial. If those materials were "exculpatory" all along, why did the government represent and argue to the Court that they were not relevant? And if the government was wrong in August 2021 and right now, why should the Court credit the government's latest arguments that the sensitive materials produced a month before trial are not *Brady* materials? Moreover, why did the government not produce all the sensitive materials in August 2021 and wait instead until a month before trial to do so? The answer is that the government is saying and doing whatever it believes will prolong the defendants' pretrial incarceration, without regard to rules and Court orders. That will continue until the Court determines that it must stop.

In that connection, consider the government's response to Nordean's point that the government has failed to produce transcripts of relevant witness interviews by the House Select Committee, including of Jeremy Bertino, a key government witness. In a footnote, the

government says there will be no Committee transcripts. The government "is not obliged to acquire materials possessed or controlled by others." ECF No. 538, p. 8 n. 5.[1] That may strike a discordant note with the Court. It will recall that, once upon a time, there was a trial date set in this matter in August. 6/12/22 Minute Order ("Trial shall commence on August 8, 2022, at 11:00 a.m."). The Court will also recall that the government proposed continuing that date. Here was the government's explanation for why trial should be continued:

> Biggs's and Pezzola's Motion cites the release of transcripts from the House Select Committee as a basis for continuing the trial. They note that "[t]hose transcripts are important . . . to have and review before trial—not during or after." *The government concurs with this assessment.* The timing of the anticipated release will *prejudice the ability of all parties to prepare for trial* . . . . While we do not know precisely when copies of the transcripts will be released, if they are released as currently anticipated in early September 2022, *the parties to this trial will face unique prejudice* because the jury for the August 8 trial will have already been sworn and jeopardy will have already attached.

ECF No. 404, p. 2 (emphasis added).

In other words, the government dangled the prospect of Committee transcripts to the defendants in order to persuade them that they could be waiving *Brady* rights by insisting on their right to a speedy trial in August. Now, however, the government "is not obliged to acquire materials possessed or controlled by" Congress (even though it served multiple letter demands on Congress to do just that). No. 538, p. 8 n. 5. After all, the government need only dangle the latest untimely produced batch of sensitive information—materials that have been in its possession for over a year—in order to continue forcing the defendants to choose between their due process and speedy trial rights.

The government's sealed opposition gives no hint of what *Brady* information now in its

[1] The Court will notice that the government does not directly deny that relevant Committee transcripts are in its "possession or control." ECF No. 538, p. 8 n. 5. The government must disclose all its communications with the Committee regarding the transcripts.

possession will drop just before trial in, say, August 2023 should the government prove successful in continuing the December trial date, without sanction, for a second time using the exact same device.

**Argument**

The government does not spend much time arguing that its November 3 production of sensitive materials does not constitute *Brady* information. That may be because whether the government characterizes discovery material as *Brady* has been shown to depend on what it needs from the Court at any given moment. At Time 1, sensitive information is "not relevant." At Time 2, it is "on [its] face, exculpatory." ECF No. 538, p. 2.

Instead, the government focuses on the argument that it has not "suppressed" the November 3 production because defendants have "suffered no prejudice from the delay." ECF No. 538, p. 10 (citing *United States v. Driscoll*, 984 F.3d 103, 109-10 (D.C. Cir. 2021) ("A new trial will rarely be warranted based on a *Brady* claim where the defendant obtains the information in time to use it at the trial.")). The government quotes Judge Bates as follows: "'In this Circuit, the government must disclose material in sufficient time for the defendant to use the favorable material effectively in the preparation and presentation of [his or her] case.'" ECF No. 538, p. 10 (quoting *United States v. Moore*, 867 F. Supp. 2d 150, 151-52 (D.D.C. 2012)).

It is far from clear why the government believes it can credibly claim that its November 3 production comes close to satisfying that standard. It is not just that the government has produced hundreds of pages of records, which have been in the government's possession for a year or longer, one month before trial. Nor is it just that this production comes on top of the largest discovery universe in any criminal case in the Department of Justice's history. The government's *Brady* violations lie in the facts that:

(1) the defense must not just review in a month records that the government could have produced a year ago but it must interview relevant witnesses and conduct their own investigation into the materials and witnesses;

(2) the government has positively interfered with that already complex process by imposing restrictions on the defense that make completion of the process virtually impossible before trial; and,

(3) not only are the factual justifications offered by the government for the discovery restrictions false, but the government has urged the Court to reject the defense's uncontroversial attempts to hold a fact-finding hearing to show that they are false, even as the government takes exactly the opposite position before another judge of the same court.

Of course, these facts do not show disclosure "in sufficient time for the defendant to use the favorable material effectively in the preparation and presentation of [his or her] case." *Moore*, 867 F. Supp. 2d at 151-52. They show a calculated effort by the government to prevent the defense from using the *Brady* material at trial and/or to improperly force the defense to choose between their speedy trial rights and their due process rights. The government does not seriously claim, nor could it, that the defendants could conceivably review, investigate and secure the newly disclosed evidence before trial. It does not explain why the materials were not produced a year ago.

In fact, the government says that it "learned of [some of the new materials] during a comprehensive review of relevant databases during the month of October." ECF No. 538, p. 20. This was part of its effort "to ensure that it had fully searched for and reviewed" evidence relevant to the case. *Id.* The government says it will only later "provide [this information] to the defense if relevant." *Id.* It does not even estimate when that production will occur. The

government does not explain how that production will be "in sufficient time for the defendant to use the favorable material effectively in the preparation and presentation of [his or her] case." *Moore*, 867 F. Supp. 2d at 151-52. It does not explain why it could not have searched the "relevant databases" before October 2022 in a case that is nearly two years old. Even if that failure was in good faith, a due process violation occurs "irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87.

But indeed, there is indicia of a lack of good faith in any case. The government does not respond to questions from the defense about the sensitive materials, such as why they are redacted even when made available at government offices; it represents to the Court that it would be "grossly inappropriate" for the Court to hold a simple fact-finding hearing as to the necessity of its unprecedented discovery restrictions—and then takes exactly the opposite position in front of another judge in the same court; it represents to the Court that sensitive materials are "not relevant" and then later states that they are actually "on their face, exculpatory"; on multiple occasions it has provided to the defense incorrect information that hinders their ability to investigate the sensitive information such as producing misspelled names and fax numbers rather than phone numbers.

The government's untimely production violates the discovery production deadline; the *Brady* rules; Rule 16[2]; Local Criminal Rule 5.1; the Due Process Protections Act; and the Court's *Brady* Order. To continue the trial without more is not to sanction but to reward the government.

---

[2] The government argues that the sensitive materials were exempt from its discovery obligations under Rule 16(a)(2). ECF No. 538, p. 11. That is false because (1) the records at issue were not made by a government agent or attorney for the government in connection with investigating or prosecuting "*the* case," i.e., *United States v. Nordean*, 21-cr-175, and (2) it is not just "internal government documents" Nordean seeks but the underlying information merely reproduced in government documents.

The indictment should be dismissed or government witnesses should be precluded from testifying at trial.

Dated: November 13, 2022

Respectfully submitted,

*/s/ David B. Smith*
David B. Smith (D.C. Bar No. 403068)
108 N. Alfred St.
Alexandria, VA 22314
Phone:(703)548-8911
Fax:(703)548-8935
dbs@davidbsmithpllc.com

Nicholas D. Smith (D.C. Bar No. 1029802)
1123 Broadway, Suite 909
New York, NY 10010
Phone: (917) 902-3869
nds@davidbsmithpllc.com

*Attorneys for Ethan Nordean*

**Certificate of Service**

I hereby certify that on the 13th day of November, 2022, I filed the foregoing motion with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following CM/ECF user(s):

Connor Mulroe
Assistant United States Attorney
555 4th Street, N.W., Room 4408
Washington, D.C. 20530

And I hereby certify that I have mailed the document by United States mail, first class postage prepaid, to the following non-CM/ECF participant(s), addressed as follows: [none].

/s/ David B. Smith
David B. Smith, VA Bar No. 25930
David B. Smith, PLLC
108 North Alfred Street, 1st FL

Alexandria, Virginia 22314
(703) 548-8911 / Fax (703) 548-8935
dbs@davidbsmithpllc.com