UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | No. 1:21-cr-175-1 (TJK) |
| v. | : | |
| | : | |
| | : | |
| ETHAN NORDEAN, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S RESPONSE TO NORDEAN'S NOTICE OF GOVERNMENT
INTIMIDATION OF DEFENSE WITNESS**

During the hearing on December 2, 2022, Nordean's counsel made assertions about the government's conduct with a witness. The government called the assertions what they are—false. Nordean has now filed a perplexing "notice" that seeks no relief [ECF 579]. It is his latest in a series of inflammatory and unsubstantiated allegations of government misconduct, none of which have proven accurate. Here, he accuses the government of "witness intimidation" based on a completely appropriate interaction between law enforcement and Adrienna DiCioccio, a subject of a criminal investigation based on her participation in the attack on the Capitol.[1] Although this interaction occurred in November 2021—nearly a full year before counsel for Nordean identified Ms. DiCioccio to the government as a potential defense witness on October 27, 2022—Nordean claims that the government's interactions with the witness were an attempt at defense witness intimidation. Nordean's "notice" wisely asks for no relief, as it is clear he is not entitled to any.

---

[1] Video evidence establishes that Ms. DiCioccio entered the Capitol within minutes of the initial breach of the building—contemporaneously with defendant Biggs. Upon entry, she was captured on video screaming, "1776 motherfuckers! This is our house!" Hundreds of other individuals have been charged with criminal violations for similar conduct.

Nordean's "notice," like his representations on December 2, 2022, is similarly rife with inaccuracies. First and foremost, even assuming its complete accuracy (which, as detailed below, the government disputes), Ms. DiCioccio's declaration does not substantiate Nordean's inflammatory accusations. For example, contrary to counsel for Nordean's representations at the December 2, 2022, hearing, Ms. DiCioccio does not assert in her declaration that she had counsel who was not present during the interview. *See* Dec. 2, 2022, Hr'g Tr. at 58; 579-1. Nor does she say, as defense counsel asserts, that she had an attorney at the time of the interview. The FD-302 instead memorialized that the prosecutor suggested Ms. DiCioccio seek counsel and went so far as to provide her with a form to help her obtain a court-appointed one. In other words, rather than seeking to circumvent Ms. DiCioccio's access to counsel (as Nordean wrongly asserted), the government affirmatively facilitated it. Overall, the transcript and FD-302 belie Nordean's characterization of DiCioccio as a "defense witness" at the time the interviews occurred. She was rather the ordinary subject of a criminal investigation, who recognized her own liability and sought to reduce it by cooperating with the government. To that end the prosecutors rightly told her that she could "only be charged with the crimes the facts support." Thus, the declaration falls especially short of the accusations leveled by Nordean's attorney during the December 2 hearing.

Moreover, Nordean asserts that only after Ms. DiCioccio "informed the government that she did not agree with the government's claim that Nordean and others had conspired to attack the Capitol or use violence on January 6, a government prosecutor only then announced—in the same November 2021 interview—that the government decided that she would be prosecuted for an offense. ECF 579 at 1. This is false. Ms. DiCioccio was interviewed twice: once in September 2021, and once in November 2021. It is the second interview that Nordean references and that is largely the subject of Ms. DiCioccio's declaration. The transcript of Ms. DiCioccio's first

interview, which was produced to the defense in June 2022, belies any claim that the government only informed her of her potential criminal liability after "she did not agree with the government's claim that Nordean and others had conspired to attack the Capitol or use violence on January 6," as Nordean contends. *Id.* The below quote is from page 202 of the transcript of the first interview:

> MS. DiCIOCCIO: Okay, because you guys were mentioning, you know, earlier, the other person cooperated very well with everything. You know, turned themselves in. I know you guys have things to go over, but, what am I looking at, at the moment? Should I be really scared? Should I be –
>
> [AUSA][2]: The investigation is ongoing. Decisions are still being made. I mean, there are criminal charges that are out there, potentially, and maybe even likely. But it all depends on what we're looking at (indiscernible).
>
> MS. DiCIOCCIO: Okay.
>
> [AUSA]: Again, I would say, let's keep the lines of communication open.
>
> MS. DiCIOCCIO: Yeah.
>
> [AUSA]: So that we can have those types of conversations when it's time to pull those types of triggers.
>
> MS. DiCIOCCIO: Okay.

In other words, Ms. DiCioccio was informed in September 2021, well before the interview during which Nordean claims she was threatened with charges for refusing to tell the government what it wanted to hear, that she "potentially, maybe even likely" faced criminal charges. This was not news to her: video evidence of her offense conduct captures her saying, "Are we all gonna get arrested?" as she entered the Capitol building. After the first interview, Ms. DiCioccio agreed to voluntarily meet with prosecutors and agents again in November. As noted above, Ms. DiCioccio's declaration is inaccurate, and the government submits that the FD-302 submitted by

---

[2] The AUSA who participated in this interview was not any government counsel of record in this case.

counsel describes an unremarkable interaction between prosecutors, FBI agents, and a potential cooperating witness. But even on its face, Ms. DiCioccio's declaration acknowledges that when she asked whether she would be prosecuted if she did not give the government what it wanted, the prosecutor responded, "to the effect that I would be prosecuted because of what I did." ECF 579-1 at 2. There is nothing improper about any such statement by a prosecutor. Moreover, contrary to Nordean's insinuation (at 1) that the government only "announced" that Ms. DiCioccio would be charged after she provided information that the government did not like, the discussion about potential charges occurred at the end of a two-hour interview and was not tied to any specific statement by Ms. DiCioccio.

It is not surprising that the subject of a criminal investigation may be upset after being questioned about her conduct that led to that investigation. But any unease on Ms. DiCioccio's part was not caused by impropriety by the government. It was instead caused by her own criminal conduct on January 6, 2021, and the fact that she may have to reckon with that conduct.

Finally, even if Ms. DiCioccio were a "defense witness," there is no ownership of witnesses, and it would not be improper for the government to speak to her. "A criminal trial, like its civil counterpart, is a quest for truth. That quest will more often be successful if both sides have an equal opportunity to interview the persons who have the information from which the truth may be determined." *Gregory v. United States*, 369 F.2d 185, 188 (D.C. Cir. 1966). "Both sides have the right to interview witnesses before trial." *Callahan v. United States*, 371 F.2d 658, 660 (9th Cir. 1967); *see also United States v. Murray*, 492 F.2d 178, 194 (9th Cir. 1973).

**CONCLUSION**

For the foregoing reasons, Nordean has yet again failed to establish any government misconduct. He asks for no relief and the Court should grant none.

                                   Respectfully Submitted,
                                   MATTHEW M. GRAVES
                                   United States Attorney
                                   D.C. Bar No. 481052

By:    */s/ Erik M. Kenerson*
       ERIK M. KENERSON // Ohio Bar No. 82960
       JASON B.A. MCCULLOUGH
         NY Bar No. 4544953
      NADIA E. MOORE // N.Y. Bar No. 4826566
        On Detail to the District of Columbia
      Assistant United States Attorneys
      601 D Street NW
      Washington, D.C. 20530
      (202) 252-7201
      Erik.Kenerson@usdoj.gov

      */s/ Conor Mulroe*
     Conor Mulroe // N.Y. Bar No. 5289640
     Trial Attorney // U.S. Department of Justice,
      Criminal Division
     1301 New York Avenue, Suite 700
     (202) 330-1788
     conor.mulroe@usdoj.gov