UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
|  | ) |
|  | ) Case No. 1:21-cr-175-TJK |
| v. | ) |
|  | ) |
| ETHAN NORDEAN, et al., | ) |
|  | ) |
| Defendants. | ) |

**NORDEAN'S MOTION FOR RULE 15 VIDEO DEPOSITION OF EDDIE BLOCK**

Defendant Nordean, through his counsel, moves the Court for permission to take a video deposition of witness Hendrik "Eddie" Block for the reasons that follow.

A party in a criminal proceeding "may move that a prospective witness be deposed in order to preserve testimony for trial." Fed. R. Crim. P. 15(a)(1). The Court may grant the motion for any "exceptional circumstance[] and in the interest of justice." *Id.* Courts deciding Rule 15 deposition motions have considered whether the defendant can "(1) establish that the testimony sought is material, (2) prove that the witnesses are unavailable to testify at trial, and (3) make some showing, beyond unsubstantiated speculation, that the evidence exculpates him." *United States v. Straker*, 567 F. Supp. 2d 174, 180 (D.D.C. 2008). However, "'witness availability and the immateriality of proposed testimony to be obtained through depositions are not rigid or automatic grounds for the denial of a 15(a) motion as they once were. . .'" *United States v. Sanford*, *Ltd.*, 860 F. Supp. 2d 1, 3-4 (D.D.C. 2012) (quoting *United States v. Ismaili*, 828 F.2d 153, 159 (3d Cir. 1987)).

"'Unavailability is to be determined according to the practical standard of whether under the circumstances the [party seeking to take the deposition] has made a good-faith effort to produce the person to testify at trial.'" *Sanford*, 860 F. Supp. 2d at 4 (quoting *United States v.*

1

*Johnpoll*, 739 F.2d 702, 709 (2d Cir. 1984)). "Courts do not require a very strong showing of unavailability . . . Rather, a prospective deponent will be unavailable for the purpose of Rule 15(a) if a substantial likelihood exists that [he or she] will not testify at trial." *United States v. Vo*, 2014 U.S. Dist. LEXIS 91921, at *81 (D.D.C. July 1, 2014) (collecting cases); *United States v. Mann,* 590 F.2d 361, 366 (1st Cir. 1978) ("When the question is close a court may allow a deposition in order to preserve a witness' testimony, leaving until trial the question of whether the deposition will be admitted as evidence."); *accord United States v. Drogoul*, 1 F.3d 1546, 1555 (11th Cir. 1993) ("It would be unreasonable and undesirable to require [a party] to assert with certainty that a witness will be unavailable for trial . . . simply to obtain authorization to take his deposition."); *United States v. Salim*, 855 F.2d 944, 952 (2d Cir. 1988) (same).

Witness materiality means a reasonable probability, not "'that the defendant would more likely than not have received a different verdict with the evidence, [but] only that the likelihood of a different result is great enough to undermine confidence in the outcome of the trial.'" *Sanford*, 860 F. Supp. 2d at 4 (quoting *Smith v. Cain*, 132 S. Ct. 627, 630 (2012)).

Courts have long found Rule 15(a) unavailability based on a showing that a witness suffers from a significant physical disability and lives a substantial distance from the court. *E.g.*, *United States v. Keithan*, 751 F.2d 9, 12 (1st Cir. 1984) (finding exceptional circumstances where witnesses were of advanced age and suffered from physical infirmities which hindered their travel to courthouse 60 miles from their home); *United States v. Whitlow*, 2014 U.S. Dist. LEXIS 133436, at *28 (D. Neb. Sept. 5, 2014) (same regarding witnesses with physical infirmities); *United States v. Dumas*, 1991 U.S. Dist. LEXIS 18289, at *2 (E.D. Pa. Dec. 17, 1991) (same regarding pregnant witness).

Here, witness Eddie Block suffers from severe physical disability. He is a paraplegic and confined to a specialized wheelchair. He lives in Madera, California: over 2,800 miles from the courthouse. Block asserts that he must be accompanied at all times by a therapy dog and a human assistant who helps him travel from one location to the next. Block's dog is a St. Bernard. He advises counsel that the major airlines cannot accommodate a canine of such large dimensions. Accordingly, Block cannot travel to the courthouse via a common carrier.

Block's counsel accepted Nordean's trial subpoena on December 14. Long before that point Block had represented to counsel that he would travel to the courthouse for trial in this matter. He did not alert counsel that he would have any difficulty doing so. Shortly before the subpoena was served on him, however, Block informed counsel about the aforementioned constraints on his travel. Asked whether he was representing that he is physically incapable of attending trial in D.C., Block responded that the only method of travel available to him would be to drive nearly 6,000 miles to and from the courthouse at a cost of over $5,000 for gas, hotels and taxes. Hotel expenses run particularly high for Block, as he "cannot stay in a hotel chain that is susceptible to unhealthy cleaning procedures." He has "metal in [his] back that if [it] gets infected due to bedbugs [he] can die." In addition, the hotels must accommodate his personal assistant as well as the St. Bernard. Block represents that it would take him over five days to complete the drive in each direction. Because it is not yet clear when the defense case will begin at trial, Block cannot be given a date certain for his testimony with which the witness (and defense) could then plan the five days of travel in advance. Although Block has suggested that he would not require the dog's presence in the courtroom during his testimony, counsel is far from certain that the witness's position on this point is settled.

3

There is no argument that Block's testimony is not material to this case. Indeed, the government itself has recognized this, having listed him as a witness. As the Court by now understands, Block is a central percipient witness to the alleged conspiracy on January 6. And he is a unique witness, having filmed long stretches of the Defendants' march that day from the Washington Monument to the Capitol. Block's testimony is not required merely to authenticate his extensive and critical footage of the "crime scene." His personal perspective on the events at issue is unrivaled precisely because it was his aim to comprehensively document them. Unlike random members of the crowd, then, he endeavored to listen to and observe every conversation held by the Proud Boys' "leadership" that day, including that of Ethan Nordean and Joseph Biggs.

While Block managed to capture a great deal of the march on film, his camera was not on at every moment and he occasionally lost an internet connection. Block's testimony is therefore required to relate those material moments not caught on film. But Block's attendance will also be required to narrate key filmed moments that day which encapsulate exculpatory evidence. The Court has already seen examples. Block submitted a sworn declaration on September 21, 2021. ECF No. 182. The witness represented that, despite being in close proximity to Nordean during nearly the whole march on January 6, he did not hear Nordean "say that the plan was to jump barriers at, or enter, the Capitol." *Id.*, p. 2. The same month, Nordean notified the Court that although the government seized Block's camera in January 2021, it appeared that the government had withheld from discovery portions of his march footage until the defense had discovered the omission seven months later in August. ECF No. 166. In one portion of Block's footage, Nordean announces to the witness's camera—mid-march—that the group's "plan" was to walk to the Capitol—and then to turn around and head back to the former president's political

4

rally on the Ellipse.  *Id.*  Nordean similarly submitted to chambers footage depicting Block telling another protester that the "plan" was to return to the former president's rally.  When Block made this remark, the group was in close proximity to the Capitol, near food trucks stationed outside the Frances Perkins Building.  This is a critical moment in the case, as the group shortly thereafter headed towards the Capitol.  All of this is highly material evidence.

Even if the government were to argue at trial that all these exchanges about returning to the rally were merely a "ruse," Block's testimony would still be material.  As one of the key witnesses to the Defendants' actions in these moments, Block is well positioned to illuminate whether a close observer's memories of the event are consistent with the government's allegations.

On December 16, Nordean's counsel notified the government of the Defendant's intent to take Block's Rule 15 video deposition at any convenient time during the week of December 26, providing up to two weeks' notice.  The government itself had listed Block as a trial witness as early as November 12—over a month before any potential deposition.  However, on December 17, the government responded that it would oppose any deposition of Block.  It did not commit to finding some means of ensuring Block's attendance at trial.  Nordean then asked the government to provide a basis for its opposition.  In response, the government provided no factual argument, citing instead the bare Rule 15 standards explained above.

Nordean has shown that a "substantial likelihood exists that [Block] will not testify at trial." *Vo*, 2014 U.S. Dist. LEXIS 91921, at *81.  A severely disabled witness, Block resides nearly 3,000 miles from the courthouse and represents that he cannot travel to trial using any form of common carrier.  Moreover, he has exceedingly particular accommodations demands owing to, among other issues, "metal in [his] back that if [it] gets infected due to bedbugs [he]

5

can die" and a therapy dog whose enormous presence is unreasonably difficult to accommodate. All of these infirmities are far more challenging to manage than those which courts have found sufficient to permit Rule 15 depositions. *Keithan*, 751 F.2d at 12; *Whitlow*, 2014 U.S. Dist. LEXIS 133436, at *28; *Dumas*, 1991 U.S. Dist. LEXIS 18289, at *2. Even if Nordean were to secure a concatenation of hotels that could accommodate Block and his infirmities, his attendant and the therapy St. Bernard, there remains a substantial likelihood of nonattendance at trial due to the uncertainties inherent in precisely organizing the witness's appearance on a specific day of trial after five days of transcontinental road travel.

Having itself identified Block as a witness, the government cannot be heard to argue that his testimony is immaterial. To the contrary, Block is a percipient witness to evidence whose absence, at the least, creates a "likelihood of a different result [] great enough to undermine confidence in the outcome of the trial.'" *Sanford*, 860 F. Supp. 2d at 4. Holding a video deposition of the witness poses no material burden to the government, nor did the government even identify one when asked to schedule the deposition. As the Court knows, trial is suspended the week of December 26, though it contains no federal holidays and government attorneys are expected to work. For all these reasons, the Court should permit Nordean to take Block's deposition the week of December 26 "in order to preserve [his] testimony for trial." Fed. R. Crim. P. 15(a)(1).

Dated: December 22, 2022                                    Respectfully submitted,

/s/ David B. Smith
David B. Smith, D.C. Bar No. 403068
David B. Smith, PLLC
108 North Alfred Street, 1st FL
Alexandria, Virginia 22314
(703) 548-8911 / Fax (703) 548-8935
dbs@davidbsmithpllc.com

Nicholas D. Smith, D.C. Bar No. 1029802
1123 Broadway, Suite 909
New York, NY 10010
(917) 902-3869
nds@davidbsmithpllc.com
*Counsel to Ethan Nordean*

## Certificate of Service

I hereby certify that on the 22nd day of December, 2022, I filed the foregoing motion with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following CM/ECF user(s):

Jim Nelson
Assistant United States Attorney
555 4th Street, N.W., Room 4408
Washington, D.C. 20530
(202) 252-6986

And I hereby certify that I have mailed the document by United States mail, first class postage prepaid, to the following non-CM/ECF participant(s), addressed as follows: [none].

/s/ David B. Smith
David B. Smith, D.C. Bar No. 403068
David B. Smith, PLLC
108 North Alfred Street, 1st FL
Alexandria, Virginia 22314
(703) 548-8911 / Fax (703) 548-8935
dbs@davidbsmithpllc.com