UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) <br> ) <br> ) Case No. 1:21-cr-175-TJK |
| v. | ) <br> ) |
| ETHAN NORDEAN, et al., | ) <br> ) |
| Defendants. | ) <br> ) <br> ) |

**NORDEAN'S REPLY TO THE GOVERNMENT'S OPPOSITION TO HIS MOTION
FOR RULE 15 VIDEO DEPOSITION OF EDDIE BLOCK**

Nordean, through his counsel, files this brief response to the government's opposition to his Motion for Rule 15 Deposition of Eddie Block. ECF No. 603. Of a piece with its related efforts preventing the Defendants from presenting defense testimony at trial—e.g., ECF Nos. 584, 581, 572 (describing a "pattern of conduct by the government to keep exculpatory witnesses" from testifying at trial "either intentionally or effectively")—the government opposes Nordean's simple request to take a video deposition of Block, a procedure that imposes no articulable inconvenience to it, insisting that the Defendant (or the Court) expend over $5,000 on a gamble that the paraplegic Californian named on the government's own witness list will make it to trial on time after a five-day transcontinental road trip of nearly 3,000 miles. Should the Court deny Nordean's motion, a substantial likelihood exists that Block will not make it to trial. That would be reversible error, particularly when considered cumulatively in combination with the defense witness pattern described above. ECF Nos. 584, 581, 572.

The government begins with the legal premise that Nordean must show Block's trial unavailability under Federal Rule of Evidence 804(a) in order to secure a Rule 15 deposition. ECF No. 603, p. 3. That is wrong. "Courts do not require a very strong showing of

1

unavailability" for a Rule 15 deposition. *United States v. Vo*, 53 F. Supp. 3d 77, 81 (D.D.C. 2014) (citing *United States v. Mann*, 590 F.2d 361, 366 (1st Cir. 1978) ("When the question is close a court may allow a deposition in order to preserve a witness's testimony, leaving until trial the question of whether the deposition will be admitted as evidence.")).

Next, the government pettifogs that Nordean has made no "representation as to what condition leads to th[e] assertion by Mr. Block" that he must be accompanied by his therapy and service dog and no representation as to "what changed between January 6, 2021, when Mr. Block apparently had no such need [for a therapy/service dog] during a trip to our nation's Capital, and today." ECF No. 603, pp. 3-4. That is not the standard. Block has represented to Nordean's counsel, through the witness's court-appointed lawyer, that

(i) the witness must be accompanied at all times by his therapy and service dog;

(ii) the dog is a St. Bernard; and,

(iii) the witness has searched for flights that would accommodate a dog of those uncommonly large dimensions and cannot locate one.

Contrary to the government's suggestion, Rule 15 does not require Nordean to medically diagnose a witness in order to convey to the Court what that witness is representing to counsel through his court-appointed lawyer about his physical condition. Nor does it demand that Nordean explain, on behalf of the witness, why a "human assistant" cannot substitute for a service/therapy dog or what "functionality the St. Bernard provides. . ." ECF No. 603, p. 4. It merely requires some showing of a likelihood that the witness may not be available for trial on account of that condition as represented by the witness. *Vo*, 53 F. Supp. 3d at 81. The parties in the Rule 15 cases cited by Nordean did not need to elucidate for the court the biology of

2

pregnancy or Parkinson's disease in order to secure depositions.[1] All of the following have been represented to counsel by the witness and his lawyer: (a) Block's paraplegia, (b) the fact that he must be accompanied by a therapy and service dog, (c) the witness's distance of nearly 3,000 miles from the courthouse, (d) his inability to fly to the district due to the pet criteria of the major airlines, (e) his demand for over $5,000 for gas, hotels and other expenses, (f) the risk that the witness will "die" from an unclean hotel that is not up to hygienic standards demanded by his disability, and (g) even if Nordean were to methodically secure all of Block's hotels across the country during a five-day road trip, it would be exceedingly difficult to ensure his attendance on a specific day of trial given the vagaries of such travel. In addition, Nordean does not possess over $5,000 to reimburse the witness and his counsel has never heard of a court disbursing CJA funds in such an amount for a witness's exorbitant travel expenses. Although that is more than sufficient to satisfy the *Vo* standard for a Rule 15 deposition, Nordean can add that the witness recently advised that he now uses a therapy and service dog partly out of a concern for his safety.[2] Nordean understands that a medical professional approved the large canine's use as a therapy and service dog.

In a footnote, the government questions Block's representation about airline pet restrictions, stating that "airlines may not refuse transport to a service dog. . ." ECF No. 603, p. 3

---

[1] *United States v. Keithan*, 751 F.2d 9, 12 (1st Cir. 1984) (finding exceptional circumstances where witnesses were of advanced age and suffered from physical infirmities which hindered their travel to courthouse 60 miles from their home); *United States v. Whitlow*, 2014 U.S. Dist. LEXIS 133436, at *28 (D. Neb. Sept. 5, 2014) (same regarding witnesses with physical infirmities); *United States v. Dumas*, 1991 U.S. Dist. LEXIS 18289, at *2 (E.D. Pa. Dec. 17, 1991) (same regarding pregnant witness).

[2] Block represents he is anguished that many believe he is or was a Confidential Human Source for the government. Nordean's counsel does not know whether that is true, but, of course, if it were the government could not be heard to complain about the propriety of Block's concerns on this score.

n. 1. It goes on to acknowledge, however, that "some exceptions exist if the service dog is too large or heavy to be accommodated in the cabin." *Id.* On the representation of the disabled witness, that is precisely the situation in the case of Block's St. Bernard.

The government asserts that something about the timing of Nordean's Rule 15 motion is inappropriate. ECF No. 603, p. 4. It says, "This is not the case where a Rule 15 deposition is taken months ahead of trial on belief that a particular witness might be rendered unavailable by illness or death." *Id.* That is exactly right. There is a much higher likelihood of unavailability here than in a case where parties are speculating months ahead of trial about what will happen in the future. Nordean has represented that as soon as he heard from the witness that Block's disability and therapy/service dog constraints would place a question mark over his trial attendance, counsel notified the government about a deposition the week of December 26. ECF No. 599, p. 3. Nordean could not have sought a deposition of Block "months ahead of trial" because there was no apparent need to secure the witness's testimony via video deposition until December 14. *Id.* The government adds that Block "almost certainly would be available in a few weeks' time." ECF No. 603, p. 5. It provides no factual support for that claim, which is directly contrary to the witness's representations to Nordean's counsel.

The government's attempts to distinguish the physical infirmities in *Keithan*, *Whitlow*, and *Dumas* are all beside the point. ECF No. 603, p. 5. Rule 15 does not require a showing that the witness cannot be physically removed from their home. Of course, there are many points during pregnancy when a woman can leave the home "without enduring substantial and prolonged pain" and yet pregnancy was sufficient to depose the witness in *Dumas*. 1991 U.S. Dist. LEXIS 18289. Indeed, arranging a pregnant woman's travel can be a significantly less complex undertaking than that involved with Block, who cannot fly, who requires the constant

presence of an enormous therapy/service dog, and who has "metal in [his] back that if [it] gets infected due to bedbugs [he] can die," according to his written statement to counsel. And whereas the deposed witnesses in *Keithan* and *Whitlow* resided between 60 and 100 miles from the courthouse, Block resides nearly 3,000 miles from this district. 751 F.2d at 12; 2014 U.S. Dist. LEXIS 133436, at *28.

The Court will notice that although Block is named on its witness list, the government does not explain how it intended to ensure his appearance at trial given his disabilities and travel constraints. It says, "Nordean also attempts to attribute some malfeasance to the government for not committing to find some means of ensuring Mr. Block's attendance at trial." ECF No. 603, p. 5 n. 5 (internal quotation marks omitted). It adds, "Nordean did not ask the government whether it was willing to so commit . . ." *Id.* The Court will again notice that, despite making that statement, the government makes no commitment and does not account for why it represented to the defense that Block would be a government witness if it has apparently given no thought to securing his attendance at trial, or at least no thought it will disclose to the defense and the Court. Certainly, by representing that it would make Block a trial witness, the government led the defense to understand that they would not need to accommodate the witness's transport alone.

As to the materiality of Block's testimony, the government's arguments miss the mark and are contradictory. It says that Nordean has not proffered what the witness would testify. ECF No. 603, pp. 6-7. Of course, Nordean has made a proffer, has indeed filed a sworn declaration by the witness stating that despite being in the Defendant's nearly constant presence on January 6, he did not hear Nordean counsel people to storm the Capitol and jump barricades. ECF No. 599, p. 4; ECF No. 182. Nordean has proffered Block's footage showing the witness saying, on January 6, that the witness's understanding of the "plan" that day was that the group

5

would walk to the Capitol and then head back to the former president's rally on the Ellipse. ECF No. 599, p. 4. The government does not address these facts because they obviously satisfy the standard of materiality, no less than in the case of a still-sealed witness whose testimony the government initially deemed "irrelevant" only to later call it "exculpatory." On the other hand, the government says that Block's "footage is available to Nordean." ECF No. 603, p. 6. Thus it seems to be saying that Block's live testimony is not necessary. Of course, however, if Nordean were to attempt to introduce Block's out-of-court statements about the "plan" to head back to the rally via the witness's footage, the government would object on hearsay grounds—a point the government omits from its opposition. Accordingly, Block's video footage is not a substitute for the witness. Moreover, Nordean does not have to proffer every piece of testimony Block would offer to establish Rule 15 materiality, just as the discovery rules do not require him to produce a precis of every defense witness's testimony in order to call those witnesses. That Block is central enough to the events in the case for the government itself to name him a witness is more than sufficient.

Finally, the government says Nordean has "not proffered that Mr. Block is willing to submit to a compelled deposition." ECF No. 603, p. 7. It adds that Block may assert a Fifth Amendment privilege. *Id.* Nordean can represent that (a) it is his understanding that Block would greatly prefer a deposition to the government's proposal to drag the paraplegic across the country at great expense and with great difficulty and uncertainty and (b) neither Block nor his counsel has raised any question of privilege in their conversations with Nordean. To the contrary, by centering the discussion on the expenses and logistical problems entailed in traveling to the courthouse, Block's counsel appeared to be suggesting that those were the only hurdles to the witness's testimony.

Block is a key witness in this case. He is a government witness. Strangely, the government has given no explanation of how it intends to ensure his appearance at trial. Trial is suspended the week of December 26, allowing the parties to take the witness's video deposition. The parties can conduct the deposition by video teleconferencing platform. The government's opposition to this simple request to preserve material testimony is not appropriate. The Court should permit Nordean to take Block's testimony in case, as seems increasingly likely, the witness does not appear at trial despite receipt of a trial subpoena.

Dated: December 26, 2022                                  Respectfully submitted,

/s/ David B. Smith
David B. Smith, D.C. Bar No. 403068
David B. Smith, PLLC
108 North Alfred Street, 1st FL
Alexandria, Virginia 22314
(703) 548-8911 / Fax (703) 548-8935
dbs@davidbsmithpllc.com

Nicholas D. Smith, D.C. Bar No. 1029802
1123 Broadway, Suite 909
New York, NY 10010
(917) 902-3869
nds@davidbsmithpllc.com
*Counsel to Ethan Nordean*

**Certificate of Service**

I hereby certify that on the 26th day of December, 2022, I filed the foregoing motion with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following CM/ECF user(s):

Jim Nelson
Assistant United States Attorney
555 4th Street, N.W., Room 4408
Washington, D.C. 20530

7

(202) 252-6986

And I hereby certify that I have mailed the document by United States mail, first class postage prepaid, to the following non-CM/ECF participant(s), addressed as follows: [none].

/s/ David B. Smith
David B. Smith, D.C. Bar No. 403068
David B. Smith, PLLC
108 North Alfred Street, 1st FL
Alexandria, Virginia 22314
(703) 548-8911 / Fax (703) 548-8935
dbs@davidbsmithpllc.com