UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) <br> ) <br> ) Case No. 1:21-cr-175-TJK <br> ) |
| v. | ) <br> ) |
| ETHAN NORDEAN, et al., | ) <br> ) |
| Defendants. | ) <br> ) |

**NORDEAN'S RESPONSE TO COURT ORDER FOR BRIEFING ON IMPEACHMENT MATERIAL**

On January 20, Defendant Nordean examined witness Nick Quested about the filmmaker's interactions with Enrique Tarrio on January 6, 2021. Quested interviewed Tarrio that day in the defendant's hotel room. Tr. 4841-4844. Quested was questioned as follows:

Q: Did you see that -- was it your impression that Mr. Tarrio was surprised that individuals had actually entered the Capitol building?

A: I don't recall if Mr. Tarrio was surprised that people had entered the Capitol Building. Tr. 4844:6-10.

Nordean then attempted to impeach the witness with Government Exhibit 497G. That exhibit is a clip from Quested's January 6 interview of Tarrio. It depicts Tarrio and Quested in the same room as Tarrio visibly reacts to the fact that protesters had entered the Capitol Building that afternoon. A screenshot from that exhibit is pasted below:

1



Gov't Exh. 497G (screenshot at 10:03:03:01, annotations added).

In Government Exhibit 497G, seen above, Tarrio extends his open palms outward and shrugs his shoulders as he remarks, in the close presence of Quested,

Tarrio: "I don't think any of those people were like, 'hey, we're gonna go inside.'"

Amy Harris: "At the beginning?"

Tarrio: "At the beginning. Even when they crossed this barrier, they were like 'oh, we will get to the steps.' I don't think that they were like, 'know what?'. . ."

Harris: "No one did. . . I was at the front near the gate. And there were like two or three people who were like doing this [Harris making a shaking gesture]. I was at the very front. . . I thought that there were just a few people who were saying, 'we are gonna take it down.' And then once [the barrier] came down, everyone else kind of just . . . ." [Harris making a pushing forward motion with her hands].

[Crosstalk; voices expressing agreement in the room].

The gestures made by Tarrio in this clip—palms outward, shoulders shrugging—are signs of surprise and lack of knowledge.  They are the gestures one makes when intending to convey a sense of puzzlement.  Tarrio shrugs multiple times during the clip, betokening the same meaning.  This combination of mannerisms is captured by the popular emoticon displayed below:

¯\_(ツ)_/¯

Known as the "shrugging emoji," it means "a person shrugging their shoulders to indicate a lack of knowledge about a particular topic." *Person Shrugging*, Emojipedia, available at: https://emojipedia.org/person-shrugging/; *Person Shrugging Emoji*, Dictionary.com, available at: https://www.dictionary.com/e/emoji/person-shrugging-emoji/.

The government objected to impeaching Quested with Government Exhibit 497G.  The objection appeared to rest primarily on hearsay grounds.  Tarrio's comment in the clip, the government argued, was "a nakedly self-serving statement." Tr. 4873.  However, the Court correctly responded,

> THE COURT: Fair. But what does that have to do with impeachment. . . Sometimes things come into evidence that the Court has to issue a limiting instruction on.

Tr. 4873.

The government then appeared to argue that Nordean should be prohibited from impeaching Quested with Government Exhibit 497G on Rule 403 grounds.  Tr. 4873.  It added,

> MR. MULROE: The jury's much more likely to take it in one way versus the other. But the second . . point . . . is that there are questions posed that we think border on the objectionable.  . . If Mr. Smith had asked, did Mr. Tarrio *say* whether he was surprised that people had gone into the building, we would have rightly objected to that . . ."
>
> . . .
>
> THE COURT: . . . I mean, I take your point, but . . . you agree that Mr. Smith toed the line properly by saying, Well, let's ask about demeanor . . . those are fair questions and, you know—and to the extent the witness gives an answer that, again, he was there for [the interview], that something like this is possibly used for impeachment—I mean, that's

3

> not—let me put it this way: It is not Mr. Smith's fault that the witness said what the witness said. I mean, it—and if it's fair game for impeachment, it's fair game. . . [I]t is absolutely fair for [the defense] to ask those questions about demeanor and things like that. . .

Tr. 4874-75 (emphasis added).

**Argument**

First, the government's hearsay-related objections to the use of its own exhibit—e.g., referring to Tarrio's "nakedly self-serving statement," Tr. 4873—are misguided. Nordean does not intend to display Government Exhibit 497G to prove the truth of the matter asserted in an out-of-court statement. Fed. R. Evid. 801(c). Hearsay is not a germane objection.

Second, it is basic that Nordean's Sixth Amendment right to confront witnesses against him necessarily includes an opportunity to impeach the witness's memory or truthfulness. *Davis v. Alaska*, 415 U.S. 308, 316 (1974) ("[T]he cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit the witness."); *United States v. Fitzsimons*, 342 F.R.D. 18, 20 (D.D.C. 2022) (Contreras, J.) (court acknowledging that video footage depicting government witness retelling "the events of January 6 differently on different occasions" would be relevant impeachment material as to the "witness's memory and truthfulness, and therefore credibility"). Here, the witness was present and observing Tarrio when the defendant visibly reacted to the fact that protesters had entered the Capitol Building on January 6. While the witness testified that he did not recall Tarrio being surprised at the intrusion, the witness's own interview footage depicts Tarrio extending his open palms and shrugging his shoulders while commenting, "I don't think any of those people were like, 'hey, we're gonna go inside.'" Quested was present and observing Tarrio during the exchange. The purpose of displaying the clip is not to demonstrate the "truth" or "falsity" of the statement,

"those people were like, 'hey, we're gonna go inside,'" whatever that may mean. Rather, the purpose is to show that, contrary to witness Quested's testimony, Tarrio was in fact visibly surprised by that development. Nordean is permitted to use Government Exhibit 497G to show either that Quested's memory of the event at issue is flawed or that his testimony is not accurate.

The government's Rule 403 arguments are baseless. The Court may instruct the jury that Government Exhibit 497G is to be considered for impeachment purposes and that the substance of the statements therein are not to be considered independently for their truth. *E.g.*, *United States v. Baftiri*, 263 F. 3d 856, 858 (8th Cir. 2001) (parties entitled to limiting instruction that impeachment material may "not be considered as substantive evidence going to the guilt or innocence of the defendant"). The government asserts that an instruction will not work because "The jury's much more likely to take it in one way versus the other." Tr. 4874. That argument fails. As the government itself has argued in this case, "Jurors are presumed to follow the instructions of the court" and "the Supreme Court has recognized that in most cases, instructions will cure any possible harm." *United States v. Singh*, 973 F. Supp. 7, 19 (D.D.C. 1997). The government has not articulated any other basis for precluding Nordean's impeachment material under Rule 403 and there is none. Moreover, the short video clip at issue is *the government's exhibit*. It is senseless for the government to argue that its own exhibit, which the government itself intends to use at trial, violates Rule 403.

Next, the government appears to argue that Government Exhibit 497G will not actually impeach Quested's testimony. Tr. 4872 ("MR. MULROE: I don't know that Mr. Tarrio's demeanor displays surprise."). This argument misses the mark. First, as indicated above, Tarrio physically displays multiple signs of surprise in the relevant clip, including extending his open palms outward and shrugging several times. Second, and perhaps more to the point, it is not for

the government to determine whether Tarrio registered surprise through his gestures in that moment—it is the jury's determination. *E.g.*, *United States v. Brown*, 503 F. Supp. 2d 239 (D.D.C. 2007) (party permitted to cross-examine witness "about specific instances for which it had a good faith basis. . ."). Nordean has a good-faith basis to believe that Tarrio's physical gestures registered surprise in Government Exhibit 497G and thus should be permitted to use that exhibit to impeach the witness in connection with his inconsistent testimony on that subject. *Davis*, 415 U.S. at 316.

Finally, the government suffers no prejudice from this impeachment material whatsoever. To the extent it fears that the jury will not follow the Court's instructions, the government is at liberty to introduce any party admission made by Tarrio in commentary immediately adjacent to the interview clip in Government Exhibit 497G. Thus, if Tarrio's mannerisms are somehow misleading to the jury in the government's estimation, it could simply cure the "problem" with its own exhibits.

Dated: January 21, 2023                    Respectfully submitted,

/s/ David B. Smith
David B. Smith, D.C. Bar No. 403068
David B. Smith, PLLC
108 North Alfred Street, 1st FL
Alexandria, Virginia 22314
(703) 548-8911 / Fax (703) 548-8935
dbs@davidbsmithpllc.com

Nicholas D. Smith, D.C. Bar No. 1029802
1123 Broadway, Suite 909
New York, NY 10010
(917) 902-3869
nds@davidbsmithpllc.com
*Counsel to Ethan Nordean*

6

**Certificate of Service**

I hereby certify that on the 21st day of January, 2023, I filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following CM/ECF user(s):

> Jim Nelson
> Assistant United States Attorney
> 555 4th Street, N.W., Room 4408
> Washington, D.C. 20530
> (202) 252-6986

And I hereby certify that I have mailed the document by United States mail, first class postage prepaid, to the following non-CM/ECF participant(s), addressed as follows: [none].

/s/ David B. Smith
David B. Smith, D.C. Bar No. 403068
David B. Smith, PLLC
108 North Alfred Street, 1st FL
Alexandria, Virginia 22314
(703) 548-8911 / Fax (703) 548-8935
dbs@davidbsmithpllc.com