UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 21-CR-175 (TJK) |
| | : | |
| ETHAN NORDEAN, et al. | : | |
| | : | |
| Defendant. | : | |

## GOVERNMENT MOTION REGARDING IMPROPER INTRODUCTION OF HEARSAY EVIDENCE

Through its cross examination, defendants seek to introduce the hearsay statements of Enrique Tarrio and other defendants for the truth of the matter asserted. Defendants seek to do this under the guise of "impeachment" of the witness. As applied by the defendants to date, the defendants' use of such impeachment testimony is improper because the foundation for impeaching the witness's credibility has not been properly laid and the use of the "impeachment" evidence is not, in fact, being used to impeach the witness's credibility. Rather, the purported "impeachment" is an impermissible end-run around the Rules of Evidence that govern the introduction of hearsay.

The Court should require defendants to proffer to the Court and the government any instances of prior hearsay statements that it seeks to use for "impeachment." Such an advance proffer will properly equip the Court to evaluate the impeachment quality of the material in light of the live testimony of the witness. Through this process, the Court can discharge its role in evaluating and enforcing the Rules of Evidence, including rule against hearsay.

**INTRODUCTION**

"As a general proposition, the testimony of a witness, after a proper foundation has been laid, may be impeached by showing former declarations, statements, or testimony which are contradictory or inconsistent with the answers given at a trial." *United States v. Gilliam*, 484 F.2d 1093, 1096 (D.C. Cir. 1973). The threshold question is whether the pretrial statement is, in fact "contradictory or inconsistent" with the answers given at trial. Through proper impeachment, a party may permissibly seek to challenge the credibility of a witness. "[P]rior inconsistent statements are admissible only for impeachment purposes, not as substantive evidence to prove the truth of the matter asserted[.]" *United States v. Wright*, 489 F.2d 1181, 1187 (D.C. Cir. 1973). "The purpose of the hearsay rule is to prohibit the use of such unsworn, uncross-examined testimony as substantive evidence in a case." *Cannady v. United States*, 351 F.2d 796, 798 (D.C. Cir. 1965), citing MCCORMICK, EVIDENCE § 224 (1954).

**ARGUMENT**

Here, the defendants seek to create "contradictory" testimony or "inconsistent" statements where there are none. The effect of Nordean's proposed "impeachment" will be to improperly elicit hearsay statements of the defendants.

A few examples from the cross examination of Mr. Quested illustrate this point. In the Trial Transcript at 4856:8-18, Mr. Quested was asked about Mr. Tarrio's statement during an interview on January 5. Mr. Quested testified that "Mr. Tarrio admitted to hav[ing] made a mistake of moving from a defensive posture to an aggressive posture." *Id.* Defense counsel then sought to "impeach" this statement by playing video clips from the interview.[1] There was nothing in the

---

[1] While defense later withdrew efforts to impeach the witness based on this statement, the sequence is instructive.

2

video to be played that was "contradictory" or "inconsistent" with Mr. Quested's testimony. The event was pretext for the introduction of improper hearsay testimony. *Wright*, 489 F.2d at 1187. The Court should require a proffer from defense counsel that specifically identifies any hearsay statements that it will seek to elicit from Mr. Quested under the guise of "impeachment."

Another question pending from Friday further underscores this issue. Defendant Nordean sought to cross examine the witness about his impression of Enrique Tarrio in the hotel room in Baltimore, Maryland several hours after the attack on the Capitol on January 6. Tr. 4654:18-23 (Quested: "I left the Capitol around 6:00 [p.m.], when the curfew was imposed" and "we went to interview Mr. Tarrio" in Baltimore.). On direct examination, Mr. Quested was asked to identify the Proud Boy in the room (i.e., "Gilbert") and to describe that individual's demeanor, which Mr. Quested described as "energized." Mr. Quested was asked about statements made by "Gilbert" and about any reaction that Mr. Tarrio had to "Gilbert's" statement to the television. Mr. Quested testified that he did not notice a reaction. Tr. 4660:12-14 ("Q. When Gilbert said those things to the television, did you notice whether Mr. Tarrio reacted in any way? A. No, I didn't.")

On cross examination, Mr. Quested was asked, "was it your impression that Mr. Tarrio was surprised that individuals had actually entered the Capitol building?" Tr. 4844:6-8. Mr. Quested responded, "I don't recall if Mr. Tarrio was surprised that people had entered the Capitol Building." *Id.* at 4844:9-10. Defendants then sought to "impeach" the witness using a short clip of video that features no statement by Mr. Quested. *Id.* at 4844:23-24. The impeachment is again improper.

Just to begin, the defense does not seek to "impeach" the witness with a prior statement by the witness, which is the classic impeachment. Second, the use of a leading question with an embedded subjective conclusion—using a term not testified to by the witness—is improper foundation for impeachment without providing the witness an opportunity to explain. For example,

in response to the leading question, "would you say you were *distraught* when you lost your lucky pen?" a witness may answer, "No." The witness cannot be impeached with a video showing the witness pounding a table in response to the news—the witness may simply disagree with the characterization of being "distraught" as opposed to "upset." Third, the incident is even further attenuated because the question relates to the *perceived mental state of someone else.* Mr. Quested's perception and recollection of Mr. Tarrio's mental state on the evening of January 6, which is the testimony that defendants seek to illicit, is informed by the entirety of his time with Mr. Tarrio on the evening of January 6. This is particularly so when the cross examination has veered into a subject that the witness did not address during his direct examination, *i.e.*, Mr. Tarrio's mental state in the hotel on the evening of January 6—hours after Tarrio had learned that rioters had entered the building.

In addition to the fact that the question posed to Mr. Quested called for *his* subjective assessment of Mr. Tarrio, the video the defendant seeks to use for impeachment purposes requires another layer of subjective analysis that renders its impeachment quality further attenuated. As an initial matter, Mr. Quested is unable to assess what Mr. Tarrio was looking at when he made the statement. That uncertainty alone lessens whatever minimal impeachment value the clip may have as to Mr. Quested's assessment of Tarrio's level of surprise. Furthermore, Mr. Tarrio's affect is flat—there is no evident surprise. Mr. Tarrio's flat statement as to whether the people at the First Street gate breach believed they would eventually wind up in the Capitol building has no impeachment value as to Mr. Quested's overall assessment of Mr. Tarrio's demeanor and level of surprise on the evening of January 6.

Defendants should present the Court with a proffer of any hearsay statements by the defendants or any other party (*e.g.*, Eddie Block) that they will seek to introduce through

4

"impeachment" or "refreshing recollection." By doing so, the Court would be properly prepared to address whether a proper foundation for impeachment has been laid such that the hearsay statement is, in fact, "impeaching" a witness's credibility. That is the only proper purpose of impeachment testimony, and the Court must be put in a position to serve this important gatekeeping function to ensure that the Rules of Evidence are enforced.

                                    Respectfully submitted,

                                    MATTHEW M. GRAVES
                                    United States Attorney
                                    DC Bar No. 481052

By:      */s/ Jason McCullough*
           JASON B.A. MCCULLOUGH
           NY Bar No. 4544953
           ERIK M. KENERSON, OH Bar No. 82960
           NADIA E. MOORE, NY Bar No. 4826566
             On Detail to the District of Columbia
           Assistant United States Attorneys
           601 D Street, N.W.
           Washington, D.C. 20530
           (202) 252-7233 //
           jason.mccullough2@usdoj.gov

By:      */s/ Conor Mulroe*
           CONOR MULROE, NY Bar No. 5289640
           Trial Attorney
           U.S. Department of Justice, Criminal Division
           1301 New York Ave. NW, Suite 700
           Washington, D.C. 20530
           (202) 330-1788
           Conor.Mulroe@usdoj.gov