UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) Case No. 1:21-cr-175-TJK |
| v. | ) |
| | ) |
| ETHAN NORDEAN, et al., | ) |
| | ) |
| Defendants. | ) |

**NORDEAN'S RESPONSE TO THE GOVERNMENT'S MOTION TO PRECLUDE CROSS-EXAMINATION ON TOPICS HE HAS IDENTIFIED AND MOTION TO STRIKE MILLER'S TESTIMONY (ECF NO. 687)**

On March 12, the government filed a brief moving the Court to preclude Nordean "from pursuing further cross-examination [of Special Agent Miller] on [] topics he has identified" and to strike "the questions he has already asked. . ." ECF No. 687. The government's 18-page brief proffers factual information in support of its motion which is not in the record and the defense has had no opportunity to challenge. For the following reasons, the Court should deny the government's motion.

**Argument**

    **A. The government's motion is premised on the legally erroneous claim that cross-examination may not go beyond the subject matter of direct examination for any reason**

The government's motion to bar Nordean from cross-examining agent Miller with her own statements and conversations rests on the argument that cross-examination is invariably limited to the scope of direct examination. ECF No. 687, pp. 2, 3, 5 ("A. The Topics Nordean Seeks to Explore are *Outside the Scope of the Direct Testimony*"; "B. Jencks is *limited to the scope of direct testimony*"; "C. If a prior statement relates to matter *outside the scope of direct*,

1

its nondisclosure is irrelevant and excludable under Rule 403") (emphasis added).  That premise is legally erroneous.

The Federal Rules of Evidence provide:

Cross-examination should not go beyond the subject matter of the direct examination **and matters affecting the witness's credibility**. The court may allow inquiry into additional matters as if on direct examination.

Fed. R. Evid. 611(b) (emboldening added); *see also United States v. Raper*, 219 U.S. App. D.C. 243, 676 F.2d 841, 846 (D.C. Cir. 1982) ("Matters affecting the credibility of the witness are always open to cross-examination.").

Thus, if the topics on which Nordean seeks to cross-examine agent Miller with her statements either fall within the "subject matter of the direct examination" or "affect[] the witness's credibility," he may not be precluded from examination on them.  The remaining sections of the government's brief do not somehow disprove Nordean's good-faith basis for using Miller's statements to cross-examine her under those rule-authorized bases.

>   B.  **The issue whether Miller participated in the alteration of material in a CHS report used in this investigation goes to credibility**

As the Court knows, agent Miller was examined as follows: "[D]id you withhold Lync messages [from the prosecutors] about whether inaccurate CHS-related information should be disclosed to the defense?" Tr. 12710.  The government's production on March 10 showed that Miller had deleted her Lync messages in the following exchange with another agent involved in this investigation:



In its filing today, the government provided a page-long explanation for the exchange, to show that this Lync communication should be regarded as benign. ECF No. 687, p. 7. Here is the explanation:

> That message referred to an email sent by the CHS, who is an online researcher and not a member of the Proud Boys. The agent who sent it had recently transitioned to a supervisory role, and thus was no longer a handler of that source. He also had not realized he was still copied on emails from the online source. The supervisory agent made the request to edit out his name because he believed he was not copied (and thus not "present" for purposes of the email contact), and because per FBI policy, he cannot approve the write-up of a source meeting he was involved in. After Agent Miller told the supervisory agent that he was, in fact, copied on the email from the online source, he withdrew his request not to be listed, a different supervisor approved the report, and the online source was instructed not to cc the other agent in future emails. In short, the exchange concerns a routine clerical matter and does not suggest any wrongdoing on the part of the FBI generally or of Agent Miller personally.

ECF No. 687, p. 7.

Nordean does not deny that those facts could be true. However, the government's summary presentation of facts in a brief—accompanied by no sworn declaration and without even an identified source for the information—cannot *eliminate Nordean's rule-based right to cross-examine the witness about an exchange that— on its face—does not appear benign*. If the presentation of unsworn facts briefed by the government today is accurate, the witness can testify to their veracity under oath. On the other hand, the witness may also testify to facts that

3

contradict the government's account today.[1]  If, for example, the agent speaking with agent Miller directed her to "edit out that [he] was present" from a "CHS report" for reasons other than his "transition[] to a supervisory role"—for example to hide his identify from a "CHS report" that would be produced to the defense, prompting the agent to be called as a witness—the matter would of course go to credibility.  Such alteration of a federal record could constitute an offense.  18 U.S.C. §1001.  The government represents that "After Agent Miller told the supervisory agent that he was, in fact, copied on the email from the online source, he withdrew his request" to "edit out that [he] was present." ECF No. 687, p. 7.  Again, that information could be true, but the government does not *eliminate Nordean's ability to seek sworn testimony from Miller* based on unsworn statements from unidentified sources in a legal brief filed in the middle of her cross-examination.  On the face of the messages themselves, Miller responds to the "edit out" demand with the question, "from which one?," indicating she was determining how, or at least whether, to comply with the request.  That is more than a sufficient basis to *merely examine* the witness on the subject.

Making the government's motion to preclude all examination more problematic still, the government declines to produce to the defense the Lync messages following the exchange between Miller and the agent about "edit[ing] out that [he] was present" from the CHS report.  If these messages merely support the government's explanation that "After Agent Miller told the supervisory agent that he was, in fact, copied on the email from the online source, he withdrew his request" to "edit out that [he] was present" from the report, the government has no reason not to produce the statements.  Certainly, it has proffered no reason.  Accordingly, Nordean should

---

[1] That is one reason, among many others, why it would be inappropriate for the government to communicate information newly disclosed to the defense on March 10 to the witness before she resumes cross-examination.

4

not be barred from cross-examining the witness on a subject plainly going to credibility.  U.S. Const. art. VI; *Raper*, 676 F.2d at 846.

### C. The issue whether Miller accessed attorney-client communications of a defendant regarding trial strategy goes to credibility; the government's arguments about whether the communications are formally privileged are beside the point and erroneous

Miller's Lync messages unequivocally show that, contrary to her testimony, she received from another agent a defendant's attorney-client communications regarding trial strategy:

| Timestamp | From | To | Message |
|---|---|---|---|
| 2021-10-21 19:51:59 | twang2@fbi.sgov.gov | nmiller2@fbi.sgov.gov | found an email thread with REHL and his attorney MOSELEY. the attorney raised some interesting points |
| 2021-10-21 19:52:54 | nmiller2@fbi.sgov.gov | twang2@fbi.sgov.gov | Hopefully all related to him pleaing out |
| 2021-10-21 19:53:31 | twang2@fbi.sgov.gov | nmiller2@fbi.sgov.gov | nope. he mentioned how we (GOV) did things improperly |
| 2021-10-21 19:53:37 | nmiller2@fbi.sgov.gov | twang2@fbi.sgov.gov | oy |
| 2021-10-21 19:54:02 | twang2@fbi.sgov.gov | nmiller2@fbi.sgov.gov | i need to find other emails, but this one email def indicates that they want to go to trial. but dont freak out jason and luke yet |
| 2021-10-21 19:54:07 | twang2@fbi.sgov.gov | nmiller2@fbi.sgov.gov | or urself |
| 2021-10-21 19:54:12 | nmiller2@fbi.sgov.gov | twang2@fbi.sgov.gov | Im not freaked out |
| 2021-10-21 19:54:17 | nmiller2@fbi.sgov.gov | twang2@fbi.sgov.gov | You are a grown man. lol |

An agent involved in the investigation states to Miller, "this one email def indicates that [Defendant Rehl and his attorney] want to go to trial." The agent says that one of the lead prosecutors on this matter should not be alerted, "yet." The government's suggestion that a defendant's conversation with his lawyer about whether to go to trial is not "trial strategy" is risible. By definition, it is the most fundamental trial-related question.

Much of the government's brief is premised on the notion that the constitutionality (and ethical propriety) of this agent exchange turns on finer points of attorney-client privilege and waiver.  ECF No. 687, pp. 14-18.  That is wrong.  The government suggests the Fifth and Sixth Amendment analysis exclusively turns on a reading of *Weatherford v. Bursey,* 429 U.S. 545, 558, 51 L. Ed. 2d 30, 97 S. Ct. 837 (1977).  That is also wrong.

Before *Weatherford* was decided, the D.C. Circuit addressed this question, twice. *Caldwell v. United States*, 205 F.2d 879 (D.C. Cir. 1953); *Coplon v. United States*, 191 F.2d 749

(D.C. Cir. 1951). The Supreme Court has characterized the rule from *Caldwell* and *Coplon* as follows: "a surreptitious invasion by government agent into the legal camp of the defense may violate the protection of the Sixth Amendment. . . ."*Hoffa v. United States*, 385 U.S. 293, 306 (1966). "Both [*Caldwell* and *Coplon*] dealt with government intrusion of the grossest kind upon *the confidential relationship* between the defendant and his counsel." *Id.* (emphasis added). The Supreme Court "assume[d]" that *Caldwell* and *Coplon* "were rightly decided." *Id.* The precedents are still good law in the D.C. Circuit. *Caldwell*, 205 F.2d 879; *Coplon*, 191F.2d 749.

In *Coplon*, government agents deliberately intercepted telephone consultations between the defendant and her lawyer before trial. *Coplon*, 191 F.2d at 757. Interception alone was a violation of the defendant's Fifth and Sixth Amendment rights, the D.C. Circuit held. *Id.* "It is well established that an accused does not enjoy the effective aid of counsel if he is denied the right of private consultation with him." *Id.* The Court added:

> The right of an accused, confined in jail or other place of detention pending a trial of the charge against him, to have an opportunity to consult freely with his counsel without any third person, whose presence is objectionable to the accused, being present to hear what passes between the accused and his counsel, is one of the fundamental rights guaranteed by the American criminal law- a right that no Legislature or court can ignore or violate. . . . The same court held in *Ex parte Snyder*, 1923, 62 Cal.App. 697, 217 P. 777, that failure to allow a defendant confined in jail to have private consultation with his counsel violates his constitutional rights, and again in 1943 the California court, in *Ex parte Qualls*, 1943, 58 Cal.App.2d 330, 331, 136 P.2d 341, 342, said, 'Their right to private consultations with their counsel is a corollary of the constitutional right to be represented by counsel in their defense.'

*Coplon*, 191 F.2d at 758.

Nor was the error cured by the government's argument that the accused "had on other occasions ample personal consultation with his lawyer, face to face, which no person overheard. That fact would not erase the blot of unconstitutionality from the act of intercepting other consultations." *Coplon*, 191 F.2d at 759. Furthermore, the D.C. Circuit held that harmless error

6

analysis does not apply. "The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." *Id.* As explained, *Coplon* is still good law in this Circuit.

*Hoffa-Coplon-Caldwell* require rejection of every government argument as to Miller's access to attorney-client communications. First, the *Coplon* analysis does not turn on the nicer points of privilege and waiver. The decision's rule does not turn on privilege whatsoever. Rather, it concerned "intercept[ed] . . . telephone messages between [the defendant] and counsel before and during trial." *Coplon*, 191 F.2d at 759. Indisputably, Agent Twang gained access to Rehl's messages with his lawyer before trial and shared the content with Agent Miller. Second, as *Coplon* held, defendants' "right to *private* consultations with [defense] counsel is a corollary of the constitutional right to be represented by counsel in their defense." To the extent the government contends that the jail explicitly denied Rehl a right to such private consultations by phone and email, that is not an argument that his Fifth and Sixth Amendment rights were *not* violated; it is an argument that they were violated—and certainly not an argument that such communications were lawfully reviewed and used by agents. Absurdly, the government both argues that Rehl had no ability to send or receive private communications with his lawyer by phone or email *and* that the government may constitutionally access them to gain a litigation advantage ("they want to go to trial"). Third, *Coplon* explicitly rejects any argument that Rehl's attorney-client communications were properly access by agents because the defendant could have met "face to face" with his lawyer. *Coplon*, 191 F.2d at 759. Finally, *Coplon* recognizes that agents' interception and review of attorney-client communications is at least ethically improper. That alone is a basis to challenge an agent's credibility, separate and apart from a constitutional violation.

*Weatherford* does not purport to overrule *Coplon*. *Weatherford*, 429 U.S. at 553. To the contrary, just like *Coplon*, *Weatherford*'s rule does not turn on whether the defendant can establish that every attorney-client communication intercepted by the government satisfies the formal attorney-client privilege and waiver rules. The body of the decision does not reference "privilege" at all, but rather "conversations overheard [] between the criminal defendant and his counsel during trial preparation." *Weatherford*, 429 U.S. at 551.

But even if a potential Fifth and Sixth Amendment violation turned on privilege and waiver—it does not—the government's argument would have to be rejected. Even if Rehl was required to agree to disclose his attorney-client communications to BOP merely in order to speak with his lawyer, that selective waiver would not waive the privilege as to agents and prosecutors in this case. Selective waiver arguments are rejected in this Circuit only where the privilege is being used as a sword and a shield. *SEC v. Lavin*, 111 F.3d 921, 933 (D.C. Cir. 1993) ("The prohibition against selective disclosure of confidential materials derives from the appropriate concern that parties do not employ privileges both as a sword and a shield."). Where the holder of the privilege makes a disclosure of a confidence to a third party *in order to be able to use the privilege for its proper purpose in the first place*, rather than use it to pursue "unfair tactical manipulation," it is error to find waiver of the privilege as against every party. *Lavin*, 111 F.3d at 933. Here, even if the government's factual assertions about Rehl's waiver were accurate, they would only show that the defendant selectively disclosed the confidential communications to BOP merely in order to communicate those messages to his lawyer, not to gain a tactical advantage. Thus, in that case Rehl would have made a selective waiver, recognized by the D.C. Circuit, that does not encompass FBI agents investigating the defendant. *Id.*

### D. The government's motion omits Miller's Lync statements about Aaron of the Bloody East which satisfy even the government's crabbed definition of "scope"

Miller was cross-examined as follows: "You didn't withhold Lync messages about whether Aaron of the Bloody East was not involved in the planning chats?" The witness testified that she did not withhold such messages from the prosecutors. Tr. 12710.

Miller testified on direct, many times, about Aaron of the Bloody East's comments "in the planning [Telegram] chats." Tr. 12324; 12339; 12340; 12341; 12381; 12685. Her hidden Lync messages show she did withhold from prosecutors her part of conversations "about whether Aaron of the Bloody East was not involved in the planning chats."

| Timestamp | From | To | Message |
|---|---|---|---|
| 2021-10-21 19:11:15 | twang2@fbi.sgov.gov | nmiller2@fbi.sgov.gov | i know! |
| 2021-10-21 19:11:40 | twang2@fbi.sgov.gov | nmiller2@fbi.sgov.gov | i dont see any emails form Aaron past the 6th, even though there are emails as late as yesterday |
| 2021-10-21 19:12:10 | nmiller2@fbi.sgov.gov | twang2@fbi.sgov.gov | Also you guys have a case on Sonny or no? Someone pinged us earlier and asked. Hanak told them to get with you. I told him i dont recall seeing anything that he went on Jan 6 |
| 2021-10-21 19:12:19 | nmiller2@fbi.sgov.gov | twang2@fbi.sgov.gov | Maybe he sent them from Amandas account |
| 2021-10-21 19:12:23 | nmiller2@fbi.sgov.gov | twang2@fbi.sgov.gov | He sleeps over alot |
| 2021-10-21 19:12:24 | nmiller2@fbi.sgov.gov | twang2@fbi.sgov.gov | Bahaha |
| 2021-10-21 19:12:30 | twang2@fbi.sgov.gov | nmiller2@fbi.sgov.gov | i also want to know if his house got foreclosed |
| 2021-10-21 19:12:39 | nmiller2@fbi.sgov.gov | twang2@fbi.sgov.gov | Oooh. I wonder. |
| 2021-10-21 19:12:44 | nmiller2@fbi.sgov.gov | twang2@fbi.sgov.gov | I hope so |
| 2021-10-21 19:12:56 | twang2@fbi.sgov.gov | nmiller2@fbi.sgov.gov | i dont think so. he wasnt too involved with the planning chat, nor do we know he was down there |
| 2021-10-21 19:12:59 | twang2@fbi.sgov.gov | nmiller2@fbi.sgov.gov | think he had to work |
| 2021-10-21 19:13:03 | nmiller2@fbi.sgov.gov | twang2@fbi.sgov.gov | Yeah thats what i thought |
| 2021-10-21 19:14:30 | twang2@fbi.sgov.gov | nmiller2@fbi.sgov.gov | i mean if we really want to work all the PB members, he's the one to go after |
| 2021-10-21 19:14:43 | twang2@fbi.sgov.gov | nmiller2@fbi.sgov.gov | especially his paypal, his wife's paypal and her venmo acct |
| 2021-10-21 19:15:55 | nmiller2@fbi.sgov.gov | twang2@fbi.sgov.gov | I agree with you!!! |
| 2021-10-21 19:21:05 | twang2@fbi.sgov.gov | nmiller2@fbi.sgov.gov | just listened to about 7min of yelling... Zach to Amanda lol |
| 2021-10-21 19:22:04 | nmiller2@fbi.sgov.gov | twang2@fbi.sgov.gov | Bahah. Did he find out shes hooking up with Aaron?! |
| 2021-10-21 19:22:18 | nmiller2@fbi.sgov.gov | twang2@fbi.sgov.gov | Im waiting for this to be a legit thing. |
| 2021-10-21 19:22:28 | nmiller2@fbi.sgov.gov | twang2@fbi.sgov.gov | and when it is... popcorn! |
| 2021-10-21 19:23:48 | twang2@fbi.sgov.gov | nmiller2@fbi.sgov.gov | not yet... havent come across that one |
| 2021-10-21 19:23:55 | nmiller2@fbi.sgov.gov | twang2@fbi.sgov.gov | dang it |
| 2021-10-21 19:23:57 | twang2@fbi.sgov.gov | nmiller2@fbi.sgov.gov | hahaha ill bring beer |

Citing *Norinsberg Corp. v. United States Dep't of Agric.*, 47 F.3d 1224, 1229 (D.C. Cir. 1995), the government contends that Miller may be cross-examined with her Lync messages only to the extent they relate to the specific exhibits about which she testified on direct. ECF No. 687, p. 4. Even if that were so, Nordean would be permitted to cross-examine Miller about how she

deleted her Lync messages in conversations concerning whether Aaron of the Bloody East "wasn't too involved with the planning chat."

The government argues that Nordean should be permitted to show Miller's Lync messages alone and no other agent's. That makes no sense. Miller was asked whether she deleted her own messages which were part of conversations about subjects related to testimony. If Nordean cannot show the messages to which Miller is responding, the jury would not be able to determine whether Miller complied with her legal obligation to produce her "related" messages—the purpose of cross-examining the witness as to this issue of credibility. The fact-finder must be allowed to see "any other part" of the writing that "in fairness ought to be considered at the same time." Fed. R. Evid. 106. Of course, Nordean would not show other agents' messages to Miller on the same subject to prove the truth of the matter asserted but rather to show what Miller meant and referred to in her own statements.

Dated: March 12, 2023                                      Respectfully submitted,

/s/ David B. Smith
David B. Smith, D.C. Bar No. 403068
David B. Smith, PLLC
108 North Alfred Street, 1st FL
Alexandria, Virginia 22314
(703) 548-8911 / Fax (703) 548-8935
dbs@davidbsmithpllc.com

Nicholas D. Smith, D.C. Bar No. 1029802
1123 Broadway, Suite 909
New York, NY 10010
(917) 902-3869
nds@davidbsmithpllc.com
*Counsel to Ethan Nordean*

**Certificate of Service**

I hereby certify that on the 12th day of March, 2023, I filed the foregoing motion with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following CM/ECF user(s):

And I hereby certify that I have mailed the document by United States mail, first class postage prepaid, to the following non-CM/ECF participant(s), addressed as follows: [none].

/s/ David B. Smith
David B. Smith, D.C. Bar No. 403068
David B. Smith, PLLC
108 North Alfred Street, 1st FL
Alexandria, Virginia 22314
(703) 548-8911 / Fax (703) 548-8935
dbs@davidbsmithpllc.com