UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | No. 1:21-cr-175 (TJK) |
| v. : | |
| : | |
| ZACHARY REHL, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S RESPONSE TO ZACHARY REHL'S MOTION TO COMPEL DISCLOSURE OF ALL FBI INTERVIEW REPORTS AND ALL DOJ MEMOS RELATING TO THE RECORDING AND REPORTING OF THE DEFENSE TEAM**

The United States of America respectfully files this response to defendant Zachary Rehl's Motion to Compel Disclosure of All FBI Interview Reports and All DOJ Memos Relating to the Recording and Reporting of the Defense Team ("Def. Mtn.") (ECF 717). In his motion, defendant Rehl moves the Court for an order to compel the government to disclose all reports, recordings, and memoranda prepared by the Federal Bureau of Investigation ("FBI"), or attorneys at the United States Attorney's Office or the U.S. Department of Justice regarding or relating to "any reporting on and recordings of the defense team." *Id.* at 1. Defendant Rehl's motion is moot because no such reports, recording or memoranda exist.

Defendant Rehl contends that his motion is based on "serious and substantiated allegations of governmental conduct surrounding the surreptitious invasion and interference of the defense team by the government through a confidential human source [hereinafter "CHS"], at the government's behest." *Id.* at 1-2. This entire premise is baseless. As background, the government neither relied upon any evidence from nor referenced the CHS in question in its case-in-chief. It was only after counsel for defendant Enrique Tarrio, one of Rehl's co-defendants, proffered on March 21, 2023, that they (1) intended to call the CHS, and (2) that they intended to elicit evidence related to reporting the CHS had provided to the FBI, that the CHS's reporting became relevant

and arguably discoverable.[1] *See United States v. Marshall*, 132 F.3d 63, 69 n. 2 (D.C. Cir. 1998) ("To give rise to a disclosure obligation, the evidence's materiality must, of course, be evident to a reasonable prosecutor. The prosecutor need not guess that evidence may become material as a consequence of a defendant's not-yet-revealed strategic decisions."); s*ee also In re Sealed Case, No. 99-3096 (Brady Obligations)*, 185 F.3d 887 (D.C. Cir. 1999) (government's disclosure obligations triggered once defense revealed in opening statement that witness would offer exculpatory testimony in the defense case).

Furthermore, it was only after the government disclosed the CHS's status as a CHS to the defense team that the government learned from the defense team that the CHS (according to the defense team) had been in communication with one or more counsel for the defense, that the CHS had participated in prayer meetings with one or more of the defendants' families, and that the CHS had engaged in discussions with one of the defendant's family members about replacing one of the defense counsel. *See* Def. Mtn. at 2.

As set forth in the attached declaration by FBI Special Agent Kristina Spindel ("Spindel Decl."), the FBI never tasked the CHS with gathering any information on the defendants or their defense counsel. *See* Spindel Decl. at ¶¶ 6, 9. And although the FBI was generally aware that the CHS was active in assisting defendants charged with crimes related to the January 6, 2021 attack on the U.S. Capitol and their families, including by assisting in fundraising efforts and protesting against their conditions of confinement, the FBI intentionally chose to never ask the CHS about her relationship with defendant Enrique Tarrio or any of the other defendants or counsel in this

---

[1] The CHS's nickname (but not true name) was included on the list of 87 potential witnesses provided by defense counsel to the government on December 17, 2022, as part of the Joint Defense Witness List. The government learned at some point thereafter that the individual had a CHS relationship with the FBI. As discussed below, the CHS's reporting to the FBI did not appear on its face to pertain to these charged defendants. The government has provided the Court, *ex parte* and under seal*,* documentation of the CHS's reports to the FBI.

matter. *See id.* at ¶ 9. Moreover, upon learning from the CHS that the CHS had participated in a deposition related to this case and had been subpoenaed as a defense witness in the case in January 2023, the FBI promptly notified the CHS that it was terminating its source relationship.[2] *See id.* at ¶ 8.

That certain defendants or defense counsel chose to communicate with the CHS about matters related to this prosecution is a decision made by them. However, the government in no way orchestrated such alleged voluntary interactions. Moreover, the government is still unaware of the nature and scope of any contact between the CHS and any of the defendants or their counsel. There has been no intrusion on the defense camp, and no such records or recordings exist.

## CONCLUSION

For the foregoing reasons, defendant Rehl's motion to compel should be denied.

Respectfully Submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     /s/ Denise Cheung
Denise Cheung
Chief, Criminal Division
D.C. Bar No. 451714
601 D Street NW
Washington, D.C. 20530
(202) 252-7522/ denise.cheung@usdoj.gov

/s/ Jennifer Blackwell
Jennifer Blackwell
Deputy Chief, Criminal Division
D.C. Bar No. 481097
(202) 252-7068/jennifer.blackwell3@usdoj.gov

---

[2]   Notably, the trial team had no knowledge that the CHS had been terminated as a source for this reason at the time of the proffer about the CHS provided by defense counsel.