UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
|  | ) |
|  | ) Case No. 1:21-cr-175-TJK |
| v. | ) |
|  | ) |
| ETHAN NORDEAN, et al., | ) |
|  | ) |
| Defendants. | ) |
|  | ) |

**NORDEAN'S MOTION FOR JUDGMENT OF ACQUITTAL**

On May 4, the jury returned a verdict finding Nordean guilty on Counts One through Six of the Third Superseding Indictment and not guilty on Count Nine. As to Counts Seven and Eight, the jury was unable to reach unanimity. Nordean moves the Court for a judgment of acquittal notwithstanding the guilty verdict on the first six counts. Fed. R. Crim. P. 29(c). He incorporates into this motion all his pretrial and trial objections and motions. In raising specific issues here, he does not waive preserved objections to pretrial or trial errors and instead reserves the right to appeal them.

**Argument**

**I.    Standard for Rule 29 motions**

Rule 29 provides that "[i]f the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal." Fed. R. Crim. P. 29(c). Such a motion for judgment of acquittal should be granted where the evidence is not "sufficient to permit a rational trier of fact to find all the essential elements of the crime beyond a reasonable doubt." *United States v. Cook*, 526 F. Supp. 2d 10, 18 (D.D.C. 2007), *aff'd*, 330 Fed. Appx. 1, 2009 U.S. App. LEXIS 8384 (D.C. Cir. Apr. 21, 2009). The Court "must view the evidence in the light most favorable to the

1

verdict." *United States v. Campbell*, 702 F.2d 262, 264, 226 U.S. App. D.C. 283 (D.C. Cir. 1983).

## II. A judgment of acquittal should be entered on Counts One through Six

### A. The conspiracy convictions on Counts One though Four do not rest on charges that state offenses, much less on sufficient evidence

The jury found Nordean guilty of seditious conspiracy, 18 U.S.C. § 2384 (Count One); conspiracy to obstruct an official proceeding, 18 U.S.C. § 1512(k) (Count Two); obstruction of an official proceeding, 18 U.S.C. § 1512(c)(2) (Count Three); and conspiracy to impede or injure a federal officer, 18 U.S.C. § 372 (Count Four). None of those charges stated an offense and even if they had, the government's evidence was insufficient for any reasonable fact finder to find the properly interpreted elements established beyond a reasonable doubt.[1]

As to Counts Two and Three, a judge on the court of appeals has comprehensively shown how the government is abusing § 1512(c)(2), an evidence-impairment crime, in the January 6 context. *United States v. Fischer*, 64 F.4th 329, 362 (D.C. Cir. 2023) (Katsas, J., dissenting). Assuming arguendo that Judge Walker's concurring opinion in *Fischer* is the holding of the court, the government presented no evidence at trial that Nordean acted on January 6 with "the intent to procure a benefit which [he] *knows* is unlawful." *Id.* at 354 (Walker, J., concurring in part) (emphasis original). Even assuming the evidence sufficiently showed that Nordean acted on January 6 to obtain a benefit for the former president, no evidence demonstrated that Nordean knew that the benefit—reelection, presumably—was an "unlawful" outcome. To the contrary, to the extent the government showed at trial that Nordean sincerely believed the 2020 presidential election was "stolen" from the former president, the only reasonable inference was that Nordean

---

[1] Nordean incorporates by reference all arguments he made in moving pretrial to dismiss those counts and renews them in the context of evidence sufficiency.

2

understood that the former president's reelection was a lawful benefit, not that Nordean knew it was an "unlawful" one. *Id.*

Assuming arguendo that Judge Pan's lead opinion is affirmed by the Supreme Court and that Judge Walker's concurrence does not control, the government did not present sufficient evidence at trial to establish the § 1512(c)(2) conspiracy in Count Two. Setting aside character evidence and incredible cooperating witness testimony (*infra*), the government's case-in-chief rested on miscellaneous chats among the defendants and third parties in Telegram. Indeed, because a juror gave an interview one day after the verdict, we know that the jurors themselves appear to have based their conspiracy verdict on the Telegram chats. *Inside the Proud Boys Jury*, Vice, May 5, 2023, available at: https://www.vice.com/en/article/epvxqw/enrique-tarrio-proud-boys-jury.

However, looking at this same evidence earlier in the case, the Court had this to say:

> [L]ook, I also understand the argument that, Judge, look at the context and, from what happened, you can infer that this was a plan to do violence. Okay. Maybe that gets you somewhere, but I think there were probably a lot of people showing up that day with a lot of . . . different plans. Some went one way; some went the other way. In terms of connecting the planning to violence . . . these messages . . . don't move the needle that much.

4/6/21 Hr'g Trans., p. 23:1-10.

The Court was right in April 2021, of course. The Telegram chats did not show Nordean agreeing with anyone to obstruct Congress's electoral vote count on January 6. They did not show him discussing the vote count. They did not show him betraying any understanding of the vote count. They did not show him contemplating entering the Capitol Grounds or Building. Instead, the chats show him agreeing to do what thousands of other Americans did, i.e., travel to D.C. to protest the 2020 election results. As everyone knows, every cooperating witness— including Matt Greene, Jeremy Bertino and Charles Donohoe—has informed the government on

many occasions that there was no Proud Boys plan or agreement to stop or delay the electoral vote count, except in the trivial noncriminal sense that all protest in D.C., by definition, is directed at influencing Congress. They have informed the government that the initial breach at the Peace Circle was spontaneous, as virtually every witness to the event has told investigators or testified. If Nordean's presence in a crowd of protesters moving in the same direction amounts to "tacit conspiracy," that implies that every mob is ipso facto a legal conspiracy. That has never been the law and it isn't today, as the parties know.

Uncontested defense evidence showed that, minutes before the defendant group walked from the food trucks outside the Labor Building to the Peace Circle Nordean told his associates that he was hungover and wanted to head back to their hotels. That is what Travis Nugent testified (and explained to government agents shortly after January 6). He also testified that after the initial breach at the Peace Circle, Nordean announced that he was going forward to find his friends, who had ventured ahead first. Another witness, Michale Graves, testified that he reached an agreement with Nordean on January 5 to meet back at their D.C. Airbnb residence the following day around 3-4 p.m. with a view to later holding a musical performance around 7 p.m. These unrebutted facts are irreconcilable, of course, with any plan or agreement to storm the Capitol to stop the vote count. So was ample video evidence showing Nordean giving directions throughout the day of January 6 that were inconsistent with a § 1512(c)(2) conspiracy, such as when Nordean advised the marching group they would head back to the "Stop the Steal" rally on the Ellipse after stopping by the Capitol.[2] Common sense suggests the bare fact that Nordean

---

[2] This evidence also vitiated any argument that sufficient evidence established Nordean's *mens rea* on Count Three.

allowed himself to be filmed the entire day makes nonsense of the government's conspiracy charge.

To conclude that the evidence was insufficient to convict is accurate but incomplete. In over two years of litigation, the government has not demonstrated any interest in ordinary evidence, by which Nordean means facts going to whether the charged offenses were committed, as opposed to derogatory information about the defendants concerning their political associations and materials calculated to arouse a D.C. jury's partisan prejudice. As the former acting U.S. Attorney who initially presided over this case explained it on TV, charging decisions in this investigation were made based on this criterion:

> [T]o ensure that there was shock and awe that we could charge as many people as possible . . . And it worked because we saw through media posts that people were afraid to come back to D.C. because they're like, "If we go there, we're gonna get charged."

*Inside the Prosecution of the Capitol Rioters*, CBS News, Mar. 22, 2021, available at: https://www.cbsnews.com/news/capitol-riot-investigation-sedition-charges-60-minutes-2021-03-21/.

Nor did the government present sufficient evidence at trial to prove seditious conspiracy (Count One) or conspiracy to impede or injure a federal officer (Count Four). Nordean's pretrial motions showed that the government's interpretation of § 2384 is inconsistent with relevant constructive treason precedent stretching back three hundred years; its interpretation of § 372 is contradicted by, among other things, the express text of the Constitution. Recent reporting now suggests the reason why over a year elapsed between Nordean's arrest and the filing of seditious conspiracy charges here: the highest levels of the Justice Department had been concerned that the government's construction of § 2384 in the January 6 context was historically wrong and thus that resulting convictions would be vacated on appeal. *FBI Resisted Opening Probe into Trump's Role in Jan. 6 for More than a Year*, Wash. Post, June 20, 2023, available at:

https://www.washingtonpost.com/investigations/2023/06/19/fbi-resisted-opening-probe-into-trumps-role-jan-6-more-than-year/.

The Department's interpretive concerns were justified. Congress does not "execute" federal law. Even if it did, long-standing precedent holds that "preventing" a law's execution refers to efforts to stop a law in all its applications and at all times, not to challenges to a law's application to a set of facts in a particular instance. Surely, all concerted action to forcibly oppose government "authority" in the abstract cannot constitute seditious conspiracy; that would transform many prosaic obstruction-of-justice offenses and nearly every interference-with-law-enforcement crime (such as the hundreds of police assaults on January 6) into a crime akin to treason. As with § 1512(c)(2), the government is contorting the law in a shape that finds no support or analogy in its long history.

The facts established at trial did not cry out for the government's result-oriented statutory interpretations. Even if its overbroad construction of § 2384 were somehow correct, the evidence was plainly insufficient to convict. The jury found Nordean not guilty of Pezzola's assault on a police officer (Count Nine). It could not convict Nordean of Pezzola's destruction of the Capitol window (Count Seven). And it could not convict Nordean of Donohoe's assault of a police officer by throwing a water bottle (Count Eight). These decisions are irreconcilable with a finding that Nordean was guilty on Counts One and Four. The jury concluded that Pezzola was a co-conspirator with Nordean in Count Four. In that case, the jury determined that Nordean and Pezzola conspired to interfere with federal officers to prevent them from performing their duties. Yet the jury acquitted Nordean of Pezzola's assault on a police officer and hung on finding Nordean responsible for Pezzola's destruction of a Capitol window. If the jury could not unanimously agree on Nordean's alleged use of force in those instances, there was no other

6

seditious "use of force" to which Nordean could have agreed which was supported by sufficient evidence.

Count Six, alleging that Nordean destroyed the black fence, was not supported by sufficient evidence. No video footage depicted Nordean pulling down the inaugural fence. It simply showed the defendant standing by it, and touching it, around the time protesters pulled the barrier down. Video clips depicted a protester standing behind Nordean who pulled the fence into Nordean's body, causing the defendant, then holding a beer can, to jerk backward. Officer Cooney's incredible testimony that she witnessed Nordean pull down the fence was contradicted by video clips showing that she did not have a sightline on Nordean at the time. In any case, even if Nordean had shaken the black fence, the government presented no evidence demonstrating that his brief movement in this regard was pursuant to an agreement to oppose the "authority" of the government with force. And the evidence from the Architect of the Capitol revealed that Nordean could not have caused more than $1,000 in damage to the fence: misdemeanor government property damage cannot constitute the use of force within the meaning of the felony offense in § 2384—in that case, every January 6 misdemeanant has committed seditious conspiracy. No evidence showed that Nordean planned to use force on January 6. He carried no weapons. And witnesses testified, and video evidence demonstrated, that Nordean took positive steps to prevent a protester from assaulting a law enforcement officer outside the Capitol.

Particularly against the backdrop of its historical applications, applying the seditious conspiracy law—created in the wake of the attack on Fort Sumter—to Nordean's boorish but unthreatening protest is unserious. As time passes, it will seem more unserious still.

Finally, the government presented no evidence at trial proving that Nordean conspired with anyone to prevent federal officers from performing their duties. Long-standing precedent holds that § 372 concerns executive officers, not Members of Congress and U.S. Capitol police. No trial evidence identified executive officers anywhere on the scene. In any event, no evidence showed that Nordean conspired to prevent congresspersons and police from performing their duties. As indicated, evidence depicted Nordean stopping an assault on law enforcement, which refutes the government's theory.[3]

### B.    Insufficient evidence supports the conviction on Count Six

The jury found Nordean guilty on Count Six, property destruction of the black fence in an amount greater than $1,000. As argued above, insufficient evidence supported a finding that Nordean destroyed the fence. Moreover, no evidence supported a finding that Nordean was responsible for over $1,000 in damage to the fence. The evidence connected Nordean to one fence segment alone. The government's Architect of the Capitol witness, McIntye, testified that no individual fence segment cost the Architect more than $1,000 to replace. He further testified that the decision to replace the entire length of fencing at a cost of over $1,000 was made without regard to the damage to any particular fence segment. No evidence showed that the fence segment connected to Nordean was itself broken or damaged, as opposed to merely pulled down. As a matter of logic, then, sufficient evidence was not adduced at trial to show that Nordean caused over $1,000 in damage to the fence, either personally or through some other cognizable theory of liability.

---

[3] The government's evidence on this count appeared to consist of Nordean making generalized statements before January 6 that telegraphed some degree of hostility to certain law enforcement officers generally. It had nothing to do with U.S. Capitol Police or the other law enforcement officers guarding the Capitol on January 6.

Dated: June 21, 2023                                    Respectfully submitted,

/s/ David B. Smith
David B. Smith, D.C. Bar No. 403068
David B. Smith, PLLC
108 North Alfred Street, 1st FL
Alexandria, Virginia 22314
(703) 548-8911 / Fax (703) 548-8935
dbs@davidbsmithpllc.com

Nicholas D. Smith, D.C. Bar No. 1029802
1123 Broadway, Suite 909
New York, NY 10010
(917) 902-3869
nds@davidbsmithpllc.com
*Counsel to Ethan Nordean*

## Certificate of Service

I hereby certify that on the 21st day of June, 2023, I filed the foregoing motion with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following CM/ECF user(s): counsel of record.

And I hereby certify that I have mailed the document by United States mail, first class postage prepaid, to the following non-CM/ECF participant(s), addressed as follows: [none].

/s/ David B. Smith
David B. Smith, D.C. Bar No. 403068
David B. Smith, PLLC
108 North Alfred Street, 1st FL
Alexandria, Virginia 22314
(703) 548-8911 / Fax (703) 548-8935
dbs@davidbsmithpllc.com