```
                IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF COLUMBIA
- - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA          CR Nos. 1:21-cr-00175-TJK-1
                                          1:21-cr-00175-TJK-2
v.                                        1:21-cr-00175-TJK-3
                                          1:21-cr-00175-TJK-5
1-ETHAN NORDEAN                           1:21-cr-00175-TJK-6
2-JOSEPH R. BIGGS
3-ZACHARY REHL                    Washington, D.C.
5-ENRIQUE TARRIO                  Thursday, March 9, 2023
6-DOMINIC J. PEZZOLA,             10:00 a.m.
                    Defendants.
- - - - - - - - - - - - - - - - x
_____
               TRANSCRIPT OF JURY TRIAL - DAY 45
           HELD BEFORE THE HONORABLE TIMOTHY J. KELLY
                  UNITED STATES DISTRICT JUDGE
_____
```

APPEARANCES:

| | |
|---|---|
| For the United States: | Jason B.A. McCullough, Esq. |
| | Erik M. Kenerson, Esq. |
| | Conor Mulroe, Esq. |
| | Nadia Moore, Esq. |
| | U.S. ATTORNEY'S OFFICE |
| | 555 4th Street, NW |
| | Washington, DC 20530 |
| | (202) 252-7233 |
| | |
| For the Defendants: | Nicholas D. Smith, Esq. |
| | DAVID B. SMITH, PLLC |
| | 7 East 20th Street |
| | Suite 4r |
| | New York, NY 10003 |
| | (917) 902-3869 |
| | |
| | Norman A. Pattis, Esq. |
| | PATTIS & SMITH, LLC |
| | 383 Orange Street |
| | 1st Floor |
| | New Haven, CT 06511 |
| | (203) 393-3017 |
| | |
| | John D. Hull, IV, Esq. |
| | HULL MCGUIRE PC |
| | 1420 N Street, NW |
| | Washington, DC 20005 |
| | (202) 429-6520 |

APPEARANCES CONTINUED:

For the Defendants:        Carmen D. Hernandez, Esq.
                           7166 Mink Hollow Road
                           Highland, MD 20777
                           (240) 472-3391

                           Nayib Hassan, Esq.
                           LAW OFFICES OF NAYIB HASSAN, P.A.
                           6175 NW 153 Street
                           Suite 209
                           Miami Lakes, FL 33014
                           (305) 403-7323

                           Sabino Jauregui, Esq.
                           JAUREGUI LAW, P.A.
                           1014 West 49 Street
                           Hialeah, FL 33012
                           (305) 822-2901

                           Steven A. Metcalf, II, Esq.
                           METCALF & METCALF, P.C.
                           99 Park Avenue
                           6th Floor
                           New York, NY 10016
                           (646) 253-0514

                           Roger I. Roots, Esq.
                           ROGER ROOTS, ATTORNEY AT LAW
                           113 Lake Drive East
                           Livingston, MT 59047
                           (775) 764-9347

Court Reporter:            Timothy R. Miller, RPR, CRR, NJ-CCR
                           Official Court Reporter
                           U.S. Courthouse, Room 6722
                           333 Constitution Avenue, NW
                           Washington, DC 20001
                           (202) 354-3111

Proceedings recorded by machine shorthand; transcript
produced by computer-aided transcription.

12799

# C O N T E N T S

**WITNESS:**                                                        **PAGE:**

NICOLE MILLER
Direct Examination by Ms. Ballantine.............12846
Cross-Examination by Mr. Smith...................12852
Cross-Examination by Mr. Jauregui...............12865

1                    **P R O C E E D I N G S**

2          THE DEPUTY CLERK:  This is Criminal Matter 21-175,

3    United States of America v. Defendant 1, Ethan Nordean;

4    Defendant 2, Joseph R. Biggs; Defendant 3, Zachary Rehl;

5    Defendant 4, Enrique Tarrio; and Defendant -- I'm sorry,

6    Defendant 5, Enrique Tarrio; and Defendant 6, Dominic J.

7    Pezzola.

8          Present for the Government are Jason McCullough,

9    Erik Kenerson, Conor Mulroe, and Nadia Moore; present for

10   Defendant 1 is Nicholas Smith; present for Defendant 2 are

11   John Hull and Norman Pattis; present for Defendant 3 is

12   Carmen Hernandez; present for Defendant 5 is Nayib Hassan

13   and Sabino Jauregui; present for Defendant 6 are Steven

14   Metcalf and Roger Roots.  Also present are Defendant 1,

15   Mr. Nordean; Defendant 2, Mr. Biggs; Defendant 3, Mr. Rehl;

16   Defendant 5, Mr. Tarrio; and Defendant 6, Mr. Pezzola.

17         THE COURT:  All right.  Thank you, Ms. Harris.

18         Good morning to everyone.

19         I appreciate the various emails and submissions

20   the parties filed since the end of our day yesterday.

21   Here's how, I think, I -- as I see it, we have three issues

22   in front of us, and here is how I think we should proceed as

23   to each one, and I'll hear from either side on each one as

24   we go forward.

25         The first one is simply the issue of the

 1    Government's Jencks production and Jencks obligations.  I do

 2    think, based on what Mr. Kenerson laid out, that it does

 3    make sense to pause things until the Government is able to

 4    comply with its Jencks obligations.  There's been a

 5    reasonable basis to suggest that they haven't produced all

 6    their Jencks.  They concede that.  This is a particular -- a

 7    situation in which the way the Government produces this kind

 8    of material, they don't have to have any contact with the

 9    witness to go back and pull these kinds of messages to make

10    sure they've done what they need.  This is, after all,

11    information that they do have an obligation to provide to

12    the defendants for them to be able to make use of in their

13    cross-examinations.  And so I do think it makes sense to

14    pause, send the jury home for the day, see where -- give the

15    Government the opportunity -- they seem to think, at least

16    as of yesterday, that, by the end of today, they'd be in a

17    position to -- they'd be in a position to produce the

18    information or know what the scope of the issue is.  And so

19    that seems to me to be, sort of, the easiest of the three

20    issues.  But let me hear -- does anyone -- and so I want to

21    at least talk about this first, resolve it, if I'm going to

22    send the jury home for today, send -- pause and we'll send

23    them home, and then come back and talk about the Sixth

24    Amendment issue -- the other two issues that I see are the

25    Sixth Amendment issue and how we handle that and then, once

1    we have the witness back on the stand, a, kind of, scope of

2    cross issue that, again, we don't have to resolve today, but

3    I'd like to at least have a pathway of resolving it.

4        So with regard to the Jencks issue and sending the

5    jury home, let -- if either side -- well, I know that's the

6    Government's position, so I don't know that I really need to

7    hear from you.  Maybe I do.  All right.  Ms. Ballantine,

8    I'll hear from you briefly.  Then I'll hear from the defense

9    about why they -- Mr. Smith, I know, does not agree.

10        MS. BALLANTINE:  Jocelyn Ballantine for the United

11   States.

12        As we reviewed the Jencks issue overnight, it

13   appears that the issue is more complicated than we had

14   appreciated yesterday in court, and it appears that the

15   Jencks production to defense counsel may involve a spill of

16   classified information which is why --

17        MR. PATTIS:  May involve what?  I'm sorry.

18        MS. BALLANTINE:  A spill --

19        THE COURT:  A spill.

20        MS. BALLANTINE:  -- of classified information.  So

21   I -- we have FBI personnel in the courtroom.  I'm here to --

22   I'm here, as well.  We have a procedure that we would

23   suggest to the Court would be appropriate, but we certainly

24   do think -- and we think we will be able to resolve this

25   fairly expeditiously, but we agree with the Court that it

1    makes sense to send the jury home at this juncture to return

2    on Monday.

3           THE COURT:  All right.  And that's even apart from

4    the -- that's on top of and apart from the Jencks issue and

5    the fact that the Government has a Jencks obligation that it

6    must comply with.  Maybe it's intertwined with it, but --

7    all right.

8           Mr. Smith?

9           MR. SMITH:  Your Honor, I think there's a

10   preliminary fact question here about how -- that I think the

11   Government can answer about how the filtering on this

12   spreadsheet took place.  If it's the prosecutor's office

13   that was filtering the messages -- meaning, creating hidden

14   rows -- then there's no claim of surprise here.  We need to

15   find things out, because all of these messages would have

16   been available, I guess, in November.  So I just -- we would

17   like to know whether the filtering was done in the -- in

18   this office here or some other location.

19          THE COURT:  But what does a claim of surprise have

20   to do with this?

21          MR. SMITH:  So I think part --

22          THE COURT:  They have obligations to you.  They

23   either have fulfilled them or they have not fulfilled them.

24   And if they haven't fulfilled them, they need to do it,

25   because cross -- because the witness's direct testimony is

1    completed.

2              MR. SMITH:  Your -- so it's my understanding -- I

3    don't -- Mr. Kenerson will correct me if I'm not exact about

4    the dates here, but I believe that this spreadsheet was

5    produced in early December or late November.  So Your Honor,

6    if the spreadsheet was filtered by the prosecutor's office,

7    that means they had access to the messages that we're

8    referring to.  I don't know if that's the case.  And it's

9    totally possible that someone might not be aware of hidden

10   messages.  It might have -- the spreadsheet might have been

11   sent to the prosecutor's office, they're totally unaware of

12   hidden messages, and then it was simply reproduced to the

13   Government -- or to the defense, rather.  But if it was this

14   office that was filtering the messages, there is no -- we

15   wouldn't understand why there would be a need to continue

16   trial and scramble to find things that have been in their

17   possession for a long time.  Does that make sense, Your

18   Honor?

19             THE COURT:  Yes, I guess "scramble to find" is

20   fair.  But, again, they have the -- regardless, they have

21   the obligation to produce this to you, and they say it's not

22   going to take long; it's going to take until the end of the

23   day, maybe.  So I don't know how I can't allow them the

24   opportunity to fulfill those obligations.

25             MR. SMITH:  Is it still possible to make inquiry

1    with the Government whether the filtering was conducted by

2    the prosecutor's office or FBI?  Because this is -- this

3    goes to, you know -- when we make objections to evidence,

4    the Government has been frequently arguing that, "Well, the,

5    you know -- the defense has known about this issue for some

6    time now."  If the filtering was performed by the

7    prosecutor's office, this is not a -- this is not something

8    surprising, Your Honor.  This is -- these messages have been

9    there.  So it's -- I think it's pretty critical to determine

10   here whether the filtering was done by the FBI or the U.S.

11   Attorney's Office.

12              THE COURT:  Okay.  Mr. Pattis?

13              MR. PATTIS:  I will defer to Mr. Smith as to

14   litigation posture as this is an issue his hard work

15   illustrated, but I would request a brief adjournment so that

16   we can discuss with the Government this business about a

17   spill of classified information.  I -- and there are agents

18   present in the room.  I -- if the -- if there's going to be

19   a suggestion that, somehow, we have been inadvertently given

20   material we can't have and the Government's going to be

21   insisting on access to our data and whatnot, there are lots

22   of issues to discuss.  I don't know what this means.

23              THE COURT:  Okay.

24              MR. PATTIS:  And it seems more fundamental than

25   the trial problem right now to me.

1          THE COURT:  Okay.  I think that just underscores

2     to me the reason we should send the jury home and -- I mean,

3     because you -- you've rightly pointed out -- and Mr. Smith,

4     I think, even on top of what you've raised, the -- this

5     spill issue also creates a need for the parties to interact,

6     not in my courtroom, about that.

7          So I -- again, I don't see -- even if we weren't

8     talking about the spill issue -- Mr. Smith, it wouldn't

9     matter to me one -- I know -- I -- it wouldn't matter to

10    me -- I mean, let's put it this way.  The Government's not

11    asking for a week.  They're asking for a business day.  So I

12    think --

13         MR. PATTIS:  But here's the problem, Judge, and

14    I'm sorry to -- I -- much was made in this trial, over our

15    strenuous objection, about unusual theories of

16    admissibility: adoption by silence; an endorsement by a

17    failure to act.  And now, our party opponent has apparently

18    mistakenly or inadvertently or unknowingly given us

19    classified information, and I don't think for a moment we

20    should be required to abandon any tactical or strategic

21    advantage we can reap from this apparent mistake, if that's

22    what it was.  And so I would join Mr. Smith's motion in

23    opposing delay while the Government gathers its resources

24    and determines how to put the happiest face on what might

25    have been a catastrophic error.  And I say that because I'm

```
1    the -- probably the only lawyer in the room who's faced

2    suspension from the practice of law over somebody

3    inadvertently getting material over.  And so these are

4    issues that I think, on behalf of Mr. Biggs -- and I'll

5    speak only on behalf of Mr. Biggs -- we didn't pick this

6    fight.  We've come here to win it.  And if the Government

7    has erred and stepped into a minefield, we feel it's our

8    obligation tactically to force the agent over each and every

9    land mine, and if she survives, fine; if she doesn't, that's

10   better from our perspective, and given the character of the

11   case that the Government has put on, we do want to go

12   forward with the jury now.

13            THE COURT:  All right.  Anyone else from the

14   defense want to be heard?

15            MR. JAUREGUI:  (Indicating.)

16            THE COURT:  Yes?

17            MR. JAUREGUI:  Judge, good morning.  Jauregui for

18   Tarrio.

19            Judge, I -- we agree and we adopt the arguments

20   made by Mr. Smith.  I just want to have Your Honor remember

21   that every time there's a problem with the Government's

22   case -- last time, it was with the CHS issues -- they come

23   in here and they say the magic word, "classified," and they

24   use that magic word --

25            THE COURT:  No.
```

```
 1              MR. JAUREGUI:  -- as a weapon --

 2              THE COURT:  To be clear, they never said the word

 3    "classified."

 4              MR. JAUREGUI:  Oh, they've used the word

 5    "classified" before.  I'm sure of it.

 6              THE COURT:  Have they taken the position that

 7    CHSes are classified?  I --

 8              MR. JAUREGUI:  Judge, everything in this case has

 9    been classified.

10              THE COURT:  I --

11              MR. JAUREGUI:  Everything has been --

12              THE COURT:  No --

13              MR. JAUREGUI:  -- in -- done in secret.

14    Everything has been a secret order where we can't share any

15    information.  Everything has been done under cover.  And

16    now, they come in here; they use this word "classified" to

17    try and delay the case.  I think we should continue.  I

18    think Mr. Smith's "gotcha" moment yesterday was ruined, and

19    he had every right to get that agent and destroy her on

20    cross and, all of a sudden, the trial was stopped.  Now,

21    we're continuing it again.  We would object.  I think we

22    should proceed forward with this trial.  And, actually, I

23    think the first thing we should do is an evidentiary hearing

24    with this agent to get to the bottom of this and to find out

25    how all of this is happening.  That's our position, Your
```

1    Honor.

2              THE COURT:  All right.  Mr. Roots?  Just on this

3    one issue.  We'll --

4              MR. ROOTS:  Yeah.  Okay.  So I really wanted to

5    talk about the other issues I think you're going to get to.

6              THE COURT:  We will.

7              MR. ROOTS:  But representing Pezzola, I agree with

8    our colleagues; however, I think the jury should be sent

9    home and should not return for reasons that I've expressed

10   in the -- our motion to dismiss, and I want to talk some

11   more about that.  This case cannot go forward.  This trial

12   cannot go forward, given what has transpired just in that

13   brief exchange yesterday evening.  There are -- it -- the

14   prosecutors call it classified.  There are issues of this

15   agent doctoring evidence.  There are issues of this agent

16   fabricating evidence on behalf of the FBI.  This agent needs

17   to be Mirandized.  She needs to be given a -- told that she

18   has the right to an attorney, and one will be provided to

19   her if she cannot afford one.  It -- this witness cannot

20   return and this trial cannot continue.  And I do want to go

21   into this a little bit deeper when we discuss the other

22   issues.

23             THE COURT:  Okay.  So on the first issue -- I

24   mean, I've heard you all.  I do think even --

25             MS. HERNANDEZ:  You didn't hear me, but I'll join.

```
 1              THE COURT:  Oh, I didn't see your hand up,
 2    Ms. Hernandez.
 3              MS. HERNANDEZ:  I'm sorry.  I'm just joining my
 4    co-counsels' arguments.
 5              THE COURT:  I do think even with the -- even
 6    without this issue of the -- whatever classified issue has
 7    popped up and -- even without that, I think, you know, the
 8    Government has just -- well, let's put it this way.  They
 9    wouldn't have -- I mean, they were provided -- I ordered
10    Mr. Smith to give them -- to provide them information about
11    the messages that he thinks he has a good-faith basis to
12    believe were improperly withheld, I think as of 8:00 o'clock
13    last night.  The Government's asking for, basically, one day
14    to, sort of, get under the hood of this to make sure the
15    Government -- that the -- they're -- they -- the Government
16    complies with its Jencks obligations.  And, frankly, if I
17    didn't stop now and, all of a sudden, in two days, they came
18    up with a document that one of the defendants could have
19    made use of for cross-examination, we'd be in a pickle.  So
20    I think they have to be able to comply with their Jencks
21    obligations.  And so I am going to send the jury home.  At
22    least I've got Mr. Roots with me on that one.  I am going to
23    send the jury home for today, and -- and we'll pick up on
24    issues -- and the Government -- and hopefully, we're not
25    going to spend a lot of time in court today so that the
```

1    parties can talk about not only the Government complying

2    with its Jencks obligations but this potential issue with a

3    classified spill.

4          So we're going to -- I'm going to let

5    Ms. Harris -- we're going to take just 5 or 10 minutes so

6    that Ms. Harris can go dismiss them.  I'll come back on the

7    bench and we'll talk about the way forward on the Sixth

8    Amendment issue and then the scope -- as I like to think of

9    it, the, sort of, scope-of-cross issue.  I don't think we're

10    going to resolve anything on those two matters today, but

11    I -- what I hope to do is at least put a schedule together

12    to get the -- from which we'll be able to resolve both of

13    them.  So let's take -- well, we'll come back in 10 minutes.

14          THE DEPUTY CLERK:  All rise.  This Honorable Court

15    stands in recess for 10 minutes.

16          (Brief recess taken.)

17          THE DEPUTY CLERK:  We're back on the record in

18    Criminal Matter 21-175, United States of America v. Ethan

19    Nordean, et al.

20          THE COURT:  All right.

21          MR. SMITH:  Your Honor, I understand from before

22    the break that we might partake in a hearing with the

23    Government's witness to determine whether and to what extent

24    there are classified information in this production.  We

25    have a concern that, you know, if the only source of

1    information on this issue is coming from the witness and

2    what she remembers about classification, there could be an

3    over-classification or a subjective determination.

4         THE COURT:  All right.

5         MR. SMITH:  So we, I think -- defense counsel were

6    just conferring here, and we would like some independent

7    third party to assess whether this classification

8    designation, to the extent it covers relevant materials in

9    this case, is correct.  And we don't know yet whether it

10   will reach that -- the relevant materials.  Maybe that's not

11   even an issue.  But if it does, Your Honor, I just wanted to

12   flag that.

13        THE COURT:  All right.  It's -- consider it

14   flagged and we'll see if we -- today is going to be a day

15   when we don't try to cross bridges we don't need to cross

16   yet.

17        So does anyone from the Government just want to be

18   heard in response to that?  But I don't think we need to

19   discuss it really much any further today.

20        MS. BALLANTINE:  Your Honor, the first bridge we

21   need to clear here is we do need to discuss the potential

22   for the spill, and I need to address that with -- I would

23   like to address that in the presence of the Court as opposed

24   to addressing it informally with counsel.

25        THE COURT:  All right.  Do you need -- is that

 1    something you need to do under seal, given the nature of

 2    what you're about to say, or can you -- is it something --

 3            MS. BALLANTINE:  I do not, at this point, need to

 4    be under seal.

 5            THE COURT:  All right.  Very well.

 6            All right.  I'll -- Ms. Ballantine, I wanted to

 7    move on to Issues 2 and 3, but if this is something you feel

 8    you need to put on the record now, the floor is yours.

 9            MS. BALLANTINE:  I don't think we can,

10    respectfully, discuss Issues 2 and 3 to the extent that 2

11    and 3 may actually implicate classified equities without

12    discussing this first.

13            THE COURT:  Okay.

14            MS. BALLANTINE:  So when the FBI conducts pulls of

15    its Jencks materials, it pulls from a number of different

16    systems.  In this case, we had a Jencks deadline of

17    November 28th of 2022.  We directed the agents in this case

18    to begin pulling their Jencks material on November 1st.

19    Special Agent Nicole Miller complied with that request.  One

20    of the buckets of information that she pulled from is

21    something called Lync messages which are, essentially,

22    instant messages that agents send back and forth to each

23    other.  They're particularly helpful when agents are working

24    in different field offices.  They are informal.  Sometimes

25    they're planning lunch; sometimes they're talking about

1    whether a case file has been opened; sometimes they're

2    talking about whether an agent is still on new-agent

3    probation or has been taken off of new-agent probation yet.

4         Those messages are all housed on the FBI's

5    classified systems.  When Special Agent Miller asked

6    headquarters to perform the pull, they gave back to her a

7    spreadsheet that had approximately 12,453 lines in it.

8    Special Agent Miller, from there, was instructed by

9    headquarters to -- that -- headquarters can't determine

10   whether the messages themselves are classified.  That's

11   something the agent has to do message by message.  What we

12   don't know -- and we haven't spoken to Special Agent Miller

13   to confirm this -- is the order in which Special Agent

14   Miller proceeded.  One possibility is that she reviewed all

15   12,453 lines for classified information, removed anything

16   that was classified, and then what Special Agent Miller

17   appears to have done next is she filtered the spreadsheet so

18   that it only showed her messages that she sent to other

19   people, and she sent the filtered spreadsheet to the U.S.

20   Attorney's Office.  Regrettably, the U.S. Attorney's Office

21   didn't realize that the spreadsheet was in a filtered form.

22   So we reviewed it as if we were reviewing only Special Agent

23   Miller's messages.  What we don't know as we sit here today

24   is whether the messages from other agents were reviewed

25   before Special Agent Miller filtered the spreadsheet or

1    whether she filtered it, didn't appreciate that the other

2    messages were still present in the spreadsheet, and only

3    reviewed her own messages for classified equities.  This is

4    important because the way classification works is, you know,

5    although several of us in the courtroom have security

6    clearances, you -- a clearance is not sufficient to view

7    classified information.  You also have a need -- have to

8    have a need to know.  So for us to figure out how to go back

9    and conduct the review that we've told the Court we will

10   review, we need to appreciate the extent to which Special

11   Agent Miller scrubbed that entire spreadsheet of classified

12   equities.

13          We also -- whether or not, you know -- if she did

14   a full scrub, we still have some material we need to claw

15   back from defense counsel because we inadvertently produced

16   to them the cover sheet for this material which is secret --

17   at the Secret/NOFORN level, and we need to ask them to

18   rename a tab which is called "secret" because it is -- it

19   would not be under those circumstances.  If Special Agent

20   Miller did not scrub the entire unfiltered set -- data set

21   for classified information, we will need to claw back from

22   defense counsel that spreadsheet.  That means simply that we

23   would ask them to return to us and confirm that they have

24   deleted all copies of that spreadsheet from any electronic

25   device or any hard drive that they have and then we would

1    reproduce it to them.

2          We have a team of, you know -- we've got a team

3    working behind the scenes to make this work as quickly as

4    possible, but in the first instance, in order to -- in order

5    for me to leave and go start that process, I need to be able

6    to conduct that inquiry of Special Agent Miller.  I would

7    assert that it would be appropriate for me to do that in

8    front of the Court and counsel so that every -- so there's

9    nothing secret happening.

10         MR. SMITH:  Your Honor, may we be heard?

11         THE COURT:  Yes.

12         MR. SMITH:  Okay.

13         THE COURT:  So let me just -- so the first -- in

14    the first instance, it seems to me what you need to know is

15    that issue from Special -- the information from Special

16    Agent Miller about how she reviewed this.  I mean, it's --

17    depending on that, it may or may not -- I mean, that may go

18    a long way toward clearing up a concern about -- I shouldn't

19    say it means -- it sounds like you believe there is

20    classified there, but depending on how she conducted the

21    review, it may well alleviate at least some of the concern

22    about a spill.

23         MS. BALLANTINE:  It could well alleviate some of

24    the concern.  We are concerned because when we -- after

25    Mr. Smith alerted us to the fact that there were filtered

1    messages that were not obviously there, when we unfiltered

2    it we see Special Agent Miller communicating with at least

3    one other special agent who works on a squad that does

4    covert activity that is classified.  So you know, those

5    messages -- particularly the messages from that agent to

6    Special Agent Miller -- are likely, the FBI tells me,

7    classified.

8              THE COURT:  All right.  So --

9              MS. BALLANTINE:  And that agent, incidentally, did

10   not work on this case.

11             THE COURT:  All right.  So -- all right.  So

12   look --

13             MS. BALLANTINE:  And if I could just say one more

14   thing, Your Honor?  I just want to anticipate what I think

15   defense may say.  I do want to make clear that in the

16   classified information sphere, inadvertent disclosure to

17   defense counsel of classified information doesn't render it

18   unclassified.

19             THE COURT:  Right.

20             MS. BALLANTINE:  Okay.  I know you know that, but

21   I want to make sure that --

22             THE COURT:  Okay.

23             MS. BALLANTINE:  -- that's a fact in the record.

24             THE COURT:  All right.  Yes, Mr. Smith?  First of

25   all, and the main thing I want to know is -- again, just

1  trying to cross the bridges we need to one at a time -- is

2  whether there's any objection to us bringing in Special

3  Agent Miller and, in the presence of everyone, letting the

4  Government ask these questions so that we can get to the --

5  so that they can perform their obligations both under the

6  Jencks Act and to -- and their obligation to safeguard

7  classified information.

8           MR. SMITH:  Yes, Your Honor.  Thank you.

9           I heard Ms. Ballantine propose a, kind of,

10  two-step procedure here involving, like Your Honor just

11  said, the witness coming back and then examination by

12  Ms. Ballantine and immediate return of the Jencks material

13  spreadsheet to the Government.  That -- the latter would be

14  inappropriate, Your Honor, before we even know what is

15  classified.  There are potentially hundreds of rows that are

16  not classified, and not only not classified but may be

17  Brady, Jencks, Giglio, you know, information going to

18  whether attorney-client privileges have been examined.  So

19  Your Honor, I don't think the procedure would be appropriate

20  to have immediate return of the documents and deletion of

21  material that is not classified.

22           First -- the first preliminary question is, will

23  the -- what does the witness identify as classified

24  information?  On -- then if there were certain -- if there's

25  certain pieces of information that are classified, the

1    defense should be able to copy the information that is not

2    classified.  If we don't copy it, we won't be able to go

3    back to -- it would be very difficult to go back to the

4    Government and say, "Produce Row 7,762."  We don't have the

5    numbers anymore, and we would just be relying on the

6    Government to produce back to us whatever it deems is

7    appropriate.  So Your Honor, we can't be ordered to give

8    over non-classified information back to the Government

9    that's Jencks or Brady.

10          And the second point, Your Honor, is if the

11    witness comes back out and is examined by Ms. Ballantine,

12    we, of course, have to have the opportunity to cross on the

13    issue of classification.

14          THE COURT:  Well --

15          MR. SMITH:  So --

16          THE COURT:  We're not talking -- no, no, no.  I

17    think you're misunderstanding the -- kind of, fundamentally

18    misunderstanding what Ms. Ballantine is asking for here.

19    She's asking for the witness not to talk about -- she's not

20    going to be able to know on the stand here today what's

21    classified and what -- we're not going to sit here and say,

22    "Is Row 835 classified?"  Right?  It's just the process she

23    went through as a starting point.  "What did you -- how did

24    you process this in terms of classification?"  In other

25    words, "Did you do A or did you do B?"

1    MR. SMITH:  So Your Honor, if the scope, so to

2    speak, is limited in that way, there would be no factual

3    basis to have the defense return all of the materials to the

4    Government.  We would have no factual premise for saying the

5    defense should not be given access to this information.

6    THE COURT:  Ms. Ballantine, does she -- is she

7    here today in the courthouse that we could do this or no?

8    MS. BALLANTINE:  She is.  She's here.  We could do

9    it right now.

10    THE COURT:  All right.  So I guess I don't

11    understand why we can't --

12    MR. PATTIS:  (Indicating.)

13    THE COURT:  I'll hear you, Mr. Pattis.

14    We can put aside the question of returning the

15    documents for the moment.  Why can't we get this step done

16    right now?

17    MR. SMITH:  Your -- we can get this step done,

18    Your Honor.  But why would the defense not be permitted to

19    question the witness as to her assertions of classification?

20    General umbrella assertions.

21    THE COURT:  Because that's not --

22    MR. SMITH:  Why --

23    THE COURT:  Because we're not -- we haven't

24    crossed that bridge yet.  All they need to know in terms of

25    trying to figure out the scope of the spill is how she

1    processed her -- do I have this right, Ms. Ballantine -- is

2    how she processed her spreadsheet.  "Did you do A or did you

3    do B or did you do something else?"

4              MS. BALLANTINE:  That is correct.

5              THE COURT:  In the first instance, that's all they

6    need to know.  Now, there may be other things that you all

7    want to elicit from her either outside the presence of the

8    jury or inside the presence of the jury.  We can take those

9    up as we go.  But for the most -- for the first thing, in

10   order for them to go back and do their due diligence, they

11   need this information.

12             MR. SMITH:  I -- no, I -- Your Honor, I understand

13   that, but I also understand that the Court is going to be

14   using the information it hears from this witness to make a

15   determination as to Ms. Ballantine's request whether the

16   defense should return the information to the Government.

17   And if the Court is using the testimony the witness gives to

18   make a determination as to whether the defense can possess

19   material that may be Jencks, the defense has to be given an

20   opportunity to contest the facts that the Court is using to

21   make that determination.

22             THE COURT:  But she's not going to testify that

23   any particular thing is classified.

24             MR. SMITH:  Your Honor --

25             THE COURT:  If you want to talk to her about the

```
 1    same topics that --

 2              MR. SMITH:  Yes.

 3              THE COURT:  -- Ms. Ballantine is going to say,

 4    "You reviewed this, you" -- however the process went for her

 5    review, I don't think they'd object.  I think that would be

 6    fine.

 7              MR. SMITH:  Thank you, Your Honor.

 8              THE COURT:  But that --

 9              MR. SMITH:  That's all I was asking.

10              THE COURT:  That's not about, "This is classified.

11    Is this over-classified?"  We're not talking about any of

12    that.

13              MR. SMITH:  Oh, I -- understood, and it's -- Your

14    Honor, we only want cross to the extent the Court is using

15    the information the witness testifies about to make a

16    determination about what evidence the defense may possess.

17              THE COURT:  Okay.  It's all --

18              MR. SMITH:  That is all --

19              THE COURT:  -- a process -- it's all a process

20    issue, not a substance issue right now.

21              All right.  So that -- it strikes me that that's

22    an obvious way to try to go forward here, but if any -- I'll

23    hear from any -- Ms. Hernandez, you have your hand up.

24              MS. HERNANDEZ:  So Your Honor, I'm not sure I

25    follow the Government's proposal, but as I understand it
```

1     there is a metadata document on this Excel database that we

2     received and, as I read it, it appears to say --

3                     MS. BALLANTINE:  Your Honor, I'm going to ask the

4     Court to intervene.

5                     I apologize, Ms. Hernandez.

6                     The document she is reading from is classified.

7                     MR. PATTIS:  Judge --

8                     MS. BALLANTINE:  It is inappropriate --

9                     MR. JAUREGUI:  Metadata --

10                     MR. SMITH:  They don't actually know it's

11     classified --

12                     MR. JAUREGUI:  This is metadata --

13                     MS. BALLANTINE:  The witness is reading from --

14                     THE COURT:  Hey, hold on one second.  We can't

15     have attorneys speaking over each other for my purposes, for

16     the court reporter's purposes, for anyone's purposes.

17                     Ms. Hernandez, if you can make your point without

18     reading from the document, you're going to have to do that.

19                     MS. HERNANDEZ:  If the Court would allow me, so

20     that the Court can see what I'm reading from --

21                     THE COURT:  No, I don't want you to read from a

22     classified --

23                     MS. HERNANDEZ:  No, I --

24                     THE COURT:  -- document in my courtroom.

25                     MS. HERNANDEZ:  Just so the Court can see --

 1            THE COURT:  Please, Ms. Hernandez, again, when I'm

 2    talking, I can't have you jump in and talk over me.  You may

 3    proceed.

 4            MS. HERNANDEZ:  So I just would like to be able to

 5    show the Court the document I'm talking about.  It's a

 6    one-page thing.  I won't read from it, but it -- I think it

 7    would make more sense for -- since the Government has it and

 8    the defense has it, that the Court is able to see it, and

 9    you could show -- you could set it up so that only -- so

10    it's not shown to the public.

11            THE COURT:  Does it have an exhibit number?

12            MS. HERNANDEZ:  No, it's a document on the --

13    it's on the Excel spreadsheet which I don't -- doesn't --

14    nowhere does it -- I mean, it doesn't -- it says

15    "Secret/NO-" --

16            MS. BALLANTINE:  I apologize, Your Honor.

17            MR. JAUREGUI:  Judge --

18            MS. BALLANTINE:  It says "Secret/NOFORN" at the

19    top.  And it --

20            THE COURT:  All right.  Ms. Hernandez, do not

21    connect your computer, please.  Do not --

22            MS. BALLANTINE:  And Ms. Hernandez is also not

23    authorized -- she does not have a security clearance -- to

24    see this document.

25            THE COURT:  I need you to the microphone.

1          All right.  Ms. Hernandez, just talk to me without

2     referring to the content of the document and make your

3     point, please.

4          MS. HERNANDEZ:  Okay.  Number one, I would ask the

5     Court to have a copy of this, even if -- just so that we can

6     all be on the same page.  I think if whoever has it doesn't

7     have security in -- clearance in this courtroom right now, I

8     think Your Honor fits at least the highest necessary.

9          Number two, as I read this document, it does not

10    reflect the type of classification that would require this

11    hyper-secrecy or procedure.

12         Number three, my proposal would be if there is

13    some issue of classification, that that be done by someone

14    outside the witness -- the United States of America and, in

15    fact, I believe there's provision for having classification

16    authority within the FBI, within Department of Justice.  So

17    I'm -- I know that there are people whose specialty is that.

18    And if there's some issue of classification, I think it

19    should be done by that person rather than by the agent who

20    is now in the middle of cross-examination --

21         THE COURT:  Okay.

22         MS. HERNANDEZ:  -- and who's -- who may be -- I

23    think even this level of questioning, even if it's not

24    directly related to her testimony, may or may not be

25    related.  So that's what I would request, instead of having

```
 1    this done through the agent, that it be done through a
 2    classification specialist --
 3               THE COURT:  Okay.
 4               MS. HERNANDEZ:  -- rather than that.
 5               THE COURT:  Right.  The classification specialist
 6    can't tell us how the agent processed the spreadsheet.  So I
 7    don't see how your proposal can --
 8               MS. HERNANDEZ:  I don't think that -- my view is
 9    it doesn't matter how she -- if it is a classified document,
10    there should be some notification on the document itself.
11               THE COURT:  No.  No, that's not true, but that's
12    not even the point.  They can't tell what's been classified
13    and not classified -- how -- until they know how -- they
14    can't tell the scope of the problem until they know how she
15    processed the spreadsheet.  Ms. Hernandez, I --
16               MS. HERNANDEZ:  I don't believe that --
17               THE COURT:  -- I'm sorry, but I just -- you're --
18    either you -- you said you didn't understand their proposal.
19               MS. HERNANDEZ:  Well, I'm just --
20               THE COURT:  You're making that clear.  I don't
21    know what to say.
22               MS. HERNANDEZ:  I understand that proposal.  What
23    I am -- what I'm arguing to the Court that -- I think the
24    proposal that's being recommended makes no sense for this
25    reason.  First of all, we have a lot of these.  Maybe --
```

1    some are blank, but we have a lot of these.  And there's

2    nothing in these -- in these -- in the content of these that

3    is even remotely, I would submit to the Court, within any

4    area of classification.  I mean, they're pretty mundane

5    statements.

6              THE COURT:  Ms. Hernandez, there -- I don't know

7    what to say.  I have to stop you because --

8              MS. HERNANDEZ:  Well, I would like to argue, but

9    if the Court doesn't let me, then that's fine.  I'll just

10   sit down.

11             THE COURT:  You're offering an opinion about

12   classified information that there's no basis to make.  I

13   don't know what to say to you.  I know enough about

14   classified information to say that reviewing a document is

15   not -- doesn't -- reviewing a document without context

16   doesn't say very much about what its classification status

17   is.

18             MS. HERNANDEZ:  There are documents that talk

19   about going to lunch; there are documents that talk about

20   interviewing witnesses in this case, not, you know -- we're

21   not talking about interviewing the President of the United

22   States or a foreign dignitary.  These are mundane -- what

23   I'm telling the Court is my review of these documents, very

24   mundane.

25             THE COURT:  Okay.

1          MS. HERNANDEZ:  And my -- and there is nothing --

2     these are messages.  These are text messages.  If they're

3     text messages and the Government is asserting that they may

4     be classified, there should be a classification notification

5     on the message.  That witness does not have to say anything.

6     There could be someone with -- a classification specialist

7     who could look at them and say, "Oh, there's a notification

8     on it; fine, it's classified.  There's no notification on

9     it, it's not classified."  My request to the Court is that

10    the witness who's on the stand should not be involved in

11    this at all because it interferes with the ability to

12    cross-examine her on the substance of this case that she's

13    already testified to.

14          THE COURT:  All right.

15          MS. HERNANDEZ:  If they want to put her on for

16    testimony about this peripheral issue, then I would submit

17    to the Court that her testimony be stricken and then they

18    can go back and figure out what they want to do with the

19    classified or not-classified information.

20          And just to follow up on Mr. Jauregui's statement,

21    we have a witness, Mr. Greene, as the Court may recall, that

22    supposedly handled classified information.  The Government

23    told us two things:  "It's so classified that we can't let

24    defense counsel look at it, but it's not so classified that

25    we haven't been able to figure out whether he committed a

1    crime."  Again, it's -- it is an inconsistent presentation

2    of these arguments about classification.

3                    THE COURT:  All right.

4                    MR. SMITH:  Your Honor, we just would note --

5                    THE COURT:  I'm going to recognize Mr. Jauregui

6    who's had his hand up.

7                    MR. JAUREGUI:  Thank you, Your Honor.

8                    Judge, just to be clear so that Your Honor

9    understands the background of the file, just -- the Excel

10   stuff, there are three different Excel files, Judge.  Three

11   of them.  One produced by the FBI to the Government.  Okay?

12   That one had the hidden rows, and I'm not going to talk

13   about the contents of those hidden rows.  That one had the

14   hidden rows.  But there is another file -- another Excel

15   file -- which I think is the one that was meant to be given

16   to us.  That one does not have the hidden rows, does not

17   have the hidden files.  And that one was created by

18   Mr. Kenerson on November 28th at 2:25 p.m.  It's in the

19   metadata.  And it was modified by him at 7:33 p.m. on

20   November 28th.  Okay?  And that eliminated those rows.

21   Okay?  This has all been one big screw-up.  They

22   inadvertently gave us that one with all the hidden rows,

23   which is full of exculpatory evidence and stuff that would

24   be good for the defense.  But for the Government to say that

25   they had no idea that that stuff was in -- was in those

1    hidden rows, knowing full well that they created a new

2    document with no hidden rows on November 28th and then

3    modified it at 7:33 p.m.

4         THE COURT:  All right.

5         MR. JAUREGUI:  Just want to let Your Honor know.

6         THE COURT:  All right.  Very well.

7         Mr. Pattis?

8         MR. PATTIS:  The -- I would ask that the Court

9    consider appointing a special master to supervise the

10   proceedings going forward.  And I realize you may be

11   thinking, "Seriously?"  But here's why.  We've got a witness

12   on the stand in the middle of being confronted, and we have

13   a right to confront this witness not just on what she's done

14   well but what she hasn't, and we have a right to impute what

15   she hasn't done well to the Government who is our party

16   opponent.  We may or may not have been given material that

17   is exculpatory and classified, and if that's the case, then

18   we're in a constitutional conundrum here where the

19   Government should be compelled to decide whether to proceed

20   with this prosecution at all or let us keep what we have if

21   it is, in fact, classified.  I've seen indications in the

22   overnight communication with the Court that suggested

23   Ms. Miller may herself need counsel.  "I was ordered to

24   destroy 338 exhibits by someone else"?  Exhibits in what

25   case?  There were apparently internal discussions about the

1    viability of the 1776 Returns documents by the agents.

2    There were discussions about whether the full MOSD tape,

3    which we've argued bitterly about in this case, exonerated

4    the clients and whether a conspiracy theory was ridiculous

5    in the face of that.

6            I will not return those documents absent an order

7    of the Court because I believe doing so will require me to

8    sacrifice my loyalty to the client and my duty of zealous

9    advocacy on his behalf.  If the Government gave us

10    classified material that's exculpatory, that's on the

11    Government, and absent an order of this Court, I simply will

12    not return it and I will use it, and the Government made

13    this error, and it has to choose now whether to proceed with

14    the prosecution in order to vindicate the classification of

15    these materials if these are, in fact, the materials in

16    question -- and I don't know -- or not, but to suggest to

17    the defense that the Government -- that the sovereign erred

18    and gave us classified information and now we can't use it

19    if it's exculpatory, frankly, is obscene.

20            THE COURT:  Mr. Pattis, no one is -- this is --

21    we're all trying to address a spill of classified

22    information, but that doesn't -- but let me just say none of

23    what we're talking about means you won't be able to use any

24    of that information, including, in theory, information you

25    got that's classified.  I'm sure the Government won't agree

1    to that.  But my point is you're not giving up any right, it

2    seems to me, to use any of that material --

3                MR. PATTIS:  I'm not --

4                THE COURT:  -- by --

5                MR. PATTIS:  -- giving back anything --

6                THE COURT:  But --

7                MR. PATTIS:  -- though, without a --

8                THE COURT:  No, I know you won't do that absent an

9    order of the Court.  I understand that.  My point is if I

10   ordered you to do that or you did it without an order, none

11   of that means you wouldn't be able to use it in your case --

12               MR. PATTIS:  But it -- on -- to Mr. Smith's

13   over-classification point, here, you know -- the dicta in

14   the cases suggest the often competitive, you know, business

15   of criminal defense.  Here we are 40-some days -- 45, 46

16   days into these proceedings since jury selection.  We've all

17   invested enormous amounts of time and energy into this case

18   and both sides have come in it to win it.  I have every

19   confidence that my adversaries wake up in the morning, look

20   in the mirror, and say, "Today, I'll do justice."  I just

21   don't have as much confidence in them as they have in

22   themselves.  And I would feel much more comfortable, on

23   behalf of my clients [sic], if a neutral and detached

24   magistrate were to make these evaluations.  I don't want to

25   place into their hands material that they can make, at a --

1   at the margin, a judgment --

2               THE COURT:  Right.

3               MR. PATTIS:  -- call about --

4               THE COURT:  One --

5               MR. PATTIS:  -- that I might not get back.

6               THE COURT:  One thing you -- we could consider is

7   for you to give it back to them -- I order you to give it to

8   them and I order you to give it to me.

9               MR. PATTIS:  Mm-hmm.

10              THE COURT:  And that way --

11              MR. PATTIS:  But not to retain a copy?

12              THE COURT:  And that -- right.  You wouldn't

13  retain it, but I would retain your copy.  So whatever --

14  wherever we head with whatever they want to do, I have a

15  copy, and so it's preserved -- it -- what you had -- a

16  record of what you had is preserved and I have it.

17              MR. PATTIS:  But may I ask -- inquire, sir, in --

18  this is -- in an ideal universe, this would have all

19  occurred pretrial, pre-cross-examination.  The witness is on

20  the stand.  And the jury's not going to know that somehow

21  the witness gave us material that we had to give back and

22  we're supposed to trust the integrity of her investigative

23  steps and efforts?

24              THE COURT:  Well, once again, by you doing that

25  and by me -- none of it precludes -- I mean, the question of

1    what you can do with the witness is a totally separate

2    question; right?

3              MR. PATTIS:  But I think the question of who gets

4    to decide -- we have every confidence in you and we -- and,

5    you know, I've enjoyed getting to know the Government's

6    lawyers in this case.  I simply think that this is a case

7    where a non-party should be involved in get- -- in

8    gatekeeping decisions.

9              THE COURT:  I -- again, I just don't see -- if you

10   provide me a copy or you provide the Government and the

11   Government provides -- of what you had, what you had is

12   preserved.  I have it.

13             MR. PATTIS:  But I can't do anything with it

14   and --

15             THE COURT:  Not --

16             MR. PATTIS:  -- there's no one who's got --

17   there's no neutral set of eyes evaluating it.

18             THE COURT:  Well, the question of evaluation is a

19   different thing, but the status quo in terms of what you had

20   is preserved if I have a --

21             MR. PATTIS:  I get --

22             THE COURT:  -- copy.

23             MR. PATTIS:  -- that.  And I get that.

24             THE COURT:  Okay.  All right.

25             MR. SMITH:  Your Honor, no one --

```
 1              THE COURT:  Mr. Smith, if I -- if you'll just
 2    wait, I'll recognize you, without talking.  Go ahead.
 3              MR. SMITH:  Thank you, Your Honor.
 4              I'm sorry.  I'm frustrated because everyone's
 5    talking about classified information, but no one's citing
 6    the relevant rule which is the Classified Information
 7    Procedures Act.  Ms. Ballantine --
 8              THE COURT:  Does that govern accidental spills of
 9    classified information?
10              MR. SMITH:  So Your Honor, can I just round out
11    the one thought that I'm -- so, Your Honor, it -- the
12    Classified Information Procedures Act, in Section 2,
13    requires the Government to identify pretrial when any
14    matters relating to classified information may arise in
15    connection with the prosecution.  That was not complied with
16    here.
17              THE COURT:  Right, obviously, because this was
18    inadvertent and they -- it wasn't part of their case.  So
19    why would they comply with --
20              MR. SMITH:  Inadvertent --
21              THE COURT:  -- CIPA?
22              MR. SMITH:  -- or otherwise.  Inadvertent or
23    otherwise.  There's no -- I don't -- I --
24              THE COURT:  So if the Government --
25              MR. SMITH:  We could brief --
```

1          THE COURT:  Your position --

2

3          MR. SMITH:  -- whether that --

4          THE COURT:  -- is that if the Government plans to

5    inadvertently disclose classified information, it needs to

6    comply with CIPA?

7          MR. SMITH:  No, no, no, Your Honor.  I don't --

8    Your Honor may be correct, but the way that we're reading

9    the rule is not that there's a good-faith/bad-faith

10   requirement here.  The purpose of the rule is to tee up

11   these issues before trial.  Now, if one party neglects to,

12   it -- there could be -- the purpose -- since the purpose of

13   the rule is notice, the issue isn't good or bad faith.  It's

14   there hasn't been notice.  So we can't allow a party to

15   throw a halt into the proceedings when that preliminary

16   notice issue -- rule hasn't been complied with.  That's all

17   I'm saying.  And, Your Honor, there could be rules in CIPA

18   governing when Brady information must be given to the

19   defense notwithstanding any classified information -- the --

20   designation.  So I think those -- Section 3 and Section 2

21   govern what we're talking about.  That's all I wanted to

22   say.

23          THE COURT:  All right.  Mr. Roots, I'll hear from

24   you.

25          MR. ROOTS:  Your Honor, we have caught the FBI --

```
1              THE COURT:  Mr. Roots, what's your -- I really
2     need you to get to what your position is on bringing the
3     agent in, having the Government ask their questions.  If the
4     defense wants to ask questions within the scope of what
5     we're getting at here, how she processed this spreadsheet,
6     so they can complete their, sort of, damage review of what's
7     happened.  I think that's really what I need you to focus
8     on.
9              MR. ROOTS:  I do want to address that.
10             THE COURT:  Okay.
11             MR. ROOTS:  We have caught the FBI in email
12    exchanges with other FBI agents amongst themselves casually
13    discussing --
14             THE COURT:  Are you getting -- why is this
15    relevant to what my question is?
16             MR. ROOTS:  Because it goes directly to how to
17    examine this witness on this very topic you're discussing.
18             THE COURT:  Mm-hmm.
19             MR. ROOTS:  We've caught them casually talking
20    amongst themselves about how they fabricate evidence against
21    the American people, how they destroy evidence, how they
22    doctor evidence.  I cannot even believe we are talking about
23    classification.  The American people need to know the full
24    extent of this.  These are serious federal crimes.  These
25    five men on trial right here are accused of obstructing
```

```
 1    official proceedings by, for example, being in a hallway
 2    that's 100 yards away from an official proceeding --
 3              THE COURT:  Mr. Roots --
 4              MR. ROOTS:  -- that ended before they got to the
 5    hallway.
 6              THE COURT:  Mr. Roots, get to your agreement or
 7    disagreement with the procedure the Government has laid out,
 8    please.
 9              MR. ROOTS:  Well, I want to directly address this.
10              THE COURT:  Right now.
11              MR. ROOTS:  Well --
12              THE COURT:  Just --
13              MR. ROOTS:  -- the procedure is this.  These are
14    serious federal crimes, Your Honor.  This witness needs to
15    be informed that she needs an attorney, and I don't believe
16    she can be examined at all.  I cannot even believe we're
17    having this discussion of examining her.  She -- the emails
18    are -- that she's exchanged admit to federal crimes.  We
19    cannot examine this witness.
20              THE COURT:  Mr. Roots, I think you're making a big
21    leap there.  Let me just put it that way.
22              I think she can be examined.  I think the first
23    step in what -- however we're going to do -- however we're
24    going to deal with this is putting her -- bringing her in
25    here, putting her on the stand --
```

```
 1              MR. ROOTS:  Can I make one suggestion?
 2              THE COURT:  -- and having the Government ask
 3     questions -- the questions they want to ask.  If there are
 4     questions within the scope of what the Government asks that
 5     the defense would like to ask, that's perfectly fine.  And
 6     we can, then, take the next step.
 7              MR. ROOTS:  (Indicating.)
 8              THE COURT:  Yes, Mr. Roots.
 9              MR. ROOTS:  In the event that the jury ever
10     returns in this trial, I think they need to see this witness
11     take the Fifth in front of them.
12              THE COURT:  Okay.  Mr. Roots, the question of what
13     we do in front of the jury is not -- we're not debating and
14     discussing that right now.
15              Ms. Hernandez?
16              MS. HERNANDEZ:  Your Honor, I would object to the
17     Court making any decisions in connection with the request of
18     the Government until you have this document in front of you
19     and you can see it.  I don't see how the Court -- I mean,
20     some of these -- most of these are so mundane.  "Oh.  What?
21     That's so interesting.  I want to go to the Capitol."
22              THE COURT:  Ms. Hernandez --
23              MS. HERNANDEZ:  "Ugh," U-G-H.  "No," N-O- -- I
24     mean, this is not -- if this is classified information --
25              THE COURT:  Ms. Hernandez, the point is that the
```

 1    Government believes that some portion of it is and in the

 2    absence of any other -- I mean, your reading those things

 3    doesn't bear at all on what the appropriate way forward here

 4    is.

 5              MS. HERNANDEZ:  Your Honor, we're in the middle of

 6    a trial --

 7              THE COURT:  Really?

 8              MS. HERNANDEZ:  -- which is an adversarial

 9    process --

10              THE COURT:  Yes.

11              MS. HERNANDEZ:  -- and there's one person in this

12    courtroom that is required to make decisions -- that is

13    entitled to make decisions based on the presentations of

14    both sides.  You are deferring to the Government without

15    reviewing the document.  How can -- I don't understand how

16    the Court can -- I don't understand how the Court can make a

17    decision on a Government argument if you don't have the

18    document in front of you.  All I'm asking --

19              THE COURT:  Because the contents of the

20    document -- the particular contents of the document are

21    irrelevant to the questions the Government wants to ask this

22    witness.  That's why.

23              MS. HERNANDEZ:  Again, I don't believe that's the

24    case.

25              THE COURT:  Okay.

1      MS. HERNANDEZ:  I believe you -- if you saw this,

2  you would agree with me, is my suggestion to the Court.

3  Number one.

4      Number two.  I object to a witness who has begun

5  cross-examination being asked any questions in this manner.

6  There's only one way to proceed in a case once a witness

7  takes the stand, and that is in front of a jury with -- she

8  already ended her direct.  The next step is

9  cross-examination or striking the testimony.  Anything other

10  than that is inconsistent with the client's Sixth Amendment

11  confrontation rights and due process of law and fair trial

12  rights and whatever other constitutional provision there is

13  that protects my client's fair trial rights.

14      THE COURT:  The very limited --

15      MR. PATTIS:  Biggs joins those latter remarks,

16  Judge.

17      THE COURT:  All right.  The very limited nature of

18  the inquiry here pertains to a legal issue, not one -- and

19  clearly -- let's put it this way.  It pertains to a legal

20  issue and is at least, by my thinking right now -- I'm sure

21  you may disagree -- one that would not -- well, the overall

22  thrust of this inquiry is about the spill of classified.

23  That is not something -- you all may disagree.  We may

24  litigate it.  But as I sit here, it's not something that's

25  ever going to be before the jury.  So I -- this is

1   something -- they want to -- let me put it this way.

2   Whether they ask the witness off the stand, on the stand, it

3   really doesn't matter -- it would be not in front of the

4   jury -- to get this information to see how they can proceed

5   with their damage assessment.  So --

6           MS. HERNANDEZ:  Your Honor, I submit that --

7           THE COURT:  -- again, the Government -- I

8   understand.  You've --

9           MS. HERNANDEZ:  I submit that's an abuse of

10  discretion for the Court to defer to the Government without

11  looking at the document.

12          THE COURT:  I'm not deferring to the Government.

13  I have given the defense an incredible amount of time to

14  articulate their position.  But as I've said repeatedly, the

15  content of the document has no bearing on my decision here,

16  and so it doesn't matter what it looks like or what it says.

17  The Government is going to ask process questions about how

18  this witness processed this document for classified and for

19  her -- I don't -- maybe these are two intertwined things,

20  but how she processed this document.  You all will be able

21  to ask the same questions.  Whether we repeat this in front

22  of the jury, if you all want to argue that to me, I'll hear

23  you.  But for the moment, this is a way that we can get

24  to -- they can get to the bottom of knowing how to conduct

25  this investigation into the classified -- into the potential

 1     classified documents that are in this spreadsheet.

 2              Let's bring the witness in and you may examine

 3     her, Ms. Ballantine.

 4              MR. PATTIS:  Can we ask that this be

 5     video-recorded, as well?  Because if we do get to present it

 6     to the jury, I don't want her to have the benefit of having

 7     thought about how to rehearse her answers.

 8              THE COURT:  I don't think there is a provision for

 9     that in federal court.

10              MR. PATTIS:  Then we would object on the grounds

11     that it's uniquely within the jury's province to assess the

12     credibility of a jury based -- or a witness based on such

13     things as their demeanor, and giving the Government an

14     opportunity to rehearse this is going to prepare her for

15     testimony that may or may not come.

16              THE COURT:  Would you -- Mr. Pattis, would you

17     rather do it not in front of me?

18              MR. PATTIS:  I had requested -- it's not you that

19     I'm so worried about.  It's her presentation to the juror

20     [sic].  I suspect that this might be deeply embarrassing for

21     her, and if it is, that would affect her demeanor and that

22     would affect how the jury evaluates her credibility,

23     including her credibility on such things as how she did

24     these miraculous identifications of people in a crowd.

25              THE COURT:  All right.

1          MR. PATTIS:  And because the Government has chosen

2     to place this witness before the jury on those questions,

3     her credibility is key, and anything that enhances her

4     credibility prejudices the defense.

5          THE COURT:  All right.  I don't know what this is

6     going to do to her credibility one way or the other, but

7     it's information the Government needs at the -- at this

8     moment to deal with this classified --

9          MR. PATTIS:  Again, this --

10         THE COURT:  -- information --

11         MR. PATTIS:  -- is an error that -- this is an

12    error that the Government created.  We didn't, and we're in

13    the defense case, and this is abridging our confrontation

14    rights and the effectiveness of our confrontation.

15         THE COURT:  You're going to --

16         MR. PATTIS:  I mean, and I know I'm being

17    unreasonable and, in terms of this as a transactional event,

18    that what you're saying is entirely reasonable independent

19    of the constitutional considerations, but consider the

20    testimony we have heard from her and the number of

21    identifications of -- whose -- people she identified from

22    hundreds of yards away by looking at the back of their

23    heads, dots on a screen, and she was kept on the stand for

24    the better part of a two- -- for two days to prove a hotly

25    contested issue in this case, the tools theory, and we asked

1    that it not be admitted, it was, and so we're dealing with

2    it, and now we're prepared to attack it and we're prepared

3    to attack it by any means fair, and "any means fair" means

4    asking jurors to draw inferences from her demeanor.  Giving

5    her an opportunity to rehearse this testimony, even to be

6    asked these questions by the Government in the middle of her

7    cross-examination, will make her a more effective issue --

8    witness for the juror [sic] which is why people prepare

9    jurors [sic].  I would say that just as the Government, in

10   some instances, has to make decisions about whether to

11   present evidence because it would require the disclosure of

12   national security or confidential information, there should

13   be a rule that suggests when the Government's error yields

14   the production of this and they want it back, there are

15   consequences if you're in the middle of a witness's

16   cross-examination, and they cannot abridge that

17   confrontation right, and the consequence should be to

18   withdraw -- either strike the witness's testimony or grant a

19   mistrial --

20            THE COURT:  All right.  All right.

21            MR. PATTIS:  -- but they can't have it both ways.

22            THE COURT:  I understand your argument,

23   Mr. Pattis.  I just think the impact on her credibility is

24   really negligible and --

25            MR. PATTIS:  Tell it to my client if there's a

```
 1    conviction.
 2              THE COURT:  No -- I -- well, the -- I have to
 3    assess that in doing my job and --
 4              MR. PATTIS:  Yes, sir.
 5              THE COURT:  -- the Government needs to be able to
 6    get this information to be able to respond to the Jencks
 7    requirement --
 8              MR. PATTIS:  But it doesn't have to.
 9              THE COURT:  -- and --
10              MR. PATTIS:  It doesn't get to benefit from its
11    mistake.  And as to Mr. Biggs, the Government --
12              THE COURT:  Mr. Pattis, I've heard you.
13              MR. PATTIS:  I'm sorry.
14              THE COURT:  I hear you.  I -- you've made your
15    record.
16              Let's bring in the witness, please.
17              (Brief pause.)
18              (Nicole Miller resumed the witness stand.)
19                         DIRECT EXAMINATION
20    BY MS. BALLANTINE:
21    Q.  Good morning, Special Agent Miller.
22    A.  Good morning.
23    Q.  I remind you that you remain under oath.
24              MS. BALLANTINE:  Your Honor, if I could have
25    permission to briefly lead the witness in order to orient
```

1    her as to the area of inquiry that I need to conduct.

2            THE COURT:  All right.  Is there any objection?

3            MR. SMITH:  Objection, Your Honor.

4            MS. BALLANTINE:  Your Honor, I just need to orient

5    her to --

6            THE COURT:  We'll just take it question by

7    question, Ms. Ballantine.

8            MS. BALLANTINE:  Okay.

9    BY MS. BALLANTINE:

10   Q.  Special Agent Miller, did you conduct a pull -- I'm

11   sorry; this is a really bad angle there -- did you conduct a

12   pull of your Lync messages in connection with preparing

13   Jencks packets in this case?

14   A.  I did.

15   Q.  And was the pull of messages that you requested

16   headquarters to make for the date range from January 6th of

17   2021 through November 1st of 2022?

18   A.  I believe so, yes.

19   Q.  And did you receive from headquarters a multi-line Excel

20   spreadsheet in response to your request that they pull your

21   Lync messages?

22   A.  I did.

23   Q.  Now, Special Agent Miller, Lync exists on the FBI's

24   classified systems; is that correct?

25           MR. SMITH:  Objection.  Leading.

```
 1                    MS. HERNANDEZ:  Objection.

 2                    THE COURT:  Overruled.

 3                    MR. SMITH:  This --

 4                    THE WITNESS:  Yes.

 5      BY MS. BALLANTINE:

 6      Q.  And when you received the Excel spreadsheet back from

 7      headquarters, did the cover memo to that spreadsheet --

 8                    MR. SMITH:  Objection.  Leading.

 9                    MS. BALLANTINE:  If I could finish my question,

10      Your Honor?

11                    THE COURT:  Yes.

12                    MR. SMITH:  This is inappropriate.

13                    THE COURT:  Mr. Smith.

14                    You may finish your question.

15      BY MS. BALLANTINE:

16      Q.  Did the cover memo --

17                    THE COURT:  And if the witness will pause so I can

18      hear an objection and rule on that objection.  All right.

19      BY MS. BALLANTINE:

20      Q.  Did the cover memo to that spreadsheet advise you

21      that -- did the cover memo advise you that the spreadsheet,

22      before it was reviewed, was classified at the Secret/NOFORN

23      level?

24                    MR. JAUREGUI:  Objection.  Judge, she --

25                    MR. METCALF:  Objection.
```

```
 1              MR. JAUREGUI:  Judge, the Government is testifying
 2     at this point.  It's the Government that's testifying.
 3              MR. METCALF:  That's a leading question, Your
 4     Honor.
 5              MR. PATTIS:  And the best evidence is the memo.
 6              THE COURT:  All right.  Ms. -- why don't I just
 7     hear the parties at sidebar for a moment.
 8              (Bench conference:)
 9              THE COURT:  Ms. Ballantine -- I mean, isn't there
10     a way to do this in a non-leading way that just says, "Did
11     it have a cover sheet," for example?  I mean, I -- rather
12     than -- oh, you have to press the button.  I don't think I
13     heard you.
14              MS. BALLANTINE:  (Indicating.)
15              THE COURT:  Okay.
16              MS. BALLANTINE:  Sorry.  I haven't had the
17     pleasure of getting to use one of these phones before.
18              THE COURT:  Okay.
19              MS. BALLANTINE:  I feel like I'm back in high
20     school.
21              MS. HERNANDEZ:  Your Honor --
22              THE COURT:  Yes?
23              MS. HERNANDEZ:  I'm sorry, Your Honor.  Can we
24     have the witness step out?  We've had problems --
25              THE COURT:  No, I just --
```

1          MS. HERNANDEZ:  Can we have the witness step out?

2     Because we've had problems in the past with witnesses

3     hearing what is being said over the phones.

4          THE COURT:  I'm going to just ask Ms. Ballantine

5     to keep her voice down.  I just popped my head out to see if

6     I could hear her and I could not.

7          MR. SMITH:  Your Honor, Ms. Ballantine's voice

8     is -- mouth is right next to the mic that's on.  So that's

9     why the parties have been moving away from the mic when --

10          THE COURT:  I understand.

11          MR. SMITH:  Yeah.

12          THE COURT:  Okay.

13          MS. BALLANTINE:  Like I said, I'm a novice at this

14     phone.  But I can certainly ask the question in --

15          THE COURT:  All right.

16          MS. BALLANTINE:  -- a non-leading --

17          THE COURT:  All right.

18          MS. BALLANTINE:  -- manner.

19          THE COURT:  All right.

20          MS. HERNANDEZ:  I can hear --

21          THE COURT:  All right.  All right.  You can --

22     hold on.  Ms. Ballantine, did you say you can?

23          MS. BALLANTINE:  I will ask it --

24          THE COURT:  All right.

25          MS. BALLANTINE:  -- in a non-leading --

```
 1                THE COURT:  Very well.
 2                MS. BALLANTINE:  -- manner.
 3                THE COURT:  All right.  We can -- all right.  Very
 4     well.
 5                (Return from bench conference.)
 6     BY MS. BALLANTINE:
 7     Q.  Special Agent Miller, when you received the spreadsheet
 8     of messages back from headquarters, what was the class- --
 9     what was the overall classification level of that
10     spreadsheet?
11                MR. SMITH:  Objection.  Leading.
12                MR. METCALF:  Objection.  Leading.
13                THE COURT:  Overruled.
14                THE WITNESS:  Secret/NOFORN.
15     BY MS. BALLANTINE:
16     Q.  Now, do you recall the steps that you took to review the
17     spreadsheet before you provided it to the U.S. Attorney's
18     Office?
19     A.  I believe I do, yes.
20     Q.  Okay.
21     A.  So there was over 15,000 messages.  So I filtered by
22     what I sent, because it was the information -- my
23     statements.  So what I sent.  And then I went through those
24     messages, and anything that was relevant -- any statement I
25     made is what was provided.
```

1    Q.  Okay.  So is it accurate to say that you filtered and

2    then did a classification review?

3    A.  Yes.

4                MS. BALLANTINE:  Okay.  I don't have any further

5    questions.

6                THE COURT:  All right.  Any questions from any

7    defendant?

8                MR. SMITH:  Yes, Your Honor.

9                (Brief pause.)

10                Your Honor, I'm just bringing up the transcript

11    from yesterday.

12                THE COURT:  Okay.  I don't know how that would

13    be -- all right.

14                MR. SMITH:  It's relevant because it concerns

15    filtering, Your Honor --

16                THE COURT:  All right.

17                MR. SMITH:  -- the question that the witness was

18    asked.

19                         CROSS-EXAMINATION

20    BY MR. SMITH:

21    Q.  Good morning, Agent.

22                We were discussing the spreadsheet yesterday and

23    how the spreadsheet that you produced to the Government

24    initially had about 26 rows in it of Lync statements that

25    you may have sent relating to this case.

1            MS. BALLANTINE:  Objection, Your Honor.

2            MR. SMITH:  Your Honor, I'm just -- I'm following

3     up on the question -- the last question that Ms. Ballantine

4     just asked which is, "Did you filter the 15,000 messages

5     that you received from FBI headquarters?"  Yesterday, the

6     witness testified she had not seen those messages.

7            MS. BALLANTINE:  Your Honor, Mr. Smith just asked

8     a question about a spreadsheet that contained approximately

9     25 rows.  That is not the spreadsheet that we -- that I was

10    discussing with Special Agent Miller.

11           MS. HERNANDEZ:  Objection to the talking --

12    speaking objection in front of the witness, Your Honor.

13           THE COURT:  All right.  Mr. Smith, let me --

14           MR. SMITH:  Your Honor, I can just read from

15    the -- so -- look, Your Honor, I'll just read from the

16    transcript.  It's Page 12,714, yesterday.

17           "Mr. Smith:  So -- well, first, Ms. Miller, are

18    there hidden rows in this spreadsheet?

19           "Not that I'm aware of."  Answer.

20           "Question:  You created this; right?

21           "Answer:  There shouldn't be hidden rows, no."

22           So I said:  "So when I click 'clear' in the

23    spreadsheet, do you see that there are now about 8,000 rows

24    here?

25           "Answer:  Yes.

1          "Question:  Okay.  So it appears that someone hid

2     rows in that spreadsheet; right?

3          "Answer:  I haven't seen it like this before,

4     though."

5          So my question -- Ms. Mil- -- Ms. Ballantine just

6     asked whether the witness filtered the initial dump of Lync

7     messages that were delivered to her from FBI headquarters.

8     She indicated, I believe, today that she had filtered them.

9     BY MR. SMITH:

10    Q.  What I -- when I showed you the spreadsheet yesterday

11    and I clicked "unfilter" so that all of the Lync messages

12    were there, you testified that you had not seen the

13    spreadsheet like that before.  Do you recall that?

14    A.  I do, but what you were showing me was in reference

15    to -- so after I provided my information, the attorneys took

16    that information and put it into a spreadsheet.  That --

17         THE COURT REPORTER:  I'm sorry.  What?

18         THE WITNESS:  Oh, sorry.  I know I --

19         THE COURT:  Yeah --

20         THE WITNESS:  -- talk fast.

21         After I provided my information, the -- that

22    information was, then, placed into a spreadsheet, then

23    provided to me so I knew, kind of, what information was

24    provided, and that's what I was referring to.  So when you

25    unhid all those rows, that is not what I had been provided

1    by the attorneys.

2    BY MR. SMITH:

3    Q.  By the attorneys?

4    A.  Like, by -- so my information was provided.  They --

5    Q.  But by whom?  Sorry to --

6    A.  So I provided the filtered information or just my

7    statements.

8    Q.  The -- approximately 25 rows?  Not -- I'm not holding --

9    A.  I --

10   Q.  -- you to a specific --

11   A.  -- would need to look at initially what was sent, but

12   whatever was filtered just from my statements out of that

13   document was provided to the attorney's office.

14   Q.  Okay.

15   A.  The attorney's office, then, took what was provided to

16   them and created a new exhibit or a new item.

17   Q.  Right.

18   A.  That was shown to me, so I knew it was created.

19   Q.  Correct.

20   A.  That -- so when you asked me about those hidden columns,

21   I had not seen it in regards to what had been provided to me

22   by the attorneys.

23   Q.  Yes.  Now, I'm asking you about something that

24   Ms. Ballantine asked you about which is something slightly

25   different.  She asked you about a spreadsheet of your

1    Jencks -- of your Lyncs [sic] messages that had been given

2    to you by FBI headquarters.  Do you remember her question

3    about that?

4    A.  I do.

5    Q.  And that -- you said that there was a -- they provided a

6    spreadsheet to you -- FBI headquarters -- of your Lync

7    messages; is that right?

8    A.  Yes.

9    Q.  Okay.  And that, you said, had about 15,000 rows; right?

10   A.  More -- yeah, a little more than that, but yes.

11   Q.  Okay.

12   A.  Approximately, yes.

13   Q.  And then you testified that you filtered -- you said

14   you -- that you filtered those messages?

15   A.  To just the messages I sent.

16   Q.  To just the messages you sent?

17   A.  Because it was my statements.  Correct.

18   Q.  Okay.  And you didn't remove any other -- you didn't

19   remove any messages of yours from the spreadsheet that was

20   given to you by FBI headquarters?

21   A.  What do you mean by -- I didn't, like, remove anything,

22   but I took some statements that, like -- so if anything was

23   related to this investigation and to what I was testifying

24   to, those were provided.  Some of the internal conversations

25   regarding, like, administrative things as far as case files

1    and adding things to case files, that wasn't provided

2    because it didn't relate to my testimony or to what we're

3    doing.

4    Q.  And when you say "provided," you are referring to what

5    you provided to the prosecutor's office?

6    A.  Yes.

7    Q.  Okay.  So when -- yesterday, when I unfiltered that

8    spreadsheet and then there are -- you saw lots and lots of

9    rows; right?

10    A.  I did.

11    Q.  And you said that you hadn't seen that before; right?

12    A.  In regards to what we were discussing, correct.

13    Q.  So -- okay.  So when FBI headquarters gave you the

14    spreadsheet of all of your Lync statements, was that similar

15    to what you saw with the thousands of rows that I showed you

16    yesterday?

17    A.  It was, but you were showing me the information that you

18    had been given, so -- the Jencks information you had been

19    given.  You showed me all of my -- all my statements, and

20    then you had pulled the spreadsheet.  So I assumed you were

21    talking about that, not the document initially given to me

22    by the FBI headquarters.

23    Q.  I understand now.  Okay.

24         But the document that I showed you yesterday after

25    I unfiltered it -- after I unfiltered it -- was -- is that

```
 1    the same information that FBI headquarters gave to you
 2    before you filtered?
 3    A.  So I would need to look --
 4              MS. BALLANTINE:  Objection, Your Honor.
 5              THE WITNESS:  -- through that and verify that.
 6              MR. SMITH:  Okay.  Okay.  Okay.
 7              MS. BALLANTINE:  Objection.  Move to strike the
 8    answer, Your Honor.
 9              THE COURT:  Why don't I hear the parties at
10    sidebar.
11              (Bench conference:)
12              MS. BALLANTINE:  My objection, Your Honor, is that
13    I don't think that this witness --
14              MS. HERNANDEZ:  Your Honor --
15              MS. BALLANTINE:  -- having been shown --
16              THE COURT:  Ms. Ballantine --
17              MS. BALLANTINE:  -- briefly --
18              THE COURT:  Ms. --
19              MS. BALLANTINE:  I'm bad at the phones.
20              THE COURT:  If you can just keep your voice down.
21              MS. BALLANTINE:  Okay.  So Mr. Smith -- I was not
22    here yesterday, but I understand that Mr. Smith selected all
23    the material, so unfiltered the spreadsheet yesterday and
24    showed it to Special Agent Miller.  He's now asked her if
25    that spreadsheet -- which, I believe, contained more than
```

```
 1    10,000 rows; likely closer to 15,000 rows -- is exactly
 2    identical to what FBI headquarters provided to Special Agent
 3    Miller.  I think that is an unfair question because Special
 4    Agent Miller has not had an opportunity to review what --
 5    they -- to review those two documents, and I do not
 6    believe -- when -- we're not before the jury.  This is a 104
 7    hearing.  I candidly don't know that she's in a position to
 8    opine on that --
 9              MS. HERNANDEZ:  Your Honor --
10              THE COURT:  You may proceed.
11              MS. BALLANTINE:  -- nor -- and I don't -- I --
12              THE COURT:  Hold on, Ms. Ballantine.  Now, your --
13    I think your mic is on.  Your -- you have to press the
14    button to make it not be on, because I could just hear you
15    through the microphone.
16              MS. BALLANTINE:  Can you hear me now?
17              THE COURT:  That's perfect, because I could not
18    hear you.  Go ahead.
19              MS. BALLANTINE:  Okay.  So the last thing I said
20    is I don't think it's fair of Mr. Smith to ask Special Agent
21    Miller whether what he deselected yesterday is identical to
22    what FBI headquarters provided to her.
23              MR. JAUREGUI:  Judge, "unfair" is not an
24    objection.
25              MR. SMITH:  Your Honor, she said she didn't know.
```

1    So I'm just going to move on and ask her one more question.

2            THE COURT:  She said she didn't know.  So I'm not

3    sure --

4            MS. BALLANTINE:  Okay.

5            THE COURT:  I mean, let's -- and, Mr. Smith,

6    what's -- just so we can try to move past this, what is your

7    last question so we can get it -- this out of the way in

8    case there's an objection?

9            MR. SMITH:  Well, Your Honor, I'm just going to

10   put something in the record, given Mr. -- Ms. Ballantine's

11   last representation that she believed that in the

12   spreadsheet I showed the witness yesterday, when it's

13   unfiltered, it's about 15,000 rows.  Actually, it's 11,959

14   rows.  So that would imply, if the witness just stated that

15   she received 15,000 rows from FBI, that there are 3,000 rows

16   missing.

17           THE COURT:  Well, what does that have to -- you

18   don't need her to do that.  You can --

19           MR. SMITH:  No, no, I'm just putting that in the

20   record, Your Honor --

21           THE COURT:  All right.

22           MR. SMITH:  -- because Ms. Ballantine said, "I

23   believe that" -- she wasn't -- she candidly admitted she

24   wasn't in court yesterday, but she said, "I believe that the

25   spreadsheet Mr. Smith showed the witness had 15,000 rows" --

```
 1                THE COURT:  All right.

 2                MR. SMITH:  -- but it had 11,959.

 3                THE COURT:  All right.  Can the witness be

 4     excused?

 5                MR. SMITH:  No, Your Honor.  I have another

 6     question.

 7                THE COURT:  What's the other question?  That's

 8     what --

 9                MR. SMITH:  The question is about classification

10     procedure, Your Honor.  It's what -- it's the -- directly

11     within the scope.

12                THE COURT:  Well, what is the question going to

13     be?  Let's just do this now.

14                MR. SMITH:  Your Honor, Ms. Ballantine said, "Is

15     the" -- "Are the messages that you received from FBI

16     headquarters in the spreadsheet extracted from a classified

17     database?"  I believe that was approximately the question

18     that was asked.  And the follow-up question is -- yeah --

19     the follow-up question is whether that implies that the

20     information contained with -- all the messages contained in

21     the spreadsheet are classified.

22                THE COURT:  I mean, her speculation as to that

23     means nothing for our purposes here.

24                MR. SMITH:  Your Honor, if -- I'm not asking her

25     to speculate.  If she doesn't know, she doesn't know, but
```

1    I'm just asking the question --

2              THE COURT:  Ms. Ballantine --

3              MR. SMITH:  -- because it goes to whether our --

4    the messages we have need to be given back to the

5    Government.

6              THE COURT:  It really doesn't.

7              But, Ms. Ballantine, do you -- would you object to

8    that question?  I don't think it bears anything on -- I

9    mean, I don't know that it's objectionable, but also I don't

10   think it bears anything on my ruling.

11             MS. BALLANTINE:  I agree with the Court, but I

12   don't object to the question.

13             THE COURT:  All right.  Very well.

14             MR. SMITH:  Okay.

15             (Return from bench conference.)

16   BY MR. SMITH:

17   Q.  Agent, you were asked a question by Ms. Ballantine about

18   whether the 15,000 messages you received from

19   headquarters -- FBI headquarters -- were extracted from a

20   classified data system.  Do you recall that question?

21   A.  I think she had asked me what the spread -- the sheet

22   had said on the front.

23   Q.  She did ask you that question.  And then I think she

24   asked you a follow-up question about whether the

25   information -- the data in the spreadsheet -- the Lync

1   messages -- were extracted from an FBI classified database.

2   A.  So they were extracted from FBI headquarters.  On the

3   Secret/NOFORN side, which is why that spreadsheet said that,

4   I don't know what FBI headquarters used to extract that

5   information.

6   Q.  I'm not referring to tools.  But -- to the tools they

7   used.  But do you know whether that means that the

8   information that was extracted -- your Lync messages -- is

9   classified information?

10  A.  I mean, they're on the secret side.  I would think so,

11  but I don't know.

12  Q.  You don't know?

13  A.  One way or the other.

14          MR. SMITH:  Okay.  Thank you, Your Honor.

15          THE WITNESS:  Unless it's --

16          THE COURT:  All right.  Do you want to finish --

17          THE WITNESS:  Yeah.  So unless it relates to,

18  like, a source or a very sensitive investigation.

19  BY MR. SMITH:

20  Q.  Okay.  But sitting here today, you can't say whether a

21  given message, without knowing more, is classified or not?

22  A.  I would need to see that message.

23  Q.  Right.  But you -- so I know it sounds -- my question

24  sounds silly, but we're being -- we're required to ask you

25  about general subjects rather than specific ones.

1    So you can't say -- as a general matter, simply

2    because of where the Lync messages were sourced from, you

3    can't say that implies that it's classified or not

4    classified as -- on that basis alone?

5    A.  I would need more information.

6    Q.  Because you can't say, based on what I just said alone,

7    whether the information's classified?

8    A.  No, because I don't know the headquarters system of

9    [sic] which it was pulled.

10   Q.  So you -- okay.  So you do not know either way whether a

11   given message is classified or not within the Lync

12   statements?

13   A.  It's on the secret side.  So I would think, based on

14   that, it would be, but I would need to look at the message.

15   Q.  Okay.  You just said you didn't know.  All right.  And

16   now --

17   A.  Right --

18   Q.  -- you're saying --

19   A.  -- I -- again, I'm just saying I -- like, based on the

20   system it's on -- so it's on the secret side of our system

21   as opposed to the non-secret side -- that those messages

22   would likely be classified based on the side it's on, but I

23   would need to see from headquarters, kind of, how it's

24   extracted and what that looks like to answer your question.

25            MR. SMITH:  Okay.  Thank you.  That's all.

1          Thank you, Judge.

2          THE COURT:  All right.  Very well.

3          MR. JAUREGUI:  Judge, may I -- just two questions?

4          THE COURT:  Yes, Mr. Jauregui.

5          MR. JAUREGUI:  Thank you, Your Honor.

6                     CROSS-EXAMINATION

7    BY MR. JAUREGUI:

8    Q.  Good morning.

9    A.  Good morning.

10   Q.  Agent, when did you send that Excel spreadsheet to the

11   U.S. Attorney's Office?  What date, approximately?

12   A.  I don't know.

13   Q.  Okay.  And do you know when the U.S. Attorney's Office

14   sent back their Excel spreadsheet to you?

15   A.  I didn't get a copy of it until probably this last week

16   or two.

17   Q.  Okay.  Definitely after November 28th --

18   A.  Yes.

19   Q.  -- for sure?

20         MR. JAUREGUI:  Thank you.

21         THE COURT:  All right.  Very well.

22         Anything further from the Government?

23         MS. BALLANTINE:  No, Your Honor.

24         THE COURT:  All right.  You may step down.  Thank

25   you very much.

 1          (Witness steps down.)

 2          THE COURT:  All right.  So in the spirit of trying

 3    to take one issue at a time, based on what the witness said,

 4    what is the Government's -- at least in the first

 5    instance -- proposal for how we should proceed with regard

 6    to the classified issue?

 7          MS. BALLANTINE:  So Your Honor, what the witness

 8    told us is that she filtered for messages sent only from her

 9    before she reviewed the information in the spreadsheet for

10    classification.  That means that no one has reviewed the

11    messages sent from any other person in the spreadsheet.

12    Now, FBI needs to conduct that review, and this information

13    will allow us to conduct that review.  I understand that it

14    would appear to counsel that some of these Lync messages may

15    not be classified, and that is absolutely correct, but the

16    FBI needs to conduct -- consistent with its national

17    security obligations, needs to conduct that review.  So what

18    I would ask is that counsel be instructed by the Court not

19    to further review those spreadsheets, not to send them to

20    anyone else while the FBI conducts the classification review

21    of the messages sent by other people in that spreadsheet,

22    and we will get back to the Court and counsel as soon as we

23    have an answer to that and we will -- if we are in a

24    position to, we will provide a revised spreadsheet to the

25    Court and to counsel and ask counsel to delete the existing

 1    spreadsheet on their materials.

 2            Now, one more thing -- and I don't know whether

 3    this will short-circuit anything, but, maybe, it will.

 4    Certainly, we over-produced Jencks here, you know?  The

 5    messages from other people are not Jencks.  And it would,

 6    you know -- one view of this is that we could claw all of

 7    that back and just produce what is Special Agent Miller's

 8    Jencks.  I'm not intending and will not recommend that we do

 9    that here.  I think we will -- in -- our intention is merely

10    to pull any classified information from that spreadsheet and

11    provide them something that will, I expect, look

12    substantially similar to what they have, but we do need the

13    opportunity to take those steps and will take them

14    expeditiously.

15            THE COURT:  And so your request at the moment is

16    not that I order them to return it to you; it's simply to

17    order them to not review further and not to send to anyone

18    else?

19            MS. BALLANTINE:  At this point, that's correct,

20    Your Honor.

21            THE COURT:  All right.  So -- and let me ask one

22    other question.  I know -- I remember the email Mr. Kenerson

23    sent -- and, maybe, that was more focused on the Jencks

24    issue per se than on this classified issue.  But knowing

25    what you know now, what is the time frame when you think you

1    can be in a position to say, "Okay.  We've found some small

2    bit of whatever we" -- to complete your review?

3              MS. BALLANTINE:  I expect we'll be able to

4    complete it today.  My team -- my FBI counterparts left

5    mid-argument to go start the process, sort of, seeing where

6    we were headed.  The other thing that I would say is to the

7    extent that the Court and the parties wish to discuss Sixth

8    Amendment issues and scope issues, I -- there is only one

9    set of messages that I am concerned, based on what I know,

10   may implicate a classified equity, and that is the message

11   from a special agent to Special Agent Nicole Miller about

12   being directed to destroy, I believe, 338 items of evidence

13   by her supervisor.  That could impact a classified equity.

14   So I would ask that that not be a portion of the arguments.

15   Everything else that has -- counsel has raised to us does

16   not --

17             THE COURT:  Okay.

18             MS. BALLANTINE:  -- in my review of this,

19   implicate a classified equity.

20             THE COURT:  All right.  I --

21             MS. BALLANTINE:  Let me just --

22             THE COURT:  My --

23             MS. BALLANTINE:  Yeah, that -- and that statement

24   was made not -- it's not just that it was made by -- not

25   made by Special Agent Miller; it's made by an agent who was

1   never on this squad and never worked this case.

2            MR. SMITH:  Your Honor, since --

3            THE COURT:  Okay.  I'm sorry, Mr. Smith.  I didn't

4   call on you.

5            MR. SMITH:  Okay.

6            THE COURT:  So the -- I do think that the, you

7   know -- the Sixth Amendment issue, assuming that is

8   completely apart from this classified issue, you know, is

9   also one where I thought the parties, you know -- I was

10  surprised to see Mr. Kenerson's email in which he said,

11  "Well, actually, these statements have been" -- we're now

12  drifting into another issue, but -- "had been produced to

13  the defense," and whatnot.  So on that, I didn't -- what I

14  plan to do on that today is simply, in particular -- and in

15  particular, talk to Ms. Hernandez since it's her client's

16  statements -- is say, look, I think, again, the parties

17  would benefit from a day-and-a-half at this point of

18  exchanging information about that, and if Ms. Hernandez

19  feels she has a basis to file a motion, set a briefing --

20  talk about setting a briefing schedule or talk on Monday

21  after she's had a chance to, sort of -- you've had a chance

22  to make cross-representations to each other.  If there's an

23  issue there and we have to have a briefing schedule and

24  there's a basis for a motion that could result in the case

25  being dismissed against Mr. Rehl or any other defendant as a

1    result of that, like, we can -- my thought was for the

2    parties to, sort of, be in conferral mode on that and, on

3    Monday morning, say, look, if there's a -- if someone -- I

4    know Mr. Roots already filed a motion -- if anyone else

5    wants to file a motion, we'll set a briefing schedule and I

6    can, you know -- we can conduct the trial while that

7    briefing is going on.  And, obviously, if we have to have an

8    evidentiary -- even if we have to have an evidentiary

9    hearing, we can have that as well, but to not hijack the

10   trial, so to speak, and to let that briefing proceed, but it

11   seemed to me that there was at least enough back-and-forth

12   on the email that the parties might want to confer about

13   what the exact -- well, as much as it can be determined

14   without a hearing, what the facts are, and what the law is,

15   and whether you all think you have a valid motion.

16            Mr. Smith?

17            MR. SMITH:  Your Honor, I just wanted to respond

18   to the comment that the -- some of the Lync messages that

19   pertained to the destruction of evidence might involve

20   classified information.  I just want to note that

21   Ms. Ballantine did -- what she stated on the record is

22   presumptively not classified.  We're -- that's why we're

23   talking about that information on the record without it

24   being a sealed proceeding.  And we would just note that the

25   sole reference that the defense has made to that statement

 1    is just that -- the statement that Ms. Ballantine just

 2    said -- that there was an agent who indicated -- not Agent

 3    Miller -- who indicated that her boss instructed her to

 4    destroy 338 items of evidence.  So we have not used any

 5    other message relevant to that beyond what the Government

 6    just stated in the record.  And so we would say if that is

 7    subject of cross-examination, that that fact -- that mere

 8    fact alone is usable because we're discussing it in open

 9    court right now.

10              THE COURT:  It has to be relevant to --

11              MR. SMITH:  Relevant --

12              THE COURT:  -- you and all the rest, but --

13              MR. SMITH:  -- but not class- -- but not -- this

14    is not a classification --

15              THE COURT:  Well --

16              MR. SMITH:  -- issue.

17              THE COURT:  -- I'll decide that if it's teed up

18    for me.

19              Mr. Pattis?

20              MR. PATTIS:  Different issue, Judge.  With

21    respect -- I heard Ms. Ballantine's comments about the 338

22    destroyed exhibits.  Can we ask that if the Government's

23    going to claim that those are classified, that they produce

24    a privilege log to the Court for its review?  My concern is

25    if, you know -- if that's cleaning up a file from an

1    unrelated case that's closed and, therefore, things are

2    going to be destroyed, they're -- we have no interest in

3    that, but if it has any tangential relevance to this case

4    and it's been destroyed, we have great interest in it, and

5    it could be that it does have tangential relation to this

6    case but is nonetheless classified.  We'd want to be able to

7    identify that -- our -- that -- our document and argue it.

8    So we're requesting a privilege log as to those items.

9            THE COURT:  Is that -- I guess I don't know enough

10   to -- Ms. Ballantine, what's your response to that?

11           MS. BALLANTINE:  So we do this in the -- we do

12   something like this in the CIPA context.  I mean, I don't

13   know that it's quite a privilege log, but we can provide --

14   we can log what we delete from the production and provide

15   that log to the Court with an explanation of why.

16           THE COURT:  Right.  I think -- obviously --

17           MR. PATTIS:  That would satisfy our purposes.

18   The -- I mean, my understanding is we'd just like some

19   neutral or detached magistrate to be able to say, "Item A

20   pertained to the sinking of the Lusitania, you know; Item B,

21   Osama bin Laden, but not this case."  If we can make

22   those -- if we know that, we know enough.

23           THE COURT:  Right.  I think that's fair.

24           MS. BALLANTINE:  Hopefully nothing pertains to

25   Osama bin Laden in this case, but we can certainly do

 1    something fair along the lines --

 2            MR. PATTIS:  But the sinking --

 3            MS. BALLANTINE:  -- that Mr. Pattis --

 4            MR. PATTIS:  -- of the Lusitania, what have you

 5    got to tell us about that?

 6            THE COURT:  All right.  So I think -- look, I

 7    think -- to try to wrap this issue, I think it makes sense

 8    for me to order the defense to do what the Government's

 9    asked until further notice; that is, not to further review

10    that document and not to send to anyone else.  You're

11    retaining possession of it for the moment.  And we'll see --

12    the Government -- what -- I mean, I -- Ms. Ballantine, what

13    I was thinking, even before I took the bench this morning,

14    is to just have you all file -- I don't know -- a status

15    report, like, tomorrow morning, just to give me and the

16    defense a, sort of, sense of where you are and what you --

17    it may be that you reach out to them sooner and say, "Here's

18    what we'd like," or whatever -- but to give the parties and

19    the Court an update, and if there's something further you're

20    going to ask me to order, you can do that.

21            I won't do it without hearing from the defense, so

22    don't worry about that.

23            But at least, like, letting us know where things

24    stand and a path forward.

25            MS. BALLANTINE:  We will absolutely file a status.

1  I, candidly, hope we can do that by the end of the day

2  today.

3          THE COURT:  All right.  I thought -- tomorrow

4  morning -- if it -- if it's by the end of the day, great.

5  If you would have more information and it would be something

6  that would be more productive to do by tomorrow morning,

7  then that's fine, too.  And, look, we'll cross the rest of

8  these bridges when we get to it in terms of the classified

9  issue.

10          On the classified issue or another issue, Ms. --

11          MS. HERNANDEZ:  On the classified issue.

12          THE COURT:  All right.

13          MS. HERNANDEZ:  So Your Honor, I believe, on

14  behalf of the defense, that we would like to file the

15  particular document we're all -- we have in our possession

16  now under seal in the court record so that it's available in

17  case there's an appeal at a later point.  So just to

18  maintain the status quo so that the document -- either under

19  seal or some other method that is outside the possession of

20  the United States and outside the possession of the defense

21  so that it's available on appeal --

22          THE COURT:  Ms. --

23          MS. HERNANDEZ:  -- if necessary.

24          THE COURT:  I understand your wanting to preserve

25  that.  What is the Government's view?

 1          MS. BALLANTINE:  Your Honor, I'm happy to work

 2   with the court information security officer to provide it to

 3   the Court.  It's a classified document.  So of course, we

 4   can't just file it ex parte under seal, but we will work

 5   with the CISO to get a copy to the Court --

 6          THE COURT:  All right.

 7          MS. BALLANTINE:  -- and have the CISO preserve it.

 8          THE COURT:  Is -- all right.  Is that

 9   satisfactory, Ms. Hernandez?

10          MS. HERNANDEZ:  As long as we are -- get a copy of

11   whatever -- at least the cover letter or whatever is being

12   provided.

13          THE COURT:  All right.  How about a cover letter

14   if -- I mean, a cover letter wouldn't -- I mean, I'm not

15   sure -- what does the cover letter --

16          MS. HERNANDEZ:  Well, whatever -- it's whatever

17   the Government -- my understanding of what Ms. Ballantine

18   said is she's going to work with her -- with the office that

19   handles these things and then submit it to the Court.  I'm

20   just concerned that that office may say, "Well, you can't

21   provide this; you have to provide that," or something

22   like --

23          THE COURT:  No, no, the whole --

24          MS. HERNANDEZ:  Just as long as we know what's

25   being provided --

1          THE COURT:  All right.  Ms. -- just to be clear --

2     and, look, you're retaining possession of the document for

3     now, so the status quo is maintained anyway.

4          But yes, Ms. Ballantine, if you'll have the court

5     information security officer submit that through the proper

6     channels -- as you say, it can't just be on the system --

7     but submit it through the proper channels, I'll preserve it,

8     and we'll have it for purposes of appeal.  All right.

9          MS. BALLANTINE:  Perfect.

10          THE COURT:  All right.  So the next issue -- and

11     it really concerns -- it's -- is the Sixth Amendment issue.

12     I just -- Ms. Hernandez --

13          MS. HERNANDEZ:  The Court's proposal is fine.

14          THE COURT:  Okay.

15          MS. HERNANDEZ:  The Court's proposal is fine.

16          THE COURT:  All right.

17          MS. HERNANDEZ:  I'll tell the Court that one of

18     the problems with the way it was produced, it was produced

19     through -- strangely enough, through Relativity which --

20     I've talked to the Government already -- which makes it

21     available to every defense counsel in the -- in a

22     January 6th situation which is, sort of, a strange way to

23     produce this particular set of documents.  So -- but anyway,

24     between now and --

25          THE COURT:  And Monday?

 1              MS. HERNANDEZ:  And what the Court proposed is --

 2              THE COURT:  Okay.

 3              MS. HERNANDEZ:  -- fine with me.

 4              THE COURT:  So we'll take it up just briefly on

 5    Monday.  And if you think -- again, I thought

 6    Mr. Kenerson's -- what he had -- put on email, I think,

 7    certainly suggested there might not be a motion here, but,

 8    like, you know --

 9              MS. HERNANDEZ:  There may need to be fact-finding.

10              THE COURT:  I -- right.  And there may need to be

11    fact-finding, and I don't preclude whatever you think you

12    need to do.  I'm just saying it didn't -- it went from a

13    five-alarm fire to, maybe, a one-alarm fire after I saw his

14    email, but we'll see what that holds.

15              And then the last thing, I'll just suggest -- I'm

16    not in the business of trying to load up the parties with

17    homework that isn't needed, but I think the only other issue

18    that, I think, was outstanding that I spent a little time

19    noodling on last night and that I think what my proposed

20    deadline for whatever the parties -- I'm not -- it wouldn't

21    be -- I would not be ordering -- and -- well, before I

22    forget it -- before I forget, then, to close out the

23    classified, I will order orally here right now defense

24    counsel and members of the defense teams not to further

25    review the particular document we've been talking about and

1    not to send it to anyone else until further order of the

2    Court.  And I'll -- we'll anticipate getting a response from

3    the Government and, if necessary, lifting that order as soon

4    as it might be appropriate.

5         So the last thing is this issue of the scope of

6    the cross.  And Mr. -- you know -- kind of, I think, part of

7    the answer to this question might depend on ultimately what

8    gets -- I mean, so toggling away from the classified issue,

9    there's still this issue of, well, Mr. Smith's crossing the

10   witness because the spreadsheet seemed to suggest that there

11   were messages -- Jencks messages that had not been provided.

12   We have a little more information about that now.  We

13   have -- I mean, I think the -- well, without getting into

14   the factual complexities, there's a little bit of an issue

15   of how much she can be tagged for this if she wasn't the

16   person which -- who, kind of, compiled it which

17   Mr. Kenerson, sort of, alluded at -- to in his email.  I

18   just think it's an interesting question about exactly what

19   the scope of the cross can be on this topic.

20         Mr. Smith, you, kind of, I think, fleshed out your

21   position pretty well in the -- what you filed last night.

22   I'll just say if any other party wants to file something

23   along those lines, including if we have more -- if the

24   process over the next day-and-a-half yields more information

25   about her role in the process, what the content of these

1    messages are, whether they're her statements, whether

2    they're not her statements, whatever, by 5:00 o'clock

3    tomorrow, file whatever you would like and -- so that I can

4    read them over the weekend and show up on Monday and if we

5    are in a position to plow forward with her cross, I'll have

6    a little bit of background.  It's -- I think there are,

7    like -- as I was thinking about it, there are some

8    interesting, like, issues presented by that, I think.

9              MR. SMITH:  Thank you, Your Honor.

10             THE COURT:  Mr. -- I'm sorry, Mr. Smith.

11   Mr. Pattis had his hand up.  I was going to -- oh --

12             MR. PATTIS:  Are we seating -- sitting -- seated

13   next Friday?  Do you know?

14             THE COURT:  I think the answer -- the 17th --

15   doubtful that we'll get a half-day in on the 17th at this

16   point.  I just have had too many sentencings and other

17   things piling up that I have to get done and things like

18   sentencings just take too long.

19             MS. HERNANDEZ:  So does that mean we will not be

20   sitting -- I have a sentencing in front of another judge on

21   the 17th in the morning, and I would just need to change it

22   if the Court's going to --

23             THE COURT:  No, I think it's doubtful, but I

24   will -- let's put it this way.  We'll address it first thing

25   Monday, for sure, but as I try to clear half-days on

1    Fridays, that one looks like probably we won't be able to

2    clear any time.

3              All right.  Anything further from the Government?

4              MS. BALLANTINE:  (Indicates negatively.)

5              THE COURT:  Anything further from the defense?

6              MR. SMITH:  (Indicates negatively.)

7              THE COURT:  All right.  I suppose, Ms. Ballantine,

8    as part of your report, now that I'm thinking about it, I

9    don't know that there would or would not be, but -- I mean,

10   as of right now, we have the jury coming back on Monday.

11   Let me put it this way.  If any party thinks, for some

12   reason, we shouldn't have the jury come back on Monday, if

13   you can let us know by noon on Friday -- noon tomorrow so we

14   can make arrangements to do that, you know -- we found out

15   about where things were too late today not to bring them in.

16   I'd just as soon tell them not to come.  I'm not saying

17   that's in the cards, but if it turns out, for one reason or

18   another, you all think that's appropriate, if we can know by

19   noon on Friday, we can put the wheels in motion to -- so

20   that they're not brought in.

21             MS. BALLANTINE:  We'll work as quickly as we can

22   to make sure that we don't have further delays before the

23   jury.

24             THE COURT:  All right.  Ms. Ballantine, you

25   also haven't -- but you need a microphone in front of you

1    for the court reporter.  If I -- I've given -- everyone on

2    this side, (indicating) of the courtroom gets hell for not

3    having a microphone.  So you need to have one, too.

4              MS. BALLANTINE:  Sitting at counsel table, I'm not

5    entirely clear how you all are actually managing to use

6    microphones and phones.  It -- this is difficult.

7              THE.

8              COURT:  It is.  It is, but imagine where we'd be

9    without these phones.

10             All right.  We'll see -- I'll see everyone Monday.

11   Everyone have a good weekend.

12             THE DEPUTY CLERK:  All rise.  This Honorable Court

13   is adjourned.

14             (Proceedings concluded at 11:47 a.m.)

15                    * * * * * * * * * * * *

16             <u>CERTIFICATE OF OFFICIAL COURT REPORTER</u>

17   I, TIMOTHY R. MILLER, RPR, CRR, NJ-CCR, do hereby certify

18   that the above and foregoing constitutes a true and accurate

19   transcript of my stenographic notes and is a full, true and

20   complete transcript of the proceedings to the best of my

21   ability, dated this 9th day of March 2023.

22                          <u>/s/Timothy R. Miller, RPR, CRR, NJ-CCR</u>
                            Official Court Reporter
23                          United States Courthouse
                            Room 6722
24                          333 Constitution Avenue, NW
                            Washington, DC 20001

25

**'**

**'clear'** [1] - 12853:22

**/**

**/s/Timothy** [1] - 12881:22

**0**

**06511** [1] - 12797:10

**1**

**1** [3] - 12800:3, 12800:10, 12800:14
**1-ETHAN** [1] - 12797:4
**10** [3] - 12811:5, 12811:13, 12811:15
**10,000** [1] - 12859:1
**100** [1] - 12838:2
**10003** [1] - 12797:18
**10016** [1] - 12798:13
**1014** [1] - 12798:9
**104** [1] - 12859:6
**10:00** [1] - 12797:6
**11,959** [2] - 12860:13, 12861:2
**113** [1] - 12798:15
**11:47** [1] - 12881:14
**12,453** [2] - 12814:7, 12814:15
**12,714** [1] - 12853:16
**1420** [1] - 12797:24
**15,000** [8] - 12851:21, 12853:4, 12856:9, 12859:1, 12860:13, 12860:15, 12860:25, 12862:18
**153** [1] - 12798:5
**1776** [1] - 12831:1
**17th** [3] - 12879:14, 12879:15, 12879:21
**1:21-cr-00175-TJK-1** [1] - 12797:2
**1:21-cr-00175-TJK-2** [1] - 12797:3
**1:21-cr-00175-TJK-3** [1] - 12797:3
**1:21-cr-00175-TJK-5** [1] - 12797:4
**1:21-cr-00175-TJK-6** [1] - 12797:4
**1st** [3] - 12797:21, 12813:18, 12847:17

**2**

**2** [8] - 12800:4,

12800:10, 12800:15, 12813:7, 12813:10, 12835:12, 12836:20
**2-JOSEPH** [1] - 12797:5
**20001** [2] - 12798:19, 12881:24
**20005** [1] - 12797:24
**202** [3] - 12797:15, 12797:25, 12798:20
**2021** [1] - 12847:17
**2022** [2] - 12813:17, 12847:17
**2023** [2] - 12797:6, 12881:21
**203** [1] - 12797:22
**20530** [1] - 12797:14
**20777** [1] - 12798:3
**209** [1] - 12798:6
**20th** [1] - 12797:17
**21-175** [2] - 12800:2, 12811:18
**240** [1] - 12798:3
**25** [2] - 12853:9, 12855:8
**252-7233** [1] - 12797:15
**253-0514** [1] - 12798:13
**26** [1] - 12852:24
**28th** [5] - 12813:17, 12829:18, 12829:20, 12830:2, 12865:17
**2:25** [1] - 12829:18

**3**

**3** [7] - 12800:4, 12800:11, 12800:15, 12813:7, 12813:10, 12813:11, 12836:20
**3,000** [1] - 12860:15
**3-ZACHARY** [1] - 12797:5
**305** [2] - 12798:7, 12798:10
**33012** [1] - 12798:9
**33014** [1] - 12798:9
**333** [2] - 12798:19, 12881:24
**338** [4] - 12830:24, 12868:12, 12871:4, 12871:21
**354-3111** [1] - 12798:20
**383** [1] - 12797:20
**393-3017** [1] - 12797:22

**4**

**4** [1] - 12800:5
**40-some** [1] - 12832:15
**403-7323** [1] - 12798:7
**429-6520** [1] - 12797:25
**45** [2] - 12797:8, 12832:15
**46** [1] - 12832:15
**472-3391** [1] - 12798:3
**49** [1] - 12798:9
**4r** [1] - 12797:17
**4th** [1] - 12797:14

**5**

**5** [4] - 12800:6, 12800:12, 12800:16, 12811:5
**5-ENRIQUE** [1] - 12797:6
**555** [1] - 12797:14
**59047** [1] - 12798:16
**5:00** [1] - 12879:2

**6**

**6** [3] - 12800:6, 12800:13, 12800:16
**6-DOMINIC** [1] - 12797:6
**6175** [1] - 12798:5
**646** [1] - 12798:13
**6722** [2] - 12798:18, 12881:23
**6th** [3] - 12798:12, 12847:16, 12876:22

**7**

**7** [1] - 12797:17
**7,762** [1] - 12819:4
**7166** [1] - 12798:2
**764-9347** [1] - 12798:16
**775** [1] - 12798:16
**7:33** [2] - 12829:19, 12830:3

**8**

**8,000** [1] - 12853:23
**822-2901** [1] - 12798:10
**835** [1] - 12819:22
**8:00** [1] - 12810:12

**9**

**9** [1] - 12797:6
**902-3869** [1] - 12797:18
**917** [1] - 12797:18
**99** [1] - 12798:12
**9th** [1] - 12881:21

**A**

**a.m** [2] - 12797:6, 12881:14
**abandon** [1] - 12806:20
**ability** [2] - 12828:11, 12881:21
**able** [21] - 12801:3, 12801:12, 12802:24, 12810:20, 12811:12, 12816:5, 12819:1, 12819:2, 12819:20, 12824:4, 12824:8, 12828:25, 12831:23, 12832:11, 12842:20, 12846:5, 12846:6, 12868:3, 12872:6, 12872:19, 12880:1
**abridge** [1] - 12845:16
**abridging** [1] - 12844:13
**absence** [1] - 12840:2
**absent** [3] - 12831:6, 12831:11, 12832:8
**absolutely** [2] - 12866:15, 12873:25
**abuse** [1] - 12842:9
**access** [3] - 12804:7, 12805:21, 12820:5
**accidental** [1] - 12835:8
**accurate** [2] - 12852:1, 12881:18
**accused** [1] - 12837:25
**Act** [3] - 12818:6, 12835:7, 12835:12
**act** [1] - 12806:17
**activity** [1] - 12817:4
**adding** [1] - 12857:1
**address** [6] - 12812:22, 12812:23, 12831:21, 12837:9, 12838:9, 12879:24
**addressing** [1] - 12812:24
**adjourned** [1] - 12881:13
**adjournment** [1] - 12805:15

**administrative** [1] - 12856:25
**admissibility** [1] - 12806:16
**admit** [1] - 12838:18
**admitted** [2] - 12845:1, 12860:23
**adopt** [1] - 12807:19
**adoption** [1] - 12806:16
**advantage** [1] - 12806:21
**adversarial** [1] - 12840:8
**adversaries** [1] - 12832:19
**advise** [2] - 12848:20, 12848:21
**advocacy** [1] - 12831:9
**affect** [2] - 12843:21, 12843:22
**afford** [1] - 12809:19
**agent** [20] - 12807:8, 12808:19, 12808:24, 12809:15, 12809:16, 12814:2, 12814:3, 12814:11, 12817:3, 12817:5, 12817:9, 12825:19, 12826:1, 12826:6, 12837:3, 12868:11, 12868:25, 12871:2
**Agent** [31] - 12813:19, 12814:5, 12814:8, 12814:12, 12814:13, 12814:16, 12814:22, 12814:25, 12815:11, 12815:19, 12816:6, 12816:16, 12817:2, 12817:6, 12818:3, 12846:21, 12847:10, 12847:23, 12851:7, 12852:21, 12853:10, 12858:24, 12859:2, 12859:4, 12859:20, 12862:17, 12865:10, 12867:7, 12868:11, 12868:25, 12871:2
**agents** [7] - 12805:17, 12813:17, 12813:22, 12813:23, 12814:24, 12831:1, 12837:12
**agree** [7] - 12802:9, 12802:25, 12807:19, 12809:7, 12831:25, 12841:2, 12862:11
**agreement** [1] - 12838:6
**ahead** [2] - 12835:2,

12859:18
**aided** [1] - 12798:21
**al** [1] - 12811:19
**alarm** [2] - 12877:13
**alerted** [1] - 12816:25
**alleviate** [2] -
12816:21, 12816:23
**allow** [4] - 12804:23,
12823:19, 12836:14,
12866:13
**alluded** [1] - 12878:17
**alone** [3] - 12864:4,
12864:6, 12871:8
**Amendment** [7] -
12801:24, 12801:25,
12811:8, 12841:10,
12868:8, 12869:7,
12876:11
**AMERICA** [1] -
12797:2
**America** [3] - 12800:3,
12811:18, 12825:14
**American** [2] -
12837:21, 12837:23
**amount** [1] - 12842:13
**amounts** [1] -
12832:17
**angle** [1] - 12847:11
**answer** [10] -
12803:11, 12853:19,
12853:21, 12853:25,
12854:3, 12858:8,
12864:24, 12868:23,
12878:7, 12879:14
**answers** [1] - 12843:7
**anticipate** [2] -
12817:14, 12878:2
**anyway** [2] - 12876:3,
12876:23
**apart** [3] - 12803:3,
12803:4, 12869:8
**apologize** [2] -
12823:5, 12824:16
**apparent** [1] -
12806:21
**appeal** [3] - 12874:17,
12874:21, 12876:8
**appear** [1] - 12866:14
**APPEARANCES** [2] -
12797:10, 12798:1
**appointing** [1] -
12830:9
**appreciate** [3] -
12800:19, 12815:1,
12815:10
**appreciated** [1] -
12802:14
**appropriate** [7] -
12802:23, 12816:7,
12818:19, 12819:7,

12840:3, 12878:4,
12880:18
**area** [2] - 12827:4,
12847:1
**argue** [3] - 12827:8,
12842:22, 12872:7
**argued** [1] - 12831:3
**arguing** [2] - 12805:4,
12826:23
**argument** [3] -
12840:17, 12845:22,
12868:5
**arguments** [4] -
12807:19, 12810:4,
12829:2, 12868:14
**arise** [1] - 12835:14
**arrangements** [1] -
12880:14
**articulate** [1] -
12842:14
**aside** [1] - 12820:14
**assert** [1] - 12816:7
**asserting** [1] -
12828:3
**assertions** [2] -
12820:19, 12820:20
**assess** [3] - 12812:7,
12843:11, 12846:3
**assessment** [1] -
12842:5
**assumed** [1] -
12857:20
**assuming** [1] -
12869:7
**AT** [1] - 12798:15
**attack** [2] - 12845:2,
12845:3
**attorney** [3] -
12809:18, 12818:18,
12838:15
**ATTORNEY** [1] -
12798:15
**ATTORNEY'S** [1] -
12797:13
**Attorney's** [6] -
12805:11, 12814:20,
12851:17, 12865:11,
12865:13
**attorney's** [2] -
12855:13, 12855:15
**attorney-client** [1] -
12818:18
**attorneys** [5] -
12823:15, 12854:15,
12855:1, 12855:3,
12855:22
**authority** [1] -
12825:16
**authorized** [1] -
12824:23

**available** [4] -
12803:16, 12874:16,
12874:21, 12876:21
**Avenue** [3] -
12798:12, 12798:19,
12881:24
**aware** [2] - 12804:9,
12853:19

## B

**B.A** [1] - 12797:11
**back-and-forth** [1] -
12870:11
**background** [2] -
12829:9, 12879:6
**bad** [3] - 12836:13,
12847:11, 12858:19
**Ballantine** [34] -
12802:7, 12802:10,
12813:6, 12818:9,
12818:12, 12819:11,
12819:18, 12820:6,
12821:1, 12822:3,
12835:7, 12843:3,
12847:7, 12849:9,
12850:4, 12850:22,
12853:3, 12854:5,
12855:24, 12858:16,
12859:12, 12860:22,
12861:14, 12862:2,
12862:7, 12862:17,
12870:21, 12871:1,
12872:10, 12873:12,
12875:17, 12876:4,
12880:7, 12880:24
**BALLANTINE** [72] -
12802:10, 12802:18,
12802:20, 12812:20,
12813:3, 12813:9,
12813:14, 12816:23,
12817:9, 12817:13,
12817:20, 12817:23,
12820:8, 12821:4,
12823:3, 12823:8,
12823:13, 12824:16,
12824:18, 12824:22,
12846:20, 12846:24,
12847:4, 12847:8,
12847:9, 12848:5,
12848:9, 12848:15,
12848:19, 12849:14,
12849:16, 12849:19,
12850:13, 12850:16,
12850:18, 12850:23,
12850:25, 12851:2,
12851:6, 12851:15,
12852:4, 12853:1,
12853:7, 12858:4,
12858:7, 12858:12,

12858:15, 12858:17,
12858:19, 12858:21,
12859:11, 12859:16,
12859:19, 12860:4,
12862:11, 12865:23,
12866:7, 12867:19,
12868:3, 12868:18,
12868:21, 12868:23,
12872:11, 12872:24,
12873:3, 12873:25,
12875:1, 12875:7,
12876:9, 12880:4,
12880:21, 12881:4
**Ballantine's** [4] -
12821:15, 12850:7,
12860:10, 12871:21
**Ballantine..............
12846** [1] - 12799:3
**based** [10] - 12801:2,
12840:13, 12843:12,
12864:6, 12864:13,
12864:19, 12864:22,
12866:3, 12868:9
**basis** [7] - 12801:5,
12810:11, 12820:3,
12827:12, 12864:4,
12869:19, 12869:24
**bear** [1] - 12840:3
**bearing** [1] - 12842:15
**bears** [2] - 12862:8,
12862:10
**BEFORE** [1] - 12797:9
**begin** [1] - 12813:18
**begun** [1] - 12841:4
**behalf** [6] - 12807:4,
12807:5, 12809:16,
12831:9, 12832:23,
12874:14
**behind** [1] - 12816:3
**believes** [1] - 12840:1
**Bench** [2] - 12849:8,
12858:11
**bench** [4] - 12811:7,
12851:5, 12862:15,
12873:13
**benefit** [3] - 12843:6,
12846:10, 12869:17
**best** [2] - 12849:5,
12881:20
**better** [2] - 12807:10,
12844:24
**between** [1] -
12876:24
**beyond** [1] - 12871:5
**big** [2] - 12829:21,
12838:20
**Biggs** [6] - 12800:4,
12800:15, 12807:4,
12807:5, 12841:15,
12846:11

**BIGGS** [1] - 12797:5
**bin** [2] - 12872:21,
12872:25
**bit** [4] - 12809:21,
12868:2, 12878:14,
12879:6
**bitterly** [1] - 12831:3
**blank** [1] - 12827:1
**boss** [1] - 12871:3
**bottom** [3] - 12808:24,
12842:24
**Brady** [3] - 12818:17,
12819:9, 12836:18
**break** [1] - 12811:22
**bridge** [2] - 12812:20,
12820:24
**bridges** [3] -
12812:16, 12818:1,
12874:8
**brief** [4] - 12805:15,
12809:13, 12835:25,
12852:9
**Brief** [2] - 12811:16,
12846:17
**briefing** [6] -
12869:19, 12869:20,
12869:23, 12870:5,
12870:7, 12870:10
**briefly** [4] - 12802:8,
12846:25, 12858:17,
12877:4
**bring** [3] - 12843:2,
12846:16, 12880:15
**bringing** [4] - 12818:2,
12837:2, 12838:24,
12852:10
**brought** [1] -
12880:20
**buckets** [1] - 12813:20
**business** [4] -
12805:16, 12806:11,
12832:14, 12877:16
**button** [2] - 12849:12,
12859:14
**BY** [13] - 12846:20,
12848:5, 12848:15,
12848:19, 12851:6,
12851:15, 12851:15,
12852:20, 12854:9,
12855:2, 12862:16,
12863:19, 12865:7

## C

**candidly** [3] - 12859:7,
12860:23, 12874:1
**cannot** [9] - 12809:11,
12809:12, 12809:19,
12809:20, 12837:22,
12838:16, 12838:19,

12845:16
**Capitol** [1] - 12839:21
**cards** [1] - 12880:17
**Carmen** [2] - 12798:2, 12800:12
**case** [38] - 12804:8, 12807:11, 12807:22, 12808:8, 12808:17, 12809:11, 12812:9, 12813:16, 12813:17, 12814:1, 12817:10, 12827:20, 12828:12, 12830:17, 12830:25, 12831:3, 12832:11, 12832:17, 12834:6, 12835:18, 12840:24, 12841:6, 12844:13, 12844:25, 12847:13, 12852:25, 12856:25, 12857:1, 12860:8, 12869:1, 12869:24, 12872:1, 12872:3, 12872:6, 12872:21, 12872:25, 12874:17
**cases** [1] - 12832:14
**casually** [2] - 12837:12, 12837:19
**catastrophic** [1] - 12806:25
**caught** [3] - 12836:25, 12837:11, 12837:19
**CCR** [3] - 12798:17, 12881:17, 12881:22
**certain** [2] - 12818:24, 12818:25
**certainly** [5] - 12802:23, 12850:14, 12867:4, 12872:25, 12877:7
**CERTIFICATE** [1] - 12881:16
**certify** [1] - 12881:17
**chance** [2] - 12869:21
**change** [1] - 12879:21
**channels** [2] - 12876:6, 12876:7
**character** [1] - 12807:10
**choose** [1] - 12831:13
**chosen** [1] - 12844:1
**CHS** [1] - 12807:22
**CHSes** [1] - 12808:7
**CIPA** [4] - 12835:21, 12836:6, 12836:17, 12872:12
**circuit** [1] - 12867:3
**circumstances** [1] - 12815:19
**CISO** [2] - 12875:5, 12875:7

**citing** [1] - 12835:5
**claim** [3] - 12803:14, 12803:19, 12871:23
**class** [2] - 12851:8, 12871:13
**classification** [27] - 12812:2, 12812:3, 12812:7, 12815:4, 12819:13, 12819:24, 12820:19, 12825:10, 12825:13, 12825:15, 12825:18, 12826:2, 12826:5, 12827:4, 12827:16, 12828:4, 12828:6, 12829:2, 12831:14, 12832:13, 12837:23, 12851:9, 12852:2, 12861:9, 12866:10, 12866:20, 12871:14
**Classified** [2] - 12835:6, 12835:12
**classified** [106] - 12802:16, 12802:20, 12805:17, 12806:19, 12807:23, 12808:3, 12808:5, 12808:7, 12808:9, 12808:16, 12809:14, 12810:6, 12811:3, 12811:24, 12813:11, 12814:5, 12814:10, 12814:15, 12814:16, 12815:3, 12815:7, 12815:11, 12815:21, 12816:20, 12817:4, 12817:7, 12817:16, 12817:17, 12818:7, 12818:15, 12818:16, 12818:21, 12818:23, 12818:25, 12819:2, 12819:8, 12819:21, 12819:22, 12821:23, 12822:10, 12822:11, 12823:6, 12823:11, 12823:22, 12826:9, 12826:12, 12826:13, 12827:12, 12827:14, 12828:4, 12828:8, 12828:9, 12828:19, 12828:22, 12828:23, 12828:24, 12830:17, 12830:21, 12831:10, 12831:18, 12831:21, 12831:25, 12835:5, 12835:9, 12835:14, 12836:5, 12836:19, 12839:24, 12841:22, 12842:18, 12842:25, 12843:1, 12844:8, 12847:24,

12848:22, 12861:16, 12861:21, 12862:20, 12863:1, 12863:9, 12863:21, 12864:3, 12864:4, 12864:7, 12864:11, 12864:22, 12866:6, 12866:15, 12867:10, 12867:24, 12868:10, 12868:13, 12868:19, 12869:8, 12870:20, 12870:22, 12871:23, 12872:6, 12874:8, 12874:10, 12874:11, 12875:3, 12877:23, 12878:8
**claw** [3] - 12815:14, 12815:21, 12867:6
**cleaning** [1] - 12871:25
**clear** [9] - 12808:2, 12812:21, 12817:15, 12826:20, 12829:8, 12876:1, 12879:25, 12880:2, 12881:5
**clearance** [3] - 12815:6, 12824:23, 12825:7
**clearances** [1] - 12815:6
**clearing** [1] - 12816:18
**clearly** [1] - 12841:19
**CLERK** [4] - 12800:2, 12811:14, 12811:17, 12881:12
**click** [1] - 12853:22
**clicked** [1] - 12854:11
**client** [3] - 12818:18, 12831:8, 12845:25
**client's** [3] - 12841:10, 12841:13, 12869:15
**clients** [2] - 12831:4, 12832:23
**close** [1] - 12877:22
**closed** [1] - 12872:1
**closer** [1] - 12859:1
**co** [1] - 12810:4
**co-counsels'** [1] - 12810:4
**colleagues** [1] - 12809:8
**COLUMBIA** [1] - 12797:1
**columns** [1] - 12855:20
**comfortable** [1] - 12832:22
**coming** [3] - 12812:1, 12818:11, 12880:10
**comment** [1] -

12870:18
**comments** [1] - 12871:21
**committed** [1] - 12828:25
**communicating** [1] - 12817:2
**communication** [1] - 12830:22
**compelled** [1] - 12830:19
**competitive** [1] - 12832:14
**compiled** [1] - 12878:16
**complete** [4] - 12837:6, 12868:2, 12868:4, 12881:20
**completed** [1] - 12804:1
**completely** [1] - 12869:8
**complexities** [1] - 12878:14
**complicated** [1] - 12802:13
**complied** [3] - 12813:19, 12835:15, 12836:16
**complies** [1] - 12810:16
**comply** [5] - 12801:4, 12803:6, 12810:20, 12835:19, 12836:6
**complying** [1] - 12811:1
**computer** [2] - 12798:21, 12824:21
**computer-aided** [1] - 12798:21
**concede** [1] - 12801:6
**concern** [5] - 12811:25, 12816:18, 12816:21, 12816:24, 12871:24
**concerned** [3] - 12816:24, 12868:24, 12875:20
**concerns** [2] - 12852:14, 12876:11
**concluded** [1] - 12881:14
**conduct** [11] - 12815:9, 12816:6, 12842:24, 12847:1, 12847:10, 12847:11, 12866:12, 12866:13, 12866:16, 12866:17, 12870:6
**conducted** [2] -

12805:1, 12816:20
**conducts** [2] - 12813:14, 12866:20
**confer** [1] - 12870:12
**conference** [4] - 12849:8, 12851:5, 12858:11, 12862:15
**conferral** [1] - 12870:2
**conferring** [1] - 12812:6
**confidence** [3] - 12832:19, 12832:21, 12834:4
**confidential** [1] - 12845:12
**confirm** [2] - 12814:13, 12815:23
**confront** [1] - 12830:13
**confrontation** [4] - 12841:11, 12844:13, 12844:14, 12845:17
**confronted** [1] - 12830:12
**connect** [1] - 12824:21
**connection** [3] - 12835:15, 12839:17, 12847:12
**Conor** [2] - 12797:12, 12800:9
**consequence** [1] - 12845:17
**consequences** [1] - 12845:15
**consider** [4] - 12812:13, 12830:9, 12833:6, 12844:19
**considerations** [1] - 12844:19
**consistent** [1] - 12866:16
**conspiracy** [1] - 12831:4
**constitutes** [1] - 12881:18
**Constitution** [2] - 12798:19, 12881:24
**constitutional** [3] - 12830:18, 12841:12, 12844:19
**contact** [1] - 12801:8
**contained** [4] - 12853:8, 12858:25, 12861:20
**content** [4] - 12825:2, 12827:2, 12842:15, 12878:25
**contents** [3] - 12829:13, 12840:19,

12840:20
**contest** [1] - 12821:20
**contested** [1] -
  12844:25
**context** [2] -
  12827:15, 12872:12
**continue** [3] -
  12804:15, 12808:17,
  12809:20
**CONTINUED** [1] -
  12798:1
**continuing** [1] -
  12808:21
**conundrum** [1] -
  12830:18
**conversations** [1] -
  12856:24
**conviction** [1] -
  12846:1
**copies** [1] - 12815:24
**copy** [11] - 12819:1,
  12819:2, 12825:5,
  12833:11, 12833:13,
  12833:15, 12834:10,
  12834:22, 12865:15,
  12875:5, 12875:10
**correct** [10] - 12804:3,
  12812:9, 12821:4,
  12836:8, 12847:24,
  12855:19, 12856:17,
  12857:12, 12866:15,
  12867:19
**counsel** [18] -
  12802:15, 12812:5,
  12812:24, 12815:15,
  12815:22, 12816:8,
  12817:17, 12828:24,
  12830:23, 12866:14,
  12866:18, 12866:22,
  12866:25, 12868:15,
  12876:21, 12877:24,
  12881:4
**counsels'** [1] -
  12810:4
**counterparts** [1] -
  12868:4
**course** [2] - 12819:12,
  12875:3
**Court** [13] - 12798:17,
  12798:18, 12811:14,
  12823:25, 12825:5,
  12826:23, 12830:8,
  12831:7, 12832:9,
  12875:19, 12877:1,
  12881:12, 12881:22
**COURT** [222] -
  12797:1, 12800:17,
  12802:19, 12803:3,
  12803:19, 12803:22,
  12804:19, 12805:12,

12805:23, 12806:1,
12807:13, 12807:16,
12807:25, 12808:2,
12808:6, 12808:10,
12808:12, 12809:2,
12809:6, 12809:23,
12810:1, 12810:5,
12811:20, 12812:4,
12812:13, 12812:25,
12813:5, 12813:13,
12816:11, 12816:13,
12817:8, 12817:11,
12817:19, 12817:22,
12817:24, 12819:14,
12819:16, 12820:6,
12820:10, 12820:13,
12820:21, 12820:23,
12821:5, 12821:22,
12821:25, 12822:3,
12822:8, 12822:10,
12822:17, 12822:19,
12823:14, 12823:21,
12823:24, 12824:1,
12824:11, 12824:20,
12824:25, 12825:21,
12826:3, 12826:5,
12826:11, 12826:17,
12826:20, 12827:6,
12827:11, 12827:25,
12828:14, 12829:3,
12829:5, 12830:4,
12830:6, 12831:20,
12832:4, 12832:6,
12832:8, 12833:2,
12833:4, 12833:6,
12833:10, 12833:12,
12833:24, 12834:9,
12834:15, 12834:18,
12834:22, 12834:24,
12835:1, 12835:8,
12835:17, 12835:21,
12835:24, 12836:1,
12836:4, 12836:23,
12837:1, 12837:10,
12837:14, 12837:18,
12838:3, 12838:6,
12838:10, 12838:12,
12838:20, 12839:2,
12839:8, 12839:12,
12839:22, 12839:25,
12840:7, 12840:10,
12840:19, 12840:25,
12841:14, 12841:17,
12842:7, 12842:12,
12843:8, 12843:16,
12843:25, 12844:5,
12844:10, 12844:15,
12845:20, 12845:22,
12846:2, 12846:5,
12846:9, 12846:12,
12846:14, 12847:2,

12847:6, 12848:2,
12848:11, 12848:13,
12848:17, 12849:6,
12849:9, 12849:15,
12849:18, 12849:22,
12849:25, 12850:4,
12850:10, 12850:12,
12850:15, 12850:17,
12850:19, 12850:21,
12850:24, 12851:1,
12851:3, 12851:13,
12852:6, 12852:12,
12852:16, 12853:13,
12854:17, 12854:19,
12858:9, 12858:16,
12858:18, 12858:20,
12859:10, 12859:12,
12859:17, 12860:2,
12860:5, 12860:17,
12860:21, 12861:1,
12861:3, 12861:7,
12861:12, 12861:22,
12862:2, 12862:6,
12862:13, 12863:16,
12865:2, 12865:4,
12865:21, 12865:24,
12866:2, 12867:15,
12867:21, 12868:17,
12868:20, 12868:22,
12869:3, 12869:6,
12871:10, 12871:12,
12871:15, 12871:17,
12872:9, 12872:16,
12872:23, 12873:6,
12874:3, 12874:12,
12874:22, 12874:24,
12875:6, 12875:8,
12875:13, 12875:23,
12876:1, 12876:10,
12876:14, 12876:16,
12876:25, 12877:2,
12877:4, 12877:10,
12879:10, 12879:14,
12879:23, 12880:5,
12880:7, 12880:24,
12881:8, 12881:16
**court** [50] - 12802:14,
12802:23, 12802:25,
12810:25, 12812:23,
12815:9, 12816:8,
12821:13, 12821:17,
12821:20, 12822:14,
12823:4, 12823:16,
12823:19, 12823:20,
12824:5, 12824:8,
12827:3, 12827:9,
12827:23, 12828:9,
12828:17, 12828:21,
12830:22, 12831:11,
12839:17, 12839:19,
12840:16, 12841:2,

12842:10, 12843:9,
12860:24, 12862:11,
12866:18, 12866:22,
12866:25, 12868:7,
12871:9, 12871:24,
12872:15, 12873:19,
12874:16, 12875:2,
12875:3, 12875:5,
12876:4, 12876:17,
12878:2, 12881:1
**Court's** [2] - 12876:13,
  12876:15
**court's** [1] - 12879:22
**courthouse** [1] -
  12820:7
**Courthouse** [2] -
  12798:18, 12881:23
**courtroom** [7] -
  12802:21, 12806:6,
  12815:5, 12823:24,
  12825:7, 12840:12,
  12881:2
**cover** [11] - 12808:15,
  12815:16, 12848:7,
  12848:16, 12848:20,
  12848:21, 12849:11,
  12875:11, 12875:13,
  12875:14, 12875:15
**covers** [1] - 12812:8
**covert** [1] - 12817:4
**CR** [1] - 12797:2
**created** [6] -
  12829:17, 12830:1,
  12844:12, 12853:20,
  12855:16, 12855:18
**creates** [1] - 12806:5
**creating** [1] -
  12803:13
**credibility** [7] -
  12843:12, 12843:22,
  12843:23, 12844:3,
  12844:4, 12844:6,
  12845:23
**crime** [1] - 12829:1
**crimes** [3] - 12837:24,
  12838:14, 12838:18
**Criminal** [2] - 12800:2,
  12811:18
**criminal** [1] -
  12832:15
**critical** [1] - 12805:9
**CROSS** [2] -
  12852:19, 12865:6
**cross** [24] - 12801:13,
  12802:2, 12803:25,
  12808:20, 12810:19,
  12811:9, 12812:15,
  12818:1, 12819:12,
  12822:14, 12825:20,
  12828:12, 12833:19,

12841:5, 12841:9,
12845:7, 12845:16,
12869:22, 12871:7,
12874:7, 12878:6,
12878:19, 12879:5
**Cross** [2] - 12799:4,
  12799:4
**CROSS-**
  **EXAMINATION** [2] -
  12852:19, 12865:6
**Cross-Examination**
  [2] - 12799:4,
  12799:4
**cross-examination** [7]
  - 12810:19,
  12825:20, 12841:5,
  12841:9, 12845:7,
  12845:16, 12871:7
**cross-examinations**
  [1] - 12801:13
**cross-examine** [1] -
  12828:12
**cross-**
  **representations** [1] -
  12869:22
**crossed** [1] -
  12820:24
**crossing** [1] - 12878:9
**crowd** [1] - 12843:24
**CRR** [3] - 12798:17,
  12881:17, 12881:22
**CT** [1] - 12797:21

### D

**D.C** [1] - 12797:5
**damage** [2] - 12837:6,
  12842:5
**data** [4] - 12805:21,
  12815:20, 12862:20,
  12862:25
**database** [3] -
  12823:1, 12861:17,
  12863:1
**date** [2] - 12847:16,
  12865:11
**dated** [1] - 12881:21
**dates** [1] - 12804:4
**DAVID** [1] - 12797:16
**DAY** [1] - 12797:8
**day-and-a-half** [2] -
  12869:17, 12878:24
**days** [5] - 12810:17,
  12832:15, 12832:16,
  12844:24, 12879:25
**DC** [4] - 12797:14,
  12797:24, 12798:19,
  12881:24
**deadline** [2] -
  12813:16, 12877:20

12886

**deal** [2] - 12838:24, 12844:8
**dealing** [1] - 12845:1
**debating** [1] - 12839:13
**December** [1] - 12804:5
**decide** [3] - 12830:19, 12834:4, 12871:17
**decision** [2] - 12840:17, 12842:15
**decisions** [5] - 12834:8, 12839:17, 12840:12, 12840:13, 12845:10
**deems** [1] - 12819:6
**deeper** [1] - 12809:21
**deeply** [1] - 12843:20
**defendant** [2] - 12852:7, 12869:25
**Defendant** [17] - 12800:3, 12800:4, 12800:5, 12800:6, 12800:10, 12800:11, 12800:12, 12800:13, 12800:14, 12800:15, 12800:16
**defendants** [2] - 12801:12, 12810:18
**Defendants** [3] - 12797:7, 12797:16, 12798:2
**defense** [40] - 12802:8, 12802:15, 12804:13, 12805:5, 12807:14, 12812:5, 12815:15, 12815:22, 12817:15, 12817:17, 12819:1, 12820:3, 12820:5, 12820:18, 12821:16, 12821:18, 12821:19, 12822:16, 12824:8, 12828:24, 12829:24, 12831:17, 12832:15, 12836:19, 12837:4, 12839:5, 12842:13, 12844:4, 12844:13, 12869:13, 12870:25, 12873:8, 12873:16, 12873:21, 12874:14, 12874:20, 12876:21, 12877:23, 12877:24, 12880:5
**defer** [2] - 12805:13, 12842:10
**deferring** [2] - 12840:14, 12842:12
**definitely** [1] - 12865:17
**delay** [2] - 12806:23,

12808:17
**delays** [1] - 12880:22
**delete** [2] - 12866:25, 12872:14
**deleted** [1] - 12815:24
**deletion** [1] - 12818:20
**delivered** [1] - 12854:7
**demeanor** [3] - 12843:13, 12843:21, 12845:4
**Department** [1] - 12825:16
**DEPUTY** [4] - 12800:2, 12811:14, 12811:17, 12881:12
**deselected** [1] - 12859:21
**designation** [2] - 12812:8, 12836:20
**destroy** [5] - 12808:19, 12830:24, 12837:21, 12868:12, 12871:4
**destroyed** [3] - 12871:22, 12872:2, 12872:4
**destruction** [1] - 12870:19
**detached** [2] - 12832:23, 12872:19
**determination** [5] - 12812:3, 12821:15, 12821:18, 12821:21, 12822:16
**determine** [3] - 12805:9, 12811:23, 12814:9
**determined** [1] - 12870:13
**determines** [1] - 12806:24
**device** [1] - 12815:25
**dicta** [1] - 12832:13
**different** [6] - 12813:15, 12813:24, 12829:10, 12834:19, 12855:25, 12871:20
**difficult** [2] - 12819:3, 12881:6
**dignitary** [1] - 12827:22
**diligence** [1] - 12821:10
**DIRECT** [1] - 12846:19
**direct** [2] - 12803:25, 12841:8
**Direct** [1] - 12799:3
**directed** [2] -

12813:17, 12868:12
**directly** [4] - 12825:24, 12837:16, 12838:9, 12861:10
**disagree** [2] - 12841:21, 12841:23
**disagreement** [1] - 12838:7
**disclose** [1] - 12836:5
**disclosure** [2] - 12817:16, 12845:11
**discretion** [1] - 12842:10
**discuss** [7] - 12805:16, 12805:22, 12809:21, 12812:19, 12812:21, 12813:10, 12868:7
**discussing** [8] - 12813:12, 12837:13, 12837:17, 12839:14, 12852:22, 12853:10, 12857:12, 12871:8
**discussion** [1] - 12838:17
**discussions** [2] - 12830:25, 12831:2
**dismiss** [2] - 12809:10, 12811:6
**dismissed** [1] - 12869:25
**DISTRICT** [3] - 12797:1, 12797:1, 12797:9
**doctor** [1] - 12837:22
**doctoring** [1] - 12809:15
**document** [34] - 12810:18, 12823:1, 12823:6, 12823:18, 12823:24, 12824:5, 12824:12, 12824:24, 12825:2, 12825:9, 12826:9, 12826:10, 12827:14, 12827:15, 12830:2, 12839:18, 12840:15, 12840:18, 12840:20, 12842:11, 12842:15, 12842:18, 12842:20, 12855:13, 12857:21, 12857:24, 12872:7, 12873:10, 12874:15, 12874:18, 12875:3, 12876:2, 12877:25
**documents** [10] - 12818:20, 12820:15, 12827:18, 12827:19, 12827:23, 12831:1, 12831:6, 12843:1,

12859:5, 12876:23
**Dominic** [1] - 12800:6
**done** [15] - 12801:10, 12803:17, 12805:10, 12808:13, 12808:15, 12814:17, 12820:15, 12820:17, 12825:13, 12825:19, 12826:1, 12830:13, 12830:15, 12879:17
**dots** [1] - 12844:23
**doubtful** [2] - 12879:15, 12879:23
**down** [5] - 12827:10, 12850:5, 12858:20, 12865:24, 12866:1
**draw** [1] - 12845:4
**drifting** [1] - 12869:12
**Drive** [1] - 12798:15
**drive** [1] - 12815:25
**due** [2] - 12821:10, 12841:11
**dump** [1] - 12854:6
**duty** [1] - 12831:8

# E

**early** [1] - 12804:5
**easiest** [1] - 12801:19
**East** [2] - 12797:17, 12798:15
**effective** [1] - 12845:7
**effectiveness** [1] - 12844:14
**efforts** [1] - 12833:23
**either** [8] - 12800:23, 12802:5, 12803:23, 12821:7, 12826:18, 12845:18, 12864:10, 12874:18
**electronic** [1] - 12815:24
**elicit** [1] - 12821:7
**eliminated** [1] - 12829:20
**email** [7] - 12837:11, 12867:22, 12869:10, 12870:12, 12877:6, 12877:14, 12878:17
**emails** [2] - 12800:19, 12838:17
**embarrassing** [1] - 12843:20
**end** [5] - 12800:20, 12801:16, 12804:22, 12874:1, 12874:4
**ended** [2] - 12838:4, 12841:8
**endorsement** [1] - 12806:16

**energy** [1] - 12832:17
**enhances** [1] - 12844:3
**enjoyed** [1] - 12834:5
**enormous** [1] - 12832:17
**Enrique** [2] - 12800:5, 12800:6
**entire** [2] - 12815:11, 12815:20
**entirely** [2] - 12844:18, 12881:5
**entitled** [1] - 12840:13
**equities** [3] - 12813:11, 12815:3, 12815:12
**equity** [3] - 12868:10, 12868:13, 12868:19
**Erik** [2] - 12797:12, 12800:9
**erred** [2] - 12807:7, 12831:17
**error** [5] - 12806:25, 12831:13, 12844:11, 12844:12, 12845:13
**Esq** [12] - 12797:11, 12797:12, 12797:12, 12797:13, 12797:16, 12797:19, 12797:23, 12798:2, 12798:4, 12798:8, 12798:11, 12798:14
**essentially** [1] - 12813:21
**et** [1] - 12811:19
**Ethan** [2] - 12800:3, 12811:18
**evaluates** [1] - 12843:22
**evaluating** [1] - 12834:17
**evaluation** [1] - 12834:18
**evaluations** [1] - 12832:24
**evening** [1] - 12809:13
**event** [2] - 12839:9, 12844:17
**evidence** [13] - 12805:3, 12809:15, 12809:16, 12822:16, 12829:23, 12837:20, 12837:21, 12837:22, 12845:11, 12849:5, 12868:12, 12870:19, 12871:4
**evidentiary** [3] - 12808:23, 12870:8
**ex** [1] - 12875:4
**exact** [2] - 12804:3,

12870:13
**exactly** [2] - 12859:1, 12878:18
**examination** [9] - 12810:19, 12818:11, 12825:20, 12833:19, 12841:5, 12841:9, 12845:7, 12845:16, 12871:7
**EXAMINATION** [3] - 12846:19, 12852:19, 12865:6
**Examination** [3] - 12799:3, 12799:4, 12799:4
**examinations** [1] - 12801:13
**examine** [4] - 12828:12, 12837:17, 12838:19, 12843:2
**examined** [4] - 12818:18, 12819:11, 12838:16, 12838:22
**examining** [1] - 12838:17
**example** [2] - 12838:1, 12849:11
**Excel** [9] - 12823:1, 12824:13, 12829:9, 12829:10, 12829:14, 12847:19, 12848:6, 12865:10, 12865:14
**exchange** [1] - 12809:13
**exchanged** [1] - 12838:18
**exchanges** [1] - 12837:12
**exchanging** [1] - 12869:18
**exculpatory** [4] - 12829:23, 12830:17, 12831:10, 12831:19
**excused** [1] - 12861:4
**exhibit** [2] - 12824:11, 12855:16
**exhibits** [3] - 12830:24, 12871:22
**existing** [1] - 12866:25
**exists** [1] - 12847:23
**exonerated** [1] - 12831:3
**expect** [2] - 12867:11, 12868:3
**expeditiously** [2] - 12802:25, 12867:14
**explanation** [1] - 12872:15
**expressed** [1] -

12809:9
**extent** [7] - 12811:23, 12812:8, 12813:10, 12815:10, 12822:14, 12837:24, 12868:7
**extract** [1] - 12863:4
**extracted** [6] - 12861:16, 12862:19, 12863:1, 12863:2, 12863:8, 12864:24
**eyes** [1] - 12834:17

## F

**fabricate** [1] - 12837:20
**fabricating** [1] - 12809:16
**face** [2] - 12806:24, 12831:5
**faced** [1] - 12807:1
**fact** [11] - 12803:5, 12803:10, 12816:25, 12817:23, 12825:15, 12830:21, 12831:15, 12871:7, 12871:8, 12877:9, 12877:11
**fact-finding** [2] - 12877:9, 12877:11
**facts** [2] - 12821:20, 12870:14
**factual** [3] - 12820:2, 12820:4, 12878:14
**failure** [1] - 12806:17
**fair** [8] - 12804:20, 12841:11, 12841:13, 12845:3, 12859:20, 12872:23, 12873:1
**fairly** [1] - 12802:25
**faith** [3] - 12810:11, 12836:9, 12836:13
**faith/bad** [1] - 12836:9
**far** [1] - 12856:25
**fast** [1] - 12854:20
**FBI** [31] - 12802:21, 12805:2, 12805:10, 12809:16, 12813:14, 12817:6, 12825:16, 12829:11, 12836:25, 12837:11, 12837:12, 12853:5, 12854:7, 12856:2, 12856:6, 12856:20, 12857:13, 12857:22, 12858:1, 12859:2, 12859:22, 12860:15, 12861:15, 12862:19, 12863:1, 12863:2, 12863:4, 12866:12, 12866:16, 12866:20, 12868:4

**FBI's** [2] - 12814:4, 12847:23
**federal** [4] - 12837:24, 12838:14, 12838:18, 12843:9
**field** [1] - 12813:24
**Fifth** [1] - 12839:11
**fight** [1] - 12807:6
**figure** [4] - 12815:8, 12820:25, 12828:18, 12838:12
**file** [13] - 12814:1, 12829:9, 12829:14, 12829:15, 12869:19, 12870:5, 12871:25, 12873:14, 12873:25, 12874:14, 12875:4, 12878:22, 12879:3
**filed** [3] - 12800:20, 12870:4, 12878:21
**files** [4] - 12829:10, 12829:17, 12856:25, 12857:1
**filter** [1] - 12853:4
**filtered** [17] - 12804:6, 12814:17, 12814:19, 12814:21, 12814:25, 12815:1, 12816:25, 12851:21, 12852:1, 12854:6, 12854:8, 12855:6, 12855:12, 12856:13, 12856:14, 12858:2, 12866:8
**filtering** [8] - 12803:11, 12803:13, 12803:17, 12804:14, 12805:1, 12805:6, 12805:10, 12852:15
**fine** [9] - 12807:9, 12822:6, 12827:9, 12828:8, 12839:5, 12874:7, 12876:13, 12876:15, 12877:3
**finish** [1] - 12848:9, 12848:14, 12863:16
**fire** [2] - 12877:13
**first** [19] - 12800:25, 12801:21, 12808:23, 12809:23, 12812:20, 12813:12, 12816:4, 12816:13, 12816:14, 12817:24, 12818:22, 12821:5, 12821:9, 12826:25, 12838:22, 12853:17, 12866:4, 12879:24
**fits** [1] - 12825:8
**five** [2] - 12837:25, 12877:13
**five-alarm** [1] -

12877:13
**FL** [2] - 12798:6, 12798:9
**flag** [1] - 12812:12
**flagged** [1] - 12812:14
**fleshed** [1] - 12878:20
**floor** [1] - 12813:8
**Floor** [2] - 12797:21, 12798:12
**focus** [1] - 12837:7
**focused** [1] - 12867:23
**follow** [5] - 12822:25, 12828:20, 12861:18, 12861:19, 12862:24
**follow-up** [3] - 12861:18, 12861:19, 12862:24
**following** [1] - 12853:2
**FOR** [1] - 12797:1
**force** [1] - 12807:8
**foregoing** [1] - 12881:18
**foreign** [1] - 12827:22
**forget** [2] - 12877:22
**form** [1] - 12814:21
**forth** [2] - 12813:22, 12870:11
**forward** [11] - 12800:24, 12807:12, 12808:22, 12809:11, 12809:12, 12811:7, 12822:22, 12830:10, 12840:3, 12873:24, 12879:5
**frame** [1] - 12867:25
**frankly** [2] - 12810:16, 12831:19
**frequently** [1] - 12805:4
**Friday** [3] - 12879:13, 12880:13, 12880:19
**Fridays** [1] - 12880:1
**front** [14] - 12800:22, 12816:8, 12839:11, 12839:13, 12839:18, 12840:18, 12841:7, 12842:3, 12842:21, 12843:17, 12853:12, 12862:22, 12879:20, 12880:25
**frustrated** [1] - 12835:4
**fulfill** [1] - 12804:24
**fulfilled** [3] - 12803:23, 12803:24
**full** [6] - 12815:14, 12829:23, 12830:1, 12831:2, 12837:23,

12881:19
**fundamental** [1] - 12805:24
**fundamentally** [1] - 12819:17

## G

**gatekeeping** [1] - 12834:8
**gathers** [1] - 12806:23
**general** [3] - 12820:20, 12863:25, 12864:1
**Giglio** [1] - 12818:17
**given** [22] - 12805:19, 12806:18, 12807:10, 12809:12, 12809:17, 12813:1, 12820:5, 12821:19, 12829:15, 12830:16, 12836:18, 12842:13, 12856:1, 12856:20, 12857:18, 12857:19, 12857:21, 12860:10, 12862:4, 12863:21, 12864:11, 12881:1
**good-faith** [1] - 12810:11
**good-faith/bad-faith** [1] - 12836:9
**gotcha** [1] - 12808:18
**govern** [2] - 12835:8, 12836:21
**governing** [1] - 12836:18
**Government** [7] - 12803:11, 12805:4, 12807:11, 12824:7, 12835:24, 12842:7, 12846:11
**government** [68] - 12800:8, 12801:3, 12801:7, 12801:15, 12803:5, 12804:13, 12805:1, 12805:16, 12806:23, 12807:6, 12810:8, 12810:15, 12810:24, 12811:1, 12812:17, 12818:4, 12818:13, 12819:4, 12819:6, 12819:8, 12820:4, 12821:16, 12828:3, 12828:22, 12829:11, 12829:24, 12830:15, 12830:19, 12831:9, 12831:11, 12831:12, 12831:17, 12831:25, 12834:10, 12834:11, 12835:13,

12888

12836:4, 12837:3, 12838:7, 12839:2, 12839:4, 12839:18, 12840:1, 12840:14, 12840:17, 12840:21, 12842:10, 12842:12, 12842:17, 12843:13, 12844:1, 12844:7, 12844:12, 12845:6, 12845:9, 12846:5, 12849:1, 12849:2, 12852:23, 12862:5, 12865:22, 12871:5, 12873:12, 12875:17, 12876:20, 12878:3, 12880:3

**government's** [14] - 12801:1, 12802:6, 12805:20, 12806:10, 12807:21, 12810:13, 12811:23, 12822:25, 12834:5, 12845:13, 12866:4, 12871:22, 12873:8, 12874:25

**grant** [1] - 12845:18

**great** [2] - 12872:4, 12874:4

**Greene** [1] - 12828:21

**grounds** [1] - 12843:10

**guess** [4] - 12803:16, 12804:19, 12820:10, 12872:9

## H

**half** [4] - 12869:17, 12878:24, 12879:15, 12879:25

**half-day** [1] - 12879:15

**half-days** [1] - 12879:25

**hallway** [2] - 12838:1, 12838:5

**halt** [1] - 12836:15

**hand** [4] - 12810:1, 12822:23, 12829:6, 12879:11

**handle** [1] - 12801:25

**handled** [1] - 12828:22

**handles** [1] - 12875:19

**hands** [1] - 12832:25

**happiest** [1] - 12806:24

**happy** [1] - 12875:1

**hard** [2] - 12805:14, 12815:25

**Harris** [3] - 12800:17, 12811:5, 12811:6

**Hassan** [2] - 12798:4, 12800:12

**HASSAN** [1] - 12798:5

**Haven** [1] - 12797:21

**head** [2] - 12833:14, 12850:5

**headed** [1] - 12868:6

**headquarters** [24] - 12814:6, 12814:9, 12847:16, 12847:19, 12848:7, 12851:8, 12853:5, 12854:7, 12856:2, 12856:6, 12856:20, 12857:13, 12857:22, 12858:1, 12859:2, 12859:22, 12861:16, 12862:19, 12863:2, 12863:4, 12864:8, 12864:23

**heads** [1] - 12844:23

**hear** [19] - 12800:23, 12801:20, 12802:7, 12802:8, 12809:25, 12820:13, 12822:23, 12836:23, 12842:22, 12846:14, 12848:18, 12849:7, 12850:6, 12850:20, 12858:9, 12859:14, 12859:16, 12859:18

**heard** [9] - 12807:14, 12809:24, 12812:18, 12816:10, 12818:9, 12844:20, 12846:12, 12849:13, 12871:21

**hearing** [7] - 12808:23, 12811:22, 12850:3, 12859:7, 12870:9, 12870:14, 12873:21

**hears** [1] - 12821:14

**HELD** [1] - 12797:9

**hell** [1] - 12881:2

**helpful** [1] - 12813:23

**hereby** [1] - 12881:17

**Hernandez** [19] - 12798:2, 12800:12, 12810:2, 12822:23, 12823:5, 12823:17, 12824:1, 12824:20, 12824:22, 12825:1, 12826:15, 12827:6, 12839:15, 12839:22, 12839:25, 12869:15, 12869:18, 12875:9, 12876:12

**HERNANDEZ** [49] - 12809:25, 12810:3,

12822:24, 12823:19, 12823:23, 12823:25, 12824:4, 12824:12, 12825:4, 12825:22, 12826:4, 12826:8, 12826:16, 12826:19, 12826:22, 12827:8, 12827:18, 12828:1, 12828:15, 12839:16, 12839:23, 12840:5, 12840:8, 12840:11, 12840:23, 12841:1, 12842:6, 12842:9, 12848:1, 12849:21, 12849:23, 12850:1, 12850:20, 12853:11, 12858:14, 12859:9, 12874:11, 12874:13, 12874:23, 12875:10, 12875:16, 12875:24, 12876:13, 12876:15, 12876:17, 12877:1, 12877:3, 12877:9, 12879:19

**herself** [1] - 12830:23

**Hialeah** [1] - 12798:9

**hid** [1] - 12854:1

**hidden** [14] - 12803:13, 12804:9, 12804:12, 12829:12, 12829:13, 12829:14, 12829:16, 12829:17, 12829:22, 12830:1, 12830:2, 12853:18, 12853:21, 12855:20

**high** [1] - 12849:19

**highest** [1] - 12825:8

**Highland** [1] - 12798:3

**hijack** [1] - 12870:9

**hmm** [2] - 12833:9, 12837:18

**hold** [3] - 12823:14, 12850:22, 12859:12

**holding** [1] - 12855:8

**holds** [1] - 12877:14

**Hollow** [1] - 12798:2

**home** [9] - 12801:14, 12801:22, 12801:23, 12802:5, 12803:1, 12806:2, 12809:9, 12810:21, 12810:23

**homework** [1] - 12877:17

**Honor** [82] - 12803:9, 12804:5, 12804:18, 12805:8, 12807:20, 12809:1, 12811:21, 12812:11, 12812:20, 12816:10, 12817:14, 12818:8, 12818:10,

12818:14, 12818:19, 12819:7, 12819:10, 12820:1, 12820:18, 12821:12, 12821:24, 12822:7, 12822:14, 12822:24, 12823:3, 12824:16, 12825:8, 12829:4, 12829:7, 12829:8, 12830:5, 12834:25, 12835:3, 12835:10, 12835:11, 12836:7, 12836:8, 12836:17, 12836:25, 12838:14, 12839:16, 12840:5, 12842:6, 12846:24, 12847:3, 12847:4, 12848:10, 12849:4, 12849:21, 12849:23, 12850:7, 12852:8, 12852:10, 12852:15, 12853:1, 12853:2, 12853:7, 12853:12, 12853:14, 12853:15, 12858:4, 12858:8, 12858:12, 12858:14, 12859:9, 12859:25, 12860:9, 12860:20, 12861:5, 12861:10, 12861:14, 12861:24, 12863:14, 12865:5, 12865:23, 12866:7, 12867:20, 12869:2, 12870:17, 12874:13, 12875:1, 12879:9

**HONORABLE** [1] - 12797:9

**Honorable** [2] - 12811:14, 12881:12

**hood** [1] - 12810:14

**hope** [2] - 12811:11, 12874:1

**hopefully** [2] - 12810:24, 12872:24

**hotly** [1] - 12844:24

**housed** [1] - 12814:4

**Hull** [2] - 12797:23, 12800:11

**HULL** [1] - 12797:23

**hundreds** [2] - 12818:15, 12844:22

**hyper** [1] - 12825:11

**hyper-secrecy** [1] - 12825:11

## I

**idea** [1] - 12829:25

**ideal** [1] - 12833:18

**identical** [2] -

12859:2, 12859:21

**identifications** [2] - 12843:24, 12844:21

**identified** [1] - 12844:21

**identify** [3] - 12818:23, 12835:13, 12872:7

**II** [1] - 12798:11

**illustrated** [1] - 12805:15

**imagine** [1] - 12881:8

**immediate** [2] - 12818:12, 12818:20

**impact** [2] - 12845:23, 12868:13

**implicate** [3] - 12813:11, 12868:10, 12868:19

**implies** [2] - 12861:19, 12864:3

**imply** [1] - 12860:14

**important** [1] - 12815:4

**improperly** [1] - 12810:12

**impute** [1] - 12830:14

**IN** [1] - 12797:1

**inadvertent** [4] - 12817:16, 12835:18, 12835:20, 12835:22

**inadvertently** [6] - 12805:19, 12806:18, 12807:3, 12815:15, 12829:22, 12836:5

**inappropriate** [3] - 12818:14, 12823:8, 12848:12

**incidentally** [1] - 12817:9

**including** [3] - 12831:24, 12843:23, 12878:23

**inconsistent** [2] - 12829:1, 12841:10

**incredible** [1] - 12842:13

**independent** [2] - 12812:6, 12844:18

**indicated** [3] - 12854:8, 12871:2, 12871:3

**indicates** [2] - 12880:4, 12880:6

**indicating** [5] - 12807:15, 12820:12, 12839:7, 12849:14, 12881:2

**indications** [1] - 12830:21

**inferences** [1] - 12845:4
**informal** [1] - 12813:24
**informally** [1] - 12812:24
**information** [76] - 12801:11, 12801:18, 12802:16, 12802:20, 12805:17, 12806:19, 12808:15, 12810:10, 12811:24, 12812:1, 12813:20, 12814:15, 12815:7, 12815:21, 12816:15, 12817:16, 12817:17, 12818:7, 12818:17, 12818:24, 12818:25, 12819:1, 12819:8, 12820:5, 12821:11, 12821:14, 12821:16, 12822:15, 12827:12, 12827:14, 12828:19, 12828:22, 12831:18, 12831:22, 12831:24, 12835:5, 12835:9, 12835:14, 12836:5, 12836:18, 12836:19, 12839:24, 12842:4, 12844:7, 12844:10, 12845:12, 12846:6, 12851:22, 12854:15, 12854:16, 12854:21, 12854:22, 12854:23, 12855:4, 12855:6, 12857:17, 12857:18, 12858:1, 12861:20, 12862:25, 12863:5, 12863:8, 12863:9, 12864:5, 12866:9, 12866:12, 12867:10, 12869:18, 12870:20, 12870:23, 12874:5, 12875:2, 12876:5, 12878:12, 12878:24
**Information** [2] - 12835:6, 12835:12
**information's** [1] - 12864:7
**informed** [1] - 12838:15
**initial** [1] - 12854:6
**inquire** [1] - 12833:17
**inquiry** [5] - 12804:25, 12816:6, 12841:18, 12841:22, 12847:1
**inside** [1] - 12821:8
**insisting** [1] - 12805:21
**instance** [4] -

12816:4, 12816:14, 12821:5, 12866:5
**instances** [1] - 12845:10
**instant** [1] - 12813:22
**instead** [1] - 12825:25
**instructed** [3] - 12814:8, 12866:18, 12871:3
**integrity** [1] - 12833:22
**intending** [1] - 12867:8
**intention** [1] - 12867:9
**interact** [1] - 12806:5
**interest** [2] - 12872:2, 12872:4
**interesting** [3] - 12839:21, 12878:18, 12879:8
**interferes** [1] - 12828:11
**internal** [2] - 12830:25, 12856:24
**intertwined** [2] - 12803:6, 12842:19
**intervene** [1] - 12823:4
**interviewing** [2] - 12827:20, 12827:21
**invested** [1] - 12832:17
**investigation** [3] - 12842:25, 12856:23, 12863:18
**investigative** [1] - 12833:22
**involve** [3] - 12802:15, 12802:17, 12870:19
**involved** [2] - 12828:10, 12834:7
**involving** [1] - 12818:10
**irrelevant** [1] - 12840:21
**issue** [57] - 12800:25, 12801:18, 12801:24, 12801:25, 12802:2, 12802:4, 12802:12, 12802:13, 12803:4, 12805:5, 12805:14, 12806:5, 12806:8, 12809:3, 12809:23, 12810:6, 12811:2, 12811:8, 12811:9, 12812:1, 12812:11, 12816:15, 12819:13, 12822:20, 12825:13, 12825:18, 12828:16, 12836:13, 12836:16,

12841:18, 12841:20, 12844:25, 12845:7, 12866:3, 12866:6, 12867:24, 12869:7, 12869:8, 12869:12, 12869:23, 12871:16, 12871:20, 12873:7, 12874:9, 12874:10, 12874:11, 12876:10, 12876:11, 12877:17, 12878:5, 12878:8, 12878:9, 12878:14
**Issues** [2] - 12813:7, 12813:10
**issues** [15] - 12800:21, 12801:20, 12801:24, 12805:22, 12807:4, 12807:22, 12809:5, 12809:14, 12809:15, 12809:22, 12810:24, 12836:11, 12868:8, 12879:8
**Item** [2] - 12872:19, 12872:20
**item** [1] - 12855:16
**items** [3] - 12868:12, 12871:4, 12872:8
**itself** [1] - 12826:10
**IV** [1] - 12797:23

## J

**January** [2] - 12847:16, 12876:22
**Jason** [2] - 12797:11, 12800:8
**Jauregui** [5] - 12798:8, 12800:13, 12807:17, 12829:5, 12865:4
**JAUREGUI** [20] - 12798:8, 12807:15, 12807:17, 12808:1, 12808:4, 12808:8, 12808:11, 12808:13, 12823:9, 12823:12, 12824:17, 12829:7, 12830:5, 12848:24, 12849:1, 12859:23, 12865:3, 12865:5, 12865:7, 12865:20
**Jauregui's** [1] - 12828:20
**Jauregui................
12865** [1] - 12799:4
**Jencks** [29] - 12801:1, 12801:4, 12801:6, 12802:4, 12802:12, 12802:15, 12803:4, 12803:5, 12810:16,

12810:20, 12811:2, 12813:15, 12813:16, 12813:18, 12818:6, 12818:12, 12818:17, 12819:9, 12821:19, 12846:6, 12847:13, 12856:1, 12857:18, 12867:4, 12867:5, 12867:8, 12867:23, 12878:11
**job** [1] - 12846:3
**Jocelyn** [1] - 12802:10
**John** [2] - 12797:23, 12800:11
**join** [2] - 12806:22, 12809:25
**joining** [1] - 12810:3
**joins** [1] - 12841:15
**Joseph** [1] - 12800:4
**JUDGE** [1] - 12797:9
**Judge** [5] - 12806:13, 12829:10, 12841:16, 12865:1, 12871:20
**judge** [11] - 12807:17, 12807:19, 12808:8, 12823:7, 12824:17, 12829:8, 12848:24, 12849:1, 12859:23, 12865:3, 12879:20
**judgment** [1] - 12833:1
**jump** [1] - 12824:2
**juncture** [1] - 12803:1
**juror** [2] - 12843:19, 12845:8
**jurors** [2] - 12845:4, 12845:9
**JURY** [1] - 12797:8
**jury** [26] - 12801:14, 12801:22, 12802:5, 12803:1, 12806:2, 12807:12, 12809:8, 12810:21, 12810:23, 12821:8, 12832:16, 12839:9, 12839:13, 12841:7, 12841:25, 12842:4, 12842:22, 12843:6, 12843:12, 12843:22, 12844:2, 12859:6, 12880:10, 12880:12, 12880:23
**jury's** [2] - 12833:20, 12843:11
**Justice** [1] - 12825:16
**justice** [1] - 12832:20

## K

**keep** [3] - 12830:20, 12850:5, 12858:20

**KELLY** [1] - 12797:9
**Kenerson** [7] - 12797:12, 12800:9, 12801:2, 12804:3, 12829:18, 12867:22, 12878:17
**Kenerson's** [2] - 12869:10, 12877:6
**kept** [1] - 12844:23
**key** [1] - 12844:3
**kind** [9] - 12801:7, 12802:1, 12818:9, 12819:17, 12854:23, 12864:23, 12878:6, 12878:16, 12878:20
**kinds** [1] - 12801:9
**knowing** [4] - 12830:1, 12842:24, 12863:21, 12867:24
**known** [1] - 12805:5

## L

**Laden** [2] - 12872:21, 12872:25
**laid** [2] - 12801:2, 12838:7
**Lake** [1] - 12798:15
**Lakes** [1] - 12798:6
**land** [1] - 12807:9
**last** [11] - 12807:22, 12810:13, 12853:3, 12859:19, 12860:7, 12860:11, 12865:15, 12877:15, 12877:19, 12878:5, 12878:21
**late** [2] - 12804:5, 12880:15
**latter** [2] - 12818:13, 12841:15
**LAW** [3] - 12798:5, 12798:8, 12798:15
**law** [3] - 12807:2, 12841:11, 12870:14
**lawyer** [1] - 12807:1
**lawyers** [1] - 12834:6
**lead** [1] - 12846:25
**leading** [8] - 12847:25, 12848:8, 12849:3, 12849:10, 12850:16, 12850:25, 12851:11, 12851:12
**leap** [1] - 12838:21
**least** [13] - 12801:15, 12801:21, 12802:3, 12810:22, 12811:11, 12816:21, 12817:2, 12825:8, 12841:20, 12866:4, 12870:11, 12873:23, 12875:11

12890

**leave** [1] - 12816:5
**left** [1] - 12868:4
**legal** [2] - 12841:18, 12841:19
**letter** [4] - 12875:11, 12875:13, 12875:14, 12875:15
**letting** [2] - 12818:3, 12873:23
**level** [4] - 12815:17, 12825:23, 12848:23, 12851:9
**lifting** [1] - 12878:3
**likely** [3] - 12817:6, 12859:1, 12864:22
**limited** [3] - 12820:2, 12841:14, 12841:17
**line** [1] - 12847:19
**lines** [4] - 12814:7, 12814:15, 12873:1, 12878:23
**litigate** [1] - 12841:24
**litigation** [1] - 12805:14
**Livingston** [1] - 12798:16
**LLC** [1] - 12797:20
**load** [1] - 12877:16
**location** [1] - 12803:18
**log** [5] - 12871:24, 12872:8, 12872:13, 12872:14, 12872:15
**look** [14] - 12817:12, 12828:7, 12828:24, 12832:19, 12853:15, 12855:11, 12858:3, 12864:14, 12867:11, 12869:16, 12870:3, 12873:6, 12874:7, 12876:2
**looking** [2] - 12842:11, 12844:22
**looks** [3] - 12842:16, 12864:24, 12880:1
**loyalty** [1] - 12831:8
**lunch** [2] - 12813:25, 12827:19
**Lusitania** [2] - 12872:20, 12873:4
**Lync** [15] - 12813:21, 12847:12, 12847:21, 12847:23, 12852:24, 12854:6, 12854:11, 12856:6, 12857:14, 12862:25, 12863:8, 12864:2, 12864:11, 12866:14, 12870:18
**Lyncs** [1] - 12856:1

**M**

**machine** [1] - 12798:21
**magic** [2] - 12807:23, 12807:24
**magistrate** [2] - 12832:24, 12872:19
**main** [1] - 12817:25
**maintain** [1] - 12874:18
**maintained** [1] - 12876:3
**managing** [1] - 12881:5
**manner** [3] - 12841:5, 12850:18, 12851:2
**March** [2] - 12797:6, 12881:21
**margin** [1] - 12833:1
**master** [1] - 12830:9
**material** [15] - 12801:8, 12805:20, 12807:3, 12813:18, 12815:14, 12815:16, 12818:12, 12818:21, 12821:19, 12830:16, 12831:10, 12832:2, 12832:25, 12833:21, 12858:23
**materials** [7] - 12812:8, 12812:10, 12813:15, 12820:3, 12831:15, 12867:1
**Matter** [2] - 12800:2, 12811:18
**matter** [6] - 12806:9, 12826:9, 12842:3, 12842:16, 12864:1
**matters** [2] - 12811:10, 12835:14
**McCullough** [2] - 12797:11, 12800:8
**MCGUIRE** [1] - 12797:23
**MD** [1] - 12798:3
**mean** [29] - 12806:2, 12806:10, 12809:24, 12810:9, 12816:16, 12816:17, 12824:14, 12827:4, 12833:25, 12839:19, 12839:24, 12840:2, 12844:16, 12849:9, 12849:11, 12856:21, 12860:5, 12861:22, 12862:9, 12863:10, 12872:12, 12872:18, 12873:12, 12875:14, 12878:8, 12878:13, 12879:19,

12880:9
**meaning** [1] - 12803:13
**means** [12] - 12804:7, 12805:22, 12815:22, 12816:19, 12831:23, 12832:11, 12845:3, 12861:23, 12863:7, 12866:10
**meant** [1] - 12829:15
**members** [1] - 12877:24
**memo** [5] - 12848:7, 12848:16, 12848:20, 12848:21, 12849:5
**men** [1] - 12837:25
**mere** [1] - 12871:7
**merely** [1] - 12867:9
**message** [9] - 12814:11, 12828:5, 12863:21, 12832:22, 12864:11, 12864:14, 12868:10, 12871:5
**messages** [58] - 12801:9, 12803:13, 12803:15, 12804:7, 12804:10, 12804:12, 12804:14, 12805:8, 12810:11, 12813:21, 12813:22, 12814:4, 12814:10, 12814:18, 12814:23, 12814:24, 12815:2, 12815:3, 12817:1, 12817:5, 12828:2, 12828:3, 12847:12, 12847:15, 12847:21, 12851:8, 12851:21, 12851:24, 12853:4, 12853:6, 12854:7, 12854:11, 12856:1, 12856:7, 12856:14, 12856:15, 12856:16, 12856:19, 12861:15, 12861:20, 12862:4, 12862:18, 12863:1, 12863:8, 12864:2, 12864:21, 12866:8, 12866:11, 12866:14, 12866:21, 12867:5, 12868:9, 12870:18, 12878:11, 12879:1
**metadata** [4] - 12823:1, 12823:9, 12823:12, 12829:19
**Metcalf** [2] - 12798:11, 12800:14
**METCALF** [5] - 12798:11, 12848:25, 12849:3, 12851:12

**method** [1] - 12874:19
**Miami** [1] - 12798:6
**mic** [3] - 12850:8, 12850:9, 12859:13
**microphone** [4] - 12824:25, 12859:15, 12880:25, 12881:3
**microphones** [1] - 12881:6
**mid** [1] - 12868:5
**mid-argument** [1] - 12868:5
**middle** [5] - 12825:20, 12830:12, 12840:5, 12845:6, 12845:15
**might** [12] - 12804:9, 12804:10, 12806:24, 12811:22, 12833:5, 12843:20, 12870:12, 12870:19, 12877:7, 12878:4, 12878:7
**Mil** [1] - 12854:5
**MILLER** [2] - 12799:3, 12881:17
**Miller** [31] - 12798:17, 12813:19, 12814:5, 12814:8, 12814:12, 12814:14, 12814:16, 12814:25, 12815:11, 12815:20, 12816:6, 12816:16, 12817:2, 12817:6, 12818:3, 12830:23, 12846:18, 12846:21, 12847:10, 12847:23, 12851:7, 12853:10, 12853:17, 12858:24, 12859:3, 12859:4, 12859:21, 12868:11, 12868:25, 12871:3, 12881:22
**Miller's** [2] - 12814:23, 12867:7
**mine** [1] - 12807:9
**minefield** [1] - 12807:7
**Mink** [1] - 12798:2
**minutes** [3] - 12811:5, 12811:13, 12811:15
**miraculous** [1] - 12843:24
**Mirandized** [1] - 12809:17
**mirror** [1] - 12832:20
**missing** [1] - 12860:16
**mistake** [2] - 12806:21, 12846:11
**mistakenly** [1] - 12806:18
**mistrial** [1] - 12845:19

**misunderstanding** [2] - 12819:17, 12819:18
**mode** [1] - 12870:2
**modified** [2] - 12829:19, 12830:3
**moment** [8] - 12806:19, 12808:18, 12820:15, 12842:23, 12844:8, 12849:7, 12867:15, 12873:11
**Monday** [10] - 12803:2, 12869:20, 12870:3, 12876:25, 12877:5, 12879:4, 12879:25, 12880:10, 12880:12, 12881:10
**Moore** [2] - 12797:13, 12800:9
**morning** [14] - 12800:18, 12807:17, 12832:19, 12846:21, 12846:22, 12852:21, 12865:8, 12865:9, 12870:3, 12873:13, 12873:15, 12874:4, 12874:6, 12879:21
**MOSD** [1] - 12831:2
**most** [2] - 12821:9, 12839:20
**motion** [20] - 12806:22, 12809:10, 12869:19, 12869:24, 12870:4, 12870:5, 12870:15, 12877:7, 12880:19
**mouth** [1] - 12850:8
**move** [4] - 12813:7, 12858:7, 12860:1, 12860:6
**moving** [1] - 12850:9
**MR** [147] - 12802:17, 12803:9, 12803:21, 12804:2, 12804:25, 12805:13, 12805:24, 12806:13, 12807:15, 12807:17, 12808:1, 12808:4, 12808:8, 12808:11, 12808:13, 12809:4, 12809:7, 12811:21, 12812:5, 12816:10, 12816:12, 12818:8, 12819:15, 12820:1, 12820:12, 12820:17, 12820:22, 12821:12, 12821:24, 12822:2, 12822:7, 12822:9, 12822:13, 12822:18, 12823:7, 12823:9, 12823:10, 12823:12, 12824:17,

12829:4, 12829:7, 12830:5, 12830:8, 12832:3, 12832:5, 12832:7, 12832:12, 12833:3, 12833:5, 12833:9, 12833:11, 12833:17, 12834:3, 12834:13, 12834:16, 12834:21, 12834:23, 12834:25, 12835:3, 12835:10, 12835:20, 12835:22, 12835:25, 12836:3, 12836:7, 12836:25, 12837:9, 12837:11, 12837:16, 12837:19, 12838:4, 12838:9, 12838:11, 12838:13, 12839:1, 12839:7, 12839:9, 12841:15, 12843:4, 12843:10, 12843:18, 12844:1, 12844:9, 12844:11, 12844:16, 12845:21, 12845:25, 12846:4, 12846:8, 12846:10, 12846:13, 12847:3, 12847:25, 12848:3, 12848:8, 12848:12, 12848:24, 12848:25, 12849:1, 12849:3, 12849:5, 12850:7, 12850:11, 12851:11, 12851:12, 12852:8, 12852:14, 12852:17, 12852:20, 12853:2, 12853:14, 12854:9, 12855:2, 12858:6, 12859:23, 12859:25, 12860:9, 12860:19, 12860:22, 12861:2, 12861:5, 12861:9, 12861:14, 12861:24, 12862:3, 12862:14, 12862:16, 12863:14, 12863:19, 12864:25, 12865:3, 12865:5, 12865:7, 12865:20, 12869:2, 12869:5, 12870:17, 12871:11, 12871:13, 12871:16, 12871:20, 12872:17, 12873:2, 12873:4, 12879:9, 12879:12, 12880:6

**MS** [121] - 12802:10, 12802:18, 12802:20, 12809:25, 12810:3, 12812:20, 12813:3, 12813:9, 12813:14, 12816:23, 12817:9, 12817:13, 12817:20,

12817:23, 12820:8, 12821:4, 12822:24, 12823:3, 12823:8, 12823:13, 12823:19, 12823:23, 12823:25, 12824:4, 12824:12, 12824:16, 12824:18, 12824:22, 12825:4, 12825:22, 12826:4, 12826:8, 12826:16, 12826:19, 12826:22, 12827:8, 12827:18, 12828:1, 12828:15, 12839:16, 12839:23, 12840:5, 12840:8, 12840:11, 12840:23, 12841:1, 12842:6, 12842:9, 12846:20, 12846:24, 12847:4, 12847:8, 12847:9, 12848:1, 12848:5, 12848:9, 12848:15, 12848:19, 12849:14, 12849:16, 12849:19, 12849:21, 12849:23, 12850:1, 12850:13, 12850:16, 12850:18, 12850:20, 12850:23, 12850:25, 12851:2, 12851:6, 12851:15, 12852:4, 12853:1, 12853:7, 12853:11, 12858:4, 12858:7, 12858:12, 12858:14, 12858:15, 12858:17, 12858:19, 12858:21, 12859:9, 12859:11, 12859:16, 12859:19, 12860:4, 12862:11, 12865:23, 12866:7, 12867:19, 12868:3, 12868:18, 12868:21, 12868:23, 12872:11, 12872:24, 12873:3, 12873:25, 12874:11, 12874:13, 12874:23, 12875:1, 12875:7, 12875:10, 12875:16, 12875:24, 12876:9, 12876:13, 12876:15, 12876:17, 12877:1, 12877:3, 12877:9, 12879:19, 12880:4, 12880:21, 12881:4

**MT** [1] - 12798:16
**Mulroe** [2] - 12797:12, 12800:9
**multi** [1] - 12847:19
**multi-line** [1] - 12847:19

**mundane** [4] - 12827:4, 12827:22, 12827:24, 12839:20
**must** [2] - 12803:6, 12836:18

**N**

**Nadia** [2] - 12797:13, 12800:9
**national** [2] - 12845:12, 12866:16
**nature** [2] - 12813:1, 12841:17
**Nayib** [2] - 12798:4, 12800:12
**NAYIB** [1] - 12798:5
**necessary** [3] - 12825:8, 12874:23, 12878:3
**need** [50] - 12801:10, 12802:6, 12803:14, 12803:24, 12804:15, 12806:5, 12812:15, 12812:18, 12812:21, 12812:22, 12812:25, 12813:1, 12813:3, 12813:8, 12815:7, 12815:8, 12815:10, 12815:14, 12815:17, 12815:21, 12816:5, 12816:14, 12818:1, 12820:24, 12821:6, 12821:11, 12824:25, 12830:23, 12837:2, 12837:7, 12837:23, 12839:10, 12847:1, 12847:4, 12855:11, 12858:3, 12860:18, 12862:4, 12863:22, 12864:5, 12864:14, 12864:23, 12867:12, 12877:9, 12877:10, 12877:12, 12879:21, 12880:25, 12881:3
**needed** [1] - 12877:17
**needs** [10] - 12809:16, 12809:17, 12836:5, 12838:14, 12838:15, 12844:7, 12846:5, 12866:12, 12866:16, 12866:17
**negatively** [2] - 12880:4, 12880:6
**neglects** [1] - 12836:11
**negligible** [1] - 12845:24
**neutral** [3] - 12832:23, 12834:17, 12872:19

**never** [3] - 12808:2, 12869:1
**new** [5] - 12814:2, 12814:3, 12830:1, 12855:16
**New** [3] - 12797:18, 12797:21, 12798:13
**new-agent** [2] - 12814:2, 12814:3
**next** [7] - 12814:17, 12839:6, 12841:8, 12850:8, 12876:10, 12878:24, 12879:13
**Nicholas** [2] - 12797:16, 12800:10
**NICOLE** [1] - 12799:3
**Nicole** [3] - 12813:19, 12846:18, 12868:11
**night** [3] - 12810:13, 12877:19, 12878:21
**NJ** [3] - 12798:17, 12881:17, 12881:22
**NJ-CCR** [3] - 12798:17, 12881:17, 12881:22
**NO** [1] - 12839:23
**non** [6] - 12819:8, 12834:7, 12849:10, 12850:16, 12850:25, 12864:21
**non-classified** [1] - 12819:8
**non-leading** [3] - 12849:10, 12850:16, 12850:25
**non-party** [1] - 12834:7
**non-secret** [1] - 12864:21
**none** [3] - 12831:22, 12832:10, 12833:25
**nonetheless** [1] - 12872:6
**noodling** [1] - 12877:19
**noon** [3] - 12880:13, 12880:19
**NORDEAN** [1] - 12797:4
**Nordean** [3] - 12800:3, 12800:15, 12811:19
**Norman** [2] - 12797:19, 12800:11
**Nos** [1] - 12797:2
**not-classified** [1] - 12828:19
**note** [3] - 12829:4, 12870:20, 12870:24
**notes** [1] - 12881:19

**nothing** [5] - 12816:9, 12827:2, 12828:1, 12861:23, 12872:24
**notice** [4] - 12836:13, 12836:14, 12836:16, 12873:9
**notification** [4] - 12826:10, 12828:4, 12828:7, 12828:8
**notwithstanding** [1] - 12836:19
**November** [9] - 12803:16, 12804:5, 12813:17, 12813:18, 12829:18, 12829:20, 12830:2, 12847:17, 12865:17
**novice** [1] - 12850:13
**nowhere** [1] - 12824:14
**number** [8] - 12813:15, 12824:11, 12825:4, 12825:9, 12825:12, 12841:3, 12841:4, 12844:20
**numbers** [1] - 12819:5
**NW** [5] - 12797:14, 12797:24, 12798:5, 12798:19, 12881:24
**NY** [2] - 12797:18, 12798:13

**O**

**o'clock** [2] - 12810:12, 12879:2
**oath** [1] - 12846:23
**object** [7] - 12808:21, 12822:5, 12839:16, 12841:4, 12843:10, 12862:7, 12862:12
**objection** [21] - 12806:15, 12818:2, 12847:2, 12847:3, 12847:25, 12848:1, 12848:8, 12848:18, 12848:24, 12848:25, 12851:11, 12851:12, 12853:1, 12853:11, 12853:12, 12858:4, 12858:7, 12858:12, 12859:24, 12860:8
**objectionable** [1] - 12862:9
**objections** [1] - 12805:3
**obligation** [5] - 12801:11, 12803:5, 12804:21, 12807:8, 12818:6

**obligations** [9] - 12801:1, 12801:4, 12803:22, 12804:24, 12810:16, 12810:21, 12811:2, 12818:5, 12866:17

**obscene** [1] - 12831:19

**obstructing** [1] - 12837:25

**obvious** [1] - 12822:22

**obviously** [4] - 12817:1, 12835:17, 12870:7, 12872:16

**occurred** [1] - 12833:19

**OF** [5] - 12797:1, 12797:2, 12797:8, 12798:5, 12881:16

**offering** [1] - 12827:11

**office** [12] - 12803:12, 12803:18, 12804:6, 12804:11, 12804:14, 12805:2, 12805:7, 12855:13, 12855:15, 12857:5, 12875:18, 12875:20

**OFFICE** [1] - 12797:13

**Office** [6] - 12805:11, 12814:20, 12851:18, 12865:11, 12865:13

**officer** [2] - 12875:2, 12876:5

**offices** [1] - 12813:24

**OFFICES** [1] - 12798:5

**OFFICIAL** [1] - 12881:16

**official** [2] - 12838:1, 12838:2

**Official** [2] - 12798:18, 12881:22

**often** [1] - 12832:14

**once** [3] - 12801:25, 12833:24, 12841:6

**one** [55] - 12800:23, 12800:25, 12806:9, 12809:3, 12809:18, 12809:19, 12810:13, 12810:18, 12810:22, 12813:19, 12814:14, 12817:3, 12817:13, 12818:1, 12823:14, 12824:6, 12825:4, 12829:11, 12829:12, 12829:13, 12829:15, 12829:16, 12829:17, 12829:21, 12829:22, 12831:20, 12833:4,

12833:6, 12834:16, 12834:25, 12835:11, 12836:11, 12839:1, 12840:11, 12841:3, 12841:6, 12841:18, 12841:21, 12844:6, 12849:17, 12860:1, 12863:13, 12866:3, 12866:10, 12867:2, 12867:6, 12867:21, 12868:8, 12869:9, 12876:17, 12877:13, 12880:1, 12880:17, 12881:3

**one's** [1] - 12835:5

**one-alarm** [1] - 12877:13

**one-page** [1] - 12824:6

**ones** [1] - 12863:25

**open** [1] - 12871:8

**opened** [1] - 12814:1

**opine** [1] - 12859:8

**opinion** [1] - 12827:11

**opponent** [2] - 12806:17, 12830:16

**opportunity** [8] - 12801:15, 12804:24, 12819:12, 12821:20, 12843:14, 12845:5, 12859:4, 12867:13

**opposed** [2] - 12812:23, 12864:21

**opposing** [1] - 12806:23

**orally** [1] - 12877:23

**Orange** [1] - 12797:20

**order** [20] - 12808:14, 12814:13, 12816:4, 12821:10, 12831:6, 12831:11, 12831:14, 12832:9, 12832:10, 12833:7, 12833:8, 12846:25, 12867:16, 12867:17, 12873:8, 12873:20, 12877:23, 12878:1, 12878:3

**ordered** [4] - 12810:9, 12819:7, 12830:23, 12832:10

**ordering** [1] - 12877:21

**orient** [2] - 12846:25, 12847:4

**Osama** [2] - 12872:21, 12872:25

**otherwise** [2] - 12835:22, 12835:23

**outside** [4] - 12821:7, 12825:14, 12874:19,

12874:20

**outstanding** [1] - 12877:18

**over-classification** [2] - 12812:3, 12832:13

**over-classified** [1] - 12822:11

**over-produced** [1] - 12867:4

**overall** [2] - 12841:21, 12851:9

**overnight** [2] - 12802:12, 12830:22

**overruled** [2] - 12848:2, 12851:13

**own** [1] - 12815:3

## P

**P.A** [2] - 12798:5, 12798:8

**P.C** [1] - 12798:11

**p.m** [3] - 12829:18, 12829:19, 12830:3

**packets** [1] - 12847:13

**page** [2] - 12824:6, 12825:6

**Page** [1] - 12853:16

**PAGE** [1] - 12799:2

**Park** [1] - 12798:12

**part** [5] - 12803:21, 12835:18, 12844:24, 12878:6, 12880:8

**partake** [1] - 12811:22

**parte** [1] - 12875:4

**particular** [8] - 12801:6, 12821:23, 12840:20, 12869:14, 12869:15, 12874:15, 12876:23, 12877:25

**particularly** [2] - 12813:23, 12817:5

**parties** [14] - 12800:20, 12806:5, 12811:1, 12849:7, 12850:9, 12858:9, 12868:7, 12869:9, 12869:16, 12870:2, 12870:12, 12873:18, 12877:16, 12877:20

**party** [8] - 12806:17, 12812:7, 12830:15, 12834:7, 12836:11, 12836:14, 12878:22, 12880:11

**past** [2] - 12850:2, 12860:6

**path** [1] - 12873:24

**pathway** [1] - 12802:3

**Pattis** [12] - 12797:19,

12800:11, 12805:12, 12820:13, 12830:7, 12831:20, 12843:16, 12845:23, 12846:12, 12871:19, 12873:3, 12879:11

**PATTIS** [42] - 12797:20, 12802:17, 12805:13, 12805:24, 12806:13, 12820:12, 12823:7, 12830:8, 12832:3, 12832:5, 12832:7, 12832:12, 12833:3, 12833:5, 12833:9, 12833:11, 12833:17, 12834:3, 12834:13, 12834:16, 12834:21, 12834:23, 12841:15, 12843:4, 12843:10, 12843:18, 12844:1, 12844:9, 12844:11, 12844:16, 12845:21, 12845:25, 12846:4, 12846:8, 12846:10, 12846:13, 12849:5, 12871:20, 12872:17, 12873:2, 12873:4, 12879:12

**pause** [6] - 12801:3, 12801:14, 12801:22, 12846:17, 12848:17, 12852:9

**PC** [1] - 12797:23

**people** [9] - 12814:19, 12825:17, 12837:21, 12837:23, 12843:24, 12844:21, 12845:8, 12866:21, 12867:5

**per** [1] - 12867:24

**perfect** [2] - 12859:17, 12876:9

**perfectly** [1] - 12839:5

**perform** [2] - 12814:6, 12818:5

**performed** [1] - 12805:6

**peripheral** [1] - 12828:16

**permission** [1] - 12846:25

**permitted** [1] - 12820:18

**person** [4] - 12825:19, 12840:11, 12866:11, 12878:16

**personnel** [1] - 12802:21

**perspective** [1] - 12807:10

**pertained** [2] -

12870:19, 12872:20

**pertains** [3] - 12841:18, 12841:19, 12872:24

**Pezzola** [3] - 12800:7, 12800:16, 12809:7

**PEZZOLA** [1] - 12797:6

**phone** [1] - 12850:14

**phones** [5] - 12849:17, 12850:3, 12858:19, 12881:6, 12881:9

**pick** [2] - 12807:5, 12810:23

**pickle** [1] - 12810:19

**pieces** [1] - 12818:25

**piling** [1] - 12879:17

**place** [3] - 12803:12, 12832:25, 12844:2

**placed** [1] - 12854:22

**plan** [1] - 12869:14

**planning** [1] - 12813:25

**plans** [1] - 12836:4

**pleasure** [1] - 12849:17

**PLLC** [1] - 12797:16

**plow** [1] - 12879:5

**point** [15] - 12813:3, 12819:10, 12819:23, 12823:17, 12825:3, 12826:12, 12832:1, 12832:9, 12832:13, 12839:25, 12849:2, 12867:19, 12869:17, 12874:17, 12879:16

**pointed** [1] - 12806:3

**popped** [2] - 12810:7, 12850:5

**portion** [2] - 12840:1, 12868:14

**position** [13] - 12801:17, 12802:6, 12808:6, 12808:25, 12836:1, 12837:2, 12842:14, 12859:7, 12866:24, 12868:1, 12878:21, 12879:5

**possess** [2] - 12821:18, 12822:16

**possession** [6] - 12804:17, 12873:11, 12874:15, 12874:19, 12874:20, 12876:2

**possibility** [1] - 12814:14

**possible** [3] - 12804:9, 12804:25, 12816:4

12893

**posture** [1] - 12805:14
**potential** [3] - 12811:2, 12812:21, 12842:25
**potentially** [1] - 12818:15
**practice** [1] - 12807:2
**pre** [1] - 12833:19
**pre-cross-examination** [1] - 12833:19
**preclude** [1] - 12877:11
**precludes** [1] - 12833:25
**prejudices** [1] - 12844:4
**preliminary** [3] - 12803:10, 12818:22, 12836:15
**premise** [1] - 12820:4
**prepare** [2] - 12843:14, 12845:8
**prepared** [2] - 12845:2
**preparing** [1] - 12847:12
**presence** [4] - 12812:23, 12818:3, 12821:7, 12821:8
**present** [11] - 12800:8, 12800:9, 12800:10, 12800:11, 12800:12, 12800:13, 12800:14, 12805:18, 12815:2, 12843:5, 12845:11
**presentation** [2] - 12829:1, 12843:19
**presentations** [1] - 12840:13
**presented** [1] - 12879:8
**preserve** [3] - 12874:24, 12875:7, 12876:7
**preserved** [4] - 12833:15, 12833:16, 12834:12, 12834:20
**President** [1] - 12827:21
**press** [2] - 12849:12, 12859:13
**presumptively** [1] - 12870:22
**pretrial** [2] - 12833:19, 12835:13
**pretty** [3] - 12805:9, 12827:4, 12878:21
**privilege** [3] - 12871:24, 12872:8, 12872:13

**privileges** [1] - 12818:18
**probation** [2] - 12814:3
**problem** [4] - 12805:25, 12806:13, 12807:21, 12826:14
**problems** [3] - 12849:24, 12850:2, 12876:18
**procedure** [7] - 12802:22, 12818:10, 12818:19, 12825:11, 12838:7, 12838:13, 12861:10
**Procedures** [2] - 12835:7, 12835:12
**proceed** [10] - 12800:22, 12808:22, 12824:3, 12830:19, 12831:13, 12841:6, 12842:4, 12859:10, 12866:5, 12870:10
**proceeded** [1] - 12814:14
**proceeding** [2] - 12838:2, 12870:24
**Proceedings** [2] - 12798:21, 12881:14
**proceedings** [5] - 12830:10, 12832:16, 12836:15, 12838:1, 12881:20
**process** [12] - 12816:5, 12819:22, 12819:24, 12822:4, 12822:19, 12840:9, 12841:11, 12842:17, 12868:5, 12878:24, 12878:25
**processed** [7] - 12821:1, 12821:2, 12826:6, 12826:15, 12837:5, 12842:18, 12842:20
**produce** [7] - 12801:17, 12804:21, 12819:4, 12819:6, 12867:7, 12871:23, 12876:23
**produced** [10] - 12798:21, 12801:5, 12804:5, 12815:15, 12829:11, 12852:23, 12867:4, 12869:12, 12876:18
**produces** [1] - 12801:7
**production** [5] - 12801:1, 12802:15,

12811:24, 12845:14, 12872:14
**productive** [1] - 12874:6
**proper** [2] - 12876:5, 12876:7
**proposal** [9] - 12822:25, 12825:12, 12826:7, 12826:18, 12826:22, 12826:24, 12866:5, 12876:13, 12876:15
**propose** [1] - 12818:9
**proposed** [2] - 12877:1, 12877:19
**prosecution** [3] - 12830:20, 12831:14, 12835:15
**prosecutor's** [6] - 12803:12, 12804:6, 12804:11, 12805:2, 12805:7, 12857:5
**prosecutors** [1] - 12809:14
**protects** [1] - 12841:13
**prove** [1] - 12844:24
**provide** [11] - 12801:11, 12810:10, 12834:10, 12866:24, 12867:11, 12872:13, 12872:14, 12875:2, 12875:21
**provided** [24] - 12809:18, 12810:9, 12851:17, 12851:25, 12854:15, 12854:21, 12854:23, 12854:24, 12854:25, 12855:4, 12855:6, 12855:13, 12855:15, 12855:21, 12856:5, 12856:24, 12857:1, 12857:4, 12857:5, 12859:2, 12859:22, 12875:12, 12875:25, 12878:11
**provides** [1] - 12834:11
**province** [1] - 12843:11
**provision** [3] - 12825:15, 12841:12, 12843:8
**public** [1] - 12824:10
**pull** [7] - 12801:9, 12814:6, 12847:10, 12847:12, 12847:15, 12847:20, 12867:10
**pulled** [3] - 12813:20, 12857:20, 12864:9

**pulling** [1] - 12813:18
**pulls** [2] - 12813:14, 12813:15
**purpose** [3] - 12836:10, 12836:12
**purposes** [6] - 12823:15, 12823:16, 12861:23, 12872:17, 12876:8
**put** [17] - 12806:10, 12806:24, 12807:11, 12810:8, 12811:11, 12813:8, 12820:14, 12828:15, 12838:21, 12841:19, 12842:1, 12854:16, 12860:10, 12877:6, 12879:24, 12880:11, 12880:19
**putting** [3] - 12838:24, 12838:25, 12860:19

### Q

**questioning** [1] - 12825:23
**questions** [15] - 12818:4, 12837:3, 12837:4, 12839:3, 12839:4, 12840:21, 12841:5, 12842:17, 12842:21, 12844:2, 12845:6, 12852:5, 12852:6, 12865:3
**quickly** [2] - 12816:3, 12880:21
**quite** [1] - 12872:13
**quo** [3] - 12834:19, 12874:18, 12876:3

### R

**raised** [2] - 12806:4, 12868:15
**range** [1] - 12847:16
**rather** [6] - 12804:13, 12825:19, 12826:4, 12843:17, 12849:11, 12863:25
**reach** [2] - 12812:10, 12873:17
**read** [7] - 12823:2, 12823:21, 12824:6, 12825:9, 12853:14, 12853:15, 12879:4
**reading** [6] - 12823:6, 12823:13, 12823:18, 12823:20, 12836:8, 12840:2
**realize** [2] - 12814:21, 12830:10

**really** [11] - 12802:6, 12809:4, 12812:19, 12837:1, 12837:7, 12840:7, 12842:3, 12845:24, 12847:11, 12862:6, 12876:11
**reap** [1] - 12806:21
**reason** [4] - 12806:2, 12826:25, 12880:12, 12880:17
**reasonable** [2] - 12801:5, 12844:18
**reasons** [1] - 12809:9
**receive** [1] - 12847:19
**received** [7] - 12823:2, 12848:6, 12851:7, 12853:5, 12860:15, 12861:15, 12862:18
**recess** [2] - 12811:15, 12811:16
**recognize** [2] - 12829:5, 12835:2
**recommend** [1] - 12867:8
**recommended** [1] - 12826:24
**record** [11] - 12811:17, 12813:8, 12817:23, 12833:16, 12846:15, 12860:10, 12860:20, 12870:21, 12870:23, 12871:6, 12874:16
**recorded** [2] - 12798:21, 12843:5
**reference** [2] - 12854:14, 12870:25
**referring** [5] - 12804:8, 12825:2, 12854:24, 12857:4, 12863:6
**reflect** [1] - 12825:10
**regard** [2] - 12802:4, 12866:5
**regarding** [1] - 12856:25
**regardless** [1] - 12804:20
**regards** [2] - 12855:21, 12857:12
**regrettably** [1] - 12814:20
**rehearse** [3] - 12843:7, 12843:14, 12845:5
**Rehl** [3] - 12800:4, 12800:15, 12869:25
**REHL** [1] - 12797:5
**relate** [1] - 12857:2
**related** [3] - 12825:24,

12825:25, 12856:23
**relates** [1] - 12863:17
**relating** [2] -
12835:14, 12852:25
**relation** [1] - 12872:5
**Relativity** [1] -
12876:19
**relevance** [1] -
12872:3
**relevant** [9] - 12812:8,
12812:10, 12835:6,
12837:15, 12851:24,
12852:14, 12871:5,
12871:10, 12871:11
**relying** [1] - 12819:5
**remain** [1] - 12846:23
**remarks** [1] -
12841:15
**remember** [3] -
12807:20, 12856:2,
12867:22
**remembers** [1] -
12812:2
**remind** [1] - 12846:23
**remotely** [1] - 12827:3
**remove** [3] -
12856:18, 12856:19,
12856:21
**removed** [1] -
12814:15
**rename** [1] - 12815:18
**render** [1] - 12817:17
**repeat** [1] - 12842:21
**repeatedly** [1] -
12842:14
**report** [2] - 12873:15,
12880:8
**reporter** [1] - 12881:1
**REPORTER** [2] -
12854:17, 12881:16
**Reporter** [3] -
12798:17, 12798:18,
12881:22
**reporter's** [1] -
12823:16
**representation** [1] -
12860:11
**representations** [1] -
12869:22
**representing** [1] -
12809:7
**reproduce** [1] -
12816:1
**reproduced** [1] -
12804:12
**request** [8] -
12805:15, 12813:19,
12821:15, 12825:25,
12828:9, 12839:17,
12847:20, 12867:15

**requested** [2] -
12843:18, 12847:15
**requesting** [1] -
12872:8
**require** [3] - 12825:10,
12831:7, 12845:11
**required** [3] -
12806:20, 12840:12,
12863:24
**requirement** [2] -
12836:10, 12846:7
**requires** [1] -
12835:13
**resolve** [5] - 12801:21,
12802:2, 12802:24,
12811:10, 12811:12
**resolving** [1] -
12802:3
**resources** [1] -
12806:23
**respect** [1] - 12871:21
**respectfully** [1] -
12813:10
**respond** [2] - 12846:6,
12870:17
**response** [4] -
12812:18, 12847:20,
12872:10, 12878:2
**rest** [2] - 12871:12,
12874:7
**result** [2] - 12869:24,
12870:1
**resumed** [1] -
12846:18
**retain** [1] - 12833:11,
12833:13
**retaining** [2] -
12873:11, 12876:2
**Return** [2] - 12851:5,
12862:15
**return** [11] - 12803:1,
12809:9, 12809:20,
12815:23, 12818:12,
12818:20, 12820:3,
12821:16, 12831:6,
12831:12, 12867:16
**returning** [1] -
12820:16
**Returns** [1] - 12831:1
**returns** [1] - 12839:10
**review** [21] - 12815:9,
12815:10, 12816:21,
12822:5, 12827:23,
12837:6, 12851:16,
12852:2, 12859:4,
12859:5, 12866:12,
12866:13, 12866:17,
12866:19, 12866:20,
12867:17, 12868:2,
12868:18, 12871:24,

12873:9, 12877:25
**reviewed** [10] -
12802:12, 12814:14,
12814:22, 12814:24,
12815:3, 12816:16,
12822:4, 12848:22,
12866:9, 12866:10
**reviewing** [4] -
12814:22, 12827:14,
12827:15, 12840:15
**revised** [1] - 12866:24
**ridiculous** [1] -
12831:4
**rightly** [1] - 12806:3
**rights** [4] - 12841:11,
12841:12, 12841:13,
12844:14
**rise** [2] - 12811:14,
12881:12
**Road** [1] - 12798:2
**Roger** [2] - 12798:14,
12800:14
**ROGER** [1] - 12798:15
**role** [1] - 12878:25
**Room** [2] - 12798:18,
12881:23
**room** [2] - 12805:18,
12807:1
**roots** [10] - 12809:2,
12810:22, 12836:23,
12837:1, 12838:3,
12838:6, 12838:20,
12839:8, 12839:12,
12870:4
**Roots** [2] - 12798:14,
12800:14
**ROOTS** [15] -
12798:15, 12809:4,
12809:7, 12836:25,
12837:9, 12837:11,
12837:16, 12837:19,
12838:4, 12838:9,
12838:11, 12838:13,
12839:1, 12839:7,
12839:9
**round** [1] - 12835:10
**Row** [2] - 12819:4,
12819:22
**rows** [28] - 12803:14,
12818:15, 12829:12,
12829:13, 12829:14,
12829:16, 12829:20,
12829:22, 12830:1,
12830:2, 12852:24,
12853:9, 12853:18,
12853:21, 12853:23,
12854:2, 12854:25,
12855:8, 12856:9,
12857:9, 12857:15,
12859:1, 12860:13,

12860:14, 12860:15,
12860:25
**RPR** [3] - 12798:17,
12881:17, 12881:22
**ruined** [1] - 12808:18
**rule** [7] - 12835:6,
12836:9, 12836:10,
12836:13, 12836:16,
12845:13, 12848:18
**rules** [1] - 12836:17
**ruling** [1] - 12862:10

## S

**Sabino** [2] - 12798:8,
12800:13
**sacrifice** [1] - 12831:8
**safeguard** [1] -
12818:6
**satisfactory** [1] -
12875:9
**satisfy** [1] - 12872:17
**saw** [4] - 12841:1,
12857:8, 12857:15,
12877:13
**scenes** [1] - 12816:3
**schedule** [4] -
12811:11, 12869:20,
12869:23, 12870:5
**school** [1] - 12849:20
**scope** [13] - 12801:18,
12802:1, 12811:8,
12811:9, 12820:1,
12820:25, 12826:14,
12837:4, 12839:4,
12861:11, 12868:8,
12878:5, 12878:19
**scope-of-cross** [1] -
12811:9
**scramble** [2] -
12804:16, 12804:19
**screen** [1] - 12844:23
**screw** [1] - 12829:21
**screw-up** [1] -
12829:21
**scrub** [2] - 12815:14,
12815:20
**scrubbed** [1] -
12815:11
**se** [1] - 12867:24
**seal** [5] - 12813:1,
12813:4, 12874:16,
12874:19, 12875:4
**sealed** [1] - 12870:24
**seated** [1] - 12879:12
**seating** [1] - 12879:12
**second** [2] -
12819:10, 12823:14
**secrecy** [1] - 12825:11
**secret** [9] - 12808:13,

12808:14, 12815:16,
12815:18, 12816:9,
12863:10, 12864:13,
12864:20, 12864:21
**Secret/NO** [1] -
12824:15
**Secret/NOFORN** [5] -
12815:17, 12824:18,
12848:22, 12851:14,
12863:3
**Section** [2] -
12835:12, 12836:20
**security** [7] - 12815:5,
12824:23, 12825:7,
12845:12, 12866:17,
12875:2, 12876:5
**see** [26] - 12800:21,
12801:14, 12801:24,
12806:7, 12810:1,
12812:14, 12817:2,
12823:20, 12823:25,
12824:8, 12824:24,
12826:7, 12834:9,
12839:10, 12839:19,
12842:4, 12850:5,
12853:23, 12863:22,
12864:23, 12869:10,
12873:11, 12877:14,
12881:10
**seeing** [1] - 12868:5
**seem** [1] - 12801:15
**selected** [1] -
12858:22
**selection** [1] -
12832:16
**send** [14] - 12801:14,
12801:22, 12803:1,
12806:2, 12810:21,
12810:23, 12813:22,
12865:10, 12866:19,
12867:17, 12873:10,
12878:1
**sending** [1] - 12802:4
**sense** [8] - 12801:3,
12801:13, 12803:1,
12804:17, 12824:7,
12826:24, 12873:7,
12873:16
**sensitive** [1] -
12863:18
**sent** [15] - 12804:11,
12809:8, 12814:18,
12814:19, 12851:22,
12851:23, 12852:25,
12855:11, 12856:15,
12856:16, 12865:14,
12866:8, 12866:11,
12866:21, 12867:23
**sentencing** [1] -
12879:20

**sentencings** [2] - 12879:16, 12879:18
**separate** [1] - 12834:1
**serious** [2] - 12837:24, 12838:14
**seriously** [1] - 12830:11
**set** [8] - 12815:20, 12824:9, 12834:17, 12868:9, 12869:19, 12870:5, 12876:23
**setting** [1] - 12869:20
**several** [1] - 12815:5
**share** [1] - 12808:14
**sheet** [3] - 12815:16, 12849:11, 12862:21
**short** [1] - 12867:3
**short-circuit** [1] - 12867:3
**shorthand** [1] - 12798:21
**show** [3] - 12824:5, 12824:9, 12879:4
**showed** [8] - 12814:18, 12854:10, 12857:15, 12857:19, 12857:24, 12858:24, 12860:12, 12860:25
**showing** [2] - 12854:14, 12857:17
**shown** [3] - 12824:10, 12855:18, 12858:15
**sic** [4] - 12832:23, 12845:8, 12856:1, 12864:9
**sic]** [2] - 12843:20, 12845:9
**side** [9] - 12800:23, 12802:5, 12863:3, 12863:10, 12864:13, 12864:20, 12864:21, 12864:22, 12881:2
**sidebar** [2] - 12849:7, 12858:10
**sides** [2] - 12832:18, 12840:14
**silence** [1] - 12806:16
**silly** [1] - 12863:24
**similar** [2] - 12857:14, 12867:12
**simply** [8] - 12800:25, 12804:12, 12815:22, 12831:11, 12834:6, 12864:1, 12867:16, 12869:14
**sinking** [2] - 12872:20, 12873:2
**sit** [4] - 12814:23, 12819:21, 12827:10, 12841:24

**sitting** [4] - 12863:20, 12879:12, 12879:20, 12881:4
**situation** [2] - 12801:7, 12876:22
**Sixth** [7] - 12801:23, 12801:25, 12811:7, 12841:10, 12868:7, 12869:7, 12876:11
**slightly** [1] - 12855:24
**small** [1] - 12868:1
**Smith** [25] - 12797:16, 12800:10, 12802:9, 12803:8, 12805:13, 12806:3, 12806:8, 12807:20, 12810:10, 12816:25, 12817:24, 12835:1, 12848:13, 12853:7, 12853:13, 12853:17, 12858:21, 12858:22, 12859:20, 12860:5, 12860:25, 12869:3, 12870:16, 12878:20, 12879:10
**SMITH** [72] - 12797:16, 12797:20, 12803:9, 12803:21, 12804:2, 12804:25, 12811:21, 12812:5, 12816:10, 12816:12, 12818:8, 12819:15, 12820:1, 12820:17, 12820:22, 12821:12, 12821:24, 12822:2, 12822:7, 12822:9, 12822:13, 12822:18, 12823:10, 12829:4, 12834:25, 12835:3, 12835:10, 12835:20, 12835:22, 12835:25, 12836:3, 12836:7, 12847:3, 12847:25, 12848:3, 12848:8, 12848:12, 12850:7, 12850:11, 12851:11, 12852:8, 12852:14, 12852:17, 12852:20, 12853:2, 12853:14, 12854:9, 12855:2, 12858:6, 12859:25, 12860:9, 12860:19, 12860:22, 12861:2, 12861:5, 12861:9, 12861:14, 12861:24, 12862:3, 12862:14, 12862:16, 12863:14, 12863:19, 12864:25, 12869:2, 12869:5, 12870:17, 12871:11, 12871:13, 12871:16,

12879:9, 12880:6
**Smith's** [4] - 12806:22, 12808:18, 12832:12, 12878:9
**Smith....................**
**12852** [1] - 12799:4
**sole** [1] - 12870:25
**someone** [6] - 12804:9, 12825:13, 12828:6, 12830:24, 12854:1, 12870:3
**sometimes** [3] - 12813:24, 12813:25, 12814:1
**soon** [3] - 12866:22, 12878:3, 12880:16
**sooner** [1] - 12873:17
**sorry** [15] - 12800:5, 12802:17, 12806:14, 12810:3, 12826:17, 12835:4, 12846:13, 12847:11, 12849:16, 12849:23, 12854:17, 12854:18, 12855:5, 12869:3, 12879:10
**sort** [10] - 12801:19, 12810:14, 12811:9, 12837:6, 12868:5, 12869:21, 12870:2, 12873:16, 12876:22, 12878:17
**sounds** [3] - 12816:19, 12863:23, 12863:24
**source** [2] - 12811:25, 12863:18
**sourced** [1] - 12864:2
**sovereign** [1] - 12831:17
**speaking** [2] - 12823:15, 12853:12
**special** [4] - 12816:15, 12817:3, 12830:9, 12868:11
**Special** [27] - 12813:19, 12814:5, 12814:8, 12814:12, 12814:13, 12814:16, 12814:22, 12814:25, 12815:10, 12815:19, 12816:6, 12816:15, 12817:2, 12817:6, 12818:2, 12846:21, 12847:10, 12847:23, 12851:7, 12853:10, 12858:24, 12859:2, 12859:3, 12859:20, 12867:7, 12868:11, 12868:25
**specialist** [3] -

12826:2, 12826:5, 12828:6
**specialty** [1] - 12825:17
**specific** [2] - 12855:10, 12863:25
**speculate** [1] - 12861:25
**speculation** [1] - 12861:22
**spend** [1] - 12810:25
**spent** [1] - 12877:18
**sphere** [1] - 12817:16
**spill** [12] - 12802:15, 12802:18, 12802:19, 12805:17, 12806:5, 12806:8, 12811:3, 12812:22, 12816:22, 12820:25, 12831:21, 12841:22
**spills** [1] - 12835:8
**spirit** [1] - 12866:2
**spoken** [1] - 12814:12
**spread** [1] - 12862:21
**spreadsheet** [62] - 12803:12, 12804:4, 12804:6, 12804:10, 12814:7, 12814:17, 12814:19, 12814:21, 12814:25, 12815:2, 12815:11, 12815:22, 12815:24, 12818:13, 12821:2, 12824:13, 12826:6, 12826:15, 12837:5, 12843:1, 12847:20, 12848:6, 12848:7, 12848:20, 12848:21, 12851:7, 12851:10, 12851:17, 12852:22, 12852:23, 12853:8, 12853:9, 12853:18, 12853:23, 12854:2, 12854:10, 12854:13, 12854:16, 12854:22, 12855:25, 12856:6, 12856:19, 12857:8, 12857:14, 12857:20, 12858:23, 12858:25, 12860:12, 12860:25, 12861:16, 12861:21, 12862:25, 12863:3, 12865:10, 12865:14, 12866:9, 12866:11, 12866:21, 12866:24, 12867:1, 12867:10, 12878:10
**spreadsheets** [1] - 12866:19
**squad** [2] - 12817:3, 12869:1

**stand** [12] - 12802:1, 12819:20, 12828:10, 12830:12, 12833:20, 12838:25, 12841:7, 12842:2, 12844:23, 12846:18, 12873:24
**stands** [1] - 12811:15
**start** [2] - 12816:5, 12868:5
**starting** [1] - 12819:23
**statement** [5] - 12828:20, 12851:24, 12868:23, 12870:25, 12871:1
**statements** [14] - 12827:5, 12851:23, 12852:24, 12855:7, 12855:12, 12856:17, 12856:22, 12857:14, 12857:19, 12864:12, 12869:11, 12869:16, 12879:1, 12879:2
**STATES** [3] - 12797:1, 12797:2, 12797:9
**States** [8] - 12797:11, 12800:3, 12802:11, 12811:18, 12825:14, 12827:22, 12874:20, 12881:23
**status** [6] - 12827:16, 12834:19, 12873:14, 12873:25, 12874:18, 12876:3
**stenographic** [1] - 12881:19
**step** [9] - 12818:10, 12820:15, 12820:17, 12838:23, 12839:6, 12841:8, 12849:24, 12850:1, 12865:24
**stepped** [1] - 12807:7
**steps** [4] - 12833:23, 12851:16, 12866:1, 12867:13
**Steven** [2] - 12798:11, 12800:13
**still** [5] - 12804:25, 12814:2, 12815:2, 12815:14, 12878:9
**stop** [2] - 12810:17, 12827:7
**stopped** [1] - 12808:20
**strange** [1] - 12876:22
**strangely** [1] - 12876:19
**strategic** [1] - 12806:20
**Street** [6] - 12797:14, 12797:17, 12797:20,

12797:24, 12798:5,
12798:9
**strenuous** [1] -
12806:15
**stricken** [1] -
12828:17
**strike** [2] - 12845:16,
12858:7
**strikes** [1] - 12822:21
**striking** [1] - 12841:9
**stuff** [3] - 12829:10,
12829:23, 12829:25
**subject** [1] - 12871:7
**subjective** [1] -
12812:3
**subjects** [1] -
12863:25
**submissions** [1] -
12800:19
**submit** [7] - 12827:3,
12828:16, 12842:6,
12842:9, 12875:19,
12876:5, 12876:7
**substance** [2] -
12822:20, 12828:12
**substantially** [1] -
12867:12
**sudden** [2] -
12808:20, 12810:17
**sufficient** [1] -
12815:6
**suggest** [6] - 12801:5,
12802:23, 12831:16,
12832:14, 12877:15,
12878:10
**suggested** [2] -
12830:22, 12877:7
**suggestion** [3] -
12805:19, 12839:1,
12841:2
**suggests** [1] -
12845:13
**Suite** [2] - 12797:17,
12798:6
**supervise** [1] -
12830:9
**supervisor** [1] -
12868:13
**suppose** [1] - 12880:7
**supposed** [1] -
12833:22
**supposedly** [1] -
12828:22
**surprise** [2] -
12803:14, 12803:19
**surprised** [1] -
12869:10
**surprising** [1] -
12805:8
**survives** [1] - 12807:9

**suspect** [1] - 12843:20
**suspension** [1] -
12807:2
**system** [5] - 12862:20,
12864:8, 12864:20,
12876:6
**systems** [3] -
12813:16, 12814:5,
12847:24

## T

**tab** [1] - 12815:18
**table** [1] - 12881:4
**tactical** [1] - 12806:20
**tactically** [1] - 12807:8
**tagged** [1] - 12878:15
**tangential** [2] -
12872:3, 12872:5
**tape** [1] - 12831:2
**TARRIO** [1] - 12797:6
**Tarrio** [4] - 12800:5,
12800:6, 12800:16,
12807:18
**team** [3] - 12816:2,
12868:4
**teams** [1] - 12877:24
**tee** [1] - 12836:10
**teed** [1] - 12871:17
**terms** [5] - 12819:24,
12820:24, 12834:19,
12844:17, 12874:8
**testified** [4] -
12828:13, 12853:6,
12854:12, 12856:13
**testifies** [1] - 12822:15
**testify** [1] - 12821:22
**testifying** [3] -
12849:1, 12849:2,
12856:23
**testimony** [11] -
12803:25, 12821:17,
12825:24, 12828:16,
12828:17, 12841:9,
12843:15, 12844:20,
12845:5, 12845:18,
12857:2
**text** [2] - 12828:2,
12828:3
**THE** [234] - 12797:1,
12797:1, 12797:9,
12800:2, 12800:17,
12802:19, 12803:3,
12803:19, 12803:22,
12804:19, 12805:12,
12805:23, 12806:1,
12807:13, 12807:16,
12807:25, 12808:2,
12808:6, 12808:10,
12808:12, 12809:2,

12809:6, 12809:23,
12810:1, 12810:5,
12811:14, 12811:17,
12811:20, 12812:4,
12812:13, 12812:25,
12813:5, 12813:13,
12816:11, 12816:13,
12817:8, 12817:11,
12817:19, 12817:22,
12817:24, 12819:14,
12819:16, 12820:6,
12820:10, 12820:13,
12820:21, 12820:23,
12821:5, 12821:22,
12821:25, 12822:3,
12822:8, 12822:10,
12822:17, 12822:19,
12823:14, 12823:21,
12823:24, 12824:1,
12824:11, 12824:20,
12824:25, 12825:21,
12826:3, 12826:5,
12826:11, 12826:17,
12826:20, 12827:6,
12827:11, 12827:25,
12828:14, 12829:3,
12829:5, 12830:4,
12830:6, 12831:20,
12832:4, 12832:6,
12832:8, 12833:2,
12833:4, 12833:6,
12833:10, 12833:12,
12833:24, 12834:9,
12834:15, 12834:18,
12834:22, 12834:24,
12835:1, 12835:8,
12835:17, 12835:21,
12835:24, 12836:1,
12836:4, 12836:23,
12837:1, 12837:10,
12837:14, 12837:18,
12838:3, 12838:6,
12838:10, 12838:12,
12838:20, 12839:2,
12839:8, 12839:12,
12839:22, 12839:25,
12840:7, 12840:10,
12840:19, 12840:25,
12841:14, 12841:17,
12842:7, 12842:12,
12843:8, 12843:16,
12843:25, 12844:5,
12844:10, 12844:15,
12845:20, 12845:22,
12846:2, 12846:5,
12846:9, 12846:12,
12846:14, 12847:2,
12847:6, 12848:2,
12848:4, 12848:11,
12848:13, 12848:17,
12849:6, 12849:9,

12849:15, 12849:18,
12849:22, 12849:25,
12850:4, 12850:10,
12850:12, 12850:15,
12850:17, 12850:19,
12850:21, 12850:24,
12851:1, 12851:3,
12851:13, 12851:14,
12852:6, 12852:12,
12852:16, 12853:13,
12854:17, 12854:18,
12854:19, 12854:20,
12858:5, 12858:9,
12858:16, 12858:18,
12858:20, 12859:10,
12859:12, 12859:17,
12860:2, 12860:5,
12860:17, 12860:21,
12861:1, 12861:3,
12861:7, 12861:12,
12861:22, 12862:2,
12862:6, 12862:13,
12863:15, 12863:16,
12863:17, 12865:2,
12865:4, 12865:21,
12865:24, 12866:2,
12867:15, 12867:21,
12868:17, 12868:20,
12868:22, 12869:3,
12869:6, 12871:10,
12871:12, 12871:15,
12871:17, 12872:9,
12872:16, 12872:23,
12873:6, 12874:3,
12874:12, 12874:22,
12874:24, 12875:6,
12875:8, 12875:13,
12875:23, 12876:1,
12876:10, 12876:14,
12876:16, 12876:25,
12877:2, 12877:4,
12877:10, 12879:10,
12879:14, 12879:23,
12880:5, 12880:7,
12880:24, 12881:7,
12881:12
**themselves** [4] -
12814:10, 12832:22,
12837:12, 12837:20
**theories** [1] -
12806:15
**theory** [3] - 12831:4,
12831:24, 12844:25
**therefore** [1] - 12872:1
**they've** [2] - 12801:10,
12808:4
**thinking** [5] -
12830:11, 12841:20,
12873:13, 12879:7,
12880:8

**thinks** [2] - 12810:11,
12880:11
**third** [1] - 12812:7
**thousands** [1] -
12857:15
**three** [5] - 12800:21,
12801:19, 12825:12,
12829:10
**throw** [1] - 12836:15
**thrust** [1] - 12841:22
**Thursday** [1] -
12797:6
**Timothy** [1] -
12798:17
**TIMOTHY** [2] -
12797:9, 12881:17
**Today** [1] - 12832:20
**today** [17] - 12801:16,
12801:22, 12802:2,
12810:23, 12810:25,
12811:10, 12812:14,
12812:19, 12814:23,
12819:20, 12820:7,
12854:8, 12863:20,
12868:4, 12869:14,
12872:2, 12880:15
**together** [1] -
12811:11
**toggling** [1] - 12878:8
**tomorrow** [5] -
12873:15, 12874:3,
12874:6, 12879:3,
12880:13
**took** [6] - 12803:12,
12851:16, 12854:15,
12855:15, 12856:22,
12873:13
**tools** [3] - 12844:25,
12863:6
**top** [3] - 12803:4,
12806:4, 12824:19
**topic** [2] - 12837:17,
12878:19
**topics** [1] - 12822:1
**totally** [3] - 12804:9,
12804:11, 12834:1
**toward** [1] - 12816:18
**transactional** [1] -
12844:17
**TRANSCRIPT** [1] -
12797:8
**transcript** [5] -
12798:21, 12852:10,
12853:16, 12881:19,
12881:20
**transcription** [1] -
12798:21
**transpired** [1] -
12809:12
**trial** [15] - 12804:16,

12805:25, 12806:14, 12808:20, 12808:22, 12809:11, 12809:20, 12836:11, 12837:25, 12839:10, 12840:6, 12841:11, 12841:13, 12870:6, 12870:10
**TRIAL** [1] - 12797:8
**true** [3] - 12826:11, 12881:18, 12881:19
**trust** [1] - 12833:22
**try** [6] - 12808:17, 12812:15, 12822:22, 12860:6, 12873:7, 12879:25
**trying** [5] - 12818:1, 12820:25, 12831:21, 12866:2, 12877:16
**turns** [1] - 12880:17
**two** [13] - 12801:24, 12810:17, 12811:10, 12818:10, 12825:9, 12828:23, 12841:4, 12842:19, 12844:24, 12859:5, 12865:3, 12865:16
**two-step** [1] - 12818:10
**type** [1] - 12825:10

## U

**U-G-H** [1] - 12839:23
**U.S** [8] - 12797:13, 12798:18, 12805:10, 12814:19, 12814:20, 12851:17, 12865:11, 12865:13
**Ugh** [1] - 12839:23
**ultimately** [1] - 12878:7
**umbrella** [1] - 12820:20
**unaware** [1] - 12804:11
**unclassified** [1] - 12817:18
**under** [10] - 12808:15, 12810:14, 12813:1, 12813:4, 12815:19, 12818:5, 12846:23, 12874:16, 12874:18, 12875:4
**underscores** [1] - 12806:1
**understood** [1] - 12822:13
**unfair** [2] - 12859:3, 12859:23
**unfilter** [1] - 12854:11

**unfiltered** [7] - 12815:20, 12817:1, 12857:7, 12857:25, 12858:23, 12860:13
**unhid** [1] - 12854:25
**uniquely** [1] - 12843:11
**UNITED** [3] - 12797:1, 12797:2, 12797:9
**United** [8] - 12797:11, 12800:3, 12802:10, 12811:18, 12825:14, 12827:21, 12874:20, 12881:23
**universe** [1] - 12833:18
**unknowingly** [1] - 12806:18
**unless** [2] - 12863:15, 12863:17
**unreasonable** [1] - 12844:17
**unrelated** [1] - 12872:1
**unusual** [1] - 12806:15
**up** [26] - 12810:1, 12810:7, 12810:18, 12810:23, 12816:18, 12821:9, 12822:23, 12824:9, 12828:20, 12829:6, 12829:21, 12832:1, 12832:19, 12836:10, 12852:10, 12853:3, 12861:18, 12861:19, 12862:24, 12871:17, 12871:25, 12877:4, 12877:16, 12879:4, 12879:11, 12879:17
**update** [1] - 12873:19
**usable** [1] - 12871:8

## V

**valid** [1] - 12870:15
**various** [1] - 12800:19
**verify** [1] - 12858:5
**viability** [1] - 12831:1
**video** [1] - 12843:5
**video-recorded** [1] - 12843:5
**view** [4] - 12815:6, 12826:8, 12867:6, 12874:25
**vindicate** [1] - 12831:14
**voice** [3] - 12850:5, 12850:7, 12858:20

## W

**wait** [1] - 12835:2
**wake** [1] - 12832:19
**wants** [4] - 12837:4, 12840:21, 12870:5, 12878:22
**Washington** [5] - 12797:5, 12797:14, 12797:24, 12798:19, 12881:24
**ways** [1] - 12845:21
**weapon** [1] - 12808:1
**week** [2] - 12806:11, 12865:15
**weekend** [2] - 12879:4, 12881:11
**West** [1] - 12798:9
**whatnot** [2] - 12805:21, 12869:13
**wheels** [1] - 12880:19
**whole** [1] - 12875:23
**win** [2] - 12807:6, 12832:18
**wish** [1] - 12868:7
**withdraw** [1] - 12845:18
**withheld** [1] - 12810:12
**witness** [54] - 12801:9, 12802:1, 12809:19, 12811:23, 12812:1, 12818:11, 12818:23, 12819:11, 12819:19, 12820:19, 12821:14, 12821:17, 12822:15, 12823:13, 12825:14, 12828:5, 12828:10, 12828:21, 12830:11, 12830:13, 12833:19, 12833:21, 12834:1, 12837:17, 12838:14, 12838:19, 12839:10, 12840:22, 12841:4, 12841:6, 12842:2, 12842:18, 12843:2, 12843:12, 12844:2, 12845:8, 12846:16, 12846:18, 12846:25, 12848:17, 12849:24, 12850:1, 12852:17, 12853:6, 12853:12, 12854:6, 12858:13, 12860:12, 12860:14, 12860:25, 12861:3, 12866:3, 12866:7, 12878:10
**WITNESS** [8] - 12799:2, 12848:4, 12851:14, 12854:18,

12854:20, 12858:5, 12863:15, 12863:17
**Witness** [1] - 12866:1
**witness's** [3] - 12803:25, 12845:15, 12845:18
**witnesses** [2] - 12827:20, 12850:2
**word** [5] - 12807:23, 12807:24, 12808:2, 12808:4, 12808:16
**words** [1] - 12819:25
**works** [2] - 12815:4, 12817:3
**worried** [1] - 12843:19
**worry** [1] - 12873:22
**wrap** [1] - 12873:7

## Y

**yards** [2] - 12838:2, 12844:22
**yesterday** [18] - 12800:20, 12801:16, 12802:14, 12808:18, 12809:13, 12852:11, 12852:22, 12853:5, 12853:16, 12854:10, 12857:7, 12857:16, 12857:24, 12858:22, 12858:23, 12859:21, 12860:12, 12860:24
**yields** [2] - 12845:13, 12878:24
**York** [2] - 12797:18, 12798:13

## Z

**Zachary** [1] - 12800:4
**zealous** [1] - 12831:8